**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Plaintiff, | ) | |
| | ) | Case No. 10-CR-00886 |
|     v. | ) | |
| | ) | Honorable Ronald A. Guzman |
| KEVIN TRUDEAU, | ) | |
|     Defendant. | ) | |

**KEVIN TRUDEAU'S MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR DISMISSAL PURSUANT TO THE SPEEDY TRIAL ACT**

Defendant Kevin Trudeau submits this Memorandum of Law in support of his Motion For Dismissal pursuant to the Speedy Trial Act, 18 U.S.C. §§ 3161 *et seq.*

## INTRODUCTION

United States District Judge Robert Gettleman initiated a criminal contempt prosecution against Defendant Kevin Trudeau on April 16, 2010, by issuing an Order to Show Cause. Judge Gettleman referred the matter to the United States Attorney for prosecution. The United States Attorney's Office accepted the referral on April 29, 2010. The Speedy Trial Act's 70-day period for commencing a trial on the criminal charges began to run on April 29, 2010, the date Trudeau first appeared before Judge Gettleman on the Order to Show Cause. The exclusions of time expired on October 22, 2010. The Speedy Trial clock has now unquestionably expired. The law, therefore, compels dismissal of this criminal prosecution. The dismissal should be with prejudice because the alleged offense is not serious within the meaning of the Speedy Trial Act, the delay is solely attributable to the government, and reprosecution would vitiate the purposes of the law and undermine the administration of justice.

BACKGROUND

Kevin Trudeau is an author of several *New York Times* best-selling books, radio host, and consumer advocate. He has promoted his books largely through television infomercials. He is often critical of corporate America and government agencies, including the Federal Trade Commission ("FTC"). Over the years, he has had several legal battles with the FTC, but has never been found to be in violation of the FTC Act or other consumer fraud laws.

I. <u>Trudeau Entered into a Stipulated Order with the FTC in 2004</u>

In September 2004, Trudeau settled a lawsuit with the FTC without admitting any liability or fault by entering into a Stipulated Order. The Stipulated Order provided that Trudeau would appear in infomercials only for books and other publications and that the infomercials should not "misrepresent the content" of the publication being promoted. When presenting the Stipulated Order to Judge Gettleman, counsel for the FTC and Trudeau agreed on the record that an example of permissible conduct under the Stipulated Order was Trudeau's infomercial for his book, *Natural Cures "They" Don't Want You to Know About.* (Ex. A, 9/2/04 Tr. at 10.) The infomercial for the *Natural Cures* book faithfully repeated statements in the book about the existence of various natural cures. Although the FTC did not necessarily agree that the natural cures described in the book were effective, the FTC nevertheless approved the *Natural Cures* infomercial because it was faithful to Trudeau's book. Judge Gettleman, after hearing counsel's presentation of what was permissible under the proposed 2004 Stipulated Order, entered the Order. (Stipulated Order, Case No. 03 C 3904, Docket Entry 56.)

II. <u>Civil Contempt Proceedings Initiated by the FTC in 2007</u>

Trudeau subsequently wrote another book – *The Weight Loss Cure "They" Don't Want You to Know About* (the "*Weight Loss* book") – and appeared in infomercials promoting the book. Believing that he would be compliant with the 2004 Stipulated Order if he faithfully

represented the content of the book in the infomercials, Trudeau repeated in the infomercials statements in the book to the effect that the weight-loss protocol discussed in the book, and personally experienced by Trudeau, is "easy," and that users could maintain weight loss without deprivation.

The FTC viewed the *Weight Loss* infomercials and then waited, without comment, while the infomercials aired on national TV for about eight months. Then, in September 2007, the FTC filed a contempt motion alleging that the *Weight Loss* infomercials were contemptuous of the Stipulated Order because they falsely represented that the protocol described in the book was "easy." In the FTC's view, the weight-loss protocol was not "easy." Although the *Weight Loss* book itself repeatedly described the protocol as "easy," the FTC argued that the infomercial could not describe the protocol as "easy" without violating the 2004 Stipulated Order. The FTC also argued that the infomercial could not repeat the book's statements about maintaining weight loss without violating the Order.

