## **INDEX OF EXHIBITS**

Exhibit A – Excerpt of pages of Transcript of Proceedings on September 2, 2004, 2:00 p.m. before the Honorable Robert W. Gettleman.

Exhibit B – Excerpt of pages of Transcript of Proceedings on April 29, 2010, 2:30 p.m. before the Honorable Robert W. Gettleman.

Exhibit C – Excerpt of pages of Transcript of Proceedings on September 24, 2010, 2:10 p.m. before the Honorable Robert W. Gettleman.

Exhibit D – Excerpt of pages of Transcript of Proceedings on September 29, 2010, 2:00 p.m before the Honorable Robert W. Gettleman.

Exhibit E – Transcript of Proceedings on April 7, 2011, 10:30 a.m. before the Honorable Robert W. Gettleman.

Exhibit F – Judicial Conference, Guidelines to the Administration of the Speedy Trial Act of 1974.

# Exhibit A

1

```
 1                 IN THE UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF ILLINOIS
 2                          EASTERN DIVISION

 3   FEDERAL TRADE COMMISSION,        )
                                      )
 4                  Plaintiff,        )
                                      )  No. 03 C 3904
 5              vs.                   )  Chicago, Illinois
                                      )  September 2, 2004
 6   KEVIN TRUDEAU, SHOP AMERICA      )  2:00 o'clock p.m.
     (USA) LLC,                       )
 7                                    )
                    Defendants.       )
 8                                    )

 9          TRANSCRIPT OF PROCEEDINGS - MOTION

10      BEFORE THE HONORABLE ROBERT W. GETTLEMAN

11   APPEARANCES:

12   For the Plaintiff:         FEDERAL TRADE COMMISSION
                                600 Pennsylvania Avenue, NW, NJ-3212
13                              Washington, DC 20580
                                BY:  MR. DANIEL KAUFMAN
14                                   MS. HEATHER HIPPSLEY

15
     For Defendant Trudeau and  JENNER & BLOCK, LLC
16   Shop America:              One IBM Plaza
                                Chicago, Illinois 60611
17                              BY:  MR. DAVID J. BRADFORD
                                     MR. DANIEL J. HURTADO
18
     ALSO PRESENT:
19                              Mr. Kevin Trudeau

20

21

22

23   Official Court Reporter:   JENNIFER S. COSTALES, CRR, RMR
                                219 South Dearborn Street
24                              Room 1706
                                Chicago, Illinois 60604
25                              (312) 427-5351
```

1    There is an August 5, 2004 letter between ourselves and

2 the FTC which deals with a variety of other topics on which we

3 have reached agreement, one of which references the disposition

4 of the coral at wholesale.  Another indicates that there is an

5 affiliated company that has golf programs in the U.K.

6    To the extent that they from time to time need to film,

7 for example, a U.S. golf tournament or there is some incidental

8 involvement in the United States in the production of a golf show

9 or other kind of nondeceptive programming that's going to appear

10 over there, albeit in an infomercial format that the FTC does not

11 intend to contend that that's a violation of the infomercial ban,

12 we're not talking about programs that are going to be produced or

13 developed in the United States, but there may be some production

14 work that's incidental to those programs that would be permitted

15 in the United States, and they will exercise reasonable

16 discretion in terms of the "in commerce" clause, particularly if

17 this is a nondeceptive type of program.

18    There were also two infomercials, one for Megamemory and

19 one for Fresh Start, which we agreed they would not pursue as

20 long as they were disseminated only outside of North America.

21    And we have a general understanding that while there is

22 no release in this agreement, that to the extent the FTC is aware

23 of conduct that has occurred up to the present date, that this is

24 the full extent of relief that they're intending to seek for

25 that, that we're not going to have another lawsuit next week for

1  anything that's already been put on the table. And this really

2  does resolve differences that we've had based on everything

3  that's been disclosed to the FTC to the present date.

4        And finally, there is an understanding that infomercials

5  have been provided to third parties at various points in the

6  past, and as long as Mr. Trudeau has no direct or indirect

7  financial interest in those parties and no ability to control

8  their dissemination and otherwise complies with the order, that

9  he will not be liable for what third parties will do with those

10 infomercials.

11       MS. HIPPSLEY: And along the point with the third

12 parties, there is an obligation which Mr. Trudeau recognizes to

13 notify the third parties that he did do production for in the

14 past of the presence of the order, which we hope will have a

15 deterrent effect on the third parties.

16       THE COURT: Okay.

17       MR. BRADFORD: Then a further understanding was

18 Mr. Trudeau did complete what's referred to as "The Natural Cures

19 Book." He has developed an infomercial for that Natural Cures

20 book. This has been provided to the FTC. And they have no

21 objection to the dissemination of the book or the infomercial in

22 its current format.

23       This I think falls within the book exception that we had

24 talked about previously. So we have the first tangible example

25 of something that is acceptable under that provision.

1      It is generally Mr. Trudeau's intention and consistent

2 with the order that he intends to get out of the business of

3 selling product and focus on becoming an author, which is

4 permitted under the order; a potentially producer of television

5 talk show format or otherwise hosting talk shows; and/or that he

6 can engage as a profession in being a consumer critic or

7 advocate.

8      And as we've talked through those particular fields,

9 we've tried to focus on practical situations that may come up

10 that may create issues under the order.

11      With respect to the talk show, we have specifically

12 defined here what is an infomercial and what is a talk show, and

13 I think we have some very good objective criteria. But to the

14 extent we ever have disagreements in the future, it would be our

15 intention to submit anything that is questionable to the FTC and

16 try to work out those differences with them. But that is one

17 area where there is potential for disagreement down the road.

18      In that connection, I would reference a February 18,

19 2004 letter which was provided to Your Honor as one of the

20 exhibits in connection with a contempt motion which laid out some

21 of the principles in terms of talk shows and books and talk show

22 appearances that would be permitted under the then contemplated

23 order. And we have agreed that the examples and exceptions as

24 articulated in that February 18, 2004 letter are consistent with

25 the final order.

# Exhibit B

1

1            IN THE UNITED STATES DISTRICT COURT
               NORTHERN DISTRICT OF ILLINOIS
2                   EASTERN DIVISION

3
   FEDERAL TRADE COMMISSION,          )
4                                     )
                      Plaintiff,      )
5                                     )  No. 03 C 3904
            vs.                       )  Chicago, Illinois
6                                     )  April 29, 2010
   KEVIN TRUDEAU,                     )  2:30 p.m.
7                                     )
                      Defendant.      )
8

9            TRANSCRIPT OF PROCEEDINGS - STATUS

10        BEFORE THE HONORABLE ROBERT W. GETTLEMAN

11  APPEARANCES:

12  For the Plaintiff:     FEDERAL TRADE COMMISSION
                           55 West Monroe Street
13                         Suite 1825
                           Chicago, Illinois 60603
14                         BY:  MR. DAVID O'TOOLE

15  For the Defendant:     WINSTON & STRAWN LLP
                           35 West Wacker Drive
16                         Chicago, Illinois 60601
                           BY:  MR. KIMBALL R. ANDERSON
17                              MR. THOMAS KIRSCH, II

18  For the United States: HON. PATRICK FITZGERALD
                           United States Attorney
19                         219 South Dearborn Street
                           Chicago, Illinois 60604
20                         BY:  MS. LISA NOLLER

21

22

23  Official Reporter:     JENNIFER S. COSTALES, CRR, RMR
                           219 South Dearborn Street
24                         Room 1706
                           Chicago, Illinois 60604
25                         (312) 427-5351

2

1          (Proceedings in open court.)

2              THE CLERK:  03 C 3904, FTC versus Trudeau.

3              MS. NOLLER:  Good afternoon, Your Honor.

4              Lisa Noller for the United States.

5              MR. O'TOOLE:  And David O'Toole for the Federal Trade

6     Commission.

7              MR. ANDERSON:  And Kimball Anderson and Tom Kirsch on

8     behalf of Mr. Trudeau.

9              THE COURT:  All right.  Good afternoon, everybody.

10             Mr. Trudeau is here, I see.

11             MR. ANDERSON:  Yes, he is, Your Honor.

12             THE COURT:  Could you have him please come to the

13    podium.

14             Good afternoon, Mr. Trudeau.

15             THE DEFENDANT:  Hello.

16             THE COURT:  All right.  This is here today pursuant to

17    my order of -- I have a lot of orders here, I have to make sure I

18    find the right one -- April 16th of 2010.  And the purpose is to

19    under Rule 42, which I will comment on in a moment, because I'm

20    not sure it was absolutely necessary to do this in open court,

21    but I'm doing it in an abundance of precaution, but this is here

22    today to give you notice in open court of the charges of contempt

23    and to show cause why you should not be prosecuted for it and

24    held in criminal contempt of this Court for willfully violating

25    the Court's orders of September 2, 2004, the consent order, by

1  producing and broadcasting deceptive infomercials that

2  misrepresented the contents of your book entitled *The Weight Loss*

3  *Cure, They Don't Want You to Know About,* those infomercials

4  running between December 2006 and November 2007.

5         I am also notifying you, as I'm sure your attorneys

6  mentioned to you, that I have referred this matter to the United

7  States Attorney also under Rule 42(a)(2), and the United States

8  Attorney has accepted the referral.  And Lisa Noller, Assistant

9  United States Attorney, has appeared for that purpose.

10        I'm also prepared under that rule to state a time and

11  place of trial and to discuss with you and allow a reasonable

12  time to prepare a defense.  I think I've already stated the

13  essential facts constituting the charge of criminal contempt.

14        And I open the floor to counsel to discuss how to

15  proceed from here.

16        Now, I did get a motion by your counsel today,

17  Mr. Trudeau, for leave to file an oversized brief, which I'm

18  going to grant.  I have read it already.

19        Did government counsel get a copy of that?

20        MS. NOLLER:  I received a copy and I have skimmed it,

21  Your Honor.

22        THE COURT:  Well, it is fairly long.  I think rather

23  than addressing any of the points made in it, the only point

24  germane to these proceedings today being the sufficiency of the

25  notice that Mr. Trudeau has received, I believe it is sufficient.

20

1     THE COURT:  Well, why don't we just do this on the same

2  date then so you don't have to come back twice.  So we'll set it,

3  right after we do that, we'll do argument and hearing.

4     MR. ANDERSON:  Which date was that, Your Honor?

5     THE COURT:  The 29th.

6     MR. ANDERSON:  The 29th at 1:30?

7     THE COURT:  At 10:00 o'clock.

8     MR. ANDERSON:  At 10:00 o'clock?

9     MR. O'TOOLE:  You're striking that one?

10     THE COURT:  Yeah.  I'm changing that date.

11     MR. KIRSCH:  Your Honor, does Mr. Trudeau have to be

12  here for that argument on the 29th if we're just discussing legal

13  matters?

14     THE COURT:  Well, it is a criminal proceeding.  Do you

15  wish to waive his presence?

16     MR. KIRSCH:  Well, perhaps we can discuss that with him

17  after the hearing.  And perhaps we can just check in with the

18  clerk prior to, and the U.S. Attorney's office, prior, you know,

19  a few days before the hearing and see if his presence is

20  necessary.

21     THE COURT:  I doubt that anything is going to happen

22  that would require his appearance in the sense that he would be

23  sentenced or anything or detained.  You know, that could change.

24  It goes with the Seventh Circuit on the other matter, which is

25  separate.  I would be happy to waive his presence.

1          MR. KIRSCH:  Thank you, Your Honor.

2          THE COURT:  Obviously, Mr. Trudeau, you're welcome to be

3     here.  But it's going to be more of a lawyers argument.

4          Now, do you want me to set a trial date, because the

5     rule says I should do that today, or I assume that that rule can

6     be waived if all the parties wish to waive it, and we could go

7     from the next date.

8          MR. KIRSCH:  Well, Your Honor, yes, I think we should

9     waive it.  I don't think it would be appropriate to set a trial

10    date until after the Court decides to show cause, the show cause

11    motion that we filed.

12         THE COURT:  Do you agree to waive the trial date at this

13    point, Ms. Noller?

14         MS. NOLLER:  I do, Your Honor.

15         THE COURT:  Al right.  Just in case?

16         MR. O'TOOLE:  Obviously, yes, Your Honor.

17         THE COURT:  We will waive the trial date by agreement.

18    We're specifically waiving -- Mr. Trudeau, I want to make sure

19    that you understand that, too.  The rule says that I should set a

20    time and place of trial.  Your attorney is agreeing to waive that

21    requirement today as are the other lawyers in the case.  And with

22    that agreement, I think we can waive it, is that all right with

23    you?

24         THE DEFENDANT:  That's fine.

25         MS. NOLLER:  One thing, Your Honor, I think because this

1  is a criminal proceeding, the Speedy Trial Act would also apply.

2  So to the extent that it's being --

3        THE COURT:  Well, we have motions to dismiss in a sense

4  pending.  So we'll exclude time then until ruling on that motion.

5     (Discussion off the record between Mr. Kirsch and the

6      defendant.)

7        MR. KIRSCH:  Yes, Your Honor, we'll waive.  I've

8  conferred with my client.  We'll waive it.

9        THE COURT:  All right, good.  All right.

10        MS. NOLLER:  So the order, just so I'm clear, the order

11  will reflect the Tibboel, the interest of justice and for filing

12  of pretrial motions, time is excluded?

13        THE COURT:  Absolutely.

14        MS. NOLLER:  Thank you.

15        THE COURT:  Got that, George?

16        THE CLERK:  Yes.

17        THE COURT:  Okay.  All right.  I'll see you back here

18  then.

19        MR. KIRSCH:  Well, Your Honor, you asked if there was

20  anything.  I want to raise something that we've raised before

21  with the Court, and I would like the Court to consider this.

22  Mr. Trudeau's bond requirement, he's posted a $50,000 cash bond.

23  Right now he faces a sentence of 30 days imprisonment and he

24  faces a possibility of imprisonment up to six months.

25        But since that bond has been posted in February of this

1 year, he's been unable to travel outside of the Northern District
2 of Illinois.

3       THE COURT: Let me just stop you. The Seventh Circuit,
4 that's in the Seventh Circuit now. You have to go to them.

5       MR. KIRSCH: Well, Your Honor, again, I disagree under
6 Title 18 and Title 28 of the U.S. Code. I think this Court
7 remains, just like, just like a bond or a pretrial release
8 condition or supervised release condition, this Court has
9 concurrent jurisdiction with the Seventh Circuit on that
10 particular issue. But in any event, at least when the Seventh
11 Circuit decides the case, it will come back to this Court in one
12 way or another.

13       You know, I know when the Court set the bond, it was he
14 had 24 hours to report, and then the Court of Appeals granted an
15 expedited stay. We all expected briefing within a matter of
16 three days or so, and that has just drug out. We're now getting
17 to May 1st.

18       There are, you know, as the Court well knows, there are
19 defendants that are much more dangerous or flight risks than
20 Mr. Trudeau, who is neither. But he's unable to travel outside
21 of the Northern District of Illinois, and that is becoming an
22 onerous burden on him.

23       THE COURT: But the problem is this, you know, you asked
24 me to stay it, and I stayed it so that you could get up to the
25 Court of Appeals, which you did. You asked them to stay it, and

# Exhibit C

1

1                   IN THE UNITED STATES DISTRICT COURT
                       NORTHERN DISTRICT OF ILLINOIS
2                            EASTERN DIVISION

3    FEDERAL TRADE COMMISSION,              )
                                            )
4                   Plaintiff,              ) No. 03 C 3904
                                            ) Chicago, Illinois
5            vs.                            ) September 24, 2010
                                            ) 2:10 p.m.
6    KEVIN TRUDEAU,                         )
                                            )
7                   Defendant.              )

8                   TRANSCRIPT OF PROCEEDINGS - MOTION

9              BEFORE THE HONORABLE ROBERT W. GETTLEMAN

10   APPEARANCES:

11   For the Plaintiff:        FEDERAL TRADE COMMISSION
                               600 Pennsylvania Avenue NW
12                             NJ Room 2122
                               Washington, D.C. 20580
13                             BY:  MR. MICHAEL MORA

14                             HON. PATRICK FITZGERALD
                               United States Attorney
15                             219 South Dearborn Street
                               Chicago, Illinois 60604
16                             BY:  MR. MARC KRICKBAUM

17   For the Defendant:        WINSTON & STRAWN LLP
                               35 West Wacker Drive
18                             Chicago, Illinois 60601
                               BY:  MR. KIMBALL R. ANDERSON
19                                  MR. THOMAS KIRSCH, II

20

21

22

23   Official Reporter:        JENNIFER S. COSTALES, CRR, RMR
                               219 South Dearborn Street
24                             Room 1706
                               Chicago, Illinois 60604
25                             (312) 427-5351

1          MR. ANDERSON:  Okay.

2

3          THE COURT:  -- involving the Chicago schools.  That

4   tends to bleed into the rest of the day.  Why don't I just cancel

5   what I have on Wednesday, and let's do this at 1:30 Wednesday.

6          MR. KRICKBAUM:  Judge, I hate to be the problem.  I have

7   a sentencing hearing at 1:00 on Wednesday.

