## **INDEX OF EXHIBITS**

Exhibit A – FTC's Exhibit 23 from Civil Contempt Proceeding.

Exhibit B – Excerpt of pages of Transcript of Proceedings on July 25, 2008, 10:30 a.m. before the Honorable Robert W. Gettleman.

Exhibit C – Excerpt of pages of Transcript of Proceedings on October 30, 2008, 11:00 a.m. before the Honorable Robert W. Gettleman.

# Exhibit A

2:53 PM
01/10/08

# ITV Global, Inc.
## Vendor QuickReport
December 2006 through November 2007

CONFIDENTIAL

| Date | Num | Amount |
|---|---|---|
| **Trucom** | | |
| 2/9/2007 | WIRE | -50,000.00 |
| 2/16/2007 | WIRE | -50,000.00 |
| 2/26/2007 | WIRE | -100,000.00 |
| 3/2/2007 | WIRE | -125,000.00 |
| 3/9/2007 | WIRE | -125,000.00 |
| 6/8/2007 | WIRE | -25,000.00 |
| 6/15/2007 | WIRE | -25,000.00 |
| 6/22/2007 | WIRE | -25,000.00 |
| 6/29/2007 | WIRE | -25,000.00 |
| 7/6/2007 | WIRE | -25,000.00 |
| 7/13/2007 | WIRE | -25,000.00 |
| 7/20/2007 | WIRE | -25,000.00 |
| 7/27/2007 | WIRE | -25,000.00 |
| 8/3/2007 | WIRE | -25,000.00 |
| 8/10/2007 | WIRE | -25,000.00 |
| 8/17/2007 | WIRE | -25,000.00 |
| 8/31/2007 | WIRE | -50,000.00 |
| 9/7/2007 | WIRE | -25,000.00 |
| 9/21/2007 | WIRE | -50,000.00 |
| 9/28/2007 | WIRE | -25,000.00 |
| 10/5/2007 | WIRE | -25,000.00 |
| 10/12/2007 | WIRE | -25,000.00 |
| 11/2/2007 | WIRE | -75,000.00 |
| 11/30/2007 | WIRE | -50,000.00 |



EXHIBIT #23
Potts
2.9.08  BM

ITV_KT 000015

Page 1

**FTC EX 23**

# Exhibit B

```
              IN THE UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF ILLINOIS
                         EASTERN DIVISION

FEDERAL TRADE COMMISSION,      )
                               )
                    Plaintiff, )
                               ) No. 03 C 3904
            vs.                ) Chicago, Illinois
                               ) July 25, 2008
KEVIN TRUDEAU,                 ) 10:30 a.m.
                               )
                    Defendant. )

            TRANSCRIPT OF PROCEEDINGS - HEARING

        BEFORE THE HONORABLE ROBERT W. GETTLEMAN

APPEARANCES:

For the Plaintiff:    FEDERAL TRADE COMMISSION
                      600 Pennsylvania Avenue, NW
                      NJ-3212
                      Washington, DC 20580
                      BY:  MS. LAUREEN KAPIN
                           MS. SANDYA PRABHU


For the Defendant:    JENNER & BLOCK
                      One IBM Plaza
                      Chicago, Illinois 60611
                      BY:  MR. DAVID J. BRADFORD
                           MR. DANIEL J. HURTADO




Official Reporter:    JENNIFER S. COSTALES, CRR, RMR
                      219 South Dearborn Street
                      Room 1706
                      Chicago, Illinois 60604
                      (312) 427-5351
```

1  order and using the language that is in the order, because
2  according to your interpretation, Mr. Bradford, of the mirror
3  image doctrine and your witnesses, he could have put as the next
4  sentence, "Only kidding. You really can't eat anything that you
5  want. You can't eat more than 500 calories a day. What I just
6  said is just a joke."
7      And yet maybe under the mirror image doctrine he could
8  get away with that in an ad for the book, but not under this
9  order, because he goes right on after that to say, and this is
10 just one example, there is others in the book, "The only caveat
11 is, the only caveat is only eat 100 percent organic food." He
12 then goes on to expound on that, and then he says, "Oh, and you
13 can't eat brand-name food either. And you can't eat fast food."
14     So what he said in that sentence and in the infomercial,
15 "you can eat anything you want, as much as you want" is just not
16 true. The book doesn't say that at all.
17     He also says, and these are just a couple of examples
18 that come to my mind -- and I'm going to write on this, so, you
19 know, when you write something, sometimes you may change your
20 mind, sometimes you refine your conclusions -- he also says no
21 exercise. Well, what's walking an hour a day if not exercise?
22 And you've pointed out some other examples.
23     And I can't help but conclude that the whole purpose of
24 this infomercial is to represent to consumers that they're going
25 to buy a book, the content of which discloses a protocol that's

