UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 10 CR 886 |
| | ) | |
| KEVIN TRUDEAU | ) | Judge Ronald A. Guzman |

## <u>GOVERNMENT'S CONSOLIDATED RESPONSE TO DEFENDANT'S<br>MOTIONS TO DISMISS</u>

The UNITED STATES OF AMERICA asks this Court to deny defendant Kevin

Trudeau's motions to dismiss based on the Speedy Trial Act and the double jeopardy

clause, R. 9-12, because neither provision applies to this case.[1]

## BACKGROUND

This case has taken an unusual route to this Court. As the government's

previous motion, R. 8, described, Judge Gettleman has found Trudeau in civil contempt

for Trudeau's appearance in infomercials that misrepresented the content of his book,

*The Weight Loss Cure*, in violation of a 2004 civil consent decree. The Seventh Circuit

affirmed the finding of contempt, but remanded to determine the proper remedy. *FTC*

*v. Trudeau*, 579 F.3d 754 (7th Cir. 2009). On remand, the district court ordered

Trudeau to pay civil damages of over $37 million in order to compensate consumers for

losses from the deceptive infomercials, and ordered Trudeau to post a $2 million

performance bond before participating in more infomercials, 03 CV 3904, R. 335, a

---

[1] This response is more than 15 pages long because it offers a consolidated
response to two motions. As such, the government believes it is consistent with the
page limits set forth in Local Rule 7.1.

decision Trudeau has appealed.

In addition to the civil remedies, the district court issued an order to show cause why Trudeau should not be held in criminal contempt for violating the 2004 consent decree. 03 CV 3904, R. 339. The order announced that the court would consider imposing a term of imprisonment not to exceed six months. *Id.* Trudeau filed a motion to dismiss the order and a motion to recuse Judge Gettleman. On October 19, 2010, the court denied both motions, 03 CV 3904, R. 435-36, but referred the case to the Executive Committee for reassignment. 03 CV 3904, R. 435. At the government's request, the court had previously excluded time under Speedy Trial Act until October 22, 2010. 03 CV 3904, R. 432.

After Judge Gettleman referred the case to the Executive Committee, there was no further activity in the criminal component of the case under the previous case number (other than a minute order striking a hearing date). No reference to the case being reassigned to this Court appeared under the prior case number. Instead, on October 19, 2010, an entry appeared in the docket under the new case number announcing that the case had been assigned to this Court. At that time, the government was not informed of the new docket number, or the new judge.[2] About five months passed, during which time undersigned counsel failed to take steps to find out

---

[2] When the Executive Committee reassigns a case to a new judge, it is common for an entry to appear on the case's docket announcing who the new judge is. *See, e.g.*, 10 CR 883, R. 5-6. This case was unusual because it was given a new case number and no entry appeared under the old case number announcing the new judge.

the status of the case. Eventually, undersigned counsel learned that the case had been assigned to this Court, notified Trudeau's counsel of this fact, and contacted the Court's staff to schedule a status hearing. Counsel for both parties entered their appearances in this case—and began receiving electronic notices under the new case number—shortly before the status hearing, which was held on April 7, 2011. R. 7. At that hearing, Trudeau raised the Speedy Trial Act issue for the first time.

## ARGUMENT

Trudeau has moved to dismiss on two grounds: the Speedy Trial Act and the double jeopardy clause. The Court should deny both motions.

First, Trudeau cites no case holding that the Speedy Trial Act applies to the charge against him—a petty offense that is charged in an order to show cause. The plain language of the statute makes clear that it is inapplicable here. Moreover, even if this Court chose to enlarge the scope of the Act to apply it to this case, dismissal without prejudice is warranted.

Second, as Judge Gettleman has already determined, the civil fine imposed on Trudeau in the civil proceedings was not a criminal punishment, and therefore the double jeopardy clause does not apply.

## I. The Speedy Trial Act Does Not Apply.

### A. The Act Does Not Apply to a Petty Offense.

The Speedy Trial Act provides:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (or

3

making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1).

