UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Plaintiff, | ) | |
| | ) | Case No. 10-CR-886 |
| v. | ) | |
| | ) | Judge Ronald A. Guzman |
| KEVIN TRUDEAU, | ) | |
|     Defendant. | ) | |
| | ) | |

**KEVIN TRUDEAU'S RESPONSE MEMORANDUM IN OPPOSITION TO GOVERNMENT'S MOTION TO AMEND ORDER TO SHOW CAUSE**

From the inception of this proceeding, both the court and the Government have regarded the case as the equivalent of a misdemeanor. Judge Gettleman issued an Order to Show Cause on April 16, 2010, three-and-a-half years after civil litigation on the exact same issue had commenced. Judge Gettleman was entirely familiar with the issues raised in his Order to Show Cause, yet stated that he would seek to impose a sentence "not to exceed six months." (Case No. 03 C 3904 (hereafter "Case 3904"), Docket Entry 339.) In August 2010, after three-and-a-half months of investigation, the Government agreed and told Judge Gettleman that it would not seek a sentence of more than six months. (Case 3904, Docket Entry 406 at 1 n.1.) In September 2010, shortly before the matter was reassigned to this Court, Judge Gettleman stated that he had "decided that this [case] would *not* be prosecuted as … the equivalent of a felony," but as the equivalent of "a misdemeanor." (Ex. A, 9/29/10 Tr. at 27 (emphasis added).) Now, after having taken no action on this case for five months, the Government asserts that this is an egregious contempt for which there should be no cap on the potential sentence.

The Government argues that the "nature of the offense" and Trudeau's "background" justify eliminating any cap on the potential sentence. But, nothing has changed since the Government agreed with Judge Gettleman that this matter should be treated like a misdemeanor,

except that: (1) the case was reassigned to this Court; and (2) the Speedy Trial Act clock has expired. The nature of the "offense" and Trudeau's "background" were fully apparent to the Government in August 2010, when it agreed that the matter should be treated as a misdemeanor. Moreover, Judge Gettleman has been fully aware of the nature of the alleged "offense" for the past three-and-a-half years, and of Trudeau's litigation with the FTC for the past 14 years, yet capped any potential sentence to six months.

The only conduct on the part of Trudeau that is before this Court is the alleged disobedience of an agreed court order by mischaracterizing the content of his book. Though we disagree that there should be any criminal prosecution at all,[1] the Government has provided no basis for this Court to second-guess Judge Gettleman and deviate from his evaluation of the alleged offense as being the equivalent of a misdemeanor.

## BACKGROUND

Judge Gettleman has presided over Trudeau's civil litigation with the FTC for the past 14 years, and over the currently pending civil contempt proceedings for the past three-and-a-half years. Below we summarize: (1) the FTC settlement agreements that Judge Gettleman approved; (2) the history of the current civil contempt proceeding, over which Judge Gettleman presided; and (3) the history of the current criminal contempt proceeding, over which Judge Gettleman presided until he submitted the case for reassignment in October 2010.

**A.      Trudeau Settles FTC Lawsuits**

In 1998 and 2004, Trudeau entered into consent orders with the FTC. In neither case was there a trial or any adjudication that Trudeau had violated the FTC Act or any other law. Both

---

[1] Trudeau has filed a Motion for Dismissal Pursuant to the Speedy Trial Act and a Motion for Dismissal Under the Double Jeopardy Clause, which are currently being briefed.

settlement agreements recited that there had been no admission or finding of wrongdoing. (Ex. B, 1998 Stip. Order at 2; Ex. C, 2004 Stip. Order at 3.)[2]

In the 2004 Stipulated Order, Trudeau agreed to restrict his infomercials to the promotion of books and other publications. (Ex. C at 7-8.) He further agreed that his book-infomercials would not "misrepresent the content" of the book being promoted. (*Id.* at 8.) Compliance with that restriction did not require that the content of the book be true, or that any protocol or remedy described in the book be efficacious. Consistent with the First Amendment, it required that the infomercial accurately reflect what the book is about and what it says.

As an example of what would be permissible under the Order, the parties agreed and told Judge Gettleman that Trudeau's infomercial for his book *Natural Cures "They" Don't Want You to Know About* was compliant with the Order. (Ex. D, 9/2/04 Tr. at 10.) The *Natural Cures* infomercial was deemed compliant because, regardless of whether the FTC agreed that the remedies described in the *Natural Cures* book were in fact "cures," the infomercial faithfully reflected what the book said about natural cures.