Trudeau viewed the FTC's position as a material departure from the position the FTC had taken with regard to the *Natural Cures* infomercial. Judge Gettleman nevertheless agreed with the FTC and, on November 16, 2007, held Trudeau in civil contempt.[1] On November 4, 2008, Judge Gettleman issued a "remedy" for Trudeau's civil contempt in the form of a $37.6 million fine and a three-year injunction against appearing in infomercials. The judgment amount was based on the supposed revenue from infomercial sales of the *Weight Loss* book, not on any showing of harm or consumer dissatisfaction.

---

[1] In response to the district court's order finding that the *Weight Loss* infomercials violated the Stipulated Order, Trudeau immediately requested that the third-party company that owned and distributed the infomercials, ITV Global, Inc., cease airing the infomercials. ITV Global complied with Trudeau's request. To Trudeau's knowledge, the *Weight Loss* infomercials have not aired since November 2007.

Trudeau appealed and, on August 27, 2009, the Seventh Circuit remanded the case to Judge Gettleman, affirming the civil contempt finding, but vacating the $37.6 million fine because it was neither explained nor supported, and vacating the injunction because it was not an appropriate remedy for civil contempt. *FTC v. Trudeau,* 579 F.3d 754 (7th Cir. 2009). On April 16, 2010, Judge Gettleman entered a Supplemental Order that re-imposed the $37.6 million fine, and permanently modified the 2004 Stipulated Order to require Trudeau to post a $2 million bond as a condition for airing infomercials for his books and publications. The bond requirement has effectively banned Trudeau for life from airing infomercials. The Supplemental Order is currently on appeal to the Seventh Circuit.

### III. The Criminal Prosecution Initiated on April 16, 2010, and Speedy Trial Clock

At the same time that Judge Gettleman entered the Supplemental Order – April 16, 2010 – he issued an Order to Show Cause directing Trudeau:

> . . . to show cause why he should not be prosecuted for and held in criminal contempt of this court's September 2, 2004 Consent Order. Specifically, defendant will personally be given notice, pursuant to Rule 42(a)(1), that this court will consider imposing a term of imprisonment not to exceed six months for defendant's producing and broadcasting deceptive infomercials that misrepresented the contents of defendant's book entitled The Weight Loss Cure "They" Don't Want You to Know About between December 2006 and November 2007, in direct and willful violation of this court's order of September 2, 2004[.]

(Case No. 03 C 3904, Docket Entry 338.) The Order did not explain why, after two and a half years of civil litigation, and after having imposed a fine of $37.6 million and a bond requirement that effectively banned Trudeau for life from the infomercial business, Judge Gettleman had now determined that Trudeau should be criminally prosecuted for the same conduct. Judge Gettleman subsequently exercised his prerogative as a senior judge under 28 U.S.C. § 294(b) to transfer the criminal matter to the Executive Committee for reassignment to another judge under a new case name and number. (Minute Order, Case No. 03 C 3904, Docket Entry 435.)

4

The following chronology describes the events that have transpired thus far in the criminal prosecution.

- April 16, 2010: Order to Show Cause is issued. (Case No. 03 C 3904, Docket Entry 338.)

- April 29, 2010: Trudeau appears in court pursuant to the Order to show cause. (Ex. B, 4/29/10 Tr.) The government seeks and is granted an exclusion of time under the Speedy Trial Act through July 29, 2010, for pretrial motions. (*Id.* at 21-22; Minute Order, Case No. 03 C 3904, Docket Entry 356.)

- June 16, 2010: The court grants the government a 60-day extension of time within which to respond to Trudeau's motion for dismissal, and at the government's request, directs that time would be excluded under the Speedy Trial Act through September 24, 2010. (Minute Order, Case No. 03 C 3904, Docket Entry 389.)