8          THE COURT:  How long do you think that would take?

9          MR. KRICKBAUM:  Could we move it to 2:00?

10          THE COURT:  2:00.  Maybe it -- yes.  Okay.  That's fine.

11          MR. ANDERSON:  And this will be for status?

12          THE COURT:  Well, what I'd like to do is have argument,

13   the argument I wanted to have today on the other issue.  And I

14   mean, I have some questions and concerns about it.  It's a

15   serious issue, Mr. Anderson.  I don't -- I'm not minimizing it at

16   all.  And I'm not trying to duck it either.

17          I want to deal with this issue.  It's the type of issue

18   that should be dealt with --

19          MR. ANDERSON:  Okay.

20          THE COURT:  -- without -- you know, that's why when you

21   say you saw that order and you thought I just denied the recusal

22   out of hand when everything else is pending, you may have thought

23   that, but that's so contrary to the way I do things.  And we've

24   known each other now a long time.  And we've had this case going

25   a long time.  I just don't do things summarily like that.  I try

1   to hear both sides out.

2          And this has been a very difficult, protracted

3   proceeding.  And I would not summarily reject a motion like that

4   that, in a sense, begs the same question that we had briefed

5   extensively and were going to argue today.

6          MR. ANDERSON:  Well, we'll see you Wednesday at 1:30.

7   Hopefully, we'll --

8          THE COURT:  2:00.

9          MR. ANDERSON:  2:00.  I'm sorry.  Yes, 2:00 on

10  Wednesday.  And hopefully we'll have some guidance from the

11  Seventh Circuit by then.

12         THE COURT:  I hope so.  But it -- and assuming that it's

13  coming back here, please be prepared, as I'm sure you probably

14  were anyway, to argue the merits of that motion and the motion on

15  the rule to show cause.

16         MR. ANDERSON:  Yes.  We'll --

17         THE COURT:  And also it's assuming that we keep going

18  forward to be prepared to talk about what the next steps are.  I

19  have to -- because just to preserve whatever I'm doing here, I'm

20  going to exclude time until that motion is decided.  But today

21  we'll exclude time until the 29th at 2:00.

22         MR. KRICKBAUM:  And Judge, we would ask for that

23  exclusion because there are pretrial motions pending before the

24  Court.

25         THE COURT:  Well, there's going to be more, too, no

26

1    doubt.  Okay.

2             MR. KRICKBAUM:  Thank you, your Honor.

3             MR. ANDERSON:  Thank you.

4             MR. KIRSCH:  Thank you, your Honor.

5             MR. KRICKBAUM:  Judge, just for the record, is there any

6    objection to the exclusion of time?

7             MR. KIRSCH:  No, your Honor.

8             THE COURT:  Okay.  Thank you.

9        (Proceedings concluded.)

10                     C E R T I F I C A T E

11            I, Jennifer S. Costales, do hereby certify that the

12   foregoing is a complete, true, and accurate transcript of the

13   proceedings had in the above-entitled case before the Honorable

14   ROBERT W. GETTLEMAN, one of the judges of said Court, at Chicago,

15   Illinois, on September 24, 2010.

16

17                          */s/ Jennifer Costales, CRR, RMR*

18                          Official Court Reporter

19                          United States District Court

20                          Northern District of Illinois

21                          Eastern Division

22

23

24

25

# Exhibit D

1

```
 1               IN THE UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF ILLINOIS
 2                      EASTERN DIVISION

 3
    FEDERAL TRADE COMMISSION,        )
 4                                   )
                       Plaintiff,    )
 5                                   )  No. 03 C 3904
               vs.                   )  Chicago, Illinois
 6                                   )  September 29, 2010
    KEVIN TRUDEAU,                    )  2:00 p.m.
 7                                   )
                       Defendant.    )
 8

 9               TRANSCRIPT OF PROCEEDINGS - MOTION

10           BEFORE THE HONORABLE ROBERT W. GETTLEMAN

11  APPEARANCES:

12  For the Plaintiff:       HON. PATRICK J. FITZGERALD
                             United States Attorney
13                           219 South Dearborn Street
                             Chicago, Illinois 60604
14                           BY:  MR. MARC L. KRICKBAUM

15  For the Defendant:       WINSTON & STRAWN LLP
                             35 West Wacker Drive
16                           Chicago, Illinois 60601
                             BY:  MR. KIMBALL R. ANDERSON
17                                MR. THOMAS KIRSCH, II

18

19

20

21

22

23  Official Reporter:       JENNIFER S. COSTALES, CRR, RMR
                             219 South Dearborn Street
24                           Room 1706
                             Chicago, Illinois 60604
25                           (312) 427-5351
```

1    All right.  I'm going to give you a ruling date on this
2 and hopefully get you something before that if I can, and if I
3 do, maybe we can get together even before that date.  But given
4 my schedule and everything else that's happening in life, I'm
5 going to set this for ruling October 22nd.  And we'll make it at
6 10:00 o'clock.  That's a Friday.

7    And I'm going to exclude time until then, because we
8 will be setting a motion schedule.  Of course, we'll be ruling on
9 this motion.  And at that point -- well, we'll see, I mean, if I
10 recuse myself here, this is going to go back on the wheel and --
11 maybe I shouldn't share all my musings, but I'll share this one.

12    Because both the government -- because I had decided
13 that this would not be prosecuted as a felony, if you will, or
14 the equivalent of a felony, it really is like a misdemeanor.  I
15 would be curious as to whether or not it could actually be heard
16 by a magistrate judge if I were to recuse myself.  I'm not asking
17 you for a reaction to that.  It's just a thought that occurred to
18 me as I was reading all these materials.

19    MR. ANDERSON:  I don't know the answer, if that's a
20 rhetorical question or hypothetical.

21    THE COURT:  The magistrate judge assigned to the case is
22 Judge.  So he will not be the one to do it, I can assure you.

23    MR. ANDERSON:  Yes.  I don't know the answer to your
24 question.

25    I would like to add just in closing that I appreciate

1  Your Honor's observations about your assumption that we looked at

2  this very carefully and did not file it lightly.  And, you know,

3  in fact, I can't remember a similar occasion, but this is a very

4  unusual case.  And looking at all the facts and listening

5  carefully to our client, we thought that this was in our client's

6  best interest.  So I appreciate your awareness that we filed the

7  motion after great, great thought.

8           THE COURT:  I think we understand each other,

9  Mr. Anderson.

10          MR. KRICKBAUM:  Judge, just a couple of things for the

11 record.  Is there an objection from the defense to the exclusion

12 of time?

13          MR. KIRSCH:  No, Your Honor.

14          THE COURT:  Okay.

15          MR. KRICKBAUM:  The other point, Judge, is that

16 Mr. Trudeau has I believe this morning filed an additional motion

17 that's noticed up for next week, is that correct?

18          MR. ANDERSON:  Yes, we did.

19          MR. KRICKBAUM:  If the Court would like us to make an

20 appearance on that next week, that's fine.  I can tell the Court

21 right now the government simply has no position on the motion.

22 It's a motion to amend the Court's order.

23          THE COURT:  I saw a motion had come in.  I haven't

24 looked at it.

25          MR. KRICKBAUM:  So, Judge, if you want us to show up

1  next week, we'll of course be here.  I can tell you right now we

2  simply have no position on the motion.

3          THE COURT:  Okay.  Well, then I'll leave it up to you.

4          MR. KRICKBAUM:  Okay.  Thank you, Judge.

5          THE COURT:  Okay.  I'll see you then.

6          MR. ANDERSON:  Thank you.

7          THE COURT:  When is it up for?

8          MR. KRICKBAUM:  I think it's October 5th that it has

9  been noticed.

10          Thank you.

11          THE COURT:  Okay.

12          MR. ANDERSON:  That's correct.

13          THE COURT:  All right.

14      (Proceedings concluded.)

15                  C E R T I F I C A T E

16          I, Jennifer S. Costales, do hereby certify that the
    foregoing is a complete, true, and accurate transcript of the
17  proceedings had in the above-entitled case before the Honorable
    ROBERT W. GETTLEMAN, one of the judges of said Court, at Chicago,
18  Illinois, on September 29, 2010.

19

20                          /s/ Jennifer Costales, CRR, RMR
                            Official Court Reporter
21                          United States District Court
                            Northern District of Illinois
22                          Eastern Division

23

24

25

# Exhibit E

```
 1                   IN THE UNITED STATES DISTRICT COURT
                   FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                          EASTERN DIVISION

 3   UNITED STATES OF AMERICA,        )
                                      )
 4              Plaintiff,            )
                                      )
 5     v.                             )  No. 10 CR 886
                                      )
 6   KEVIN TRUDEAU,                   )  Chicago, Illinois
                                      )  April 7, 2011
 7              Defendant.            )  10:30 a.m.

 8                     TRANSCRIPT OF PROCEEDINGS
                 BEFORE THE HONORABLE RONALD A. GUZMAN
 9

10   APPEARANCES:

11   For the Plaintiff:        HON. PATRICK J. FITZGERALD
                               United States Attorney
12                             BY:  MR. MARC KRICKBAUM
                               Assistant United States Attorney
13                             219 South Dearborn Street
                               Suite 500
14                             Chicago, Illinois  60604
                               (312) 353-5300
15
     For the Defendant:        WINSTON & STRAWN LLP
16                             BY:  MR. THOMAS LEE KIRSCH II
                               35 West Wacker Drive
17                             Chicago, Illinois  60601
                               (312) 558-3220
18

19

20

21
     Court Reporter:           NANCY C. LaBELLA, CSR, RMR, CRR
22                             Official Court Reporter
                               219 South Dearborn Street
23                             Room 1222
                               Chicago, Illinois  60604
24                             (312) 435-6890
                               Nancy_LaBella@ilnd.uscourts.gov
25
```

1      (Proceedings heard in open court:)

2           THE CLERK:  10 CR 886, United States of America v.

3    Trudeau.

4           MR. KRICKBAUM:  Good morning again, your Honor.  Marc

5    Krickbaum on behalf of the United States.

6           MR. KIRSCH:  Good morning, your Honor.  Tom Kirsch on

7    behalf of Mr. Trudeau.

8           THE COURT:  Good morning.

9           MR. KRICKBAUM:  Judge, I see Mr. Trudeau is not here.

10   He had waived his appearance in prior proceedings before Judge

11   Gettleman; and I assume that Mr. Kirsch is prepared to waive

12   his appearance.

13          THE COURT:  Who waived his appearance?

14          MR. KRICKBAUM:  Mr. Trudeau, the defendant in this

15   case, did.

16          THE COURT:  Well, I think it's for the Court to waive

17   the defendant's appearance.

18          MR. KRICKBAUM:  I'm sorry.  With the Court's

19   permission.

20          THE COURT:  Okay.

21          MR. KIRSCH:  Your Honor, it is.  I just messed up.

22   In front of Judge Gettleman, Judge Gettleman had excused

23   Mr. Trudeau from appearing at routine status hearings.  And

24   I've talked with Mr. Trudeau about this hearing.  He knows

25   that it's occurring today.  And yesterday when I filed my

1    appearance, I just neglected to ask the Court to excuse

2    Mr. Trudeau because I hadn't been required to do that in front

3    of Judge Gettleman.  I apologize for any inconvenience.

4         THE COURT:  No, I didn't realize his presence had

5    been excused by Judge Gettleman, so that's not a problem.

6         Okay.  So where do we stand?

7         MR. KRICKBAUM:  Judge, this case has taken an unusual

8    path to your courtroom, Judge.  And it's a -- this is a

9    criminal contempt matter.  It began as a civil contempt based

10   on Judge Gettleman's finding that Mr. Trudeau violated a

11   consent decree that Judge Gettleman ordered in 2004.  Judge

12   Gettleman then, in April of 2010, issued a rule to show cause

13   why Mr. Trudeau should not be held in criminal contempt based

14   on the same violation of the same order.

15        And in the proceedings before Judge Gettleman,

16   Mr. Trudeau filed a number of pretrial motions.  He filed a

17   motion to dismiss the rule to show cause and he also filed a

18   motion to recuse Judge Gettleman.  Judge Gettleman denied both

19   of those motions but exercised his prerogative as a senior

20   judge to have the case reassigned.  And that's how we ended up

21   here.

22        I've spoken to Mr. Kirsch, and I think both parties

23   are in agreement about where we're going from here; that it

24   makes sense today to set a schedule for pretrial motions in

25   this matter, any additional pretrial motions that Mr. Trudeau

```
 1    wants to file.  I know that the government intends to file --
 2    to seek leave to file something, Judge, and it relates to the
 3    potential punishment in this case.
 4            When -- before the government became involved in this
 5    case, when Judge Gettleman issued the rule to show cause, he
 6    announced that he would limit any punishment -- any term of
 7    imprisonment to six months or less.  And in the proceedings
 8    before Judge Gettleman, the government chose not to ask the
 9    judge to reconsider that decision.
10            We will ask and we do ask the Court to consider
11    imposing a sentence greater than six months or less.
12            THE COURT:  So you're going to be asking for a
13    sentence of greater than six months?
14            MR. KRICKBAUM:  We're asking the Court not to cap the
15    sentence at six months at this time.
16            THE COURT:  So what you're saying is that you may be
17    asking the Court for -- if there should be a conviction, you
18    may be asking the Court to enter a sentence of greater than
19    six months?
20            MR. KRICKBAUM:  Yes, Judge.
21            THE COURT:  Which elevates this to a jury trial?
22            MR. KRICKBAUM:  Yes, Judge.
23            THE COURT:  Okay.
24            MR. KRICKBAUM:  We would seek leave to file a very --
25    a short filing explaining our position on that.  I know that
```

1    Mr. Trudeau is going to take issue with that request.  So I

2    think it makes sense to -- if the Court is so inclined, we can

3    file our papers within two weeks on that.  Mr. Trudeau can

4    then respond to that and file any other pretrial motions he

5    has and then the government can respond.  If the Court is

6    inclined to set that type of schedule, I think the parties

7    agree that that makes sense.

8               THE COURT:  Your thoughts?

9               MR. KIRSCH:  Yes, your Honor.  Your Honor, as an

10   initial matter, I have never ever heard -- I think it's

11   unprecedented -- the government will probably explain this in

12   their position -- in their papers, but I think it's

13   unprecedented for the government to change its position on a

14   possible sentence based exclusively on the district court

15   hearing the case.

16              In front of Judge Gettleman, they considered -- in

17   their words, your Honor -- they considered and investigated

18   whether to seek a prison term longer than six months and

19   informed the court that they would not contest the court's

20   announcement that it would limit the sentence to six months.

21   Now we're here in front of a different district court, and the

22   government is going to take a different position.

23              Nothing has changed in the interim except for the

24   assignment of district judges.  That's an initial matter; so

25   we will, of course, take issue with that, your Honor.

1           As far as the scheduling is concerned, I agree that a

2    pretrial motions deadline is appropriate.  However, your

3    Honor, I think the Speedy Trial Act has long been blown in

4    this case.  Mr. Trudeau agreed to excludable time until

5    October 22nd.  Here we are on April 7th.

6           If the Court would like, we could brief the Speedy

7    Trial Act issue first.  I think that could be a simple issue

8    for the Court to deal with.  And then we could proceed with

9    other pretrial motions if the Court is so inclined, otherwise

10   we could deal with them all at the same time.

11          THE COURT:  We can do them all at the same time I

12   think.

13          MR. KRICKBAUM:  That's fine, Judge.

14          THE COURT:  If you're going to file all of these

15   motions, what time sequence do you really want?  Two weeks for

16   one motion is one thing.  If we're going to have motions by

17   both sides, is two weeks going to be enough?

18          MR. KRICKBAUM:  It's enough for the government,

19   Judge.

20          MR. KIRSCH:  Your Honor, it will not be enough for

21   the defendant.  I think we have to first see their motion

22   before we can file a pretrial -- a Speedy Trial Act motion.  I

23   would like to see what their motion is with the Court that

24   they file in two weeks.

25          THE COURT:  Why would one affect the other?  One is

 1    going to be with respect to penalty.  How does that affect the

 2    Speedy Trial computation?

 3              MR. KIRSCH:  Well, it could lead -- it could lead to

 4    other motions that we would like to file, your Honor.  I don't

 5    know what their explanation is for -- I mean, it certainly

 6    looks like -- we filed a motion to recuse and they were just

 7    fine with a bench trial in front of Judge Gettleman, who, by

 8    his order -- your Honor, if you read his order, Judge -- the

 9    whole issue with the recusal is in his show cause order.

10    Judge Gettleman for the first time indicated that the

11    defendant was -- and I quote -- in direct and willful

12    violation of this court's order.  Willfulness is the standard

13    for criminal contempt.  Our basis for recusal was an

14    appearance -- not bias, your Honor, but an appearance of bias

15    based upon the court's indication that it had already found

16    willfulness, when it had done no such thing.

17              The matter was then -- the motion for recusal was

18    denied; but either at the same time or perhaps even before

19    Judge Gettleman denied the motion to recuse, he reassigned the

20    case to a different court under a local rule which allows him

21    to do so as a senior judge.  Now the government is in here

22    after that order -- nothing else has occurred -- telling us --

23              THE COURT:  Do you think they think I'm meaner than

24    Judge Gettleman?

25              MR. KIRSCH:  Judge, I have no --

1          THE COURT:  Is that the gist of your argument?

2          MR. KIRSCH:  I've never heard of anything like this.

3    I have absolutely no idea what they think.  But there are

4    certainly other motions that may follow based on their

5    explanation as to why it is they now want to --

6          THE COURT:  Let me ask you this as a threshold

7    question --

8          MR. KIRSCH:  Yes, your Honor.

9          THE COURT:  Do you think they need to explain their

10   decisions as to what sentence to ask for in a criminal case?