1  easy, that allows you to eat anything you want, as much as you
2  want the rest of your life, including hot fudge sundaes and
3  creamy mashed potatoes, and to avoid exercise, when, in fact, the
4  book says you can't do those things. You can't eat anything you
5  want. You can't go without exercise. You've got to take
6  injections of hormones.
7      Now, I know a lot of that language is couched in terms
8  that say, well, maybe it's not mandatory, because it's only
9  mentioned as mandatory in the first phase, which is not itself
10 mandatory. But even under phase four it says "Take as directed."
11 So you're still supposed to take this growth hormone, which is,
12 of course, anything but easy. And it also, it also it may be
13 dangerous. It's certainly not approved by the FDA.
14     And colonics and all the rest of it, how you do that at
15 home, I don't know, but maybe some people can do that. "Do
16 colonics as necessary," what does that mean? I don't know what
17 that means. But "do colonics" certainly is there. You're
18 supposed to get colonics.
19     MS. KAPIN: And, Your Honor --
20     THE COURT: How you do that at home, I don't really
21 know.
22     These are just some examples. Unless I change my mind
23 about the way I read this order, I think that I'm going to pretty
24 much stick with my original conclusion.
25     I am troubled though about remedy here, because maybe we

1  have to get back together after I put all my thoughts together on
2  this, you've given me a lot to think about, but I am troubled
3  about remedy, because the remedy that you are suggesting is
4  rather Draconian. I think that it could be totally overdoing it,
5  because I think the FTC should have been more on the ball on
6  this.
7        I realize Mr. Trudeau could have given you this to look
8  at. But I think when you talk about consumer protection, I don't
9  mean to be too hard on the FTC here, I know they're a busy
10 agency, but there was no reluctance in having a dialogue with
11 Mr. Trudeau and his counsel when other problems arose in
12 connection with these other books. And to say that everybody who
13 bought this book should be given a refund strikes me as a bit
14 overdoing it.
15       As far as the retail sales are concerned, I told you I
16 think a long time ago I had a problem with that, because even if
17 you listen to the infomercial and walked in to Borders and saw
18 the book, just flipping through the book would tell you that the
19 infomercial was inaccurate for the very reasons we've been
20 talking about.
21       All you have to do is go to the back of the book and
22 look at these protocols. If you go to the Atkins diet or anybody
23 who looks, I don't look at diet books, but I think it's fair to
24 say that when you go to a diet book, you usually go to the diet
25 and see what -- you know, you don't read the fine print. You

356

read what the diet is. And if you go to the ones in this book, you see pretty much there is nothing easy, or any of the other things Mr. Trudeau says on the infomercials just are contradicted by the book itself. So I'm not sure I would include the retail sales at all in a remedy. I know what the argument is to the contrary, but I don't think I'd be inclined to do that at this point.

So I'm just sharing some thoughts with you, because I don't know whether they will be finalized in an order that I issue. But as you know, I like to share my thoughts with lawyers that are as well prepared and as thoughtful as you guys are. That's pretty much where I'm at at this moment. But you've given me an awful lot to talk about.

If there is anything that I just said that you may want to respond to? I'm happy to hear from you.

MR. BRADFORD: May I approach, Your Honor?

THE COURT: Sure.

MR. BRADFORD: With respect to the mirror image doctrine, I want to be clear. I am not arguing that the FTC's counsel or Mr. Trudeau's counsel said to each other, "Let's put the mirror image doctrine in this order, and we'll do it by this sentence."

What I am asking Your Honor to credit is that both counsel would be familiar with that doctrine, that that is a well known doctrine in the field of book advertising. It is the FTC's

# Exhibit C

```
 1            IN THE UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF ILLINOIS
 2                      EASTERN DIVISION

 3
   FEDERAL TRADE COMMISSION,        )
 4                                  )
                 Plaintiff,         )
 5                                  ) No. 03 C 3904
         vs.                        ) Chicago, Illinois
 6                                  ) October 30, 2008
   KEVIN TRUDEAU,                   ) 11:00 a.m.
 7                                  )
                 Defendant.         )
 8

 9            TRANSCRIPT OF PROCEEDINGS - STATUS

10         BEFORE THE HONORABLE ROBERT W. GETTLEMAN

11 APPEARANCES:

12 For the Plaintiff:     FEDERAL TRADE COMMISSION
                          600 Pennsylvania Avenue, NW
13                        NJ-3212
                          Washington, DC 20580
14                        BY:  MS. LAUREEN KAPIN

15                        FEDERAL TRADE COMMISSION
                          55 West Monroe Street
16                        Chicago, Illinois 60603
                          BY:  MR. DAVID O'TOOLE

17
   For the Defendant:     WINSTON & STRAWN LLP
18                        35 West Wacker Drive
                          Chicago, Illinois 60601
19                        BY:  MR. KIMBALL R. ANDERSON

20

21

22

23 Official Reporter:     JENNIFER S. COSTALES, CRR, RMR
                          219 South Dearborn Street
24                        Room 1706
                          Chicago, Illinois 60604
25                        (312) 427-5351
```