The Act further provides that Class B and C misdemeanors and infractions—crimes punishable by a maximum term of imprisonment of six months or less, and also known as petty offenses—are not offenses covered by the Act. 18 U.S.C. §§ 19, 3172(2), 3559(a)(7)-(9); *see also United States v. Sued-Jimenez*, 275 F.3d 1, 8-9 (1st Cir. 2003); *United States v. Baker*, 641 F.2d 1311, 1319 (9th Cir. 1981).

Trudeau was charged with criminal contempt in an order to show cause that announced that the court would "consider imposing a term of imprisonment not to exceed six months." 03 CV 3904, R.339 at 1. Because the potential penalty was six months in prison or less, Trudeau was charged with a petty offense misdemeanor. Trudeau's memorandum appears to recognize this, explaining that his offense is "the equivalent of a Class B misdemeanor," and that "for Speedy Trial Act purposes" his offense is no more serious than a Class B misdemeanor. R. 10 at 9-10.

The Supreme Court has explained that criminal contempt is a petty offense if the penalty actually imposed does not exceed six months in prison. *Frank v. United States*, 395 U.S. 147, 149-150 (1969). Following *Frank*, several courts have held that if the actual sentence imposed is less than six months, or if the court agrees at the outset to limit the maximum sentence to six months in prison, criminal contempt is charged as a petty offense, and the Speedy Trial Act does not apply. *See Baker*, 641 F.2d at 1319 & n.10; *United States v. Richmond*, No. 07-50341, 2009 WL 347443, *1

4

(9th Cir. Feb. 6, 2009); *United States v. Moncier*, No. 2:07-cr-00040, 2010 WL 1904957, *2 (E.D. Tenn. May 10, 2010). Numerous other courts have confirmed, in other contexts, that such contempt charges are petty offenses. *See United States v. Rangolan*, 464 F.3d 321, 322-23 (2d Cir. 2006) (where district court committed to limit sentence to six months in prison, criminal contempt was "charged as a misdemeanor"); *United States v. Taylor*, 139 F.3d 924, 926-27 (D.C. Cir. 1998) (referring to contempt offense as a "petty offense misdemeanor"); *accord United States v. Gedraitis*, 690 F.2d 351, 353-55 (3d Cir. 1982); *United States v. Pyle*, 518 F. Supp. 139, 143-44 (E.D. Pa. 1981); *United States v. Wright*, 516 F. Supp. 1113, 1115, 1119 (E.D. Pa. 1981).

Because Trudeau is charged with a Class B misdemeanor, which is a petty offense, and because the Speedy Trial Act does not apply to petty offenses, the Court should deny the motion to dismiss based on the Speedy Trial Act.[3]

### B.    The Act Does Not Apply to an Order to Show Cause.

As outlined above, the Act applies only to defendants "charged in an information or indictment," 18 U.S.C. § 3161(c)(1), and provides that if a defendant is not brought to trial within seventy days of the relevant triggering date, minus excludable time,

---

[3] The government has moved to dismiss the current order to show cause and has asked the Court to enter an amended or superseding order that removes the six-month cap on the potential term of imprisonment. R. 8. If the Court grants this motion, Trudeau, for the first time, will be charged with a non-petty offense. It will remain the government's position that the Speedy Trial Act does not apply, because, as explained in the next section, the Act does not apply to an order to show cause. Nevertheless, if the Court issues a new order without a cap on the potential sentence, in an abundance of caution, going forward, the government will ask the Court to make excludable time findings under the Act.

then "the information or indictment shall be dismissed on motion of the defendant."
*Id.* § 3162(a)(2). Trudeau was charged in an order to show cause, which is neither an
information nor an indictment. By its plain terms, the Act does not apply.