During the ensuing months, in full compliance with the Stipulated Order, the *Natural Cures* infomercial was broadcast nationwide, and the *Natural Cures* book was number one for several weeks on the *New York Times* Best Sellers List. At no time did the FTC make any assertion to Judge Gettleman that the *Natural Cures* infomercials violated the 2004 Stipulated Order.

---

[2] Judge Gettleman held Trudeau in civil contempt in June 2004 for violation of the Stipulated Preliminary Injunction that preceded the 2004 Stipulated Final Order. But there was no finding that Trudeau had violated any law. Judge Gettleman found that Trudeau violated his agreement not to make disease claims about coral calcium during the pendency of the litigation by circulating a flyer that Judge Gettleman found to contain *implied* disease claims. The remedy for that civil contempt finding was folded into the 2004 Stipulated Final Order.

3

B. **The FTC Moves to Have Trudeau Held in Civil Contempt of the 2004 Stipulated Order with Regard to His Weight-Loss Book**

In or about late 2006, Trudeau wrote the book *The Weight Loss Cure "They" Don't Want You to Know About.* Trudeau gave the rights to sell the book to ITV Global, Inc. ("ITV"), which had purchased certain corporate assets from Trudeau-associated companies, and Trudeau appeared in three infomercials for the book that were produced by ITV. With the *Weight Loss* infomercials, Trudeau endeavored to remain in compliance with the 2004 Stipulated Order by following the same format he had followed with the *Natural Cures* infomercials. That is, he endeavored to reflect the content of the book in the infomercials. Though he believed from his own experience that the protocol described in the book was "easy" and would result in permanent weight loss without deprivation, he also believed, based on the FTC's approval of the *Natural Cures* infomercials, that the efficacy of the protocol did not matter and that he would be in compliance so long as his statements in the infomercial reflected the content of the book. (Ex. E, 7/22/08 Tr. at 105-07, 111-13; Ex. F, 7/23/08 Tr. at 123-24.)

ITV began airing the *Weight Loss* infomercial in or about December 2006. The FTC raised no objection for about eight months. Then, on September 13, 2007, the FTC filed a contempt motion, contending that the *Weight Loss* infomercials violated the 2004 Stipulated Order. (Case 3904, Docket Entry 62.) The FTC did not agree that the protocol described in the book was "easy," or that a user could maintain weight loss without deprivation.

Trudeau argued that the *Weight Loss* infomercials followed the *Natural Cures* model, which the FTC had approved, and therefore that he could not fairly be held in contempt of the Stipulated Order. Judge Gettleman nevertheless agreed with the FTC and, on November 16, 2007, issued an order holding Trudeau in civil contempt of the Stipulated Order. Trudeau

4

immediately requested that ITV discontinue the airing of the *Weight Loss* infomercials, and ITV complied with that request.

Judge Gettleman's November 16, 2007 Order indicated that he would schedule a hearing on the issue of the appropriate remedy. On February 4, 2008, Trudeau filed a motion with Judge Gettleman for reconsideration of the civil contempt finding. For the ensuing five months, the parties engaged in discovery, including depositions, and extensive briefing regarding Trudeau's motion for reconsideration and the matter of any appropriate remedy. The parties' counsel appeared before Judge Gettleman four times during that period regarding briefing and discovery issues.

In July 2008, Judge Gettleman held an evidentiary hearing on Trudeau's motion for reconsideration of the contempt finding, and on the appropriate remedy in the event Trudeau's motion for reconsideration was denied. The hearing consumed a total of three days, during which Trudeau and other witnesses presented testimony. The FTC did not present any evidence at trial regarding how any user had actually experienced the weight-loss protocol described in the *Weight Loss* book, or any evidence that any of the approximately 800,000 persons[3] who purchased the book via the *Weight Loss* infomercial believed they had been misled by the infomercials.[4]

On August 7, 2008, Judge Gettleman entered an order denying Trudeau's motion for reconsideration, and entered a judgment for $5,173,000, which Judge Gettleman construed to be the royalties Trudeau had received from sales of the *Weight Loss* book. Judge Gettleman also issued a three-year ban on Trudeau's appearance in infomercials. Judge Gettleman rejected the

---

[3] We base the estimate of *Weight Loss* book sales via the infomercials on the allegations made by the FTC in the civil litigation. It is Trudeau's position that the data the FTC procured from ITV, the purveyor of the *Weight Loss* infomercials, has never been verified. But it is nevertheless not disputed that several hundreds of thousands of *Weight Loss* books were sold via ITV's infomercials.

[4] To this day, there is no such evidence in the record.