- September 10, 2010: Trudeau files a motion for recusal. (Case No. 03 C 3904, Docket Entry 416.)

- September 24, 2010: In open court, the scheduled hearing is continued to September 29, 2010; the government requests and is granted exclusion of time under the Speedy Trial Act through September 29, 2010. (Ex. C, 9/24/10 Tr. at 25-26; Order, Case No. 03 C 3904, Docket Entry 425.)

- September 29, 2010: At a hearing, the court takes Trudeau's motions for dismissal and for recusal under advisement; at the government's request, the court grants an exclusion of time under the Speedy Trial Act through October 22, 2010. (Ex. D, 9/29/10 Tr. at 28; Minute Order, Case No. 03 C 3904, Docket Entry 432.)

- October 19, 2010: The court issues an order denying Trudeau's motions for dismissal and for recusal. (Case No. 03 C 3904, Docket Entry 437.) The court also enters a minute order stating that Judge Gettleman exercises his prerogative as Senior Judge to transfer the criminal matter to the Executive Committee for reassignment to another judge. (Minute Order, Case No. 03 C 3904, Docket Entry 435.) The Clerk gives the criminal matter a new name and case number, *USA v. Trudeau,* Case No. 10 CR 0883. (*See* Docket for Case No. 10 CR 0883.)

- October 22, 2010: The exclusion of time under the Speedy Trial Act pursuant to the September 29, 2010 Minute Order expires. No exclusions of time are granted or requested after October 22, 2010.

- November 5, 2010: Assignment of the matter to this Court as of October 19, 2010, appears on the docket of *USA v. Trudeau.* (*See* Docket for Case No. 10 CR 0883, Docket Entry 3.)

5

- December 31, 2010: The 70-day period counting from October 22, 2010 expires.

- January 14, 2011: The 70-day period counting from November 5, 2010 expires.

- March 28, 2011: This Court enters a Minute Order setting a status hearing for April 7, 2011. (Case No. 10 CR 00886, Docket Entry 2.)

- April 7, 2011: This Court holds a status hearing. The government declines to request any exclusion of time under the Speedy Trial Act. (Ex. E, 4/7/11 Tr.)

**ARGUMENT**

The Speedy Trial Act provides that the trial of a defendant who has been charged with an offense shall commence within 70 days from the filing date of the charging document or from the date the defendant has appeared before a judicial officer, whichever is later. 18 U.S.C. § 3161(c)(1). If a defendant is not brought to trial within the required time limit, the prosecution "*shall* be dismissed on motion of the defendant." 18 U.S.C. § 3162(a)(2) (emphasis added). The court has the discretion whether to dismiss the action with or without prejudice. *Id.*

Here, the Speedy Trial Act has indisputably been violated and dismissal is mandatory. Since Trudeau's first appearance before a judicial officer on April 29, 2010, the government requested and obtained certain exclusions of time under the Act. The most recent excluded period, however, ended on October 22, 2010. For the ensuing 157 days (from October 22, 2010 to March 28, 2011) the government took no action whatsoever on the case and did not seek further exclusions of time. Under these circumstances, dismissal is mandatory, and for the reasons set forth below, the Court should exercise its discretion and order dismissal with prejudice.

**I.     The Speedy Trial Act Applies To This Contempt Action**

The government asserted for the first time at the April 7, 2011 status hearing that the Speedy Trial Act does not apply to this prosecution because it was initiated by an order to show

6

cause, rather than by an information or indictment.[2] (Ex. E, 4/7/11 Tr. at 12.) The government is clearly mistaken. The Judicial Conference of the United States, Committee on the Administration of Criminal Law, has unequivocally opined that the Speedy Trial Act applies to contempt actions like the one prosecuted here. The Judicial Conference has published Guidelines to the Administration of the Speedy Trial Act of 1974, as Amended, which state in pertinent part, as follows:

> In a criminal contempt proceeding prosecuted on notice pursuant to Rule [42(a)], Federal Rules of Criminal Procedure, the notice should be treated as if it were an information for purposes of calculating the 70-day period to trial.