11         MR. KIRSCH:  Well, your Honor, they committed on the

12   record that they were not going to contest the six-month --

13   and Judge Gettleman's order clearly limits the sentence to six

14   months.  So if the Court was inclined to throw out Judge

15   Gettleman's order and start over, then we would have all kinds

16   of issues with the show cause order.

17         I think this is more complicated than just the

18   government changing its position and saying, well, we agreed

19   to cap at the six months, a bench trial in front of Judge

20   Gettleman; Trudeau was denied a jury trial.  And now we're in

21   front of Judge Guzman; we don't want to agree to that cap; we

22   can give Trudeau his jury trial.

23         I don't know whether they're inclined to state so or

24   not, but we would certainly file a pretrial motion asking for

25   an explanation if they weren't willing to -- which the Court

1    would consider, I think.

2         MR. KRICKBAUM:  Judge, just very briefly.  I don't

3    think this is particularly complicated.  And I can provide an

4    explanation to Mr. Kirsch and to the Court in a sentence.

5         The difference is that before the government became

6    involved in the case before Judge Gettleman, he announced that

7    he was going to limit the sentence to six months.  That was a

8    decision that he made before we even entered the case.  We

9    decided not to ask him to reconsider that announcement.  This

10   Court has made no such announcement.  And what we're asking

11   this Court to do is simply leave the option on the table to

12   impose a sentence greater than six months.  That is our

13   position.

14        Now, that, in the government's view, is separate from

15   whatever other motions Mr. Trudeau wants to file related to

16   the Speedy Trial Act or anything else.

17        And if this Court is inclined to agree with the

18   government that it will not limit a punishment to six months

19   at this point, they could simply strike out the sentence in

20   the rule to show cause that did limit the punishment; and the

21   rest of the show cause order doesn't change.  So I think

22   either -- I don't think this is particularly complicated.

23        MR. KIRSCH:  Well, your Honor, that's the

24   government's position, that the rest of the show cause order

25   doesn't change.  The government wants you to reconsider part

1    of Judge Gettleman's order but not all of it.

2            Judge Gettleman was very clear.  He issued the show

3    cause order and indicated as part of that order that the

4    penalty would be limited to six months.  That's what Judge --

5    they want you to consider part of it, not all of it.  I don't

6    think it's that simple.

7            THE COURT:  He was doing a summary judgment

8    proceeding, correct?

9            MR. KIRSCH:  Pardon?

10           THE COURT:  He was doing a summary judgment

11   proceeding?

12           MR. KIRSCH:  Oh, your Honor --

13           MR. KRICKBAUM:  No.

14           MR. KIRSCH:  -- this litigation has been going on for

15   years.  It was a civil contempt proceeding against the FTC

16   that started in --

17           THE COURT:  No, no.

18           MR. KIRSCH:  -- 2007.

19           THE COURT:  I'm talking about his rule to show cause

20   was the premise for a summary --

21           MR. KRICKBAUM:  No, Judge.

22           THE COURT:  -- proceeding --

23           MR. KIRSCH:  No, he was --

24           THE COURT:  -- was it not?

25           MR. KIRSCH:  No.  He had two contempts, one was a

1    summary proceeding that was reversed by the Seventh Circuit.

2    That was the first criminal contempt that Judge Gettleman had

3    issued in this case.  It was reversed by the Seventh Circuit.

4             This was not a summary proceeding, but it was going

5    to be a bench trial in front of Judge Gettleman, which

6    everybody had agreed to.  But I just -- I don't think that the

7    issue will be as clear and straightforward.

8             THE COURT:  It doesn't matter.  You folks are going

9    to brief it so --

10            MR. KIRSCH:  Right.

11            THE COURT:  -- brief it and then we'll rule on it.

12            MR. KIRSCH:  Your Honor, as far as timing for

13   pretrial motions, I would request 60 days for pretrial

14   motions; and that's based on -- your Honor, I'm in front of

15   Judge Daniel in Denver for the last -- for four days at the

16   end of April on evidentiary hearings in another case; and

17   that's going to take up a significant amount of my time for

18   the next -- so I ask for 60 days, and that's the reason.

19            THE COURT:  Okay.  You can have 60 days.

20            THE CLERK:  June 6th.

21            THE COURT:  June 6th.  That's the deadline for filing

22   all pretrial motions by both sides, Speedy Trial, the

23   determination as to the sentence that will be requested,

24   everything else.

25            MR. KRICKBAUM:  And responses, Judge?

1            THE COURT:  Responses in 15 days.

2            THE CLERK:  June 21st.

3            MR. KIRSCH:  And replies, your Honor?  We --

4            THE COURT:  Of course.  Of course.  Reply in ten

5    days.

6            THE CLERK:  July 5th.

7            THE COURT:  Okay.

8            MR. KRICKBAUM:  Judge, with respect to the Speedy

9    Trial Act -- I don't want to litigate that issue now before

10   the Court.  It's the government's view, we don't believe the

11   Speedy Trial Act applies in this case because this is a rule

12   to show cause.  The Speedy Trial Act, at least by its terms,

13   refers to charges by complaint, by indictment or by

14   information.

15           So we're not asking the Court -- Judge Gettleman had

16   excluded time at the government's request in the prior

17   proceeding.  We're not asking the Court to exclude time at

18   this point.  I know it's an issue that's going to be briefed.

19   The reason that time was not excluded was that Judge Gettleman

20   had excluded it up to the last court date.  This case was

21   assigned to a new judge with a new criminal docket number and

22   the parties were not aware of that.

23           MR. KIRSCH:  Well, don't speak for both parties.

24           MR. KRICKBAUM:  Okay.  The government was not aware

25   of it.

1      MR. KIRSCH:  Your Honor, it appeared on the docket on

2  October 22nd that this Court had been appointed the case.  The

3  docket -- well, the docket speaks for itself, your Honor.

4      THE COURT:  Okay.  So are you seeking an exclusion of

5  time?

6      MR. KRICKBAUM:  We're not, Judge.

7      THE COURT:  We'll set a status date for the third

8  week in July.

9      THE CLERK:  Judge, can I go one more week?  We're on

10  trial that week.

11      THE COURT:  Okay.

12      THE CLERK:  July 27th at 10:30.

13      MR. KIRSCH:  Your Honor, thank you.  With respect to

14  that status, is the defendant's appearance waived for that

15  status or would you like me to file a motion or would you like

16  me to --

17      THE COURT:  Do you have any objection?

18      MR. KRICKBAUM:  No objection, Judge.

19      THE COURT:  His presence is waived.

20      MR. KIRSCH:  Thank you, Judge.

21      MR. KRICKBAUM:  Thank you, your Honor.

22      THE COURT:  All right.  Thank you, both.

23      MR. KRICKBAUM:  Thanks, Judge.

24      MR. KIRSCH:  Thank you, your Honor.

25                       *     *     *     *     *

14

1

2   I certify that the foregoing is a correct transcript from the
    record of proceedings in the above-entitled matter.

3

4

    _/s/ Nancy C. LaBella_                          _May 24, 2011_
5   Official Court Reporter

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# Exhibit F



106 F.R.D. 271                                                                                      Page 1
106 F.R.D. 271

©Federal Rules Decisions
December 1979

October 1984)

**\*271** COMMITTEE ON THE ADMINISTRATION OF
THE CRIMINAL LAW OF THE JUDICIAL CONFE-
RENCE OF THE UNITED STATES

Copyright © 1985 West Group

**GUIDELINES TO THE ADMINISTRATION OF
THE SPEEDY TRIAL ACT OF 1974, AS AMENDED**

**Preface**

In this document, the Committee on the Administra-
tion of the Criminal Law undertakes to set forth tentative
advisory interpretations of the Speedy Trial Act to the end
that the courts may have a uniform approach to their tasks
of gathering statistics, measuring time intervals, and car-
rying out their other administrative duties. These gui de-
lines are not intended as binding interpretations of the Act,
but rather as the consensus of the Committee which may
help each court in formulating its own administrative
program.

The Committee notes that there is a growing body of
decisional law in terpreting the Speedy Trial Act. The
Committee intends to review the decisions from time to
time to see whether it seems appropriate to modify advice
previously given in the guidelines. However, no effort is
being made to include citations to all relevant decisions or
to resp ond to d ecisions th at are in consistent with the
guidelines. Users are cautioned that th e guidelines m ay
sometimes conflict with controlling precedent in particular
circuits.

| TABLE OF CONTENTS | |
|---|---|
| § 3161(a) (setting the case for trial) | 273 |
| § 3161(b) (time limit for indictment or information) | 274 |
| § 3161(c)(1) (time limit for commencement of trial) | 276 |
| § 3161(c)(2) (minimum time before commencement of trial) | 278 |
| § 3161(d) (charges refiled or reinstated after dismissal) | 280 |
| § 3161(e) (retrials) | 281 |
| § 3161(f) (time limit before 1979 for indictment or information) | 282 |

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

106 F.R.D. 271                                                                    Page 2
106 F.R.D. 271

| | | |
|---|---|---|
| § 3161(g) (time limit before 1979 for commencement of trial) | | 282 |
| § 3161(h) (exclusions) | | 283 |
| § 3161(h)(1) (other proceedings concerning the defendant) | | 284 |
| | § 3161(h)(1)(A) (proceedings on competency or physical capacity) | 286 |
| | § 3161(h)(1)(B) (proceedings to determine addiction) | 286 |
| | § 3161(h)(1)(C) (civil commitment of narcotic addict) | 287 |
| | § 3161(h)(1)(D) (trial on other charges) | 287 |
| | § 3161(h)(1)(E) (interlocutory appeals) | 288 |
| | § 3161(h)(1)(F) (pretrial motions) | 288 |
| | § 3161(h)(1)(G) (transfer and removal proceedings) | 289 |
| | § 3161(h)(1)(H) (transportation of defendant) | 291 |
| | § 3161(h)(1)(I) (consideration of plea agreement) | 292 |

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

106 F.R.D. 271
106 F.R.D. 271

| | |
|---|---|
| § 3161(h)(1)(J) (proceedings under advisement) | 292 |
| Unlisted Proceedings | 293 |
| § 3161(h)(2) (deferral of prosecution) | 293 |
| § 3161(h)(3) (absence or unavailability of defendant or witness) | 294 |
| § 3161(h)(4) (incompetency or physical inability to stand trial) | 295 |
| § 3161(h)(5) (civil commitment of narcotic addict) | 296 |
| § 3161(h)(6) (indictment refiled after dismissal by government) | 296 |
| § 3161(h)(7) (defendant joined for trial with another) | 297 |
| § 3161(h)(8) (continuance in the ends of justice) | 298 |
| § 3161(h)(9) (request for foreign evidence) | 303 |
| § 3161(i) (withdrawal of plea of guilty or nolo contendere) | 303 |
| § 3161(j) (defendant serving a term of imprisonment) | 305 |
| § 3162 (sanctions) | 305 |
| § 3163 (effective dates) | 307 |

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

| | |
|---|---|
| § 3164 (persons detained or designated as high risk) | 308 |
| § 3172 (definitions) | 309 |
| § 3173 (sixth amendment rights) | 310 |
| § 3174 (judicial emergency and implementation) | 310 |
| Note on Planning Provisions | 313 |

**\*273 § 3161(a)**

*§ 3161. Time limits and exclusions*

*(a) In any case involving a defendant charged with an offense, the appropriate judicial officer, at the earliest practicable time, sha ll, after consulta- tion with the counsel for the defendant and the at- torney for the Government, set the case for trial on a day certain, or list it for tri al on a weekly or ot her short-term tri al ca lendar at a p lace with in the judicial district, so as to assure a speedy trial.*

The fixing of the time for trial, either on a day certain or a weekly or other short-term trial calendar, should be done as soon as practicable.

In cases i n which the defendant has not yet m ade an appearance through counsel at the time of indictment, the 30-day minimum period before trial will no t begin to run until such an appearance is mad e. Moreover, the compu- tation of the time limit within which trial must commence will often d epend upon t he time co nsumed i n handling pretrial m otions. It is th erefore sugg ested that th e cou rt arraign the defendant as promptly as possible and, either at arraignment or at a schedulin g conference held soon the- reafter, establish a sch edule for the handling of **\*274** pre- trial matters p ursuant to   Rule 1 2(c), Fed eral Ru les  of Criminal Procedure.

If possible, the trial date should be set at the same time.

In some cases, however, it may not be appropriate to set a trial date until after motions have been ruled upon; in that event, the trial d ate sho uld be set p romptly after th e dis- position of such motions.

The emphasis is on settin g a realistic trial d ate at th e earliest opportunity, after consultation with counsel for the defendant and the United States Attorney.

§ 3161(b)

*(b) Any information or indictment charging an individual w ith the commission of an offense shall be filed with in thirty days from th e date on w hich such individual was arrested or served with a summons in co nnection with su ch cha rges. If an individual has been charged with a felony in a dis- trict in wh ich no grand ju ry ha s been in session during such thirty-day period, the period of time for filing of the ind ictment shall be extended an addi- tional thirty days.*

The first sentence of the above language mandates the filing of an information or indictment within 30 days from the date on which such individual is arrested or served with a summons.

When an indictable offense is prosecuted by informa- tion p ursuant t o   Rule 7(b),   Federal Ru les of Crim inal Procedure, it is th e op inion of the Co mmittee th at th e waiver of indictment in open court must also occur within the 30-day time limit. Until the waiver has been made, the

information is not a document that would sustain a prosecution.

If the defendant is arrested or served outside the district in which charges are pending, the allowable time for the filing of an information or indictment still begins to run as a formal matter from the date of such arrest or service. However, the time until the defendant's arrival in the district of prosecution will generally be excludable under Sections 3 161(h)(1)(G) and (H ), which provide for excluding delay resulting from re moval proceedings and transportation of defendants. As discussed under Section 3161(h)(1), time will not be excluded to the extent that the court finds it attributable to un reasonable delay in the completion of proceedings under Rule 40(a), Federal Rules of Criminal Procedure, or un reasonable delay in the transportation of the defendant to the charging district.

Proceedings under Rule 40(a) may be rendered unnecessary by an agreement to proceed under Rule 20(b), Federal Rules of Criminal Procedure. The exclusion for delay resulting from removal proceedings will terminate not later than the day the written waiver of venue required by Rule 20(b) is filed (with the approval of the United States attorneys) in the district in which the defendant is present. Until such time as the waiver of venue is filed, it would appear that the court has a continuing obligation to conduct removal proceedings with reasonable dispatch.

**\*275** If a defendant is arrested by state authorities for proceedings in connection with state charges, and is later turned over to federal officers for federal prosecution, such a person is not within the control of federal authorities (i.e., he is not in federal arrest status) and a considerable period of time may elapse before federal authorities may even be aware that a state arrest under state charges has been made. Furthermore, time resulting from other proceedings, including state proceedings, is excludable under Section 3161(h)(1). T herefore, for purposes o f c omputing t ime under Section 3161(b), the federal "arrest" must be deemed to have occurred when state authorities turn the defendant over to federal custody. This would, of course, not apply if the state arrest was made or custody continued at the behest of federal authorities, when the arrest would date from the time of the original arrest by such state authorities or from such time as detention for federal purposes begins.

Under Section 316 1(b), the time commences to run from the time of service of a summons pursuant to Rule 4 of the Federal Rules of Criminal Procedure. In the absence of a showing to the contrary, a summons should be deemed

to have been served on the date of service shown on the return thereof.

All of these provisions make it imperative, where a summons is issued on a com plaint, that the marshal or person m aking ser vice be directed t o m ake i mmediate return thereon to the appropriate judicial officer or, where it is impossible to serve summons, that such fact be immediately reported to the appropriate judicial officer.

The second sentence of Section 3161(b) undertakes to accommodate the situation in those rural districts where grand juries are not regularly called into session and where considerable periods may elapse when a grand jury is not in session. If after an arrest or service of summons and for a period of 30 days following such point in time no grand jury is in session in the district during a 30-day period, the second sentence of Section 3161(b) allows an additional 30-day extension, for a total of 60 days from the point when such person was arrested or served with summons.

Section 3161(b) may require some modifications of the traditional practice in rural districts of awaiting the time when there is sufficient business to call a grand jury. Note that the prescribed period or any extension thereof is not to permit a grand jury to meet, but the Act requires the filing of an indictment within the prescribed period. Therefore, it becomes necessary to call the grand jury in time to permit them to convene, consider the bill of indictment, and make a return thereon.

The difficulty involved in this timetable is that a person may be arrested on or near the last day in which a grand jury is in session. In such event, there may be insufficient time to present the case. However, because the grand jury was in session in the period immediately after arrest, the 30-day extension provision would not apply. In these circumstances, the court is authorized to grant a continuance under Section 3161(h)(8)(B)(iii), which was amended in 1979 to cover precisely this situation.

**\*276** Even if the arrest were made three or four days prior to the discharge of a grand jury, the United States attorney might not be informed of the arrest, particularly if the arrest is made in one part of the district and court is convened in another part of the district. To this end, the United States attorney should be forthwith informed of any arrest requiring grand jury consideration. The term of no regular grand jury should be terminated by operation of law (18 mos.) or other discharge unless a successor grand jury has been sworn.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Where the matter to be presented to the grand jury is unusual or complex, or it is otherwise unreasonable to expect return and filing of the indictment within the prescribed period, any delay necessary to complete the proceeding may be excludable under Section 3161(h)(8). See especially the discussion of Section 3161(h)(8)(B)(iii).