1    (Proceedings in open court.)
2            THE CLERK:  03 C 3904, FTC versus Kevin Trudeau; status.
3            MR. ANDERSON:  Good morning, Your Honor.
4            Kimball Anderson on behalf of Mr. Trudeau.
5            MS. KAPIN:  Good morning, Your Honor.
6            Laureen Kapin on behalf of the Federal Trade Commission.
7    I'm here with my colleague Mr. O'Toole.
8            THE COURT:  Good morning.
9            All right.  I've reviewed Mr. Anderson's submission of
10   yesterday.  Have you?
11           MS. KAPIN:  I've had a very brief opportunity to review
12   it since it was filed after business hours.  I was able to look
13   at it on the plane here.  I would have preferred, of course, a
14   more meaningful opportunity.  And I would say that if the Court
15   is inclined to accept any of Mr. Anderson's proposals, the FTC
16   would like a chance to respond in written form to them after it
17   has had a meaningful opportunity to digest and analyze
18   Mr. Anderson's arguments.
19           THE COURT:  Well, I guess that's only fair.  But I do
20   want to share some thoughts with you, and I think we can actually
21   make some progress.  Mr. Anderson makes a very strong argument
22   about the measure of the award and the basis for that measure
23   based on the royalties generated, if not received by the sale of
24   the book in the stores.  He's a very persuasive man,
25   Mr. Anderson.  And I'm sort of leaning in that direction, in his

1 direction on that.  But where does that leave me?  Where does it
2 leave the Court?
3      And I think that if I agree with Mr. Anderson that the
4 5,300,000 figure is not supported by the factual record in the
5 case, I then -- there is not going to be an award here of zero,
6 that is not going to happen, because the other way to look at the
7 award, the other way to try to fashion a monetary remedy for the
8 deceptive infomercial that constitutes the contempt of court here
9 is the alternative proposed by the FTC, which is the harm to the
10 consumer.
11      Mr. Anderson points out that the record is not totally
12 clear about, and I didn't go back and look at all the old briefs
13 either, you know, I'm going by my own recollection, which is
14 pretty good I think on this score, but that the $47 million that
15 was proposed by the FTC included all sales of all the books.  And
16 somebody who paid X dollars for the book based on the deceptive
17 infomercial would be damaged by that.  Somebody who bought it
18 just because it's authored by Mr. Trudeau, and they want a
19 complete set of all of his books, may have never seen the
20 infomercial.  Somebody who bought it in the store, we all know
21 what the arguments are there.  I think some of those sales were
22 infomercial driven and some probably were not.
23      I don't really have a record on that.  I don't have a
24 complete record.  I'll let you talk, I'm just sharing some
25 thoughts with you.  But it would seem to me though that if I

1  don't have the necessary facts to support the royalties received
2  by Mr. Trudeau because he sold this to ITV -- is that what it is?
3          MR. ANDERSON:  Yeah, it's ITV Global.
4          THE COURT:  ITV, right.
5          MR. ANDERSON:  ITV Global, they ran the infomercials.
6          THE COURT:  So if he sold it to them, he only got the 2
7  million from them, and, therefore, he hasn't gotten the 5 million
8  in royalties.
9          MS. KAPIN:  Well, he --
10         THE COURT:  Let me finish talking.
11         MS. KAPIN:  Sorry.
12         THE COURT:  You'll have a chance.
13         Then I think I go to the other measure, which is the
14 actual consumer harm here, which is probably going to be a much
15 bigger figure.  But I may need a better record to actually
16 determine what that figure is.  It's some portion of the 47
17 million or whatever that number was.  It may not be the whole
18 thing, but it's some portion of it.
19         So I'm sort of leaning towards, well, maybe we're not
20 quite done with that part of this proceeding, and we'll need to
21 have a more complete evidentiary hearing about that.  So that's
22 where I am on that.  So let me just stop there for a moment.
23 Then we can talk about some of these other little details, which
24 I think we should be able to solve frankly.
25         MS. KAPIN:  Okay.

1   THE COURT: Okay.

2   MS. KAPIN: Let me start, Your Honor, with the royalty
3 issues and then move on to the proper measure of harm in contempt
4 proceedings and what the law establishes as presumptions and what
5 record we have factually.

6   So starting with Alliance, just to make sure there is
7 some clarity -- and I actually don't think that defendant and I
8 disagree as to the facts here, we may disagree as to certain
9 conclusions to be drawn from that. But factually speaking, Your
10 Honor, Mr. Trudeau's company Alliance has, in fact, received
11 royalties from retail sales. Now, there is no dispute about
12 that.

13   The fact that there were transactions between
14 Mr. Trudeau and ITV did not affect the fact that Alliance,
15 Mr. Trudeau's company, received that 5.3 some odd in sales
16 derived from the retail sales of the *Weight Loss Cure* book.

17   Now, there absolutely is evidence in the record to
18 support that the infomercials drove those sales, and I can point
19 you to that, Your Honor. But I think we have been over it, and
20 it's going to at the end of the day depend on how you're
21 persuaded, Your Honor. But just so I can point you to the facts,
22 the infomercial itself spurred viewers to buy the book in retail
23 sales. That's in Exhibit 14-D, pages 23 to 24.

24   As you yourself have already noted, Your Honor, the
25 book's cover has that shiny gold seal "As seen on TV."