"The primary rule of statutory interpretation is that words used in statutes must
be given their ordinary and plain meaning." *Ziegler Coal Co. v. Dep't of Labor*, 326
F.3d 894, 900 (7th Cir. 2003). Courts have recognized this rule in refusing to extend
the Speedy Trial Act beyond its plain meaning. In *United States v. Boyd*, for example,
the defendant was charged by violation notice, and she contended that the notice
should be dismissed under the Speedy Trial Act because the government did not file
an information or indictment within thirty days of arrest. 214 F.3d 1052, 1055 (9th
Cir. 2000). The Ninth Circuit rejected this argument, noting that, "[t]he plain wording
of § 3162(a)(1)" (the parallel provision to § 3162(a)(2), which is applicable in this case)
"provides a remedy only to an individual against whom a complaint has been filed,"
and concluding that a violation notice is not a complaint. *Id.* at 1056-57; *accord United
States v. Graef*, 31 F.3d 362, 364 (6th Cir. 1994). *See also United States v. Tootle*, 65
F.3d 381, 383 (4th Cir. 1995) (holding that the Act does not apply where the defendant
has failed to enter a plea of not guilty because by its "plain language," § 3161(c)(1) is
triggered only by a not guilty plea, and the court has a "duty to enforce Congressional
mandates as written").

The same reasoning applies here. The Speedy Trial Act only permits courts to
dismiss an "information or indictment," 18 U.S.C. § 3162(a)(2), and an order to show
cause is not an information or indictment. *See United States v. Eichhorst*, 544 F.2d

1383, 1386 (7th Cir. 1976) (for a rule to show cause, "the particularity required of an indictment is not necessary"); *United States v. Boskic*, 545 F.3d 69, 82 n.13 (1st Cir. 2008) ("An information is explicitly a prosecutorial undertaking; it is defined as "[a] formal criminal charge made by a prosecutor without a grand-jury indictment.") (quoting *Black's Law Dictionary* 795 (8th ed. 2004)). Thus, the Act's terms show that it does not apply.

While Trudeau claims that "[c]ourts have uniformly agreed" that the Speedy Trial Act applies to criminal contempt actions arising from orders to show cause, R. 10 at 7, he cites no authority from any court that reaches that holding. The five cases Trudeau does cite, *id.* at 7-8, do not support his argument.

First, in *United States v. Bryant*, an unpublished opinion, the Seventh Circuit denied a defendant's ineffective assistance of counsel claim based on his lawyer's failure to renew a motion to dismiss under the Speedy Trial Act after the district court denied the motion. Nos. 92-1086, 93-1153, 1993 WL 453389, *1, 3 (7th Cir. Nov. 5, 1993). Neither the district court nor the Seventh Circuit held that the Speedy Trial Act applied to an order to show cause, and since the Seventh Circuit did not "squarely address" the issue—or, indeed, address it at all—the decision is not controlling. *See Brecht v. Abrahamson*, 507 U.S. 619, 630-31 (1993).

Second, in three other opinions, two of them unpublished, the Ninth Circuit and the District Court for the Eastern District of Tennessee held that because, like Trudeau, the defendants' sentences for criminal contempt were limited to six months or less, the defendants were charged with petty offenses, and the Speedy Trial Act did

not apply. *Baker*, 641 F.2d at 1319 & n.10; *Richmond*, 2009 WL 347443, at *1; *Moncier*, 2010 WL 1904957, * 2. These decisions did not address whether the Speedy Trial Act applies to an order to show cause.

Finally, in *United States v. Slovenec*, a district court opinion from the Western District of New York, the court, in addressing other matters, simply assumed in a footnote and in *dicta* that the Speedy Trial Act applied to a notice under Federal Rule of Criminal Procedure 42. 799 F. Supp. 1441, 1448 n.6 (W.D.N.Y. 1992). The court did not examine the statute's text or otherwise analyze the issue.