5

FTC's request for a $46 million judgment – which was purported to be the total revenue from ITV's infomercial sales of the *Weight Loss* book plus retail sales of the book – stating that he was "not confident that a full refund to every purchaser, whether that purchaser was in fact misled or even now unhappy with the Weight Loss Book, would serve the interests of justice." (Case 3904, Docket Entry 157 at 9.) In fact, there was no evidence before the court that even one purchaser of the *Weight Loss* book had been misled or was unhappy with the book.[5]

Subsequent to entry of the August 7, 2008 judgment, there was extensive post-trial motion practice, pursuant to which the parties appeared before Judge Gettleman on five different occasions. On August 21, 2008, the FTC filed a motion to amend the August 7, 2010 judgment based on a mathematical error, seeking to increase the judgment amount from $5,173,000 to $5,316,359. (Case 3904, Docket Entries 165, 166.) On November 4, 2008, Judge Gettleman entered a Supplemental Order and Judgment in which he *sua sponte* increased the judgment from $5,173,000 to $37.6 million. (Case 3094, Docket Entry 220.) The Supplemental Order did not explain why the judgment had been increased more than sevenfold.

Trudeau appealed Judge Gettleman's judgment to the Seventh Circuit Court of Appeals. Meanwhile, the FTC sought to enforce the judgment. The parties' counsel appeared before Judge Gettleman in two hearings during that period relating to matters of asset discovery.

On August 27, 2009, the Seventh Circuit reversed Judge Gettleman's judgment, finding no explanation for the $37.6 million award, and holding that the ban on infomercials was not an appropriate remedy for civil contempt. *FTC v. Trudeau*, 579 F.3d 754 (7th Cir. 2009). On remand, Judge Gettleman denied Trudeau's requests for additional discovery to present evidence

---

[5] It is noteworthy that, as of the time of the July 2008 hearing, more than a million *Weight Loss* books had been sold via infomercial, Internet, and retail stores, and yet the FTC presented no consumer complaints at trial. Nor have there been any class-action suits or other indications of pervasive dissatisfaction with the book among consumers.

regarding consumer harm or lack thereof. (Case 3904, Docket Entry 335 at 10.) In the proceedings on remand, Judge Gettleman received extensive briefing from the parties, and held five hearings relating to the issue of the appropriate remedy in light of the Seventh Circuit's opinion.[6]

C.  **The Court Issues the Order to Show Cause in This Matter**

On April 16, 2010, Judge Gettleman entered a Supplemental Order reinstating the $37.6 million judgment and issuing an injunction requiring Trudeau to post a $2 million bond as a condition for appearing in infomercials. (Case 3904, Docket Entry 337.) That judgment is currently on appeal in the Seventh Circuit.

At the same time, Judge Gettleman issued the Order to Show Cause in this action. (Case 3904, Docket Entries 338, 339.) Judge Gettleman's Order stated that he would "consider imposing a term of imprisonment not to exceed six months[.]" (Case 3904, Docket Entry 339 at 1.)

At an April 29, 2010 hearing, the Government accepted Judge Gettleman's referral, and asked for time to investigate the case, indicating that "we'd like an opportunity to determine whether we're going to file a request with Your Honor for a proceeding that would be open to the possibility of punishment and imprisonment greater than six months." (Ex. G, 4/29/10 Tr. at 18.) Judge Gettleman replied, "I understand. Okay." (*Id.*)

---

[6] During the pendency of the proceedings on remand, Trudeau asked his radio listeners to communicate with the FTC and the court to express their support for him and his books. A few hundred listeners did so, and, on February 11, 2010, the district court summarily held Trudeau in criminal contempt under Fed. R. Crim. P. 42(b). On February 17, 2010, the district court sentenced Trudeau to 30 days' imprisonment and a $5,000 fine. The Seventh Circuit granted an emergency stay of the sentence, and on May 20, 2010, vacated the sentence and the conviction, holding that the district court had abused its discretion in summarily holding Trudeau in criminal contempt. *FTC v. Trudeau*, 606 F.3d 382 (7th Cir. 2010).

In an August 13, 2010 filing, after having investigated the matter for three-and-a-half months,[7] the Government told the court that it "ha[d] considered whether to seek a prison term longer than six months, and by this filing, informs the Court it will not contest the Court's announcement that it will cap at six months any prison term it may impose at the conclusion of the contempt proceedings." (Case 3904, Docket Entry 406 at 1 n.1.)