106 F.R.D. 271, 277 (1984) (attached hereto as Ex. F). The Guidelines further state:

> Considering the entire statute in the light of its purposes. … the Committee is of the view that the act does apply to contempts prosecuted under Rule [42(a)], Federal Rules of Criminal Procedure, and that the notice on which prosecution is based should be treated as an information for purposes of calculating the 70-day time limit to trial.

*Id.* at 310.[3]

Courts have uniformly agreed with the Judicial Conference and applied the Speedy Trial Act to criminal contempt actions arising from orders to show cause. For example, the Seventh Circuit, in *United States v. Bryant*, applied the Speedy Trial Act where "[t]he charging document consisted of an order to show cause why [the defendant] should not be held in criminal contempt[.]" Nos. 92-1086, 93-1153, 1993 WL 453389, at *1 (7th Cir. Nov. 5, 1993). *See also United States v. Richmond,* No. 07-50341, 2009 WL 347443, at *1 (9th Cir. Feb. 11, 2009); *United States v. Baker,* 641 F.2d 1311, 1319 (9th Cir. 1981); *United States v. Moncier,* No. 2:07-

---

[2] The government's recent position is inconsistent with the position it repeatedly took from April 29 to October 22, 2010, when it consistently asked that time be excluded under the Speedy Trial Act.

[3] The Guidelines refer to Rule 42(b), which at the time the Guidelines were written was the equivalent of what is now Rule 42(a).

cr-00040, 2010 WL 1904957, at *2 (E.D. Tenn. May 10, 2010); *In re Slovenec,* 799 F. Supp. 1441, 1448 n.6 (W.D.N.Y. 1992).

In summary, the Judicial Conference and the courts agree that the Speedy Trial Act applies to criminal contempt proceedings arising out of orders to show cause. Even the government appears to agree in this case because it sought four requests for exclusion of time under the Speedy Trial Act during the period April 29, 2010 and September 29, 2010, before stating a new position on April 7, 2011.

## II. This Case Should Be Dismissed with Prejudice

With no doubt that the Speedy Trial Act applies to criminal contempt proceedings, and with no doubt that the 70-day period for commencing trial under the Speedy Trial Act has run, the only question is whether this case must be dismissed with prejudice. The answer is unequivocally "yes."

Courts consider the following factors in deciding whether to dismiss a case with prejudice under the Speedy Trial Act: "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of [the Speedy Trial Act] and on the administration of justice." 18 U.S.C. § 3162(a)(1); *see also United States v. Janik,* 723 F.2d 537, 546 (7th Cir. 1983).

Here, this Court should dismiss this case with prejudice because: (1) the alleged offense is not "serious" within the meaning of the Speedy Trial Act, which weighs in favor of dismissal with prejudice because there is no strong public interest in prosecution of the offense; (2) the delay is solely attributable to the government, which weighs in favor of dismissal with prejudice, particularly when the alleged offense is not serious; and (3) reprosecution in this case would excuse the government's violation of the law and vitiate its purpose.

### A. The Alleged Offense Is Not "Serious"

"The seriousness of the charge is considered for purposes of weighing it against the seriousness of the delay and its effects." *United States v. Peppin,* 365 F. Supp. 2d 261, 264 (N.D.N.Y. 2005) (citing *United States v. Simmons,* 786 F.2d 479, 485 (2d Cir. 1986)). In other words, in deciding whether to dismiss a prosecution with prejudice, a court is balancing society's interest in the prosecution of the alleged offense against both the defendant's and society's interest in a speedy trial. When the crime is not serious, then the interest in a speedy trial should take precedence and less is required to justify dismissal with prejudice.