If the time limit established by this subsection would otherwise end on a Saturday, Sunday, or holiday, Rule 45(a), Federal Rules of Criminal Procedure, will serve to extend the time limit to the next business day. In the opinion of the Committee, Rule 45(a) is applicable only after excludable time has been taken into account. For example, if the 30th day following arrest fell on a Sunday and there was one day of excludable time in the case, the statutory deadline for indictment would fall on Monday, and Rule 45(a) would not be applicable.

## § 3161(c)(1)

(c)(1) In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs. If a defendant consents in writing to be tried before a magistrate on a complaint, the trial shall commence within seventy days from the date of such consent.

Paragraph (1) of Section 3161(c) establishes a 70-day maximum time within which a defendant must be brought to trial. In the opinion of the Committee, this time limit applies to corporate as well as individual defendants. The 70-day period is measured:

"from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs."

If the defendant has appeared before a judicial officer in connection with the charge prior to the filing of the information or indictment, therefore, and the judicial officer was an officer of the court in which the information or indictment is filed, the time for trial is ordinarily measured from the filing date. If the indictment is sealed pursuant to Rule 6(e), however, the time for trial will not begin to run until the time when the indictment is made public.

**\*277** If the case against the defendant *originates* with the filing of an indictment or information, on the other hand, and the defendant is first brought before the court pursuant to a warrant or summons issued under Rule 9, the time to trial is measured from the date of that appearance. The same rule would apply where an arrest is made in a distant district under a warrant issued on an indictment or information and the defendant is to be returned to the charging district. The 70-day period for trial would run from the time the defendant first appears before "a judicial officer of the court in which such charge is pending."

If an indictable offense is prosecuted by information pursuant to Rule 7(b), the time for trial is measured from the later of the filing of the information and the defendant's waiver in open court of prosecution by indictment. In the opinion of the Committee, the filing of an information in such a case has no legal effect prior to the defendant's waiver.

If no indictment or information charging an offense has been filed and the defendant consents in writing to be tried before a magistrate on a complaint, the 70-day time limit for trial will run from the date of such consent.

In a criminal contempt proceeding prosecuted on notice pursuant to Rule 42(b), Federal Rules of Criminal Procedure, the notice should be treated as if it were an information for purposes of calculating the 70-day period to trial. For further discussion of the act's applicability to criminal contempts, see the discussion under Section 3172.

If a case is transferred under Rule 20, there will not normally be a concern with the time limit for trial. But the question may arise if plea-taking is for some reason delayed. In a Rule 20(a) situation, assuming the defendant has not appeared before a judicial officer in the transferor district, the time limit for trial begins to run at such time as the transferee district receives the case papers from the transferor. At that time, the court in which the defendant has already appeared before a judicial officer becomes "the court in which such charge is pending." In a Rule 20(b) situation, the time limit for trial begins to run when the indictment or information is filed. In either situation, if the defendant does not plead as expected, however, the time until the return of the case and the defendant to the originating district will be excludable under Sections 3161(h)(1)(G) and (H).

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

As to the commencement date of the "trial," there may be some confusion since such commencement may refer either to the beginning of voir dire and the selection of a jury, or to a sometimes later point, the swearing of the jury, or the swearing of the first witness in a nonjury case. Aside from the unrelated question of when jeopardy attaches, a trial is deemed to begin for other purposes when voir dire begins. *Hopt v. Utah*, 110 U.S. 574, 578, 4 S.Ct. 202, 204, 28 L.Ed. 262 (1894); *United States v. Miller*, 463 F.2d 600, 603 (1st Cir.), *cert. denied*, 409 U.S. 981, 93 S.Ct. 300, 34 L.Ed.2d 225 (1972). That appears to be the obvious meaning in this context. If the case is tried by a judge without jury, the trial begins on the day the case is called provided that some step in the trial procedure immediately follows.

**\*278** If a defendant's presence has been obtained through the filing of a detainer with state authorities, the Interstate Agreement on Detainers, 18 U.S.C., Appendix, may require that trial commence before the deadline established by the Speedy Trial Act. See *United States v. Mauro*, 436 U.S. 340, 356-57, n. 24, 98 S.Ct. 1834, 1845, n. 24, 56 L.Ed.2d 329 (1978).

See the discussion under Section 3161(b) concerning the applicability of

Rule 45, Federal Rules of Criminal Procedure.

§ 3161(c)(2)

*(2) Unless the defendant consents in writing to the contrary, the trial shall not commence less than thirty days from the date on which the defendant first appears through counsel or expressly waives counsel and elects to proceed pro se.*

Paragraph (2) of Section 3161(c) provides for a 30-day period during which a defendant may not be brought to trial without his *written* consent. This provision was added to the act in 1979 to guarantee a minimum period of 30 days for the preparation of the defendant's case. Under legislation suggested by the Judicial Conference (S.1028, 96th Cong., 1st Sess. § 2), the 30-day minimum period would have started to run at the same time as the time limit for commencement of trial. In adopting the proposal, Congress changed the starting date f or computing the minimum period, making it run "from the date on which the defendant first appears through counsel or expressly waives counsel and elects to proceed pro se." A literal reading would lead to the conclusion, if counsel first entered an appearance before an indictment or information

was filed, that the 30-day minimum period is to be calculated from that appearance. The Committee believes that such a literal reading would be inconsistent with the congressional purpose, and is therefore of the view that the 30-day minimum period should be calculated from the *later* of the first appearance through counsel or the filing (and making public) of the indictment or information.

Although the word "appear" is used in paragraph (1) of the subsection to refer to a defendant's physical presence before a judicial officer, the purpose of paragraph (2) strongly suggests that "appear" is there used to refer to any act by an attorney that signifies to the court that he is authorized and has agreed to represent the defendant in the case. Thus, the first appearance through counsel may be indicated not only by a physical appearance in court, but also by formal entry of an appearance, by signing and filing a motion or other document in the case, or by acceptance of a court appointment.

As is indicated by Section 3161(h)(8)(B)(iv), congressional concern was that a defendant be given a *reasonable* time to obtain counsel and that counsel be provided a reasonable time to prepare the case. The guarantee of a 30-day minimum period from the first appearance of counsel can scarcely have been intended to permit defendants, through unreasonable delay in obtaining counsel, to defer their trials indefinitely. If the court concludes that the defendant has unreasonably delayed retaining counsel, the court should consider appointing counsel. It is noted that **\*279** counsel may be appointed, if available, even in cases in which the Criminal Justice Act does not authorize compensation. In a case in which the defendant is not eligible under the Criminal Justice Act and counsel willing to accept an appointment cannot be found, it is the Committee's opinion that the court, after affording the defendant a reasonable opportunity to arrange for representation, may set a date for trial despite the literal language of the statute.

In spite of language to the contrary in the report of the Senate Judiciary Committee on the 1979 amendments (S.Rept. 96-212, p. 32 (1979)), it is the view of this Committee that the 30-day minimum period for commencement of trial is not extended by the exclusions of Section 3161(h). Section 3161(h) applies by its terms to "computing the time within which the trial of any such offense *must* commence," language that is not easily read as governing the determination of the period during which trial may *not* commence. The 1979 amendments specifically provided in Sections 3161(d)(2) and (e) that the ex-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

106 F.R.D. 271
106 F.R.D. 271

clusions applied to those provisions, but no similar provision is fo und in Section 3161(c)(2). M oreover, if t he 30-day minimum were interpreted as subject to the exclusions, the provision would become a powerful weapon for defendants who wanted to delay their prosecutions, a result that is wholly at odds with the major purpose of the statute. Under such an interpretation, the court could be compelled to defer a trial simply because the defendant filed a motion or because the court took a pretrial matter under advisement-both e vents t hat t rigger peri ods o f ex cludable time under Section 3161(h)(1). Finally, the Committee notes the possibility that som e defe ndants will not succeed i n obtaining counsel in the first 40 days following indictment or initial appearance, so th at they cann ot be brough t to trial within the first 70 days. In such case, it is clearly appropriate under Section 3 161(h)(8)(B)(iv) t o m ake use o f excludable time to extend the 70-day time limit for trial. If the ex clusions app lied to th e 3 0-day mi nimum p eriod a s well, this could not effectively be done: there would be no permissible trial d ate b ecause th e 70 -day ti me l imit, as extended by exclusions, would expire before expiration of the 30-day minimum period, similarly extended.

If an ind ictment o r i nformation is dismissed upon defense m otion an d a ne w i ndictment or i nformation i s subsequently filed, the 30-day minimum period begins to run anew under Section 3161(d)(1). In the opinion of th e Committee, the period does not begin to run anew when superseding indictm ents are filed in circum stances in which the 70-day time limit is determined by reference to the original i ndictment or i nformation. See Sect ion 3161(h)(6). Although so me courts of app eals sh are th e Committee's view, *e.g.*, *United States v. Horton*, 676 F.2d 1165 (7th Cir.1982), *cert. denied*, 459 U.S. 1201, 103 S.Ct. 1184, 75 L.Ed.2d 431 (1983), the Ninth Circuit has held that a defendant is en titled to a new 30-day period in this circumstance. *United States v. Harris*, 724 F.2d 1452 (9th Cir.1984). It is al so the C ommittee's opin ion that a ne w 30-day minimum period does not begin to run if prosecution i s resumed on an original i ndictment or i nformation following a mistrial, appeal, or withdrawal of a **\*280** guilty plea. In all of these situations, the trial court should use its scheduling discretion to ensure that the defense has time to prepare in the circumstances of the particular case.

§ 3161(d)

*(d)(1) If any indictment or information is dismissed upon motion of the defendant, or any charge contained in a complaint filed against an individual is dismissed or otherwise dropped, and thereafter a complaint is filed aga inst such defendant or i ndividual charging hi m with the same of fense or a n offense based on the same conduct or arising from the sa me cri minal e pisode, or an i nformation or indictment is filed charging such defendant with the same offense or an offense based on the same conduct or arising from the same criminal episode, the provisions of subsections (b) and (c) of this section shall be applicable with respect to such subsequent complaint, indictment, or information, as the case may be.*

*(2) If th e d efendant is to b e tried upon an i ndictment or i nformation dismissed by a trial court and rei nstated following an appeal, the trial sh all commence within seve nty days fro m t he da te th e action occasioning the trial becomes final, except that the court retrying the case may extend the period for trial not to exceed one hundred and eighty days from the date the action occasioning the trial becomes fina l if the u navailability of witn esses o r other fa ctors resulting from th e passage of time shall make tri al with in seven ty days imp ractical. The periods of delay enumerated in section 3161(h) are excluded in computing the time limitations specified in this section. The sanctions of section 3162 apply to this subsection.*

Paragraph (1) applies to cases in which an indictment or information is dismissed upon the defendant's motion or in which a com plaint is d ismissed upo n t he m otion of either the defendant or the prosecution. If the defendant is again charged-even if the new charge is for th e id entical offense-paragraph (1) app lies to th e new complaint, in dictment, or information the same rules that are applicable to an original charge pursuant to Sections 3161(b) and (c). Thus, an arrest or service of summons on a new complaint would, under (b), c ommence a ne w 30-day t ime l imit running within which an indictment or information must be filed. On suc h fi ling, a ne w 70 -day t ime l imit for c ommencement of trial under (c) would again be triggered, as would a new 30-day minimum period.

Cases in which an indictment or information is dismissed upo n th e prosecution's motion are treated differently. If th e defendant is ag ain ch arged with th e sam e offense or an offense required to be joined with it, the time limit fo r trial is calcu lated by referen ce to t he original charge. See the discussion under Section 3161(h)(6).

Paragraph (2) applies to cases in which an indictment or inform ation is d ismissed by th e trial co urt over t he Government's ob jection, a nd i s rei nstated f ollowing a

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

successful a ppeal. Unde r t his provision, the trial m ust commence within 70 days from the tim e the action occasioning the trial becomes final, which is the date the district court receives the **281 mandate of the c ourt of a ppeals. (See the discussion under Section 3161(e), *infra*.) But the court may extend the period for trial to a maximum of 180 days from such date,

> "if the unavailability of witnesses or other factors resu lting fro m the p assage of time shall make trial within seventy days impractical."

In the situation governed by paragraph (2), the 30-day minimum period for commencement of trial does not start anew.

See the discussion under Section 3161(b) concerning the app licability o f [Rule 45, Fed eral Ru les o f Crim inal Procedure](). See th e discussion und er Section 316 1(e) re-garding th e effect up on the time l imits o f a p etition for Supreme Court review of a court of appeals decision.

### § 3161(e)

> *(e) If th e d efendant is to be tried again fo l-lowing a declaration by the trial judge of a mistrial or following an order of such judge for a new tria l, the tria l shall commence with in seventy days from the date the action occasioning the retrial becomes final. If the defendant is to be tried again following an app eal or a co llateral attack, t he tria l sha ll commence within seve nty days fro m t he da te th e action occasioning the retrial becomes final, except that the court retrying the cas e may extend the pe-riod for retrial not to exceed one hundred and eighty days from the date the action occasioning the retrial becomes final if unavailability of witnesses or other factors resu lting fro m passage of time shall ma ke trial within seventy days impractical. The periods of delay e numerated in secti on 3161(h) are ex cluded in co mputing t he time limita tions sp ecified in th is section. The sanctions of section 3162 apply to this subsection.*

First Sentence: The 70-day retrial period begins to run at such time as:

> (1) a mistrial is declared by the judge, or
> (2) an order granting a new trial is entered.

Second Sentence: Under the first clause of the second sentence, a 70-day retrial period is also applicable:

> (1) fo llowing an app eal (at su ch time as th e

district court receives t he mandate of the court of appeals), or

> (2) fo llowing a su ccessful co llateral attack (if not appealed, at such tim e as the ti me ex pires fo r serving a m otion to alter or amend t he judgment under [Rules 52 (b)]() and [59, Fed eral Ru les of Civ il Procedure](), or at such time a s the court's ruling on such a motion is filed).

However, the second clause empowers the court re-trying the case to ex tend the period for retrial to a m axi-mum of 180 days from the date the action occasioning the retrial becomes final,

> "if unavailability of witnesses or other factors resulting fro m passage of t ime sh all m ake trial within seventy days impractical."

The Act refers to "the date the action occasioning the retrial becomes final." The meaning of that language is not wholly clear. The C ommittee do es not believe it is rea-sonably interpreted as justifying delay for **282 the entire period within which an appeal from a di strict court order could be tak en or a p etition for Su preme Cou rt rev iew filed. Howev er, i f an app eal or petition for certio rari is filed, the action occasioning the retrial should not be con-sidered final until the appeal or petition has been disposed of.

The foregoing provisions are subject to the exclusions of Section 316 1(h). Fo r exa mple, th e abo ve limitatio n would presumably not foreclose a continuance at the beh-est of a defendant where necessary to a void the effects of widespread and prej udicial p ublicity in the co mmunity. Such an extension would otherwise appear to be justified under Section 3161(h)(8)(A), and seems otherwise neces-sary and proper to the Sixth Amendment guarantee of a fair trial by an im partial jury. *Sheppard v. Maxwell,* 384 U.S. 333, 363, 86 S.Ct. 1507, 1522, 16 L.Ed.2d 431 (1966).

The 30-day min imum tim e to trial does no t app ly to retrials.

See the discussion under Section 3161(b) concerning the app licability o f [Rule 45, Fed eral Ru les o f Crim inal Procedure]().

If a successful appeal is taken from a judgment entered on a conditional plea of guilty or nolo contendere pursuant to [Rule 11(a)(2), Federal Rules of Criminal Procedure](), the time limit for trial following the appeal will be governed by Section 3161(i) rather than Section 3161(e).

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

## § 3161(f)

*(f) Notwithstanding th e provisions of su bsec- tion (b ) o f th is secti on, f or t he first twelve-calendar-month peri od f ollowing t he effec- tive da te of t his sectio n as set f orth i n section 3163(a) of this chapter the time limit impo sed with respect to the period between arrest and indictment by subsection (b) of this section shall be sixty days, for the second such twelve-month period such time limit shall be forty-five days and for the third such period such time limit shall be thirty-five days.*

This subsection sets fo rth the time limits for filing an information or ind ictment that were in effect du ring th e transitional pe riod, from Jul y 1, 1 976, t hrough J une 30, 1979.

For pending cases in which the defendant was arrested or served with a summons between July 1, 1976, and June 30, 1979, the time l imit fo r filing an information o r in - dictment is th e time limit that was in effect on the date of such arr est or serv ice. (See S.Rep t. 93 -1021, pp . 34-35 (1974).)

## § 3161(g)

*(g) Notwithstanding the provisions of subsec- tion (c ) o f th is sectio n, fo r th e first twelve-calendar-month peri od f ollowing t he effec- tive da te of t his sectio n as set f orth i n section 3163(b) of this chapter, the time limit with respect to the period between arraignment and trial imposed by subsection (c) of th is section sha ll be one hun- dred a nd ei ghty d ays, f or t he sec ond suc h twelve-month period su ch ti me limit sha ll b e one hundred a nd t wenty d ays, and f or t he third s uch \*283 period such time limit with respect to the pe- riod between arraignment and trial shall be eighty days.*

This sub section sets forth th e tim e li mits fro m ar- raignment to trial th at were applicable during the tran si- tional period, from July 1, 1976, through June 30, 1979.