In the absence of controlling case law supporting his position, Trudeau's only remaining authority is the Guidelines to the Administration of the Speedy Trial Act of 1974, issued by the Judicial Conference of the United States. *See* R. 10 at 7 (attaching Guidelines as Exhibit F). The Guidelines opine that, for purposes of the Speedy Trial Act, a notice of criminal contempt should be treated as if it were an information, thereby bringing such a notice within the terms of the Act. Guidelines at 277, 310. Trudeau claims that this opinion is "unequivocal[]," R. 10 at 7, but the Guidelines themselves begin by explaining that they set forth "tentative advisory opinions" that "are not intended as binding interpretations." Guidelines at 271. Further, the Guidelines allow that "there is some room for doubt" about the conclusion that the Act applies to a contempt notice. *Id.* at 310.

While an opinion of the Judicial Conference is entitled to "respectful consideration," *United States v. Dawson*, 434 F.3d 956, 958 (7th Cir. 2006), the Conference's recommendation dates back to 1984, and does not reflect recent

precedent, such as *Boyd*, *Graef*, and *Tootle*, discussed above at p. 6, which hold that the Speedy Trial Act should be construed narrowly in accord with the plain meaning of its terms. *Boyd* and *Graef*, for instance, held that a violation notice is not a complaint, and so the Speedy Trial Act does not apply to such a notice. *See Boyd*, 214 F.3d at 1056-57; *Graef*, 31 F.3d 364. Similarly, a contempt notice, or an order to show cause, is not an indictment or information, and so the Speedy Trial Act likewise does not apply.

No advisory opinion of the Judicial Conference may override the plain meaning of a statute. Trudeau's position that this Court should treat an order to show cause as if it were an information is, in reality, an argument that the statute should be re-written to add the phrase "order to show cause." Re-writing statutes is a job for Congress, not courts. *Lewis v. City of Chicago*, __ U.S. __, 130 S. Ct. 2191, 2200 (2010) ("It is not for us to rewrite the statute so that it covers only what we think is necessary to achieve what we think Congress really intended."); *United States v. West*, 962 F.2d 1243, 1249 (7th Cir. 1992) ("We . . . are obligated to follow the rules Congress has made, and not rewrite nor avoid them, unwise though they may be. Congress wrote them and Congress, not the courts, should change them.").

When Congress wants to refer to a order to show cause, it knows how to do so: that phrase occurs throughout the United States Code, as well as in Federal Rule of Criminal Procedure 42, which governs criminal contempt. *See., e.g.,* 21 U.S.C. § 824 (directing Attorney General to serve order to show cause upon registrant before revoking registration to manufacture or distribute controlled substance); 28 U.S.C.

§ 1365(b) (requiring district court to commence a contempt proceeding by an order to show cause against a person who refuses to comply with a subpoena issued by the United States Senate); Fed. R. Crim. P. 42(a)(1). To hold that the Speedy Trial Act applies to a charging document that the Act never mentions would "contor[t] the clear words of the statute." *Boyd*, 214 F.3d at 156.[4]

### C. If This Court Concludes That the Speedy Trial Act Applies, the Court Should Dismiss Without Prejudice.

If the Court rejects the arguments above and finds that the Act applies, the government agrees with Trudeau that more than 70 nonexcluded days have elapsed, and, under the Act, dismissal of the order to show cause would be mandatory. *See* 18 U.S.C. §§ 3161(c)(1) and 3162(a)(2). The Act gives this Court substantial discretion to dismiss with or without prejudice, and requires the Court to consider, among other factors, the seriousness of the offense, the facts and circumstances of the case that led to the dismissal, and the impact of a re-prosecution on the administration of the Act and on the administration of justice. 18 U.S.C. § 3161(a)(2); *United States v. Sykes*, 614 F.3d 303, 309 (7th Cir. 2010). One relevant factor in weighing these considerations is whether delay has caused the defendant prejudice. *United States v. Taylor*, 487 U.S. 326, 334 (1988). The Act creates no presumption about whether dismissal should be with or without prejudice. *Id.* at 334, 343 n.15.

---

[4] In the proceedings before Judge Gettleman, the government sought, and the Court granted, exclusions of time under the Speedy Trial Act. While these exclusions reflected "an abundance of caution," they were not required because the Act does not apply. *See Richmond*, 2009 WL 347443, *1.