On September 10, 2010, Trudeau filed a motion asking Judge Gettleman to recuse himself from the criminal proceeding based on the numerous statements Judge Gettleman had made in written opinions and open court that, in Trudeau's view, created the appearance that Judge Gettleman had prejudged Trudeau's criminal guilt. The Government opposed that motion.

In a September 29, 2010, status hearing that involved, among other things, Trudeau's motion for recusal, Judge Gettleman contemplated whether the matter could be assigned to a magistrate judge, and he stated, "I had decided that this would not be prosecuted as a felony, if you will, or the equivalent of a felony, it really is like a misdemeanor." (Ex. A, 9/29/10 Tr. at 27.)

On October 19, 2010, Judge Gettleman entered an order denying Trudeau's pretrial motions, including his motion for recusal, but he also entered an order referring the matter to the Executive Committee for reassignment to another district judge under a new name and case number. (Case 3904, Docket Entries 435, 436.) On that same date, the matter was reassigned to this Court. (*See* Docket Sheet, Case No. 10 CR 886.)

The Government took no further action in the case until late March 2011, filing an appearance under the new case number on March 29, 2011. (Docket Entry 3.) At the April 7,

---

[7] The government requested and received a 60-day extension to investigate the matter, so that its related filing was due on August 13, 2010.

8

2011 status hearing, the Government announced for the first time that it would ask the Court to consider a sentence exceeding six months. (Ex. H, 4/7/11 Tr. at 4.)

**ARGUMENT**

The Government's motion to lift the six-month cap on any potential jail sentence in this matter should be denied. The Government has provided no valid reason to deviate from Judge Gettleman's assessment that a criminal violation of his Order – in the event that the elements could be proven beyond a reasonable doubt – should be punished by no more than six months' imprisonment. Judge Gettleman has lived with the current contempt proceedings for three-and-a-half years, and has a history with Trudeau that goes back about 14 years. Indeed, no one would dispute that Judge Gettleman does not think highly of Kevin Trudeau. And yet, Judge Gettleman determined that any sentence in this matter should not exceed six months. He was nevertheless open to hearing any argument by the Government that the matter should be treated as though it were something more than a class B misdemeanor. But after three-and-a-half months of investigation, the Government indicated that it agreed with Judge Gettleman's assessment, despite Judge Gettleman's willingness to entertain such a request.

The Government's ostensible basis for belatedly seeking a greater sanction is that "the nature of the offense and the background of the defendant favor the possibility of a longer sentence." (Gov. Mot. at 7.) But neither the "nature of the offense" nor Trudeau's background justifies overruling Judge Gettleman's determination that any sentence in this matter should not exceed six months.

**A.     The "Offense" in This Case Should Not Be Treated as More Than a Misdemeanor**

The Government argues that the *Weight Loss* infomercials in which Trudeau appeared "amounted to a fraud scheme that hoodwinked consumers," and therefore "amounts to more than a petty offense." (Gov. Mot. at 7.) First, it bears repeating that Judge Gettleman is intimately

9

familiar with the "nature of the offense" in this case, yet deliberately chose to limit any sentence to six months.

Second, Judge Gettleman was at least implicitly adhering to the principle that courts should employ the contempt power with great care and restraint. "[D]istrict courts have a special duty to exercise such an extraordinary [contempt] power with the utmost sense of responsibility and circumspection." *Green v. United States*, 356 U.S. 165, 188 (1958), *overruled in part on other grounds by Bloom v. Illinois*, 391 U.S. 194 (1968). In exercising their sentencing discretion under 18 U.S.C. § 401, district courts must consider "factors such as the necessity of achieving compliance with the court's order, the gravity of the offense, [and] the importance of deterring such acts in the future. . . . " *In re Holloway*, 995 F.2d 1080, 1088 (D.C. Cir. 1993) (internal quotation omitted). Among the appropriate considerations is "the seriousness of the consequences of the contumacious behavior[.]" *United States v. United Mine Workers*, 330 U.S. 258, 303 (1947).

Here, there has been no showing of a need for deterrence, or that the allegedly contumacious conduct had any serious consequences. As to any need for deterrence, it has been four years since Trudeau terminated the conduct that Judge Gettleman found to be in violation of the 2004 Stipulated Order. There have been no allegations since then that Trudeau violated the Order. In fact, after Judge Gettleman's finding, Trudeau immediately took steps to prevent violations of the Consent Order from occurring in the future. As to serious consequences, there is nothing in the record demonstrating that even a single consumer believed he or she was misled or was otherwise injured. In the absence of any showing that there is a need for deterrence or that there has been any harm to consumers, the Government cannot show that Judge Gettleman abused his discretion in not prescribing a longer sentence. The Government has not pointed to

any fact or circumstance that was unknown to Judge Gettleman or the Government in April 2010, August 2010, or September 2010 that militates for a sentence longer than six months.