Trudeau is not charged with a "serious" offense within the meaning of the Act. An alleged offense is not "serious" when it is the "lowest order of felony[,]" *United States v. Caparella,* 716 F.2d 976, 980 (2d Cir. 1983), or a "Class A misdemeanor," *United States v. Nash,* No. 2:08-mj-00678-RJJ-RJJ, 2010 WL 702438, at *2 (D. Nev. Feb. 19, 2010); *United States v. Pearson,* No. 95 Cr. 749, 1996 WL 5071, at *1 (S.D.N.Y. Jan. 5, 1996), or where it involved no actual harm. *United States v. Brown,* 183 F.3d 1306, 1308, 1314 (11th Cir. 1999) (affirming district court finding that drug conspiracy was not a serious offense where it was a "reverse sting" involving no actual drugs or money); *United States v. Bundu,* 479 F. Supp. 2d 195, 199 (D. Mass. 2007) (holding that parental kidnapping was not a serious offense where, among other things, children were not harmed). This case is clearly within that category.

Certainly, Judge Gettleman did not believe this to be a serious offense under the Speedy Trial Act. The initial order to show cause limited the maximum sentence to six months imprisonment, which would make the offense the equivalent of a Class B misdemeanor. Likewise, the government stated that it would not seek a sentence of more than six months. Only recently, after the case was reassigned to a new judge, has the government indicated that it will ask the Court to consider a sentence of more than six months. (Ex. E, 4/7/2011 Tr. at 4.) But the

9

government's shifting position on what should be the maximum sentence does not change the alleged underlying conduct or make the alleged offense any more "serious," for Speedy Trial Act purposes, than a Class B misdemeanor. Indeed, even if this case were the equivalent of a Class A misdemeanor, the foregoing cases hold that Class A misdemeanors, and even Class E felonies, are not considered serious offenses for purposes of the Speedy Trial Act.

This case is no more serious than a disagreement over whether a weight loss protocol is "easy." The government has never disputed the efficacy of the weight loss program described in the infomercial and has never presented evidence of a single consumer who claimed "harm" in any respect. Perhaps the best evidence of lack of consumer harm is that the plaintiffs' class action bar has not touched this case. The "harm" is entirely subjective. Trudeau said, based on his own experience, that his weight-loss protocol is "easy." The government and Judge Gettleman disagreed.

That Trudeau's alleged offense is not a serious offense for purposes of the Speedy Trial Act is supported by settled precedent. For example, in *Caparella*, the Second Circuit reversed the district court's determination that the complaint be dismissed without prejudice. 716 F.2d at 976, 980-82. The Second Circuit held that the offense of felony theft of mail was not serious for purposes of the Speedy Trial Act, and dismissed the case with prejudice where the prosecutor's negligence was the sole cause of the delay, and where the salutary effect of affirming the purposes of the Speedy Trial Act outweighed any potential deterrent effect of reprosecution. *Id.* at 980-81.

Similarly, in *Nash,* the court held that criminal trespass and damage to federal public lands (Class A misdemeanors) were non-serious offenses for Speedy Trial Act purposes. *Nash,* 2010 WL 702438 at *1-2. In that case, the delay was only eight days, was the result of

negligence rather than "purposeful disregard," and caused no prejudice to the defendant. *Id.* at *2. The court nevertheless dismissed the complaint with prejudice, finding that the "public interest in the government's adherence to … the Speedy Trial Act … outweigh[ed] the public interest in reprosecution" of the case. *Id.* at *2-3.

In *Bundu,* the court held that international parental kidnapping was not a serious offense. 479 F. Supp. 2d at 199. That holding informed the remainder of the court's analysis in making its recommendation that the case be dismissed with prejudice. The court found that the delay was solely attributable to the government and, though not evidencing bad faith, reflected a "pattern of governmental inattention." *Id.* at 200. It further found that reprosecution would be of no benefit to the administration of justice because, among other things, the parties had reconciled and the defendant had already been incarcerated for more than a month, *id.* at 201, and that reprosecution would "make a mockery of the Speedy Trial Act." *Id.*

These cases compel the conclusion that Trudeau's alleged offense is not serious and that it is the equivalent of a misdemeanor.