On July 1, 1979, a 60-day time limit from arraignment to trial becam e effective . With th e e nactment of Public Law 96-43 on August 2, 1 979, t he i ndict- ment-to-arraignment an d arraig nment-to-trial ti me li mits were merged into the single 70-day time limit. In the opi- nion of th e C ommittee, th e application of time li mits to cases pending on August 2, 1979, is as follows:

## Defendants arraigned from July 1, 1976 through June 30, 1979, inclusive:

The ti me l imit for trial i s th e time l imit set forth i n subsection (g ) or an y shorter tim e l imit set forth in th e district co urt's pl an; t he dat e of a rraignment det ermines which limit is applicable. (See S.Rept. 93-1021, pp. 34-35 (1974).)

## Defendants arraigned from July 1, 1979 through Au- gust 1, 1979, inclusive:

The time l imit to trial is 60 days from th e date of ar- raignment.

## Defendants awaiting arraignment as of August 2, 1979:

The deadline fo r trial is d etermined un der th e new 70-day time limit.

## § 3161(h)

*(h) The following periods of delay shall be ex- cluded i n comp uting th e time with in w hich an in - formation or an ind ictment mu st b e filed , or i n computing th e time with in which t he tri al o f any such offense must commence:*

Subsection (h) defines those periods of delay which are to be excluded from the computation of various time limits under the act. The language quoted above makes it clear that these exclusions apply to the time limits of Sec- tions 3161(b) and (c)(1). It is stated in Sections 3161(d)(2), 3161(e), and 3164 that the exclusions also apply to the time limits set forth therein. All the time limits in the act are thus accounted for.

The computation of the periods of exclusion should be based on whole days, and should include both the day of commencement and the day of termination of the events or proceedings giving ri se t o th e ex clusions. A t wo-day hearing, fo r exa mple, will resu lt in th e ex clusion of two days. However, the date *from* which either the 30-day limit for i ndictment or t he 70-day l imit for t rial is m easured cannot be the subject of an exclusion sinc e, under Rule 45(a), such date is not included in the \*284 computation of the time limit. For example, if a defendant is arraigned on the date of his first appearance before a judicial officer of the charging district, th e arraignment proceeding will not produce a day of excluded time.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Paragraphs (1) through (7) and paragraph (9) of subsection (h) set forth a list of specific events that may generate excludable time. Paragraph (8) provides, in addition, for the exclusion of delay resulting from a continuance granted by the judge to further the ends of justice.

In its report accompanying the 1979 amendments, the Senate Judiciary Committee expressed its approval of the relatively expansive view of the exclusions that had been taken in the guidelines issued by the Speedy Trial Act Coordinating Committee of the Judicial Council of the Second Circuit; the Committee criticized the advice of the Committee on the Administration of the Criminal Law as too often erring on the side of caution. (S.Rept. No. 96-212, p. 20 (1979).) Congress, in addition, amended paragraphs (1) and (8) of this subsection with the clear intention of making the exclusions more generous.

After reviewing its guidelines in the light of the 1979 legislation, this Committee has revised the material on exclusions to conform with the amendments made by the Congress, and particularly to reflect Congress's clearly expressed intention that the exclusion for "delay resulting from other proceedings concerning the defendant" be interpreted more generously than the Committee had previously recommended. However, a majority of the Committee continues to adhere to the view that, in the absence of guidance through appellate decisions or circuit council guidelines, caution should be exercised in scheduling trials in reliance on expansive readings of exclusion provisions that have not been authoritatively interpreted. Where good reasons for delaying the trial exist but the applicability of a specific exclusion is doubtful, use of the "ends of justice" continuance under paragraph (8) may be the prudent alternative.

To the extent that the 1979 amendments liberalized the exclusions, the Committee believes that the more liberal interpretation may appropriately be applied to defendants awaiting indictment or trial, as the case may be, on August 2, 1979, even though the events giving rise to the exclusion have occurred before that date.

§ 3161(h)(1)

*(1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to-*

*(A) delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defen-*

*dant;*

*(B) delay resulting from any proceeding, including any examination of the defendant, pursuant to section 2902 of title 28, United States Code;*

*(C) delay resulting from deferral of prosecution pursuant to section 2902 of title 28, United States Code;*

**\*285** *(D) delay resulting from trial with respect to other charges against the defendant;*

*(E) delay resulting from any interlocutory appeal;*

*(F) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion;*

*(G) delay resulting from any proceeding relating to the transfer of a case or the removal of any defendant from another district under the Federal Rules of Criminal Procedure;*

*(H) delay resulting from transportation of any defendant from another district, or to and from places of examination or hospitalization, except that any time consumed in excess of ten days from the date an order of removal or an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable;*

*(I) delay resulting from consideration by the court of a proposed plea agreement to be entered into by the defendant and the attorney for the Government; and*

*(J) delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court.*

This paragraph was reenacted in Public Law 96-43, with amendments. Congress clearly intended that the exclusion be interpreted more generously than this Committee had previously advised. However, a number of difficult problems of interpretation remain.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

The generic descri ption of t he e xclusion i s " other proceedings concerning the defendant." The specific pro- ceedings listed a re offered only as e xamples of " other proceedings." H owever, t hey i nclude q uite di ssimilar events, m any of w hich w ould not normally be c haracte- rized as " proceedings." It does not seem possible to arrive at a si ngle definition of an "other proceeding" that se rves adequately as a guide to interpretation.

The major change made by the Congress in the 1979 amendments was t hat the f ormer p rovision referring t o "delay res ulting from heari ngs on p retrial motions" was changed to read "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, su ch motion." The Committee on the Administration of the Criminal Law believes that the speci fic rul e for pret rial m otions also provides gu idance i n in terpreting the phras e "ot her pro- ceedings" as it applies generally to pretrial proceedings in the trial cou rt. However, the Committee does not believe that Congress intended the "filing through hearing" rule to apply to proceedings outside the case in which time limits are being computed. As applied to a trial on a state charge, for example, a "filing through hearing" rule would exclude all th e ti me fro m in dictment th rough t rial on t he state charge, even in situations in which the federal charge was to **286** be tried first. In the absence of any hi story indi- cating that the Congress intended such a vast extension of the time limits, the Committee adheres to its prior view that only days s pent in court are to be excluded in connecti on with matters not connected with the case in which the time is being c omputed. T he C ommittee recognizes that ac- ceptance of this view will often result in the exclusion of too little time when a defendant is involved in another trial. In s uch cases , use of t he "e nds of justice" conti nuance under paragraph (h)(8) see ms more ap propriate t han a n expansive interpretation of (h)(1).

The foregoing are the fundamental premises that in- form the guidance on particular subparagraphs.

### (A) Proceedings, Including Examinations, to Determine Mental Competency or Physical Capacity

General. This exclusion covers proceedings related to the insanity defense as well as those related to competency or capacity to stand trial. Bu t it app lies only to ex amina- tions ordered by the court under 18 U.S.C. § 4244 or Rule 12.2(c), Federal Rules of Criminal Procedure, and not to such examinations as m ay be conducted to assist the de -

fense in preparing its case. If n ecessary, an "ends of jus- tice" continuance under paragraph (h)(8) may be provided to assure adequate preparation time for the defense.

Proceedings related to competency or ca pacity are generally initiated by m otion, and t hese proceedings may be viewed as one type of pretrial motion.

Starting Date. Date the motion is filed or made orally.

Ending Date. Date on which the c ourt has recei ved everything i t e xpects from t he exam iner and the parties before reaching a decision-that is, the date as of which the report of exa mination has been received, all a nticipated briefs have been filed, and any necessary hearing has been completed. In the case of an exam ination under Rule 12.2(c), if there is no question before the court to be ruled upon, the ending date is the date on which the report of the examination is recei ved by t he attorney for the Govern- ment.

Comment. Unreason able delay in tran sporting a de- fendant to or from an institution at which the examination takes place may serve to reduce the amount of excludable time. See the discussion of subparagraph (H) below. Time during which the matter of c ompetency or capacity is un- der advisement may be excludable under subparagraph (J).

### (B) Proceedings Pursuant to 28 U.S.C. § 2902

General. Prior to th e 1979 amendments, this suba- raragraph read simply "delay resulting from an examination of t he defendant p ursuant t o Section 2902 of title 2 8, United States Code." It would appear from the c hange in language th at something m ore th an t he ex amination is **287** in tended to b e ex cludable. Ag ain, th e statu tory treatment o f t he pretrial m otion would seem t o be ana- logous.

Starting Date. The date the court advises the de fen- dant of his opportunity to make an election to submit to an examination.

Ending Date. If the defendant does not elect to submit to an ex amination, the ending date is th e date the court is notified of th at decision or the ex piration of the five-day period for election, whichever is sooner. If t he defendant elects to submit to an examination, the ending date is th e date on which the court has received everything it expects from the examiner a nd the parties before reaching a deci-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

sion-that is, the date as of which the report of examination has been recei ved, all anticipated briefs have bee n filed, and any necessary hearing has been completed.

Comment. Unreasonable delay in tran sporting a defendant to or from an institution at which the examination takes place may serve to reduce the amount of excludable time. See the discussion of subparagraph (H) below. Time during which the m atter of the de fendant's ad diction or amenability to treatment is unde r advisement may be excludable under subparagraph (J).

If the defendant is committed to custody for treatment, the time during which the defendant is under treatment will be excluded under Sections 3161(h)(1)(C) and (h)(5).

### (C) Deferral of Prosecution Under 28 U.S.C. § 2902

This subparagraph, added by the 1979 amendments, appears to be redundant, inasmuch as t he period of delay resulting from treatm ent u nder 28 U.S.C. § 2902 is ex - cludable under Section 3161(h)(5). The starting and ending dates are discussed in the discussion of that subsection.

### (D) Trial With Respect to Other Charges

General. The language of this subparagraph was u nchanged by the 1979 amendments except that "trials" was changed t o "t rial." It does not a ppear t hat su bstantive change was intende d. As indicated above , it is the Com - mittee's view that this e xclusion applies to days of c ourt proceedings on the other charges, including both the actual trial and any pretrial proc eedings. Th e Commit tee n otes that it will oft en be app ropriate to grant a con tinuance under paragraph (h)(8) to take account of time cons umed in preparation for the other trial.

Starting Date. The fi rst court day of the hea ring o r trial.

Ending Date. The last court day of the hearing or trial.

Comment. Excludable time is not reduced on account of sho rt interruptions i n h earings or trials that are essen - tially continuous. If a trial co mmences on a Wednesday and en ds the following Tu esday, sev en days **\*288** will therefore be excludable even though there were only five court days of trial.

The rules stated here would also apply to various other

proceedings that are not part of the case in which the time is being computed, such as probation or parole revocation hearings (either state or federal) and deportation hearings.

If the court is deferring trial pending the completion of another trial or other proceeding, both the Government and defense counsel should be required to keep the court ap- prised on a periodic basis of the status of the ot her pr oceeding.

### (E) Interlocutory Appeals

General. This ex clusion applies to appeals tak en by the United States un der the second clause of 18 U.S.C. § 3731 from deci sions or orders su ppressing o r excl uding evidence or requiring the return of seized property, and to similar appeals under 18 U.S.C. § 251 8(10)(b). Although an app lication for an extraordinary writ is no t, strictly speaking, a n "interlocutory appeal," it is an a nalogous "other proceeding" excludable under paragraph (h)(1).

In the opinion of the Committee, an appeal under 18 U.S.C. § 3147(b) from conditions of pretrial release is not an i nterlocutory appeal within th e m eaning of Section 3161(h)(1)(E). Prior to the enactment of § 3147(b), similar appeals were c ategorized under 28 U.S.C. § 1291 as a p- peals from final decisions. *Stack v. Boyle*, 342 U.S. 1, 6, 72 S.Ct. 1, 4, 96 L.Ed. 1 (1951). While the categorization of an appeal for the pu rpose of in terpreting a j urisdictional statute may not b e d ispositive fo r interpretation o f the Speedy Trial Act, no good reason is apparent for departing from t hat cat egorization a nd perm itting ba il appeal s t o extend the time limits for bail.

Starting Date. Date the notice of appeal is filed in the district court or the application for an extraordinary writ is filed in the court of appeals.

Ending Date. Date the district court receive s t he mandate or order of the court of appeals.

### (F) Pretrial Motions

General. As has already been noted, this subparagraph was am ended in 1979 to clar ify t he star ting and end ing dates of the exclusion. Previously, it referred only to "de- lay resulting from hearings on pretrial motions."

The report o f t he Se nate J udiciary C ommittee i ndi- cated that the phrase "other prompt di sposition" was i n-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

tended to mark the ending date of the exclusion when motions are decided on the papers. (S.Rept. No. 96-212, p. 34 (1979).) However, the report also expressed concern that the provision not be applied in a manner that would justify keeping such matters under advisement for longer than the 30-day period for which an **\*289** exclusion is provided under subparagraph (J). Accordingly, the Committee recommends that the exclusion for delay resulting from pretrial motions be treated as ending at such time as the court has received everything it expects from the parties before reaching a decision-that is, such date as all anticipated briefs have been filed and any necessary hearing has been completed. Thereafter, the matter should be treated as "under advisement," and subject to the rules of subparagraph (J). It may be noted that the Committee recommendation treats the "conclusion of the hearing on" a pretrial motion as occurring only after receipt of any posthearing submissions that may be permitted by the court. This is consistent with the treatment of posthearing submissions under the Second Circuit guidelines, which were generally regarded favorably by the congressional proponents of the 1979 amendments. In light of the general purpose of the 1979 amendment to this paragraph, it would be anomalous to conclude that time for posthearing submissions was not excludable.

<u>Starting Date</u>. Date the motion is filed or made orally.

<u>Ending Date</u>. Date on which the court has received everything it expects from the parties before reaching a decision-that is, the date as of which all anticipated briefs have been filed and any necessary hearing has been completed.

<u>Comment</u>. In some circumstances, the duration of this exclusion may be subject to a reasonableness requirement. See <u>*United States v. Cobb*, 697 F.2d 38 (2d Cir.1982)</u>; <u>*United States v. Janik*, 723 F.2d 537 (7th Cir.1983)</u>. In *Cobb*, the Second Circuit held that the entire time from the filing of a motion to the hearing could not be excluded when the judge had postponed the hearing until immediately before trial. It stated that this exclusion is limited to "a period of time that is 'reasonably necessary' to conclude a hearing or to complete the submission of the matter to the court for decision." *Id.* at 44. In *Janik*, the Seventh Circuit held that the "prompt disposition" requirement governs the scheduling of hearings on pretrial motions, and that a court "may not delay a criminal trial indefinitely by deferring a hearing on a pretrial motion indefinitely." <u>723 F.2d at 543</u>.

The Senate Committee report on the 1979 amend-

ments (S.Rept. 96-212, p. 34 (1979)) observed that at this provision "could become a loophole which could undermine the whole Act." It noted that many district courts require that all pretrial motions be filed within a specified time, and urged that this procedure be generally adopted. Such a procedure is also suggested by <u>Rule 12(c), Federal Rules of Criminal Procedure</u>.

Special problems arise when consideration of a motion is delegated to a magistrate under <u>28 U.S.C. § 636(b)(1)</u>. See the discussion under Section 3161(h)(1)(J).

<u>(G) Transfer and Removal Proceedings</u>

This language covers proceedings relating to the transfer of cases under <u>Rules 20</u> and <u>21</u> and removal proceedings under <u>Rule 40</u>. Because **\*290** these three types of proceedings raise distinct issues, they are considered separately.

<u>Rule 40</u>

<u>General</u>. The explicit reference to removal proceedings in the statute was added by the 1979 amendments, effective August 2, 1979. The amendments to the Federal Rules of Criminal Procedure, which became effective August 1, 1979, eliminated the explicit reference to removal proceedings in <u>Rule 40</u>. In the opinion of the Committee, however, the intent of the legislation was to adopt the rule of the Second Circuit guidelines, which excluded all the time reasonably expended in returning the defendant to the charging district. Unless there are unreasonable delays, the practical effect is as if the time limits did not begin to run until the defendant had been returned.

Section 3161(c)(1) provides that the 70-day time limit to trial will not begin to run prior to the defendant's initial appearance before a judicial officer in the charging district. Hence, the exclusion for removal proceedings is irrelevant to that particular time limit. However, the exclusion is applicable to both the 30-day time limit within which an indictment or information must be obtained and the 90-day time limit to trial for defendants in custody or designated as "high risk."

<u>Starting Date</u>. The day following the date the relevant time limit begins to run. As applied to the time limit for obtaining an indictment or information, the exclusion begins to run on the day after the date of arrest or service of summons in the foreign

district. As app lied to th e 90-day ti me li mit fo r a defendant i n c ustody, i t begi ns to run o n t he day following the date of th e beginning of co ntinuous custody.

Ending Date. The date of the defendant's initial appearance before a judicial officer in the charging district.

Comment. Unr easonable d elay i n th e pr o- ceedings leadi ng t o an order of rem oval or in transporting a defendant to the charging district may serve to reduce the amount of excludable time. With respect to transportation time, see the discussion of subparagraph (H) below.