Despite a wealth of case law from the Seventh Circuit on this issue, Trudeau's argument for dismissal with prejudice relies entirely on cases from other circuits, because Seventh Circuit precedent does not support his claim. Each of the statutory factors supports dismissal without prejudice.

### 1. Seriousness of the Offense

Trudeau's offense is a serious one. Though Trudeau is now charged with a petty offense, the government has asked the Court to reconsider that charge, and has provided a brief account of the seriousness of Trudeau's contempt. R. 8; *see also United States v. Carpenter*, 91 F.3d 1282, 1285 ("the actual sentence may not adequately reflect the severity of the contemnor's conduct."). Trudeau's conduct was serious enough for Judge Gettleman to issue an order to show cause for criminal contempt after holding Trudeau in civil contempt and imposing a $37 million civil fine. The crime is serious for two reasons. First, Trudeau lied to consumers in order to sell books. Second, Trudeau blatantly violated a clear order of the court.

Trudeau contends that "[t]his case is no more serious than a disagreement over whether a weight loss protocol is 'easy.'" R. 10 at 10. The Seventh Circuit was not so cavalier in describing Trudeau's conduct. As the government has described in previous filings, the court of appeals concluded that Trudeau "repeatedly distorted the content of the *Weight Loss Cure* book in multiple infomercials," that his infomercials made "blatant misrepresentations," that "Trudeau did more than just quote his book; he outright lied," and that "the infomercials are . . . loaded with . . . statements that are patently false." *FTC v. Trudeau*, 579 F.3d 754, 766-68 & n. 12 (7th Cir. 2009). This

11

conduct violated a court order, and, according to the Seventh Circuit, Trudeau's misrepresentations "induc[ed] consumers to purchase the book on false hopes and assumptions." *Id.* at 767.

Wilfully violating a court order is a serious matter. It is more serious still when the defendant, like Trudeau, is a repeat offender, or, in Judge Gettleman's words, a "career contemnor." *See FTC v. Trudeau*, 579 F.3d at 757 (describing how Trudeau was held in civil contempt in 2004); 03 CV 3904, R. 437 at 5. The Supreme Court has recognized "the rightly serious view courts have traditionally taken of violations of injunctive orders." *Pasadena City Bd. of Ed. v. Spangler*, 427 U.S. 424, 438 (1976). Such violations threaten the court's authority and demonstrate contempt for the law, and their seriousness counsels in favor of dismissal without prejudice.

### 2. Facts and Circumstances of the Case

Three circumstances of this case favor dismissal without prejudice: the government did not act in bad faith; Trudeau waited to assert his right to a Speedy Trial until after a violation occurred; and Trudeau suffered no prejudice from the delay.

a. <u>Absence of Bad Faith</u>. To be clear: the delay that occurred after the case was reassigned to this Court resulted, in part, from government neglect. After Judge Gettleman referred the case to the executive committee, undersigned counsel waited too long before determining what happened to the case and causing the case to be called for a status before this Court. There is no excuse for this failure.

But, as Trudeau agrees, the government did not act in bad faith. R. 10 at 12. Most violations of the Speedy Trial Act result from some type of government neglect.

12

Accordingly, the question is "not whether the prosecution was careless," but whether the statutory factors taken as a whole favor dismissal with or without prejudice. *United States v. Fountain*, 840 F.2d 509, 512 (7th Cir. 1988) (affirming dismissal without prejudice despite finding there was "no excuse" for government's "neglect").