**B.      Trudeau's "Background" Does Not Justify an Enhanced Sentence**

The Government argues that Trudeau's "background . . . favor[s] the possibility of a longer sentence [than six months]." (Gov. Mot. at 7.) The Government refers to Trudeau's unrelated convictions in 1990 and 1991, respectively. (*Id.* at 7-8.) It also repeats the hyperbolic statements that appeared in prior court opinions that Trudeau is a "career contemnor" and has "repeatedly violated" the court's orders and deceived consumers. (*Id.* at 7.) None of those considerations – all of which Judge Gettleman was acutely aware – justifies deviating from Judge Gettleman's limitation on the maximum sentence.

*First*, Judge Gettleman was fully aware of Trudeau's 20-year-old convictions. He refers to them on the first page of his November 16, 2007 contempt order. (Case 3904, Docket Entry 93, at 1 n.2.) Yet he nevertheless chose to limit any sentence for a conviction here to six months. Moreover, Trudeau has long ago paid his debt to society resulting from those offenses. While a defendant's criminal history may be a relevant factor under the federal sentencing guidelines (assuming the guidelines apply here), Trudeau's 20-year-old convictions would be a negligible factor at best. Moreover, even if Trudeau's remote "criminal history" might be relevant to determining a sentence within a statutorily prescribed range, the Government provides no authority or argument for relying on 20-year-old convictions to convert what amounts to a misdemeanor into the equivalent of a felony.

*Second*, with regard to the epithet "career contemnor," those are essentially Judge Gettleman's words, and, as shown above, Judge Gettleman nevertheless deemed it appropriate to limit any sentence to six months. More importantly, the epithet is not factually accurate. Trudeau was held in civil contempt on one occasion prior to the current proceeding. In June

2004, he was held to have breached the agreed preliminary injunction that preceded the 2004 Stipulated Order by circulating a flyer that was adjudged to have impliedly made claims that Trudeau had agreed not to make. There was no finding that Trudeau had violated any law. There have been no contempt findings in the nearly four years since Trudeau was found to have violated the 2004 Stipulated Order with his appearances in the *Weight Loss* infomercials. To characterize Trudeau as a "career contemnor" is an unfair exaggeration and not a proper basis for converting this matter from a misdemeanor to a felony.

*Third*, with regard to Trudeau's supposed "repeated … deception of consumers" (Gov. Mot. at 7), the Government is apparently referring to Trudeau's litigation with the FTC in which it was *alleged* that he deceived consumers. The FTC filed two lawsuits against Trudeau, one in 1998 and one in 2003. Both cases were *settled* without any adjudication that Trudeau had violated any law or had deceived consumers. Both consent orders expressly recited that there had been no finding of wrongdoing. The Government wants to treat those settlement agreements as though they were plea agreements or judgments on the merits. They were no such thing. The FTC accepted Trudeau's offers of payment and self-imposed restrictions in exchange for the representations that there had been no finding of liability. The Government should not now be allowed to pretend that the FTC actually secured adjudications of consumer deception.

**CONCLUSION**

For the foregoing reasons, Trudeau respectfully submits that the Government's Motion to Amend the Order to Show Cause should be denied.

Dated: June 21, 2011

                                          Respectfully submitted,

                                          KEVIN TRUDEAU

                                          By: ___/s/ Kimball R. Anderson_____
                                                   One of His Attorneys

Kimball R. Anderson (kanderson@winston.com)
Thomas L. Kirsch (tkirsch@winston.com)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
312-558-5600

Daniel J. Hurtado (dhurtado2@att.net)
Law Office of Daniel J. Hurtado
841 North Grove Avenue
Oak Park, Illinois 60302
708-289-2503

**CERTIFICATE OF SERVICE**

      I, Kimball R. Anderson, an attorney, hereby certify that on June 21, 2011, I caused to be served true copies of Kevin Trudeau's Response Memorandum in Opposition to Government's Motion to Amend Order to Show Cause by filing such document through the Court's Electronic Case Filing System, which will send notification of such filing to:

Marc Krickbaum
United States Attorney's Office
219 South Dearborn Street
Suite 500
Chicago, IL 60604


      /s/ Kimball R. Anderson
      Kimball R. Anderson
      Attorney for Kevin Trudeau