    **B.**    <u>**The Delay In This Case Is Solely Attributable To the Government**</u>

The second factor that a court must consider in deciding whether to dismiss a case with prejudice under the Speedy Trial Act consists of "the facts and circumstances of the case which led to the dismissal[,]" 18 U.S.C. § 3162(a)(2), that is, the facts and circumstances that led to the violation of the Speedy Trial Act. In assessing the "facts and circumstances," courts generally look at the length of the delay and/or the extent of the government's (or the defendant's) culpability in causing the delay. *See, e.g., United States v. Clymer,* 25 F.3d 824, 831-32 (9th Cir. 1994) (dismissing case with prejudice, holding that five-month delay weighed heavily in favor of dismissal with prejudice, even though the offense was "serious"); *United States v. Moss,* 217 F.3d 426, 432 (6th Cir. 2000) (holding that dismissal without prejudice was clearly erroneous

11

where violation was caused by the court and the government); *United States v. Ramirez,* 973 F.2d 36, 38-39 (1st Cir. 1992) (affirming dismissal with prejudice, even though offense was serious, where the delay resulted from an oversight by the court, stating that "[w]hen a STA violation is caused by the court or the prosecutor, it weights in favor of granting a dismissal with prejudice"); *United States v. Russo,* 741 F.2d 1264, 1267-68 (11th Cir. 1984) (dismissing case with prejudice where violation resulted from government's negligence, noting that "[s]ome affirmative justification [for the delay] must be demonstrated to warrant a dismissal without prejudice"); *Caparella*, 716 F.2d at 980 (reversing conviction and dismissing complaint with prejudice where, among other things, prosecutor's negligence was the sole cause of the Speedy Trial Act violation).

Here, the non-excludable time has exceeded the 70-day limit by five months (December 31, 2010, to June 6, 2011). And by the time this case could reasonably be brought to trial, the delay might be up to a year. As the *Clymer* court stated, "even a delay of five months strongly implicates the serious concerns articulated by Justice White … in *Barker v. Wingo,* [citation omitted]:

> [I]nordinate delay between public charge and trial … wholly aside from possible prejudice to a defense on the merits, may "seriously interfere with the defendant's liberty, whether he is free on bail or not, and … may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.

*Clymer,* 25 F.3d at 832 (quoting *Barker v. Wingo,* 407 U.S. 514, 537 (1972) (White, J., concurring)). Most, if not all, of those concerns are implicated in this case.

The lengthy delay in this case is solely attributable to the government. We do not suggest, nor do we have to prove, that the government engaged in gamesmanship or bad faith. But the government surely displayed inattention to this case. Such inattention justifies dismissal

with prejudice, particularly where the alleged offense is not serious. *See Ramirez,* 973 F.2d at 38-39; *Russo,* 741 F.2d at 1267-68; *Caparella*, 716 F.2d at 980; *United States v. Giambrone,* 920 F.2d 176, 181 (2d Cir. 1990) (affirming dismissal with prejudice where government's speedy-trial attitude was "extremely lax"); *United States v. Baez,* No. 10-CR-155, 2011 WL 1305991, at *4, 6 (E.D. Wis. April 4, 2011) (dismissing case with prejudice based on one month delay where government remained silent about the reasons for the delay and displayed "truly neglectful attitude"); *United States v. Hernandez-Amparan,* 600 F. Supp. 2d 839, 844 (W.D. Tex. 2009) (dismissing case with prejudice where government delays, though apparently not intentional, were not explained); *Cf. United States v. Scott,* 743 F. Supp. 400, 406, 409 (D. Md. 1990) (dismissing case with prejudice, holding that convenience of prosecutor was not a permissible reason for delay under the Speedy Trial Act).