Rule 20

General. The leg islative h istory of th is prov i- sion indicates that it was intended to cover cases in which t ime was l ost because a defendant, aft er consenting to a Rule 20 transfer, declined to plead guilty. (1973 Senate Hearings, pp. 115, 196.) Con- sistently with that history, it is the Committee's view that th e ex clusion ap plies to Rule 20 p roceedings only if they a re aborted, either because the de fen- dant declines to plead or because the judge declines to accept the plea. It does not apply to proceedings that a re a borted because of failure by the Govern- ment to consent.

The starting and ending dates below are de- signed to exclude from the computation of any re- levant time limit the time consumed by the aborted proceeding. It is noted that the 70-day time limit for trial will *291 not have begun to run at the time of the defendant's written statement invoking the Rule 20 procedure, since the defendant will not yet have appeared before a judicial officer in t he c harging district. However, the 90-day time limit for defen- dants in custody and "high risk" defendants may be running at that time.

Starting Date. T he date of t he defendant's written statemen t invo king the Rule 20 pro cedure that was sub sequently aborted, but not earlier than the day after the relevant time period begins to run.

Ending Date. Date the papers are received in the originating district after having been returned by the clerk in the tra nsferee district pursuant to Rule 20(c).

Comment. Ti me requi red f or t he de fendant's transportation to th e original d istrict will b e ex- cludable under subparagraph (H) to the extent that it does not overlap the time excluded under this sub-

paragraph.

Rule 21

General. M otions f or change of ve nue are treated similarly to other pretrial motions.

Starting Date. Date the motion is filed or made orally.

Ending Date. Date on which the c ourt has recei ved everything i t expect s f rom t he pa rties be fore reac hing a decision-that is, the date as of which all anticipated briefs have been filed and any necessary hearing has been com- pleted.

Comment. Tim e d uring wh ich th e m otion is under advisement may be e xcludable under subparagraph (J). If the motion for change of venue is gra nted, the time from the grant of the motion until the date the transferee district receives the case papers until the date the transferee district receives the case papers is also excludable under this pro- vision.

(H) Transportation Time

General. In many instances, tim e consumed in a de- fendant's tran sportation is inclu ded within another ex clu- sion. For e xample, transporta tion to a nd from places of examination will come between the filing of a motion for a determination of incompetency and the hearing thereon. In other cases, ho wever, th is su bparagraph will p rovide in - dependent ground f or a n ex clusion. I n b oth cl asses of cases, t he l anguage dealing wi th t he t ime c onsumed i n excess of ten days creates a rebuttable presumption that the excess t ime w as un reasonable and i s t herefore not t o be excluded.

The provision with regard to transportation is believed to a pply t o both t ransportation of de fendants i n c ustody and transportation o f defe ndants rel eased on bai l or re- cognizance. When a d efendant is ordered to travel on re- lease status, the court should set a deadline for arrival at the destination, which should normally be not more than ten days from the date of the court order.

The st arting a nd e nding d ates below apply t o those cases in which transportation time is no t subsumed under another exclusion.

*292 Starting Date. Date of an or der directing trans- portation of the defendant.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

<u>Ending Date</u>. Date of defendant's arrival at the destination.

<u>Comment</u>. Where the clerk is recording another exclusion that encompasses tran sportation time, th e transportation time sh ould be p resumed reas onable unless an issue is raised by the parties. Where the clerk is recording transportation time as a separate exclusion, time in excess of t en day s s hould n ot be recorded i n t he absence o f a direction by the court.

(I) Consideration of a Proposed Plea Agreement

<u>General</u>. This su bparagraph, added by Public Law 96-43, excludes the time during which the court is co nsidering whether to accept or re ject a plea agreement under Rule 1 1(e)(2). The e xclusion e ncompasses a reas onable time for preparation of a presentence report.

<u>Starting Date</u>. Date of disclosure of the pl ea a greement to the appropriate judicial officer pursuant to the first sentence of Rule 11(e)(2).

<u>Ending Date</u>. Date the court's decision with respect to the plea agreement is filed or is announced in open court.

<u>Comment</u>. In some courts, when a plea agreement has been reach ed, the d efendant's gu ilty p lea is i mmediately taken, subject to his right to withdraw it if the court should reject the plea agreement. In such cases, the timely taking of th e p lea satisfies the ti me li mit to trial. If the plea is subsequently withdrawn, the new time limit is determined under Secti on 3161(i). T he language a dded by the 1979 amendments accomm odates the alternative proce dure, which is to defer the formal plea-taking until the court has satisfied itself th at t he term s of t he plea agreement are acceptable.

(J) Proceedings Under Advisement

<u>General</u>. This exclusion covers the time req uired for the co urt to co nsider a m otion. Although t he ex cludable period under this subparagraph i s limited to 30 days, ad ditional time r equired to consider a m otion may in some cases warrant a cont inuance of t he trial date un der para graph (h)(8).

<u>Starting Date</u>. The starting date is th e day following the date on which the c ourt has recei ved everything it

expects from the parties, examining physicians, etc., before reaching a dec ision. It is normally the date following the expiration o f an exclusion u nder subparagraph ( A), (B), (F), or (G).

<u>Ending Date</u>. The ending date is the earliest of (1) the date th e jud ge's d ecision is filed , (2 ) th e date th e j udge renders his decision orally in open court, or (3) the expiration of the 30-day maximum period.

<u>Comment</u>. When a pretrial m atter is considered by both a m agistrate and a judge pursuant t o 28 U.S.C. § 636(b)(1), t he Co mmittee b elieves **293** t hat the statute permits two 30-day periods for consideration of the same matter. Ho wever, th e Committee b elieves t hat the designation of magistrates t o hear p retrial m atters s hould not become a justification for prol onging t he pretrial st age. Magistrates s hould normally be expected t o render thei r determinations, p roposed findings, and recommendations sufficiently promptly so that the judge has adequate time to consider the matter without causing the total time a matter is "under advisement" to exceed 30 days. A district judge referring a m atter to a m agistrate s hould c ontinue to maintain control o ver the ca se du ring the period of co nsideration by the magistrate, so that the purposes of the act will be accomplished.

If t he m atter has been referred t o a magistrate for determination un der 28 U.S.C. § 63 6(b)(1)(A), i t w ould appear that the filing of the magistrate's decision ends the period of excludable time. If a party makes a motion to the trial ju dge f or rec onsideration, a new e xclusion under Section 3161(h)(1)(F) will begin. If, on the other hand, the referral is under 28 U.S.C. § 636(b)(1)(B) for a report and recommendation by t he m agistrate, t he C ommittee be lieves that an exclusion continues to run after the filing of the magistrate's report until such time as the new period of advisement st arts. T his e xclusion w ould be, i n ef fect, a resumption of the excl usion that was i n effect before t he magistrate t ook t he m atter u nder a dvisement-normally a motions exclusion.

**Unlisted Proceedings**

<u>General</u>. The s pecific procee dings mentioned in the various subp aragraphs o f Sectio n 3 161(h)(1) are, of course, not exclusive of the ev ents that qualify as "ot her proceedings concerning the defendant" within the meaning of Section 3161(h)(1). Among the other proceedings t hat qualify are bail hearings, preliminary examinations under Rule 5. 1, a rraignment pr oceedings, pret rial conferences,

and dep ositions pu rsuant to R ule 15 . Wh ere a pret rial proceeding is in response to a pretrial motion, the starting and en ding d ates will b e d etermined under th e ru le of subparagraph (F). In other cases, those days are excluded on whic h proc eedings took place in c ourt or on which a deposition was taken.

Starting Date. The first day of the hearing, examination, arraignment proceeding, conference, or deposition.

Ending Date. The la st day o f th e h earing, ex amination, arraignment proceeding, conference, or deposition.

Comment. Excludable time is not reduced on account of short in terruptions in hearings that are essen tially con tinuous, such as a preliminary examination that is con tinued over a holiday.

§ 3161(h)(2)

(2) Any period of delay during which prosecu-tion is deferred by the attorney for the Government pursuant to written ag reement with th e defen dant, with th e app roval o f th e court, fo r th e purpose of allowing t he defendant t o demonstrate his good conduct.
**\*294** Ge neral. T his provision e xcludes peri ods of deferred p rosecution from t imetable co mputations. It would seem th at th e provision ap plies on ly to cases i n which a de fendant has been arrest ed or ser ved, since no time lim it wou ld be running prior to ar rest or service. It should be not ed that de ferral of prosecution un der 28 U.S.C. § 2902 (relating to civil commitments for narcotics treatment) is not covered by this provision, since it is not a deferral "by the attorney for the Government"; s uch de ferrals are covered by Sections 3161(h)(1)(B) and (C) and (h)(5).

Starting date. Date of court a pproval of the de ferral agreement.

Ending date. Date of dismissal of the case pursuant to the deferral agreement or date of receipt by the court of a copy of the United States Attorney's notice to the defen dant of his intention to resume prosecution.

§ 3161(h)(3)

(3)(A) Any period of delay resulting from the absence or una vailability o f th e defendant or an

essential witness.
(B) For purposes of subparagraph (A) of this paragraph, a defendant or an essential witness shall be con sidered ab sent w hen h is wh ereabouts are unknown and, in addition, he is attempting to avoid apprehension or prosecution or hi s w hereabouts cannot b e d etermined by due d iligence. Fo r pur poses of such subparagraph, a defendant or an es sential witn ess sha ll b e con sidered unavailable whenever his whereabouts are known but his pres ence for trial cannot be obtained by due diligence or he resists appearing at or being returned for trial.
This provision covers "absence" of a defendant or witness or "un availability" of a d efendant or witness. Generally speaking, the exclusions apply only if the whe reabouts of t he defendant or wi tness c ould not be det ermined by due diligence, or if presence for trial could not be obtained b y du e d iligence. Und er Sectio n 3162(a)(2), which deals with the dismissal sanction, the Go vernment has the burden of going forward wi th e vidence t hat this exclusion appl ies. In view of the a nomaly that would be created by requiring the Government to carry the burden of showing that the defense exercised due diligence in s eek ing t he ap pearance of an essen tial d efense witness, it is suggested that this exclusion not be relied upon for delays caused by absence or unavailability of defense witnesses. Section 3161(h)(8) should be utilized in such cases.

**Absence of Defendant or a Government Witness**

General. A defendant or gov ernment witness is con sidered absent when his whereabouts are unknown to the prosecution and , in ad dition, he is attem pting to av oid apprehension or prosecution or his whereabouts cannot be determined by due diligence.

Starting date. The date on which a defendant or es sential go vernment witn ess fails to m ake a req uired ap pearance, if it should sub sequently be determined that he was absent within the meaning of the statute. **\*295** Alter natively, if ea rlier, the date on whic h the court receives notice that the whereabouts of the defendant or witness are unknown.

Ending date. The date the prosecutor receives notice of the whereabouts of the defendant or witness.

Comment. Whether a witness is essential will have to be determined by the court in each case in which a claim is made that the absence of a witness has generated exclud able time.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

In the case of a defendant or a prosecution witness not intending to avoid apprehension or prosecution, any period during which his whereabouts could have been determined by due diligence on the part of the prosecution will not be part of excludable time. This is an issue to be raised by the defense; the clerk should record the starting and ending dates as indicated above.

**Unavailability of Defendant or a Government Witness**

  General. The legislative history indicates that this exclusion is designed to cover a variety of dissimilar situations. These range from cases in which a witness is resisting extradition to cases of conflicts in schedules of Government chemists that may make them unavailable to testify in a particular court on a particular day.

  In some situations (such as the extradition case), it could be argued that the defendant or witness is unavailable within the meaning of the statute without reference to whether there was a scheduled court appearance. In others (such as the case of the scheduling conflict of the Government chemist), it would seem unreasonable to exclude days on which his presence in court was not desired. The interpretation suggested below will clearly be unduly narrow in some cases, but is suggested because it is believed that adherence to it in the management of the docket will keep the courts clear of the ambiguous situations.

  Starting date. The date for which an appearance was scheduled at which the defendant or witness was to appear.

  Ending date. The date before the first business day on which the defendant or witness could have been produced in court by the Government.

  § 3161(h)(4)

    *(4) Any period of delay resulting from the fact that the defendant is mentally incompetent or physically unable to stand trial.*
  General. This paragraph deals only with mental incompetency or physical inability of a *defendant* to stand trial. Physical inability to testify on the part of an essential witness is presumably "unavailability" within the meaning of paragraph (h)(3).

  Starting date. If the existence of mental incompetency or physical inability is determined by the court on the basis

of a report of examination, the delay resulting from the incompetency or inability could be said **\*296** to have started at such time as the condition was brought to the court's attention by motion. As a matter of record-keeping, however, the starting date for this exclusion will normally be the day after the date on which exclusions under (h)(1)(A) and (h)(1)(J) expire. If the court continues a proceeding on the ground of mental incompetency or physical inability without a court-ordered examination-for example, on the basis of a statement by the defendant's physician that he is too ill to appear for trial-the starting date will be the first date for which an appearance was scheduled at which the defendant was unable to appear.

  Ending date. The day the court finds the defendant able to stand trial or, if earlier, the day the court receives notice from the defendant or an attending physician or responsible institution that the defendant is able to stand trial.

  § 3161(h)(5)

    *(5) Any period of delay resulting from the treatment of the defendant pursuant to section 2902 of title 28, United States Code.*
  General. This paragraph refers to civil treatment under the Narcotic Addict Rehabilitation Act. Section 3161(h)(1)(C), added by the 1979 amendments, is apparently an inadvertent redundancy.

  Starting date. The date of judicial determination that the defendant is an addict and is likely to be rehabilitated through treatment (28 U.S.C. § 2902(c)).

  Ending date. Date the court receives from the Surgeon General either (1) a certificate that the defendant has successfully completed the treatment program or (2) advice that the individual cannot be treated further as a medical problem. (28 U.S.C. § 2902(c).)

  § 3161(h)(6)

    *(6) If the information or indictment is dismissed upon motion of the attorney for the Government and thereafter a charge is filed against the defendant for the same offense, or any offense required to be joined with that offense, any period of delay from the date the charge was dismissed to the date the time limitation would commence to run as to the subsequent charge had there been no pre-*

*vious charge.*

General. In cases in which th e time li mits o n on e charge are determined with reference to the institution of an earlier charge, this paragraph serves to exclude the time during w hich t he defe ndant was n ot un der charges. It s operation is set fo rth in the Senate Commentary (S.Rept. 93-1021, p. 38 (1974)) which provides:

*"Reindictment After Dismissal.*

Subparagraph 3161(h)(6) provides for the case where the Government decides for one reason or another to dismiss charges on its own m otion and to the n recommence prosecution. Under this provision only the period o f time during which the prosecution has act ually b een halted is excluded from the 60-day time lim its. T herefore, under **\*297** 3161(h)(6) when the Government dismisses charges only t he t ime between w hen t he Go vernment di smisses charges to when it reindicts is excluded from the 60-day time li mits. Fo r ex ample, if the G overnment deci des 50 days afte r indi ctment to dis miss charges against th e de fendant then waits six months and reindicts the defendant for the same offense the Government only has 10 d ays in which to be ready for trial."

As the foregoing quotation indicates, t he exclusion is designed f or c ases i n which pr osecution i s t emporarily dropped and later resumed.

Starting date. The day on which the original indict ment or information is dismissed.

Ending date. The date of an event that, in the absence of an earl ier indictment or i nformation, w ould ha ve trig gered a t ime l imit unde r Section 3 161(b) or (c)(1)-specifically, the earlie st to o ccur o f th e fo llowing events:

(1) an arrest on the new charge,

(2) service of summons on the new charge,

(3) an appearance before a judicial officer on the new charge (whether before or after indictment and whether in or out of the district of prosecution).

Comment. In the Committee's view, t he exclusion is ended by any action that would trigger either a time limit to indictment or a time limit to trial. Hence, if the defendant is rearrested on the charge before the superseding indictment

is filed, the (h)(6) exclusion will end with the rearrest and the p eriod to trial will b e run ning again. A n ew 30 -day period to indictment will also be running in that circumstance.

Note that the filing of the superseding indictment is not an action that will end the exclusion. If the indictment is fi led a fter t here has bee n an a rrest, s ummons, or a p pearance, the exclusion will already have ended (since an appearance is rega rded as the equi valent of an arrest for purposes of S ection 3161(b)); i f t he i ndictment i s fi led before there has been an arrest, summons, or appearance, the exclusion will continue to run until one of those events takes place.

§ 3161(h)(7)

*(7) A reasonable period of delay when the defendant is jo ined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted.*

General. This provision was i ncluded in th e act to avoid the necessity of severing defendants in order to meet speedy trial deadlines.

The legislative history specifically refers to cases "where the defendant is joined for trial with a codefendant who was arrested or indicted after the defendant." (S.Rept. 93-1021, p. 38 (1974).) Without paragraph (h)(7), the time for trial for the defendant in such a situation would run out before th e time for t he co defendant. Th is provision ex cludes time fo r a defendant whose time would otherwise have run when the defendant is joined for trial with a co defendant whose time has not run. **\*298** In effect, the latest deadline for a ny of t he join ed de fendants becom es the deadline for all.