Both the Supreme Court and the Seventh Circuit have found that an absence of bad faith by the government is a factor favoring dismissal without prejudice. *Taylor*, 487 U.S. at 339 (reversing dismissal with prejudice as an abuse of discretion and noting that, while the district court found that there was "no excuse" for government's conduct, the court "did not find that the Government acted in bad faith"); *Sykes*, 614 F.3d at 309 (noting that delay was "unconscious"); *United States v. Killingsworth*, 507 F.3d 1087, 1090 (7th Cir. 2007) (reversing dismissal with prejudice as an abuse of discretion and noting that delay was not "intentional[]" and there was an "absence of bad faith"); *accord United States v. Loera*, 565 F.3d 406, 412 (7th Cir. 2009); *Fountain*, 840 F.2d at 512-13.

b.  <u>Trudeau's Silence</u>.  This Court may consider Trudeau's conduct as well as the government's.  Trudeau claims that the delay "is solely attributable to the government," *id.*, but that is mistaken.  Between October 2010, when the parties last appeared before Judge Gettleman, and March 2011, when the government contacted this Court's staff to schedule a status hearing, Trudeau did nothing to assert his right to a speedy trial.  "A defendant who waits passively while the time runs has less claim to dismissal with prejudice than does a defendant who demands, but does not receive, prompt attention."  *Fountain*, 840 F.2d at 513; *see also Sykes*, 614 F.3d at 310

(affirming dismissal without prejudice and explaining that "the court was also justified in observing that [defendant] did not bring the delay to the court's attention as the number of nonexcludable days accumulated.").

    c.    <u>Lack of Prejudice</u>. Trudeau has suffered no prejudice from the delay. One consideration in determining prejudice is the length of the delay, *see Taylor*, 487 U.S. at 339, and the five-month delay in this case is within the range that the Seventh Circuit has found may lead to dismissal without prejudice. *See e.g., Sykes*, 614 F.3d at 310 (affirming dismissal without prejudice after 224 nonexcludable days) (citing *United States v. Jones*, 213 F.3d 1253, 125 (10th Cir. 2000) (affirming dismissal without prejudice after 414 nonexcludable days)). Trudeau is not detained, and delay has not affected his ability to present a defense, or given the government any advantage. In addition, at one of the last hearings before Judge Gettleman in September 2010, the parties agreed that the next step in the case was to set a schedule for filing pre-trial motions. 9/29/10 Tr. 23-25 (Attached as Exhibit A). In April 2011, when the parties first appeared before this Court, the government stated that it was prepared to file pre-trial motions within two weeks, and Trudeau asked for two months. 4/7/11 Tr. 6, 11 (Attached as Exhibit B). The government has no objection to the additional time Trudeau has sought and received, but Trudeau's requests for further delays suggest that he was not prejudiced by the delay in appearing before this Court.[5] In addition, Trudeau has never asked for a trial date, either before Judge

---

    [5] The arguments in Trudeau's recently-filed pre-trial motions were available before April 2011. The Speedy Trial Act issue became ripe as of December 31, 2010,

Gettleman or this Court.

Trudeau states that the delay in his trial could interfere with his liberty, disrupt his employment, drain his finances, curtail his associations, subject him to "public obloquy," and create anxiety. R. 10 at 12. These are legitimate concerns, though they apply to every criminal defendant, and so cannot by themselves be the basis for dismissal with prejudice. Trudeau's concerns were not significant enough to cause him to take any steps to bring the matter before this Court earlier. And based on Trudeau's actions, it appears that he is coping with the criminal charges against him. In an article posted on the website for Trudeau's radio program during the period of delay, for example, Trudeau was quoted as saying, "We're on the air every day," and the article reports that Trudeau is "right there in front of the cameras" pitching books such as Debt Cure and Free Money in "the wee hours of the morning." *See* The Kevin Trudeau Show, http://www.ktradionetwork.com/category/kevin-news/ (last visited June 9, 2011). The same website contains promotions for Trudeau's continued public appearances, and reports that Trudeau's radio show airs on about sixty stations nationwide, providing "Secrets to wealth, uncovering government corruption, and natural healing methods." *See* The Kevin Trudeau Show, http://www.ktradionetwork.com/category/events/ (last visited June 9, 2011).