"Some affirmative justification must be demonstrated to warrant a dismissal without prejudice." *Russo,* 741 F.2d at 1267. Here, the government has no good justification for the substantial delay and inaction on its part. After this case was reassigned to a new judge on October 22, 2010, the government did nothing to prosecute this case for over five months. It is the government's responsibility to move its cases forward or to request additional excludable time where appropriate. *Baez,* 2011 WL 1305991 at *3. That this matter may have fallen through the cracks does not excuse the government's violation of the Act. "Meeting established time limitations is important and lack of attention or dilatoriness in observing them should not be encouraged by courts viewing such neglect tolerantly." *Caparella*, 716 F.2d at 980; see also *Ramirez,* 973 F.2d at 39 ("An administrative oversight is no excuse for a [Speedy Trial Act] violation.") (citing *Caparella,* 716 F.2d at 980); *Russo,* 741 F.2d at 1268 ("[W]here the violation is substantial, a negligent failure to comply with the Act will not suffice to justify retrial.").

Clearly, neither the courts nor the government would countenance missed deadlines by criminal defendants. *See Caparella,* 716 F.2d at 980 ("[W]hen a defense motion, for example a motion to reduce sentence under Federal Rule of Criminal Procedure 35, is late, the government is quick to point out that time has expired."). There is no reason for the Court to countenance the government's inaction in this case, particularly where the alleged offense is not serious and the delay is substantial.

### C. Reprosecution of This Case Would Adversely Affect the Administration of Justice

The third factor that courts must consider in deciding whether to dismiss a case with prejudice is "the impact of a reprosecution on the administration of [the Act] and on the administration of justice." 18 U.S.C. § 3162(a)(2). Here, those considerations weigh in favor of dismissal with prejudice. Reprosecution would adversely affect the administration of justice because it would vitiate the purpose of the Act. "The purpose of the Speedy Trial Act is not only to protect a defendant's constitutional right to a speedy trial, but also to serve the public interest in bringing prompt criminal proceedings." *Moss,* 217 F.3d at 432 (citing *United States v. Saltzman,* 984 F.2d 1087, 1090 (10th Cir. 1993). "Whenever the government – for whatever reason – falls short of meeting the Act's requirements, the administration of justice is adversely affected." *Id.* (citing *Ramirez,* 973 F.2d at 39) (internal quotation omitted).

Moreover, a dismissal without prejudice in this case would render the Speedy Trial Act a nullity. The government would suffer no consequences whatsoever for its violation of the law as there would likely be no preclusion against it initiating new criminal proceedings against Trudeau.

Furthermore, the public interest in criminally prosecuting Trudeau is negligible. He already has been severely punished as a result of the civil contempt proceedings. Moreover, his

14

alleged criminal offense is not serious. A reprosecution of this matter would waste the resources of the Court as well as the government. A dismissal with prejudice will vindicate the objectives of the law and will have a positive impact on the administration of justice.

## CONCLUSION

For the foregoing reasons, the Court should dismiss this case with prejudice.

Dated: June 6, 2011

                                  Respectfully submitted,

                                  KEVIN TRUDEAU

                By:    /s/ Kimball R. Anderson
                           One of His Attorneys

Kimball R. Anderson (kanderson@winston.com)
Thomas L. Kirsch II (tkirsch@winston.com)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
312-558-5600

Daniel J. Hurtado (dhurtado2@att.net)
Law Office of Daniel J. Hurtado
841 North Grove Avenue
Oak Park, Illinois 60302
708-289-2503

**CERTIFICATE OF SERVICE**

I, Kimball R. Anderson, an attorney, hereby certify that on June 6, 2011, I caused to be served true copies of Kevin Trudeau's Memorandum of Law in Support of Motion for Dismissal Pursuant to the Speedy Trial Act by filing such document through the Court's Electronic Case Filing System, which will send notification of such filing to:

Marc Krickbaum
United States Attorney's Office
219 South Dearborn Street
Suite 500
Chicago, IL  60604


/s/ Kimball R. Anderson
Kimball R. Anderson