There is no specific reference in the legislative history to the possibility that the time limit for a defendant might run out before that of a codefendant because of excludable time appl icable t o t he c odefendant. However, paragraph (h)(7) also acco mmodates th is situa tion. Tho se cou rts of appeals that have c onsidered the question have hel d t hat the provision operates to make each defendant's exclusions applicable to all the defe ndants who are joined. *United States v. Rush*, 738 F.2d 497 at 503 (1st C ir.1984), and cases cited therein; *United States v. Van Brandy*, 726 F.2d 548 ( 9th Cir.1984). F or ex ample, i f a c odefendant i s committed to r a co mpetency ex amination and th erefore has an exclusion under paragraph (h)(1)(A), the e xcluded days will be excluded under paragraph (h)(7) from the time

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

computations of all defendants. This interpretation is contrary to that previously expressed in these guidelines.

The exclusion under this paragraph is for "a reasonable period." Presumably, if one of the defendants could not be brought to trial for an inordinate period, severance under Rule 14 would be appropriate.

Starting date. In the situation in which the defendant's time would otherwise have run out before the running of the time for the codefendant, the starting date of the exclusion is the day following the day that would otherwise have been the last day for commencement of trial for the particular defendant. In the situation in which the (h)(7) exclusion is based on an exclusion applicable to a codefendant, the starting date is the starting date of the codefendant's exclusion.

Ending date. In the situation in which the defendant's time would otherwise have run out before the running of the time for the codefendant, the ending date is the latest permissible date for commencement of the trial of any codefendant with whom the defendant is joined for trial. In the situation in which the (h)(7) exclusion is based on an exclusion applicable to a codefendant, the ending date is the ending date of the codefendant's exclusion. In either case, if the joinder ends because of a guilty plea, severance, or other reason while the (h)(7) exclusion is running, the ending date of the excludable period will be the date on which the joinder ends.

Comment. When the exclusion is terminated because the codefendant on whom it depends ceases to be joined for trial with the defendant, the deadline for trial of the remaining defendant or defendants will often be earlier than had been anticipated, and in some cases may become imminent. In such circumstances, the need for a continuance under Section 3161(h)(8) should be considered.

§ 3161(h)(8)

*(8)(A) Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis* **\*299** *of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this para-*

*graph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.*

*(B) The factors, among others, which a judge shall consider in determining whether to grant a continuance under subparagraph (A) of this paragraph in any case are as follows:*

*(i) Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.*

*(ii) Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.*

*(iii) Whether, in a case in which arrest precedes indictment, delay in the filing of the indictment is caused because the arrest occurs at a time such that it is unreasonable to expect return and filing of the indictment within the period specified in section 3161(b), or because the facts upon which the grand jury must base its determination are unusual or complex.*

*(iv) Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.*

*(C) No continuance under subparagraph (A) of this paragraph shall be granted because of general congestion of the court's calendar, or lack of diligent preparation or failure to obtain available witnesses on the part of the attorney for the Government.*

This is the safety-valve provision, which permits the exclusion of time for continuances required in the interests

of justice. For time to be excluded under paragraph (h)(8), the judge m ust find that "the ends of justice serve d" by granting the continuance "outweigh the best interest of the public an d the d efendant i n a sp eedy trial" and m ust set forth the reasons for the finding in the record.

**\*300** In th e v iew of the Co mmittee, this p rovision refers to con tinuances of th e date for ind ictment o r trial beyond the deadline that would otherwise apply under the act. Und er th is in terpretation, the required finding is t hat the ends of justice served by continuing the indictment or trial date beyond statutory limits o utweigh the interest in speed. *Contra United States v. Campbell*, 706 F.2d 1138, 1143 (11th Cir.1983) (affirming trial court that "certifie d as excludable time ... the time from the filing of ... motions to their disposition," apparently including time the motions were under advisement in excess of 30 days).

Since time is excluded under Section 3161(h)(8) only if the judge granted the continuance "on the basis of" the findings referred to in the statute, it seems clear that in the normal course the findings must be made before the continuance is granted. *United States v. Richmond* , 735 F.2d 208 (6th Cir.1984). However, a rule of reason must apply. In circumstances in which the trial judge is un expectedly unavailable because of illn ess, for ex ample, so th at a scheduled trial must be postponed, the committee believes that a continuance nunc pro tunc would be appropriate.

It will be noted that the requirement of jud icial findings is app licable even if the continuance is g ranted upon the request of the defendant or his counsel. The fact that the defendant has requested the continuance or consents to it is not in itself sufficient to toll the operation of the time limits. The Committee believes that this provision, considered in l ight of t he l egislative p urpose underlying t he Act , makes it clear that a defendant's proffer or willingness to "waive" his rights or agree to waive his rights under the Act cannot justify any deferral of the trial date beyond the statutory deadline that would otherwise apply. The l egislative history of the Act evidences a clear intention on the part of th e Con gress to im plement a so cietal in terest in prompt criminal trials, as well as to recognize the interests that the defendant may have in a sp eedy disposition. Section 3161(h)(8) accordingly imposes on the judge the obligation of protecting both the public and defense interests in p rompt trial s; it al lows an ex tension of the o therwise applicable deadline only upon a judicial determination that certain c onsiderations outweigh t he i nterests of both t he public and the defendant in prompt disposition. It would be inconsistent with the statutory scheme to permit a d efen-

dant, through a purported "waiver," to relieve the court of this obligation.

In many cases, it m ay be necessary to grant an (h)(8) continuance i mmediately fo llowing t h e xpiration of a specific exclusion under paragraphs (h)(1) through (h)(7). Under Section 31 61(h)(7), for example, if tim e has been excluded on the basis t hat the defendant is joined with a codefendant whose deadline for trial is later th an the defendant's, the excludable period will end if a severance is granted. Since, in this situation, the defendant's time to trial would otherwise ha ve run out, the granting of the se verance will make the expiration of the time limit imminent. Assuming th at trial does not co mmence on t he day th e severance is granted, the court should consider the appropriateness of an (h)(8) continuance.

**\*301** It should be noted that the court is not restricted to the factors set forth under (B)(i) through (iv) in its determination as to whether the ends of justice served by the granting of such continuance outweigh the best interests of the defendant and the public in a speedy trial.

The first factor to be considered by a co urt under (B) above is whether a failure to grant a continuance "would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice." The exact perimeters of this language will have to develop though decisional l aw as t he Se nate R eport ( S.Rept. 93-1021, p. 27 (1974)) states:

"The judge m ust b alance th e righ t of th e defendant and the interest of the public in speedy trial against th e 'en ds of justice', an d set forth in th e record his reasons for granting the continuance."

One delay that the House Report (H.Rept. 93 -1508, pp. 33-34 (1974)) identifies as being within the exemption is o ne cau sed by d efendant's co unsel which is no t attributable to the defendant himself. Thus, it is explained:

"Although the Committee cannot foresee any excuses for institutional delay which would justify granting a continuance, it does believe that the lack of diligent preparation or failure to obtain available witnesses on the part of the defendant or his attorney could result in a m iscarriage of justice and, the refore, exempts these reasons from prohibiting a de fendant or his counsel from seeking a continuance. For e xample, whe n a defendant's cou nsel, eith er intentionally or by lack of diligence fails to properly prepare his client's case, either he or the defendant

might seek a continuance on the ground that forcing the defendant to go to trial on the date scheduled would deny the defendant the benefits of a prepared counsel. The court in this situation would determine whether the defendant participated actively in the delay or whether his counsel alone was responsible for it. If the defendant did not cause the delay, he should not be penalized by being forced to go to trial with an unprepared counsel. In this case, he should be permitted enough time to seek a new counsel and to properly prepare his case for trial."

The unusual or complex nature of the case is also a factor to be considered in excusing delay (§ 3161(h)(8)(B)(ii)). At least two kinds of cases are suggested by this exclusion provision. First, there are cases which engender such intense media coverage as to endanger a fair trial by an impartial jury in the community. In that situation, a continuance may be a constitutional imperative, and has been specified as an appropriate remedy to avoid the effects of prejudice in the community. *Sheppard v. Maxwell*, 384 U.S. 333, 363, 86 S.Ct. 1507, 1522, 16 L.Ed.2d 600 (1966); *Delaney v. U.S.*, 199 F.2d 107, 115 (1st Cir.1952); "Free Press-Fair Trial", 45 F.R.D. 391, at pp. 412-13. See also: *Murphy v. Florida*, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975).

The other instance involves the "complex" case. Complexity in criminal cases results *inter alia* from complex issues, multiple parties or extensive documentary evidence. Cases fitting into this pattern frequently include antitrust, mail fraud, conspiracy and net worth in come **\*302** tax cases, among others, which cases may require a whole series of pretrial conferences, as well as other protracted proceedings. See: "Pre-Trial Procedures in Big Criminal Cases", Judicial Conference Handbook of Recommended Procedures for the Trial of Protracted Cases, pp. 47-50; Judge Irving R. Kaufman, "Problems in Protracted Criminal Cases", 23 F.R.D. 551; Judge Joe E. Estes, "Pre-Trial Conferences in Criminal Cases", 23 F.R.D. 560. After an indictment is filed, the court can determine from the nature of the case whether it is "unusual or complex" with in the meaning of Section 3161(h)(8)(B)(ii).

Delay in the completion of grand jury proceedings is covered by Section 3161(h)(8)(B)(iii). This clause authorizes an (h)(8) continuance where the matters presented to the grand jury are unusual or complex. It also authorizes such a continuance if delay in filing an indictment is caused "because the arrest occurs at a time such that it is unreasonable to expect return and filing of the indictment within the period specified in section 3161(b)." The Senate Committee report includes two explanations of this language, which was added in 1979. The first explanation, found under the discussion of "Issues Presented," indicates that it was included "to cover reasonable periods of delay during which reports from investigative agencies and evidentiary analyses from laboratories are completed." (S.Rept. 96-212, p. 23 (1979).) The second explanation, found in the Section-by-Section Analysis (*id.* at 34-35) is as follows:

"Subsection (b) [of section (5) of the 1979 amendments] deals with a very specific problem presented to the Committee by the Department of Justice. When the Congress considered the Act in 1974, it specifically created flexibility in subsection 3161(b) for small and rural districts, where grand juries are not in continuous session, by providing an additional 30 days when arrest occurs when the grand jury is not in session, during the 30 day period. The amendment made here is designed to clarify the authority of the court, pursuant to the 'ends of justice' balancing test, to grant a continuance in a circumstance such as might occur in a rural jurisdiction where a regularly-convened grand jury is to expire shortly after an arrest is made. This provision assumes that the Department feels constrained to arrest the defendant, e.g., for fear of flight, yet cannot be prepared to present the case to the grand jury within the time before it is due to expire."

Under Section 3161(h)(8)(B)(iv), added by the 1979 amendments, defendants' problems in obtaining counsel, counsel's conflicts, and similar problems are also to be considered in determining whether to grant a continuance. This provision also gives the court the opportunity to conclude that the time limits should be extended, even in a noncomplex case, because counsel would otherwise be denied the reasonable time necessary for effective preparation.

With respect to conflicts of counsel, the Senate Committee Report (*id.*, p. 35) indicated that the statutory language about continuity of counsel "meets the concern over scheduling conflicts caused by defense counsel's and the United States Attorneys' good faith, already scheduled commitments or other unavoidable problems such as emergency, illness, long-**\*303** planned vacation or other circumstances which would otherwise require a disruptive change of counsel, in order to meet the time limits."

Finally, it should be noted that cases may be held in

abeyance awaiting a decision of the court of appeals or Supreme Court which would be dispositive of the case. Section 3161(h)(8) would be applicable.

Starting date. The day following the day that would otherwise have been the last day for commencement of trial (or for indictment).

Ending date. The date to which the trial (or indictment) was continued.

Comment. A continuance under paragraph (h)(8) may be granted at any time that it appears to the court that the ends of justice will preclude trial (or indictment) within the time limits as otherwise calculated. For example, if the court concludes on the 30th day following indictment that the ends of justice require that trial start later than the expiration date of the 70-day limit, it should set a trial date accordingly. Of necessity, such a decision will be based on incomplete knowledge of what the time limit would otherwise be, since additional excludable time may be generated after the (h)(8) continuance is granted.

In such a case, the clerk should continue to record the time excludable under other paragraphs, and should charge to (h)(8) only the time not excludable under other provisions. The starting date recorded for the (h)(8) continuance will thus be the day following the day that would otherwise have been the last day for commencement of trial, as indicated above, even though that date could not be finally determined at the time the judge granted the (h)(8) continuance.

The effect of this practice is to maintain the safety-valve function of the (h)(8) exclusion. If further postponement of the trial date is considered, and the proposed new date is not within the 70-day limit as extended by the automatic exclusions, the court should consider whether an additional ends-of-justice continuance is warranted.

§ 3161(h)(9)

(9) Any period of delay, not to exceed one year, ordered by a district court upon an application of a party and a finding by a preponderance of the evidence that an official request, as defined in section 3292 of this title, has been made for evidence of any such offense and that it reasonably appears, or reasonably appeared at the time the request was made, that such evidence is, or was, in such foreign country.

This provision was added by Section 1219 of Public Law 98-473, to take effect 30 days after the date of enactment. The bill was signed by the President October 12, 1984.

§ 3161(i)

(i) If trial did not commence within the time limitation specified in section 3161 because the defendant had entered a plea of guilty or nolo contendere subsequently withdrawn to any or all charges in an indictment or in information, the defendant shall be deemed indicted*304 with respect to all charges therein contained within the meaning of section 3161, on the day the order permitting withdrawal of the plea becomes final.

This is explained in the Senate Report (S.Rept. 93-1021, p. 27 (1974)) as follows:

"Subsection 3161(i) provides that where a defendant pleads guilty and then withdraws his plea that the time limits commence again on the day the plea is withdrawn."

Therefore, if at arraignment a defendant pleads guilty, and later is permitted by the court to withdraw his plea, the indictment is treated as having been filed at the time of such withdrawal.

This provision also applies if withdrawal of a conditional plea is permitted pursuant to Rule 11(a)(2), Federal Rules of Criminal Procedure, following a defendant's successful appeal. In such cases, "the order permitting withdrawal of the plea" is the order of the court of appeals, and the indictment is normally treated as having been filed at the time the district court receives the mandate of the appellate court. However, if an appeal or petition for certiorari to the Supreme Court is filed, the order should not be considered final until the appeal or petition has been disposed of. See the discussion of finality under Section 3161(e).

If the defendant pleads guilty to only some counts of an indictment or information pursuant to a plea agreement under which the other counts are to be dismissed, this provision makes it clear that at withdrawal of the plea will establish a new time period with respect to all counts. Until the open counts are dismissed pursuant to the plea agreement, therefore, it seems clear that they are not subject to dismissal on speedy-trial grounds under Section 3162. If the guilty plea is not withdrawn, the open counts will be

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

dismissed pursuant to the agreement; if it is withdrawn, they will remain alive and will be subject to a new time limit.

Where a plea agreement involves the dismissal of an entire indictment or information, however, in exchange for a guilty plea to a charge contained in another indictment or information, the statutory situation is less satisfactory. In such cases, it is generally considered good practice to keep the first indictment alive until the time of sentencing on the second, so that prosecution on the first can be resumed if the plea on the second should be withdrawn. But Section 3161(i) does not establish a new time period with respect to charges in the first indictment if the plea to the second is withdrawn, and it would appear that the dismissal remedy of Section 3162 will remain fully applicable to the first indictment in this situation. To prevent a miscarriage of justice in the event of withdrawal of the guilty plea, the court should, at the time of accepting the guilty plea on the second indictment, grant a continuance under Section 3161(h)(8) with respect to the first indictment if necessary to keep that indictment alive up to the day of sentencing. If the plea **305** should be withdrawn, additional continuances can be granted as appropriate to permit orderly resumption of the prosecution.

### § 3161(j)

(j)(1) If the attorney for the Government knows that a person charged with an offense is serving a term of imprisonment in any penal institution, he shall promptly-

(A) undertake to obtain the presence of the prisoner for trial; or

(B) cause a detainer to be filed with the person having custody of the prisoner and request him to so advise the prisoner and to advise the prisoner of his right to demand trial.

(2) If the person having custody of such prisoner receives a detainer, he shall promptly advise the prisoner of the charge and of the prisoner's right to demand trial. If at any time thereafter the prisoner informs the person having custody that he does demand trial, such person shall cause notice to that effect to be sent promptly to the attorney for the Government who caused the detainer to be filed.

(3) Upon receipt of such notice, the attorney for the Government shall promptly seek to obtain the presence of the prisoner for trial.

(4) When the person having custody of the prisoner receives from the attorney for the Government a properly supported request for temporary custody of such prisoner for trial, the prisoner shall be made available to that attorney for the Government (subject, in cases of interjurisdictional transfer, to any right of the prisoner to contest the legality of his delivery).

This applies to the attorney for the government and should be handled on a case-by-case basis. It will be noted that applicable time limitations do not ordinarily begin to run until the defendant is in federal custody (see *supra* p. 275).

### § 3162

#### § 3162. Sanctions

(a)(1) If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) as extended by section 3161(h) of this chapter, such charge against that individual contained in such complaint shall be dismissed or otherwise dropped. In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a re prosecution on the administration of this chapter and on the administration of justice.