### 3. Impact of Re-Prosecution

Trudeau argues that the Court should dismiss with prejudice because dismissal

70 days after the last day Judge Gettleman excluded. The double jeopardy claim simply repeats an argument Trudeau made before Judge Gettleman. *See* p. 17.

without prejudice "would render the Speedy Trial Act a nullity." R. 10 at 14. The Supreme Court and the Seventh Circuit have rejected this argument. In *Taylor*, for example, the Supreme Court held that the district court abused its discretion when it dismissed with prejudice based "largely on the conclusion that the alternative would tacitly condone the Government's behavior, and that a stern response was appropriate in order to vindicate the guarantees of the Speedy Trial Act." 487 U.S. at 342. The Court noted that "the Act does not require dismissal with prejudice for every violation," and explained that "[d]ismissal without prejudice is not a toothless sanction." *Id.*; *see also Killingsworth*, 507 F.3d at 1091.

Given the seriousness of the offense, the absence of bad faith by the government, Trudeau's failure to raise the Speedy Trial issue until it was too late, and the lack of prejudice to Trudeau, the administration of justice favors dismissal without prejudice. The Seventh Circuit has repeatedly reached this conclusion under similar circumstances, for example where "both parties requested continuances; [defendant] suffered no significant prejudice; and there was nothing to indicate bad faith on the part of the government." *Loera*, 565 F.3d at 411; *see also Killingsworth*, 507 F.3d at 1090 (reversing dismissal with prejudice as abuse of discretion where the defendant "conceded that the government did not intentionally cause the delay and that he suffered no prejudice."). This reasoning applies with even greater force here, where there is—at a minimum—substantial doubt about whether the Speedy Trial Act applies at all.

For these reasons, if the Court concludes that the Speedy Trial Act applies, the

government respectfully asks this Court to dismiss the order to show cause without prejudice.[6]

## II.    The Double Jeopardy Clause Does Not Apply.

Trudeau's second motion to dismiss claims the $37.6 million judgment against him in the civil case was actually a criminal punishment, and so an additional prosecution for criminal contempt violates the double jeopardy clause.  R. 12.  This argument is meritless.

Trudeau made the same argument before the case was reassigned, and Judge Gettleman rejected it.  03 CV 3904, R. 437 at 5, 8 & n.7.  That ruling is the law of the case, and this Court may revisit the issue only if the prior decision was "obviously wrong" or there has been a change in the law.  *Minch v. City of Chicago*, 486 F.3d 294, 301-02 (7th Cir. 2007) (law of the case doctrine applies when a case has been reassigned to a new judge); *see also United States v. Nechy*, 827 F.2d 1161, 1164 (7th Cir. 1987) (law of the case doctrine applies to criminal cases).  There has been no change in the law, and Judge Gettleman's decision was not obviously wrong; it was correct.

It does not violate the double jeopardy clause when a court imposes civil and criminal contempt sanctions for the same conduct.  *See Yates v. United States*, 355 U.S. 66, 74 (1957); *United States v. Lippitt*, 180 F.3d 873, 875-76 (7th Cir. 1999); *United*

---

[6] If the Court concludes that the Speedy Trial Act does not apply, but that even if the Act did apply, the Court would dismiss the order to show cause without prejudice, the government requests that the Court simply dismiss the order without prejudice and enter a new order.

17

*States v. Ryan*, 810 F.2d 650, 652 (7th Cir. 1987). The double jeopardy clause protects only "against the imposition of multiple *criminal* punishments for the same offense." *Hudson v. United States*, 522 U.S. 93, 99 (1997). "[W]hether a contempt is civil or criminal turns on the 'character and purpose' of the sanction involved." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994) (quoting *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 441 (1911)). "[T]he touchstone of criminal contempt" is "to vindicate the authority of the court." *United States v. Griffin*, 84 F.3d 820, 827 (7th Cir. 1996). In contrast, "[a] contempt fine . . . is considered civil and remedial if it . . . compensate[s] the complainant for losses sustained.'" *Bagwell*, 512 U.S. at 829 (quoting *United States v. Mine Workers*, 330 U.S. 258, 303-04 (1947)); *FTC v. Trudeau*, 579 F.3d at 769.