(2) If a defendant is not brought to trial within the time limit required by section 3161(c) as extended by section 3161(h), the information or indictment shall be dismissed on motion of the defendant. The defendant shall have the burden of proof of supporting**306** such motion but the Government shall have the burden of going forward with the evidence in connection with any exclusion of time under subparagraph 3161(h)(3). In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a re-prosecution on the administration of this chapter and on the administration of justice. Failure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal under

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

*this section.*

*(b) In a ny ca se in which coun sel fo r the d e-fendant o r the a ttorney fo r th e Government (1 ) knowingly allows the case to be set for trial without disclosing th e fact tha t a necessary witn ess wou ld be unavailable for trial; (2) files a motion solely for the purpose of delay which he knows is to tally fri-volous and without merit; (3) makes a statement for the pu rpose of ob taining a co ntinuance which he knows t o b e f alse and wh ich is ma terial to th e granting of a continuance; or (4) otherwise willfully fails to proceed to tria l witho ut j ustification co n-sistent with section 3161 of this chapter, the cou rt may punish any s uch c ounsel or at torney, as f ol-lows:*

*(A) i n t he c ase of an appointed defense counsel, by reducing the a mount of c ompensation that otherwise would have been paid to such coun-sel p ursuant to section 3006A of th is title in an amount not to exceed 25 per centum thereof;*

*(B) in t he ca se of a cou nsel ret ained in connection with the defense of a d efendant, by im-posing on such counsel a fine of not to exceed 25 per centum of the compensation to which he is entitled in connection with his defense of such defendant;*

*(C) b y impo sing on an y attorney for th e Government a fine of not to exceed $250;*

*(D) by denying any such counsel or attor-ney for the Government the right to practice before the court considering such case for a period of not to exceed ninety days; or*

*(E) by filing a report with an app ropriate disciplinary committee.*

*The authority t o punish p rovided for by t his subsection shall be in addition to any other author-ity or power available to such court.*

*(c) The c ourt sh all f ollow procedures est ab-lished in the Federal Rules of Crimin al Procedure in punishing any counsel or attorney for the Go v-ernment pursuant to this section.*

## Sanctions

Section 3162(a)(1) and (2) provide for dismissal for failure to file an information or indictment, or to bring the defendant to trial in time, after ap plying the p ermissible exclusions of Section 3 161(h) against the to tal time con-sumed in th ese resp ective procedures. Whether such dis-missal **\*307** is with or without prejudice is left to the court to deci de, gi ving c onsideration to the va rious c riteria set forth in Section 3162.

The language of Section 3162(a) suggests that the dismissal sanction a pplies only to cases t hat excee d the time limits p rescribed in Sectio ns 3161(b) an d (c)(1). It should be noted, however, that Sections 3161(d)(2) and (e) include language that makes the dismissal sanction appli-cable also to the time limits set forth therein.

For the reasons discussed under Section 3161(h)(8), it is the opinion of the Committee that a defe ndant can not validly waive or agree to waive the right to seek a dismissal otherwise than by failing to make a timely motion. In the Committee's view, any purported waiver of that right, or agreement to waive that right, is unenforceable and should not be accepted.

If, upon motion of the defendant, an indictment, in-formation, or complaint is dismissed with out prej udice under this provision, Section 3161(d)(1) provides that any reprosecution will be governed by the time limits applica-ble to an original charge set forth in Sections 3161(b) and (c). The new prosecution will not be subject to dismissal on the basis of an y failure to comply with t he tim e li mits imposed upon the original prosecution.

Section 3161(b) provides for sanctions against counsel for knowing, willful or intentional violations of the Act.

## § 3163

*§ 3163. Effective dates*

*(a) Th e time limita tion in section 316 1(b) of this chapter-*
*(1) sh all apply to all i ndividuals who are arrested or ser ved with a summons on or after the date of exp iration o f th e twelve- calendar-month period following July 1, 1975; and*

*(2) shall commence to run on such date of expiration to al l individuals who are arre sted or served with a summons prior to the date of expira-tion of s uch t welve-calendar-month pe riod, i n*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

*connection with the commission of an offense, and with respect to which offense no information or indictment has been filed prior to such date of expiration.*

*(b) The time limitation in section 3161(c) of this chapter-*

*(1) shall apply to all offenses charged in informations or indictments filed on or after the date of expiration of the twelve- calendar-month period following July 1, 1975; and*

*(2) shall commence to run on such date of expiration as to all offenses charged in informations or indictments filed prior to that date.*

*(c) Subject to the provisions of section 3174(c), section 3162 of this chapter shall become effective and apply to all cases commenced by arrest or summons, and all informations or indictments filed, on or after July 1, 1980.*

### *308 Effective Dates

Sections 3163(a) and (b) are concerned with the original effective date of the time limits in 1976, and are of little current interest.

Section 3163(c) provides that both the dismissal sanction and the sanctions against attorneys contained in Section 3162 shall become effective July 1, 1980. The sanctions will apply to the arrest-to-indictment time limit only if the arrest takes place or the summons is served on or after July 1, 1980. They will apply to the indictment-to-trial time limit only if the indictment (or information) is filed on or after that date.

### § 3164

*§ 3164. Persons detained or designated as being of high risk*

*(a) The trial or other disposition of cases involving-*

*(1) a detained person who is being held in detention solely because he is awaiting trial, and*

*(2) a released person who is awaiting trial and has been designated by the attorney for the Government as being of high risk,*

*shall be accorded priority.*

*(b) The trial of any person described in subsection (a)(1) or (a)(2) of this section shall commence not later than ninety days following the beginning of such continuous detention or designation of high risk by the attorney for the Government. The periods of delay enumerated in section 3161(h) are excluded in computing the time limitation specified in this section.*

*(c) Failure to commence trial of a detainee as specified in subsection (b), through no fault of the accused or his counsel, or failure to commence trial of a designated releasee as specified in subsection (b), through no fault of the attorney for the Government, shall result in the automatic review by the court of the conditions of release. No detainee, as defined in subsection (a), shall be held in custody pending trial after the expiration of such ninety-day period required for the commencement of his trial. A designated releasee, as defined in subsection (a), who is found by the court to have intentionally delayed the trial of his case shall be subject to an order of the court modifying his nonfinancial conditions of release under this title to insure that he shall appear at trial as required.*

### Persons Detained or Designated as Being of High Risk

This section, which was originally a temporary provision, was made permanent by the 1979 amendments. It establishes a special time limit for commencement of trial of defendants held in continuous custody solely because they are awaiting trial and for released defendants who are awaiting trial and have been designated by the attorney for the government as being "high risk." This time limit is 90 days from the beginning of continuous custody or from the "high risk" designation. *309 The exclusions of Section 3161(h) are explicitly made applicable. The dismissal sanction does not apply. Instead, there is a release sanction for defendants in custody if the 90-day time limit is not satisfied, and released defendants may have their *nonfinancial* conditions of release modified.

In the opinion of the Committee, a "high risk" defendant is one reasonably designated by the United States Attorney as posing a danger to himself or to any other person, or to the community.

Defendants in custody and those designated as "high risk" remain subject to the time limits of Section 3161, and their cases should be handled in a manner that satisfies the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

more restrictive of the two sets of time limits. In addition, for some defendants in custody, a third set of time limits is imposed by the Interstate Agreement on Detainers, 18 U.S.C., Appendix.

Generally speaking, in cases initiated by arrest or service of summons, the overall time limit to trial under Section 3161 does not exceed 100 days. Hence the special time limits for custody and "high risk" cases require only a minor acceleration of the schedule. In cases initiated by indictment, the time limits of Section 3161 will generally be less generous, and the special time limits will not come into play.

In the Committee's opinion, the 90-day limit for defendants in custody commences to run up on arrest, whether within or without the charging district. However, as is discussed under Section 3161(h)(1)(G), the time reasonably expended in returning the defendant to the charging district is excludable.

If the defendant and the two United States Attorneys have all consented to the use of Rule 20, the defendant is no longer considered to be awaiting trial, and the 90-day custody time limit ceases to run. If the defendant subsequently rejects disposition under Rule 20, or the transferee court declines to accept the plea, a new 90-day period of continuous detention awaiting trial begins at that time.

### § 3172

*§ 3172. Definitions*

*As used in this chapter—*
*(1) the terms "judge" or "judicial officer" mean, unless otherwise indicated, any United States magistrate, Federal district judge, and*

*(2) the term "offense" means any Federal criminal offense which is in violation of any Act of Congress and is triable by any court established by Act of Congress (other than a petty offense as defined in section 1(3) of this title, or an offense triable by court-martial, military commission, provost court, or other military tribunal).*

**\*310 Definitions**

These definitions make it clear that whenever the term "judge" is used it can also refer to a magistrate. This will

facilitate designations of functions performable by magistrates. It is also clear that the Act applies to any offense above the grade of petty offense.

There is some room for doubt about the applicability of the act to criminal contempt proceedings. It could be argued that some contempts are not violations of acts of Congress but are punished under the inherent authority of the court. Considering the entire statute in the light of its purposes, however, the Committee is of the view that the act does apply to contempts prosecuted under Rule 42(b), Federal Rules of Criminal Procedure, and that the notice on which prosecution is based should be treated as an information for purposes of calculating the 70-day time limit to trial. Contempts punished summarily under rule 42(a), on the other hand, are not within the ambit of the act, since that portion of the rule does not contemplate a trial.

### § 3173

*§ 3173. Sixth amendment rights*

*No provision of this chapter shall be interpreted as a bar to any claim of denial of speedy trial as required by amendment VI of the Constitution.*

**Sixth Amendment Rights**

This provision means in effect that compliance with the Act does not necessarily bar claim of constitutional denial of a speedy trial.

### § 3174

*§ 3174. Judicial emergency and implementation*

*(a) In the event that any district court is unable to comply with the time limits set forth in section 3161(c) due to the status of its court calendars, the chief judge, where the existing resources are being efficiently utilized, may, after seeking the recommendations of the planning group, apply to the judicial council of the circuit for a suspension of such time limits as provided in subsection (b). The judicial council of the circuit shall evaluate the capabilities of the district, the availability of visiting judges from within and without the circuit, and make any recommendations it deems appropriate to alleviate calendar congestion resulting from the lack of resources.*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

*(b) If th e judicial council of the circu it finds that no remedy for s uch c ongestion i s re asonably available, such council ma y, up on ap plication by the chief judge of a di strict, grant a suspension of the time limits in section 3161(c) in such district for a period of time not to exceed one year for the trial of cases for which indictments or i nformations are filed during such one-year period. During such period of su spension, th e ti me limits fro m arrest to indictment, set forth in section 3161(b), shall not be reduced, no r **311 sha ll th e sanctions se t fo rth i n section 316 2 be suspended; bu t su ch time limits from i ndictment to tria l shall n ot b e in creased to exceed one hundred and eighty days. The time limits for the tr ial of ca ses of detained persons w ho are being detained so lely b ecause th ey a re awaiting trial shall not be affected by the provisions of this section.*

*(c)(1) If, prior to July 1, 1980, the chief judge of a ny district co ncludes, w ith the c oncurrence of the planning group convened in the district, that the district is prepared to implement the provisions of section 3162 in their entirety, h e may apply to the judicial council of the circuit in which the district is located t o implemen t su ch provisions. Such a pplication sha ll sho w th e degree of compliance in the district with the time limits set fo rth in subsectio ns (b) and ( c) of sect ion 3 161 duri ng t he twelve-calendar-month period preceding the date of such application and shall contain a proposed order and sc hedule for suc h i mplementation, w hich i ncludes the date o n which the pr ovisions of section 3162 are to become effective in the district, the effect such impl ementation will have upon such dis trict's practices and procedures, and provision for adequate notice to all interested parties.*

*(2) After review of any such application, the judicial council of the ci rcuit sh all enter an order implementing the provisions of section 3162 in their entirety in the district making application, or shall return su ch application t o t he ch ief judge of su ch district, together with an explanation setting fo rth such council's reas ons for refusing to e nter suc h order.*

*(d)(1) The ap proval of any application m ade pursuant t o s ubsection ( a) or ( c) by a j udicial council of a circuit shall be reported within ten days to the Direct or of the A dministrative Office of the United States Courts, t ogether w ith a co py of t he application, a written repo rt setting forth in su fficient detail the reasons for granting such application, and, in the c ase of an application m ade pur-*

*suant t o su bsection (a), a proposal for alleviating congestion in the district.*

*(2) The Director of the Administrative Office of the Un ited S tates Co urts sh all n ot l ater tha n ten days after receipt transmit such report to the Co ngress and to the Judicial Conference of t he United States. The judicial council of th e circuit sha ll not grant a suspension to any district within six months following th e exp iration of a p rior suspension without the consent of the Congress by Act of Congress. The limitation on granting a suspension made by th is pa ragraph sha ll no t apply with resp ect to any judicial district in which the prior suspension is in effect on the date of the enactment of the Speedy Trial Act Amendments Act of 1979.*

*(e) If th e chief judge of the district court concludes that the need for suspension of time limits in such district under this section is of great urgency, he may order the limits suspended for a period not to exceed thir t y days . Within ten days of e ntry of such order, the **312 chief judge shall apply to the judicial coun cil o f th e circu it fo r a su spension pursuant to subsection (a).*

## Judicial Emergency and Implementation

If a district court is unable to comply with the schedule because of t he state of its cal endars, its chi ef judge may, after g etting the recommendations o f its p lanning grou p, [FNa1] a pply to the judicial council of t he circuit for a suspension of the time limits.

The app lication of the district court should include a detailed justification for the conclusion that a suspension is appropriate. It s hould s pecify th e requ ested date of the beginning of the suspension, si nce the suspension would apply only to cases in which indictments or i nformations were f iled on or after t hat date. In th e op inion of t he Committee, the cir cuit council may g rant a su spension which beg ins on a d ate t hat is earlier th an th e date of council ap proval; h owever, the su spension must en d not later than one year from the beginning date. The application s hould al so i ndicate t he re quested duration of t he suspension which, as noted, may not exceed one year; the time limit from indictment to trial that will apply during the period of suspension, which may not exceed 180 days; the text of th e amendments to the district court's speedy trial plan that are required to effectuate the suspension and for which council approval is requested; and a statement of the resources that would be required for the district to comply fully with the Speedy Trial Act.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Because t here i s a  su bstantial am ount of  work t hat must be done by the Administrative Office in the event that a su spension i s approved, ea ch district cour t shoul d fo r-ward copies of its application to the Administrative Office as well as to the circ uit judicial council so t hat the neces-sary staff work can be initiated at the earliest possible date.

The judicial council of t he circ uit m ay gra nt a s us-pension of th e time li mit imposed b y Section 3161(c)(1) for a period of up to one year. It must be emphasized that this does not mean exp ansion of the tim e to t rial to on e year, but that the district court is permitted a relaxation of the *rule* for one year. The practical effect is not to suspend either the time provisions in Section 3161(c) or the sanc-tions in Section 3162, but only to lock the time from in-dictment to trial at 180 days, or s ome shorter period ap-proved by the circuit council, subject to exclusions under Section 3161(h).

During the peri od of su spension, time l imits for  de-fendants being detained sole ly because they  are a waiting trial are not affected. In the opinion of the Committee, this exception applies to the time limit of Section 3161(c)(1) as well as to th e special time limit for defendants in custody under Section 3164. That is to say th at, for defendants in custody, both the 70-day time limit from indictment to trial and the 90-day custody limit will remain applicable during a period of suspension.

**\*313** Su bsection (e) p ermits th e ch ief ju dge  of th e district court to order the time limit for trial suspended for a period not to exceed 30 days if he concludes that the need for suspension is o f great ur gency. Th is p rovision w as added to the act by [Public Law 96-43], at the request of the Judicial Conference, to facilitate d ecisive acti on in un ex-pected ci rcumstances, a nd t o  give t he judicial council adequate time for con sideration of an application for sus-pension i n s uch ci rcumstances. The  chief judge of the district court must make such application within ten days of entering the temporary suspension order.

The ab ility to act in  unforeseen circum stances is li-mited, however, by subsection (d)(2), which provides that a suspension may not be granted to any district within six months f ollowing t he e xpiration of a  prior s uspension, unless C ongress co nsents  by t he passa ge of l egislation. That limitation does not apply to districts in which a su s-pension was  in effect on A ugust 2,  1979; those di stricts may again apply for s   uspension, i f needed,  when t he sanctions become effective July 1, 1980. With that excep-

tion, however, t he ge neral  rule i s t hat, f or a si x-month period following the expiration of a su spension, a di strict can be granted another suspension only by act of Congress.

Finally, subsection (c) of Section 3174 permits a dis-trict court, with the approval of the circuit council, to im-plement the sanction provisions of the act in advance of the July 1 , 1980, effectiv e date specifie d in Section   3163. Under Sect ion 31 65(e)(3), a  di strict court  that exercises this option will not be required to submit the speedy trial plan that is otherwise due by June 30, 1980.

### Note on Planning Provisions

Section 3165(a) imposes on each district court an obligation to c onduct a c ontinuing st udy of t he a dminis-tration of ju stice. Of th e remain in g m atter cov ered by Sections 3165-71, the great bulk is con cerned either with the two speedy trial plans that were filed in 1976 and 1978 or with the a dditional pla n that is due b y June 30, 1980. These pro visions are not summarized in the se guidelines; guidance o n  the content of th e additional p lan is forth-coming.

[FNa1]. Beca use t he  recommendations of the  planning group must be included with the application of the district court to its circu it judicial council,  the plan ning gr oup should therefore not be disbanded upon the completion of the final plans under the Act. Indeed, the Act contemplates a continuing role for the planning group.

106 F.R.D. 271

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.