The $37 million civil judgment did not vindicate the court's authority; it compensated consumers for their losses resulting from Trudeau's misrepresentations of *The Weight Loss Cure* book. In explaining the remedy, the district court quoted from the Seventh Circuit's decision in *FTC v. Trudeau*, and found "that the consumers who purchased the <u>Weight Loss Cure</u> book as a result of the infomercials did so based on Trudeau's 'outright lies' and misrepresentations that 'induc[ed] consumers to purchase the book on false hopes and assumptions' that they would lose weight by following an 'easy' protocol, which was anything but easy." 03 CV 3904, R. 335 at 4 (quoting *FTC v. Trudeau*, 579 F.3d at 767). The district court concluded that the consumers Trudeau deceived in the infomercials deserved to be compensated for the money they spent on the book. 03 CV 3904, R. 335 at 6-7. Accordingly, the court calculated consumer loss

18

to be over $37 million, based on sales of the book through the "800" telephone number displayed during the deceptive infomercials, minus the number of books returned from those sales. *Id.* at 7 & n.6. Finally, the court provided for the administration of this remedy, directing the FTC to distribute the money to consumers who bought the book in response to the deceptive infomercials, and to return to Trudeau any amount left over. *Id.* at 12. This ruling contained each of the "key ingredients" the Seventh Circuit specified when it remanded the case to the district court to reconsider the remedy. *FTC v. Trudeau*, 579 F.3d at 770.[7]

Trudeau claims that the court got it wrong, and that it is likely many consumers lost weight and liked the book. R.12 at 6. Trudeau made these and other arguments to the Seventh Circuit when he appealed the remedy decision, and that appeal remains pending before the court of appeals. Trudeau's double jeopardy argument asks this Court to conclude—apparently based only on the text of the district court's remedy order—that there is "*no evidence* of actual consumer injury," R.12 at 3 (emphasis added), that therefore the civil fine was wrongly calculated, and that it was wrongly calculated in a way that makes it criminal. He asks this Court to draw each of those conclusions before the Seventh Circuit has addressed his challenges to the civil fine on appeal. There is no reason to do so.

---

[7] Trudeau faults the district court's order for stating that a different remedy would fail to deter Trudeau from future contempt. R. 12 at 7-8. The Supreme Court has recognized that "deterrence may serve civil as well as criminal goals," and has rejected the notion that "the mere presence of a deterrent purpose renders such sanction 'criminal' for double jeopardy purposes." *Hudson*, 522 U.S. at 105 (quotations omitted).

The Seventh Circuit has already made clear that "for the $37.6 million judgment to stand, we must conclude that the sanction was a 'civil' one." *FTC v. Trudeau*, 579 F.3d at 769; *id.* at 770 ("for the sanction to stand, it must 'compensate the complainant for losses sustained.'") (quoting *United Mine Workers*, 330 U.S. at 303-04). If the court of appeals concludes that the fine is not sufficiently tied to consumer injury, in other words, if the fine goes beyond the type of fine that may be imposed in a civil proceeding, the court will reverse the fine and remand for further proceedings, just as it did in *FTC v. Trudeau* itself. Put simply, the fine ultimately imposed in the civil proceedings will never be a criminal penalty, because if the Seventh Circuit concludes that it is a criminal penalty, the court will reverse it.[8]

As Judge Gettleman correctly concluded, Trudeau has not been, and will not be, convicted of a crime or punished criminally in the civil proceedings. This Court should reject the double jeopardy argument.

---

[8] Trudeau's double jeopardy argument is limited to the fine; he does not contend that the $2 million performance bond is a criminal punishment.

20

**CONCLUSION**

For the foregoing reasons, the government asks the Court to deny Trudeau's motions to dismiss the order to show cause.

Dated: June 21, 2011

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

By:     /s/ Marc Krickbaum
        MARC KRICKBAUM
        Assistant United States Attorney
        219 South Dearborn Street
        Chicago, Illinois  60604
        (312) 469-6052