## <u>INDEX OF EXHIBITS</u>

Exhibit A – Excerpt of pages of Transcript of Proceedings on September 29, 2010, 2:00 p.m. before the Honorable Robert W. Gettleman.

Exhibit B – Stipulated Order for Permanent Injunction and Final Judgment Against Kevin Trudeau, dated January 14, 1998.

Exhibit C – Stipulated Final Order for Permanent Injunction and Settlement of Claims for Monetary Relief, dated September 2, 2004.

Exhibit D – Excerpt of pages of Transcript of Proceedings on September 2, 2004, 2:00 p.m. before the Honorable Robert W. Gettleman.

Exhibit E – Excerpt of pages of Transcript of Proceedings on July 22, 2008, 10:00 a.m. before the Honorable Robert W. Gettleman.

Exhibit F – Excerpt of pages of Transcript of Proceedings on July 23, 2008, 10:00 a.m. before the Honorable Robert W. Gettleman.

Exhibit G – Excerpt of pages of Transcript of Proceedings on April 29, 2010, 2:30 p.m. before the Honorable Robert W. Gettleman.

Exhibit H – Excerpt of pages of Transcript of Proceedings on April 7, 2011, 10:30 a.m. before the Honorable Robert W. Gettleman.

# Exhibit A

1

1            IN THE UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF ILLINOIS
2                   EASTERN DIVISION

3
   FEDERAL TRADE COMMISSION,        )
4                                   )
                    Plaintiff,      )
5                                   ) No. 03 C 3904
              vs.                   ) Chicago, Illinois
6                                   ) September 29, 2010
   KEVIN TRUDEAU,                   ) 2:00 p.m.
7                                   )
                    Defendant.      )
8

9              TRANSCRIPT OF PROCEEDINGS - MOTION

10           BEFORE THE HONORABLE ROBERT W. GETTLEMAN

11  APPEARANCES:

12  For the Plaintiff:     HON. PATRICK J. FITZGERALD
                           United States Attorney
13                         219 South Dearborn Street
                           Chicago, Illinois 60604
14                         BY:  MR. MARC L. KRICKBAUM

15  For the Defendant:     WINSTON & STRAWN LLP
                           35 West Wacker Drive
16                         Chicago, Illinois 60601
                           BY:  MR. KIMBALL R. ANDERSON
17                              MR. THOMAS KIRSCH, II

18

19

20

21

22

23  Official Reporter:     JENNIFER S. COSTALES, CRR, RMR
                           219 South Dearborn Street
24                         Room 1706
                           Chicago, Illinois 60604
25                         (312) 427-5351

1    (Proceedings in open court.)

2         THE CLERK:  03 C 3904, FTC versus Kevin Trudeau.

3         MR. KRICKBAUM:  Good afternoon.

4         Mark Krickbaum on behalf of the United States.

5         MR. ANDERSON:  Kimball Anderson and Tom Kirsch on behalf

6    of Mr. Trudeau.

7         THE COURT:  Okay.  So we're here at last for argument on

8    the objections to the rule to show cause and on the motion to

9    recuse.

10        So I think the ball is in the defendant's court, so why

11   don't we begin with, Mr. Anderson, are you going to argue?

12        MR. ANDERSON:  Mr. Kirsch is going to handle that.

13        THE COURT:  Okay.

14        MR. KRICKBAUM:  Thank you, Your Honor.

15    (Discussion off the record.)

16        MR. KIRSCH:  Well, Your Honor, I can do this however

17   you'd like.  I can address the response to the show cause, or I

18   can address the recusal, or I can address them both.  But it is

19   not my intention to repeat the arguments that we made in our

20   brief.  I'm happy to answer questions that you may have.

21        THE COURT:  Okay.  Well, why don't you cover both,

22   because they're so related.  I do have some, you know, some

23   questions as well.  And we don't have to structure this so

24   formally that you're restrained in any way.

25        MR. KIRSCH:  Okay.  Well, Your Honor, with respect to

1       MR. ANDERSON:  I think what --

2       THE COURT:  We normally hash these out in a typical

3  criminal case when we get into the pretrial jury instructions,

4  and we get into the elements and defenses and that sort of thing,

5  alibi or whatever it happens to be, that kind of thing usually

6  gets fleshed out so everybody is prepared before we start the

7  trial.  This is definitely different than that.

8       I'm sorry, Mr. Anderson, you started to say something?

9       MR. ANDERSON:  I think Mr. Kirsch addressed it.

10      MR. KIRSCH:  Although, Your Honor, I can say

11  Mr. Trudeau's -- our relationship with the U.S. Attorney's office

12  here in this case and I think Mr. Krickbaum is very good, there

13  is no reason to think that we couldn't address some issues.

14      THE COURT:  I have no thought that it would be anything

15  other than that.

16      MR. ANDERSON:  I guess I'll volunteer what I was going

17  to volunteer.  And I say this tentatively, because we're a long

18  ways from it, but I think it's safe to say that the defendant

19  will be presenting evidence and witnesses that the Court has not

20  previously heard from.  That's all I was going to add.

21      THE COURT:  That's helpful to know.

22      MR. ANDERSON:  I thought that was the gist of your

23  question.

24      THE COURT:  Well, I didn't want to suggest anything.

25  But that is helpful to know.

1       All right.  I'm going to give you a ruling date on this

2  and hopefully get you something before that if I can, and if I

3  do, maybe we can get together even before that date.  But given

4  my schedule and everything else that's happening in life, I'm

5  going to set this for ruling October 22nd.  And we'll make it at

6  10:00 o'clock.  That's a Friday.

7       And I'm going to exclude time until then, because we

8  will be setting a motion schedule.  Of course, we'll be ruling on

9  this motion.  And at that point -- well, we'll see, I mean, if I

10 recuse myself here, this is going to go back on the wheel and --

11 maybe I shouldn't share all my musings, but I'll share this one.

12      Because both the government -- because I had decided

13 that this would not be prosecuted as a felony, if you will, or

14 the equivalent of a felony, it really is like a misdemeanor.  I

15 would be curious as to whether or not it could actually be heard

16 by a magistrate judge if I were to recuse myself.  I'm not asking

17 you for a reaction to that.  It's just a thought that occurred to

18 me as I was reading all these materials.

19      MR. ANDERSON:  I don't know the answer, if that's a

20 rhetorical question or hypothetical.

21      THE COURT:  The magistrate judge assigned to the case is

22 Judge.  So he will not be the one to do it, I can assure you.

23      MR. ANDERSON:  Yes.  I don't know the answer to your

24 question.

25      I would like to add just in closing that I appreciate

1 Your Honor's observations about your assumption that we looked at

2 this very carefully and did not file it lightly.  And, you know,

3 in fact, I can't remember a similar occasion, but this is a very

4 unusual case.  And looking at all the facts and listening

5 carefully to our client, we thought that this was in our client's

6 best interest.  So I appreciate your awareness that we filed the

7 motion after great, great thought.

8          THE COURT:  I think we understand each other,

9 Mr. Anderson.

10          MR. KRICKBAUM:  Judge, just a couple of things for the

11 record.  Is there an objection from the defense to the exclusion

12 of time?

13          MR. KIRSCH:  No, Your Honor.

14          THE COURT:  Okay.

15          MR. KRICKBAUM:  The other point, Judge, is that

16 Mr. Trudeau has I believe this morning filed an additional motion

17 that's noticed up for next week, is that correct?

18          MR. ANDERSON:  Yes, we did.

19          MR. KRICKBAUM:  If the Court would like us to make an

20 appearance on that next week, that's fine.  I can tell the Court

21 right now the government simply has no position on the motion.

22 It's a motion to amend the Court's order.

23          THE COURT:  I saw a motion had come in.  I haven't

24 looked at it.

25          MR. KRICKBAUM:  So, Judge, if you want us to show up

1  next week, we'll of course be here.  I can tell you right now we

2  simply have no position on the motion.

3          THE COURT:  Okay.  Well, then I'll leave it up to you.

4          MR. KRICKBAUM:  Okay.  Thank you, Judge.

5          THE COURT:  Okay.  I'll see you then.

6          MR. ANDERSON:  Thank you.

7          THE COURT:  When is it up for?

8          MR. KRICKBAUM:  I think it's October 5th that it has

9  been noticed.

10          Thank you.

11          THE COURT:  Okay.

12          MR. ANDERSON:  That's correct.

13          THE COURT:  All right.

14      (Proceedings concluded.)

15              C E R T I F I C A T E

16          I, Jennifer S. Costales, do hereby certify that the
   foregoing is a complete, true, and accurate transcript of the
17  proceedings had in the above-entitled case before the Honorable
   ROBERT W. GETTLEMAN, one of the judges of said Court, at Chicago,
18  Illinois, on September 29, 2010.

19

20                          /s/ Jennifer Costales, CRR, RMR
                            Official Court Reporter
21                          United States District Court
                            Northern District of Illinois
22                          Eastern Division

23

24

25

# Exhibit B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

**RECEIVED**

JAN 1 2 1998

MICHAEL W. DOBBINS
CLERK, U. S. DISTRICT COURT

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION, | ) |
| Plaintiff, | ) |
|  | ) |
| V. | ) |
|  | ) |
| KEVIN TRUDEAU, | ) |
| individually, | ) |
| Defendant. | ) |

Civil Action No.

# 98 C 0168

JUDGE GETTLEMAN

## STIPULATED ORDER FOR PERMANENT INJUNCTION AND MAGISTRATE JUDGE ROSEMON
## FINAL JUDGMENT AGAINST KEVIN TRUDEAU

Plaintiff, the Federal Trade Commission ("Commission"), has filed a complaint for a permanent injunction and other equitable relief in this matter, pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b), charging defendant Kevin Trudeau with violations of Sections 5 and 12 of the FTC Act, 15 U.S.C. §§ 45 and 52. The Commission, by and through its counsel, and defendant Kevin Trudeau have agreed to the entry of this Stipulated Order for Permanent Injunction and Final Judgment by this Court in order to resolve all matters of dispute between them in this action. The Commission and Kevin Trudeau have consented to entry of this Stipulated Order for Permanent Injunction and Final Judgment without trial or adjudication of any issue of law or fact herein.

NOW, THEREFORE, defendant Kevin Trudeau and the Commission have requested the Court to enter this Stipulated Order for Permanent Injunction and Final Judgment. It is therefore **ORDERED, ADJUDGED AND DECREED** as follows:

## FINDINGS

1.     This Court has jurisdiction over the subject matter of this case and all parties hereto.

2.     This is an action by the Commission instituted under Sections 5 and 13(b) of the FTC Act, 15 U.S.C. §§ 45 and 53(b). Pursuant to Sections 5 and 13(b), the Commission has authority to seek the relief it has requested.

3.     Concurrently herewith, plaintiff filed its complaint for a permanent injunction and other equitable relief in this matter, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b).

4.     Defendant Kevin Trudeau has waived all claims under the Equal Access to Justice Act, 28 U.S.C. § 2412, and all rights to seek judicial review or otherwise to challenge the validity of this Stipulated Order for Permanent Injunction and Final Judgment.

5.     Entry of this Order is in the public interest.

6.     This Stipulated Order for Permanent Injunction and Final Judgment does not constitute and shall not be interpreted to constitute either an admission by defendant Kevin Trudeau or a finding by the Court that defendant Kevin Trudeau has engaged in violations of the FTC Act or of any other facts alleged in the complaint.

## ORDER

## DEFINITIONS

For purposes of this Stipulated Order for Permanent Injunction and Final Judgment, the following definitions shall apply:

1.     "Competent and reliable scientific evidence" shall mean tests, analyses, research, studies, or other evidence based on the expertise of professionals in the relevant area, that has been

conducted and evaluated in an objective manner by persons qualified to do so, using procedures generally accepted in the profession to yield accurate and reliable results.

2.      Unless otherwise specified, "defendant" shall mean Kevin Trudeau, individually and his agents, representatives and employees, and those persons in active concert or participation with him who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any corporation, subsidiary, division, or other device.

3.      "In or affecting commerce" shall mean as defined in Section 4 of the Federal Trade Commission Act, 15 U.S.C. § 44.

## I.

**IT IS ORDERED** that defendant, directly or through any corporation, subsidiary, division, or other device, in connection with the labeling, advertising, promotion, offering for sale, sale, or distribution of Eden's Secret Nature's Purifying Product or any substantially similar product in or affecting commerce, shall not represent, in any manner, expressly or by implication, that:

A.      Such product causes significant weight loss;

B.      Such product prevents or cures illnesses, including but not limited to fatigue, headaches, depression, arthritis, insomnia, immune suppression, and premenstrual syndrome;

C.      Such product will cleanse the body of harmful toxins; or

D.      Such product will purify the body's blood supply.

For purposes of this Part, "substantially similar product" shall mean any herbal-based product that is substantially similar in ingredients, composition, and properties.

3

## II.

**IT IS FURTHER ORDERED** that defendant, directly or through any corporation, subsidiary, division, or other device, in connection with the labeling, advertising, promotion, offering for sale, sale, or distribution of Sable Hair Farming System or any substantially similar product in or affecting commerce, shall not represent, in any manner, expressly or by implication, that:

A.  Such product will stop, prevent, cure, relieve, reverse or reduce hair loss;

B.  Such product will promote the growth of hair where hair has already been lost; or

C.  Such product is superior to Rogaine and Minoxidil in stopping, preventing, curing, relieving, reversing or reducing hair loss.

For purposes of this Part, "substantially similar product" shall mean any product that is substantially similar in ingredients, composition and properties.

## III.

**IT IS FURTHER ORDERED** that defendant, directly or through any corporation, subsidiary, division, or other device, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any hair care product or drug, as "drug" is defined in Section 15 of the Federal Trade Commission Act, in or affecting commerce, shall not represent, that any product promotes hair growth or prevents hair loss, unless the product is the subject of an approved new drug application for such purpose under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §301 et seq., provided that, this requirement shall not limit the requirements of Order Part II herein.

4

## IV.

**IT IS FURTHER ORDERED** that defendant, directly or through any corporation, subsidiary, division, or other device, in connection with the labeling, advertising, promotion, offering for sale, sale, or distribution of Kevin Trudeau's Mega Memory System or any substantially similar product in or affecting commerce, shall not represent, in any manner, expressly or by implication, that such product will enable users to achieve a photographic memory; provided, however, that this Section shall not prohibit representations which comply with Section X of this Order that visualization and association techniques can improve memory, that memory can be visual in nature, that memory includes images of events and experiences, and that visualization and association techniques can help an individual to form and access visual memories. For purposes of this Part, "substantially similar product" shall mean any product or program that is substantially similar in components, techniques, composition and properties.

## V.

**IT IS FURTHER ORDERED** that defendant, directly or through any corporation, subsidiary, division, or other device, in connection with the labeling, advertising, promotion, offering for sale, sale, or distribution of Kevin Trudeau's Mega Memory System or any substantially similar product in or affecting commerce, shall not make any representation, in any manner expressly or by implication, that such product is effective in causing adults or children with learning disabilities or attention deficit disorder to substantially improve their memory unless, at the time the representation is made, defendant possesses and relies upon competent and reliable evidence, which when appropriate must be competent and reliable scientific evidence, that substantiates the representation. For purposes of this Part, "substantially similar product"

5

shall mean any product or program that is substantially similar in components, techniques, composition and properties.

## VI.

**IT IS FURTHER ORDERED** that defendant, directly or through any corporation, subsidiary, division, or other device, in connection with the labeling, advertising, promotion, offering for sale, sale, or distribution of Dr. Callahan's Addiction Breaking System or any substantially similar product in or affecting commerce, shall not represent, in any manner, expressly or by implication, that:

    A.    Such product reduces an individual's compulsive desire to eat, leading to significant weight loss;

    B.    Such product reduces an individual's compulsive desire to eat, leading to significant weight loss without the need to diet or exercise; or

    C.    Such product cures addictions and compulsions, including but not limited to, smoking, eating, and using alcohol or heroin.

For purposes of this Part, "substantially similar product" shall mean any product or program that is substantially similar in components, techniques, composition and properties.

## VII.

**IT IS FURTHER ORDERED** that defendant, directly or through any corporation, subsidiary, division, or other device, in connection with the labeling, advertising, promotion, offering for sale, sale, or distribution of Jeanie Eller's Action Reading or any other product or program that provides instruction in learning how to read in or affecting commerce, shall not make any representation, in any manner, expressly or by implication, concerning:

6

A.   The extent to which individuals who use such product will learn to read, or

B.   The success rate of individuals who use such product,

unless, at the time the representation is made, defendant possesses and relies upon competent and

reliable evidence, which when appropriate must be competent and reliable scientific evidence,

that substantiates the representation.

## VIII.

**IT IS FURTHER ORDERED** that defendant, directly or through any corporation,

subsidiary, division, or other device, in connection with the labeling, advertising, promotion,

offering for sale, sale, or distribution of Howard Berg's Mega Reading or any substantially

similar product in or affecting commerce, shall not represent, in any manner, expressly or by

implication, that such product is successful in teaching anyone, including adults, children and

disabled individuals, to increase their reading speed above 800 words per minute while

substantially comprehending and retaining the material. For purposes of this Part, "substantially

similar product" shall mean any product or program that is substantially similar in components,

techniques, composition and properties.

## IX.

**IT IS FURTHER ORDERED** that defendant, directly or through any corporation,

subsidiary, division, or other device, in connection with the labeling, advertising, promotion,

offering for sale, sale, or distribution of any product or program in or affecting commerce, shall

not misrepresent, in any manner, expressly or by implication, the existence, contents, validity,

results, conclusions or interpretations of any test, study, or research.

7

## X.

**IT IS FURTHER ORDERED** that defendant, directly or through any corporation, subsidiary, division, or other device, in connection with the labeling, advertising, promotion, offering for sale, sale, or distribution of any product or program in or affecting commerce, shall not make any representation, in any manner, expressly or by implication, about the benefits, performance, or efficacy of such product, unless, at the time the representation is made, defendant possesses and relies upon competent and reliable evidence, which when appropriate must be competent and reliable scientific evidence, that substantiates the representation.

## XI.

**IT IS FURTHER ORDERED** that defendant, directly or through any corporation, subsidiary, division, or other device, in connection with the labeling, advertising, promotion, offering for sale, sale, or distribution of any product or program in or affecting commerce, shall not represent, in any manner, expressly or by implication, that the experience represented by any user testimonial or endorsement of the product represents the typical or ordinary experience of members of the public who use the product, unless:

    A.       At the time it is made, defendant possesses and relies upon competent and reliable evidence, which when appropriate must be competent and reliable scientific evidence, that substantiates the representation; or

    B.       Defendant discloses, clearly and prominently, and in close proximity to the endorsement or testimonial, either:

           1.       what the generally expected results would be for users of the product, or

8

2.     the limited applicability of the endorser's experience to what consumers

may generally expect to achieve, that is, that consumers should not expect

to experience similar results.

Nothing contrary to, inconsistent with, or in mitigation of the disclosure shall be

used in any advertisement or on any label.

## XII.

**IT IS FURTHER ORDERED** that defendant, directly or through any corporation,

subsidiary, division, or other device, in connection with the labeling, advertising, promotion,

offering for sale, sale, or distribution of any product or program in or affecting commerce, shall

not create, produce, sell, or disseminate:

A.     Any advertisement that misrepresents, directly or by implication, that it is not a

paid advertisement;

B.     Any television commercial or other video advertisement fifteen (15) minutes in

length or longer or intended to fill a broadcasting or cablecasting time slot of

fifteen (15) minutes in length or longer that does not display visually, clearly and

prominently, and for a length of time sufficient for an ordinary consumer to read,

within the first thirty (30) seconds of the advertisement and immediately before

each presentation of ordering instructions for the product or service, the following

disclosure:

"THE PROGRAM YOU ARE WATCHING IS A PAID

ADVERTISEMENT FOR [THE PRODUCT OR SERVICE]."

9

Provided that, for the purposes of this provision, the oral or visual presentation of

a telephone number, e-mail address or mailing address for viewers to contact for

further information or to place an order for the product or service shall be deemed

a presentation of ordering instructions so as to require the display of the disclosure

provided herein; or

C. Any radio commercial or other radio advertisement five (5) minutes in length or

longer that does not broadcast, clearly and audibly, within the first thirty (30)

seconds of the advertisement and immediately before each presentation of

ordering instructions for the product or service, the following disclosure:

"THE PROGRAM YOU ARE LISTENING TO IS A PAID

ADVERTISEMENT FOR [THE PRODUCT OR SERVICE]."

Provided that, for the purposes of this provision, the presentation of a telephone

number, e-mail address or mailing address for listeners to contact for further

information or to place an order for the product or service shall be deemed a

presentation of ordering instructions so as to require the announcement of the

disclosure provided herein.

## XIII.

Nothing in this order shall prohibit defendant from making any representation for any

drug that is permitted in labeling for such drug under any tentative final or final standard

promulgated by the Food and Drug Administration, or under any new drug application approved

by the Food and Drug Administration.

10

## XIV.

Nothing in this order shall prohibit defendant from making any representation for any product that is specifically permitted in labeling for such product by regulations promulgated by the Food and Drug Administration pursuant to the Nutrition Labeling and Education Act of 1990.

## XV.

Nothing in this order shall be constituted as a waiver of defendant's right to engage in speech protected by the First Amendment to the Constitution of the United States.

## XVI.

IT IS FURTHER ORDERED that in the event that conditions of fact or law have so changed that such change would require modification of this order pursuant to Section 5(b) of the Federal Trade Commission Act, 15 U.S.C. §45(b), and Section 2.51(b) of the Commission's Rules of Practice, 16 C.F.R. §2.51(b), were those provisions applicable to this order, such change may, upon the making of a proper motion and proper showing, constitute a reason justifying relief from the operation of the affected Section of this order within the meaning of Rule 60(b)(6) of the Federal Rules of Civil Procedure. Such change would include, but not be limited to, the existence of competent and reliable scientific evidence that substantiates the prohibited statements in this order. This Section is intended to reflect the intent of the parties that this order may be modified to the same extent, and subject to the same procedural and evidentiary standards, as would be the case were this order issued as an Order of the Federal Trade Commission pursuant to Section 5(b) of the Federal Trade Commission Act, 15 U.S.C. § 45(b).

11

## XVII.

**IT IS FURTHER ORDERED** that after October 1, 1997, or the date of entry of this

Order, whichever occurs later, defendant Kevin Trudeau shall in connection with the advertising,

promoting, offering for sale, selling, or distributing any product or program to the general public

by means of an infomercial, obtain and maintain in force a performance bond in the principal

sum of five hundred thousand dollars ($500,000). Said bond shall be conditioned upon

compliance by defendant Trudeau with provisions of this Order. The bond shall be deemed

continuous and remain in full force and effect as long as defendant Trudeau continues to

advertise, promote, offer for sale, sell, or distribute any such product or program, directly or

indirectly, to the general public by means of an infomercial, and for at least five (5) years after he

has ceased any such activity. The bond shall cite this Order as the subject matter of the bond and

provide surety against defendant's failure to pay any consumer redress or disgorgement that may

be ordered in consequence of the violation thereof. Such performance bond shall be an insurance

agreement providing surety issued by a surety company that is admitted to do business in a state

in which defendant Trudeau is doing business and that holds a Federal Certificate of Authority as

Acceptable Surety on Federal Bonding and Reinsuring. Defendant Trudeau shall provide a copy

of such performance bond to the Federal Trade Commission prior to the commencement of any

business for which such bond is required.

Provided, however, in lieu of a performance bond, defendant Trudeau may establish and

fund, pursuant to the terms set forth herein, an escrow account in the principal sum of five

hundred thousand dollars ($500,000) in cash, or such other assets of equivalent value, which the

Commission, or its representative, in its sole discretion may approve. Defendant Trudeau shall

12

maintain such amount in that account for so long as he continues to advertise, promote, offer for sale, sell, or distribute any product or program to the general public by means of an infomercial, and for at least five (5) years after he has ceased any such activity. Defendant Trudeau shall pay all costs associated with the creation, funding, operation, and administration of the escrow account. The Commission, or its representative, shall, in its sole discretion, select the escrow agent. The escrow agreement shall be in substantially the form attached to this Order as Exhibit A.

The performance bond or escrow agreement shall provide that the surety company or escrow agent, within thirty (30) days following receipt of notice that a final judgment or an order of the Commission against defendant Trudeau for consumer redress or disgorgement in an action brought pursuant to this order or under the provisions of the Federal Trade Commission Act has been entered, or, in the case of an order of the Commission, has become final, finding that Trudeau has violated the terms of this Order or the Federal Trade Commission Act, and determining the amount of consumer redress or disgorgement to be paid, shall pay to the Commission so much of the performance bond or funds of the escrow account as is equal to the lesser of: (a) the amount of consumer redress or disgorgement ordered and which remains unsatisfied at the time notice is provided to the surety company or escrow agent, or (b) the amount of the bond or escrow fund, provided that, if defendant has agreed to the entry of a court order or an order of the Commission, a specific finding that defendant violated the terms of this Order or the provisions of the Federal Trade Commission Act shall not be necessary. A copy of the notice provided for herein shall be mailed to defendant Trudeau at his last known address.

13

Defendant Trudeau may not disclose the existence of the performance bond or escrow account to any consumer, or other purchaser or prospective purchaser, to whom a product, program, or device is advertised, promoted, offered for sale, sold, or distributed by means of an infomercial, without also disclosing at the same time and in a like manner that the performance bond or escrow account is required by order of the United States District Court for the Northern District of Illinois in settlement of charges that defendant Trudeau engaged in false and misleading representations.

Provided, further, that from October 1, 1997, or from the date of entry of this Order, whichever occurs later, until December 31, 1997, the obligation to obtain and maintain in force a performance bond or, in the alternative, to establish and fund an escrow account, as set forth in this Section, may be fulfilled by maintaining either a bond or an escrow account, as provided herein, in the amount of two hundred and fifty thousand dollars ($250,000) in lieu of the $500,000 amount set forth herein. During any period after entry of this Order during which defendant Trudeau shall maintain a bond or an escrow account of less than five hundred thousand dollars ($500,000), defendant Trudeau shall furnish the Commission with a copy of each infomercial with respect to which this Section would require a bond or escrow account to be maintained at least seven (7) business days before the infomercial is placed on the air. The absence of a Commission objection to any such infomercial after the infomercial is submitted to the Commission shall not be construed as Commission approval of the infomercial.

The obligations imposed under this Section will terminate twenty (20) years from the date of entry of this Order, or twenty (20) years from the most recent date of filing of any action (with or without an accompanying consent decree) alleging any violation of this Order, whichever

14

comes later; provided, however, that the filing of such an action will not affect the duration of

this Section if such action is filed after the Section has terminated pursuant to this paragraph.

Provided, further, that if such action is dismissed or if the court rules that defendant did not

violate any provision of this Order, and the dismissal or ruling is either not appealed or upheld on

appeal, then the obligations imposed under this Section will terminate according to this

paragraph as though the action had never been filed, except that the obligations imposed under

this Section will not terminate between the date such action is filed and the later of the deadline

for appealing such dismissal or ruling and the date such dismissal or ruling is upheld on appeal.

## XVIII.

**IT IS FURTHER ORDERED** that:

A.    Defendant Kevin Trudeau shall pay to the Federal Trade Commission by

electronic funds transfer the sum of five hundred thousand dollars ($500,000) no

later than five (5) days after the date of entry of this Stipulated Order by the

Court. In the event of any default on any obligation to make payment under this

Part, interest, computed pursuant to 28 U.S.C. §1961(a) shall accrue from the date

of default to the date of payment.

B.    The funds paid by defendant Kevin Trudeau, pursuant to subpart A above, shall

be paid into a redress fund administered by the Commission and shall be used to

provide direct redress to purchasers of certain products promoted by defendant

Kevin Trudeau. Payment to such persons represents redress and is intended to be

compensatory in nature, and no portion of such payment shall be deemed a

payment of any fine, penalty, or punitive assessment. If the Commission

15

determines, in its sole discretion, that redress to purchasers is wholly or partially

impracticable, any funds not so used shall be paid to the United States Treasury.

C.     Notwithstanding any other provision of this Stipulated Order for Permanent

Injunction and Final Judgment, defendant Kevin Trudeau agrees that, if he fails to

meet the payment obligations set forth in subpart A above, defendant Kevin

Trudeau shall pay the costs and attorneys fees incurred by the Federal Trade

Commission and its agents in any attempts to collect amounts due pursuant to this

Stipulated Order for Permanent Injunction and Final Judgment. Defendant Kevin

Trudeau further agrees that the facts as alleged in the Complaint filed with this

Stipulated Order for Permanent Injunction and Final Judgment shall be taken as

true in any subsequent litigation filed by the Federal Trade Commission related to

a nondischargeability complaint in any subsequent bankruptcy proceeding.

## XIX.

**IT IS FURTHER ORDERED** that, within three (3) business days after the date of entry

of this Stipulated Order by the Court, defendant Kevin Trudeau shall submit to the Commission a

truthful sworn statement in the form shown on Exhibit B of this Stipulated Order that shall

reaffirm and attest to the truthfulness, accuracy and completeness of the respective financial

statement as of May 31, 1997 signed by Kevin Trudeau on or about August 4, 1997. The

Commission's agreement to this Stipulated Order is expressly premised upon the financial

condition of defendant Kevin Trudeau as represented in the respective financial statement

referenced above, which contain material information upon which the Commission relied in

negotiating and agreeing upon this Stipulated Order for Permanent Injunction and Final

16

Judgment. If, upon motion by the Commission, this Court finds that defendant Kevin Trudeau failed to file the sworn statement required by this section, the Commission may request that the judgment herein be reopened for the purpose of requiring additional monetary consumer redress or obtaining other equitable relief; provided, however, that in all other respects this judgment shall remain in full force and effect, unless otherwise ordered by this Court; and provided further, that proceedings instituted under this section in that event are in addition to and not in lieu of any other civil or criminal remedies as may be provided by law, including, but not limited to, contempt proceedings, or any other proceedings the Commission may initiate to enforce this Stipulated Order for Permanent Injunction and Final Judgment. If, upon motion by the Commission, this Court finds that defendant Kevin Trudeau failed to disclose any material asset, or materially misrepresented the value of any asset, or made any other material misrepresentation in or omissions from his respective financial statements referenced above, the Commission may request that the judgment herein be reopened for the purpose of adding the value of the undisclosed assets to the redress fund as described in Paragraph XVIII(B).

## XX.

**IT IS FURTHER ORDERED** that, in order to facilitate the Commission's monitoring of compliance with the provisions of this permanent injunction, defendant Kevin Trudeau shall, for five (5) years after the date of entry of this Order:

A.  Notify the Commission in writing, within thirty (30) days after service of this Order, of his current residence address and employment status, including the name and business address of his current employer(s), if any;

17

B.    Notify the Commission in writing within thirty (30) days of any change in his principal residential address. Such notification shall include the defendant's new address and telephone number;

C.    Notify the Commission in writing within thirty (30) days of any change in his employment status; such notice shall include the name, address and telephone number of the defendant's new employer, a statement of the nature of the business, and a statement of the defendant's duties and responsibilities in connection with the business;

D.    Notify the Commission in writing at least thirty (30) days prior to the effective date of any proposed change in the structure of any business entity owned or controlled by defendant, such as creation, incorporation, dissolution, assignment, sale, creation or dissolution of subsidiaries, or any other changes that may affect compliance obligations arising out of this Order;

E.    Upon seven (7) days notice from the Commission, permit duly authorized representatives of the Commission access during normal business hours to the offices of any company or any person under defendant's control, to inspect and copy all documents belonging to defendant and all documents of any company owned or controlled by defendant, in whole or in part, relating in any way to any conduct subject to this Order;

F.    Refrain from interfering with duly authorized representatives of the Commission who wish to interview defendant's employers, agents, and employees (all of

18

whom may have counsel present) relating in any way to any conduct subject to this Order;

G.    Upon thirty (30) days written notice by any duly authorized representative of the Commission, submit written reports (under oath, if requested) and produce documents with respect to any conduct subject to this Order; and

H.    Appear on fifteen (15) days notice for deposition with respect to any conduct subject to this Order.

Provided further, that the Commission may otherwise monitor defendant's compliance with this Order by the use of investigators posing as consumers, potential investors, suppliers and other entities, to the same extent to which such means would be lawful were the Commission or the Commission's attorneys not aware of any representation of defendant by counsel.

## XXI.

**IT IS FURTHER ORDERED** that defendant shall, for five (5) years after the last date of dissemination of any representation covered by this order, maintain and upon request make available to the Federal Trade Commission for inspection and copying:

A.    All advertisements and promotional materials containing the representations;

B.    All materials that were relied upon in disseminating the representations; and

C.    All tests, reports, studies, surveys, demonstrations, or other evidence in their possession or control that contradict, qualify, or call into question the representation, or the basis relied upon for the representation, including complaints and other communications with consumers or with governmental or consumer protection organizations.

19

## XXII.

.IT IS FURTHER ORDERED that all notices required of defendant by this Order shall be made to the following address: Federal Trade Commission, Regional Director, 55 East Monroe, Suite 1860, Chicago, IL 60603, or such other address as Plaintiff shall specify.

## XXIII.

IT IS FURTHER ORDERED that, within sixty (60) days after the date of entry of this Order, defendant shall file a report with the Commission setting forth the manner and form in which he has complied with this Order.

## XXIV.

IT IS FURTHER ORDERED that each party to this Stipulated Order for Permanent Injunction and Final Judgment hereby agrees to bear it. own costs and attorney fees incurred in connection with this action; provided, however, in the event that the Federal Trade Commission initiates proceedings to enforce the provisions of this Stipulated Order for Permanent Injunction and Final Judgment and provided further the Court determines that defendant Kevin Trudeau has violated any term or provision of this Stipulated Order for Permanent Injunction and Final Judgment, the defendant Kevin Trudeau shall pay reasonable costs and attorney fees incurred by the Federal Trade Commission in connection with proceedings to enforce this Stipulated Order for Permanent Injunction and Final Judgment.

## XXV.

**IT IS FURTHER ORDERED** that this Court retains jurisdiction of this matter for all
purposes.


**SO ORDERED,** this ___14th___ day of ___JAN___, 1998 at _____.

_Robert W. Gettleman_

_____
United States District Judge

21

The parties agree and stipulate to entry of the foregoing Order for Permanent Injunction and Final Judgment.

For the FEDERAL TRADE COMMISSION

_____

RUSSELL W. DAMTOFT
MARY ELIZABETH TORTORICE
CHARULATA B. PAGAR
Attorneys for Plaintiff
Federal Trade Commission
55 East Monroe Street, Suite 1860
Chicago, IL 60603
(312) 353-8156

For the DEFENDANT

_____

DAVID J. BRADFORD
Attorney for Defendant Kevin Trudeau
Jenner & Block
One IBM Plaza
Chicago, IL 60611
(312) 527-0484

DEFENDANT

_____

KEVIN TRUDEAU, Individually

22

## EXHIBIT A

THIS ESCROW AGREEMENT, made and entered into this _____ day of _____, _____, by and between Kevin Trudeau (hereinafter "Trudeau"); and the Federal Trade Commission, an agency of the Government of the United States of America, by and through _____ (hereinafter "FTC"); and _____ (hereinafter "Escrow Agent");

### WITNESSETH:

WHEREAS, the FTC and Trudeau have entered into a Stipulated Order for Permanent Injunction and Final Judgment (hereinafter "Stipulated Order"), a copy of which is attached hereto as Attachment A; and

WHEREAS, the Stipulated Order requires that Trudeau in connection with the advertising, promoting, offering for sale, selling, or distributing any product or program to the general public by means of an infomercial, obtain and maintain in force an escrow account, under the terms and conditions specified in the Stipulated Order;

NOW, WHEREFORE, in accordance with the terms of the Stipulated Order, which are incorporated herein by reference, the parties covenant and agree as follows:

1.      By October 1, 1997, or by the date of entry of the Stipulated Order, whichever occurs later, Trudeau shall establish an Escrow Account at _____, to be styled Trudeau Escrow Account, _____, Escrow Agent.  Trudeau shall deposit into the Escrow Account the amount required by Section XVII of the Stipulated Order.

2.      The Escrow Agent shall be the sole signatory on the Escrow Account and access to the funds held in that account shall be solely through the Escrow Agent.  It is understood by the parties to this Escrow Agreement that upon the signing of this Agreement, Trudeau relinquishes to the Escrow Agent, all legal title to the escrow funds, except as to such amounts in the Escrow Account that are in excess of five hundred thousand dollars ($500,000).  Until and unless the Escrow Account is terminated as provided for herein, Trudeau agrees to make no claim to or demand for return of the funds, directly or indirectly, through counsel or otherwise; and, in the event of bankruptcy, Trudeau acknowledges that the funds are not part of Trudeau's estate, nor does the estate have any claim or interest therein.

3.      The Escrow Agent and the parties hereto agree that the escrow funds shall be held only in accordance with the terms of the Stipulated Order and the Escrow Agreement.  Trudeau shall pay all costs associated with the creation, funding, operation, and administration of the Escrow Account as they become due.  In the event that Trudeau fails to pay such costs as they become due, the Escrow Agent shall pay the costs from the interest earned on the escrow funds.

4.    The escrow funds may be invested from time to time, to the extent possible, in United States Treasury Bills having a remaining maturity of 90 days or less or repurchase obligations secured by such United States Treasury Bills with any remainder being deposited and maintained in a money market deposit account with Escrow Agent. Escrow Agent is authorized to liquidate in accordance with its customary procedures any portion of the escrowed funds consisting of investments to provide for payments required to be made under this Agreement.

5.    The Escrow Agent, within thirty days following receipt of notice that a final judgment or an order of the Commission against Trudeau for consumer redress or disgorgement in an action brought under the provisions of the Federal Trade Commission Act has been entered, or, in the case of an order of the Commission, has become final, finding that he has violated the terms of the Stipulated Order or the provisions of the Federal Trade Commission Act, and determining the amount of consumer redress or disgorgement to be paid, which notice also shall be mailed to Trudeau at his last known address, shall pay to the Commission so much of the funds of the Escrow Account as is equal to the lesser of: (a) the amount of consumer redress or disgorgement ordered and which remains unsatisfied at the time notice is provided to the Escrow Agent, or (b) the amount of the escrow funds, provided that, if Trudeau has agreed to the entry of a court order or an order of the Commission, a specific finding that Trudeau violated the terms of the Stipulated Order or the provisions of the Federal Trade Commission Act shall not be necessary. The Escrow Agent shall have the power to convert to cash so much of the Escrow Account assets as are necessary to satisfy the obligations of the judgment or order.

6.    The Escrow Account shall continue until at least five years after Trudeau last advertises, promotes, offers for sale, sells, or distributes any product or program to the general public by means of an infomercial, at which time, if there are no pending FTC investigations, legal or administrative actions by the FTC against Trudeau, or unsatisfied obligations pursuant to a judgment or order described in paragraph 5 herein, for which a claim could be made against the escrow funds under the terms of the Stipulated Order, the FTC shall, upon Trudeau's request, instruct the Escrow Agent to terminate the Escrow Account and return the balance of the Escrow Account to Trudeau. At such time, the Escrow Agent shall be fully and completely released from its agency as herein described. The legal title to the escrow funds shall vest in Trudeau at such time as the Escrow Agent, pursuant to instructions from the FTC, returns the funds to Trudeau.

In Witness hereof, each of the parties has caused this Escrow Agreement to be executed on its behalf by its duly authorized representatives.

DATED: _____

_____
Kevin Trudeau

_____

2

For the Federal Trade Commission

_____

For the Escrow Agent

3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

FEDERAL TRADE COMMISSION,    )
        Plaintiff,    )
                 )
        V.        )      Civil Action No.
                 )
KEVIN TRUDEAU,    )
    individually,    )
        Defendant.    )

### EXHIBIT B TO
### STIPULATED ORDER FOR PERMANENT INJUNCTION AND
### FINAL JUDGMENT AGAINST KEVIN TRUDEAU

I, Kevin Trudeau, hereby state that the information contained in the financial statement and related papers provided to the Federal Trade Commission on _____, 199_ was true, accurate and complete at such time.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____      _____

                                 Kevin Trudeau

# Exhibit C

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | **03 C 3904** | **DATE** | Sept. 2, 2004 |
| **CASE TITLE** | Federal Trade Commission v Kevin Trudeau, et al | | |

MOTION:  [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Hearing

(5) ☐ Status hearing held.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]

### Stipulated Final order for permanent injunction and settlement of claims entered.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| X | No notices required, advised in open court. | | | | |
| | No notices required. | | number of notices | | |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | date docketed | | 56 |
| | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | |
| GS | courtroom deputy's initials | | date mailed notice | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | | |

Minute Order Form (06/97)

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | **DOCKETED** |
| Plaintiff | SEP 3 2004 |
| v. | Civ. No. 03-C-3904 |
| KEVIN TRUDEAU, SHOP AMERICA (USA), LLC, SHOP AMERICA MARKETING GROUP, LLC, TRUSTAR GLOBAL MEDIA, LIMITED, ROBERT BAREFOOT, DEONNA ENTERPRISES, INC., and KARBO ENTERPRISES, INC. | Judge Gettleman |
| Defendants, and | |
| K.T. CORPORATION, LIMITED, and TRUCOM, LLC, | |
| Relief Defendants. | |

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | |
| Plaintiff | Civ. No. 98-C-0168 |
| v. | Judge Gettleman |
| KEVIN TRUDEAU, | |
| Defendant. | |

**STIPULATED FINAL ORDER FOR PERMANENT INJUNCTION AND SETTLEMENT OF CLAIMS FOR MONETARY RELIEF AS TO DEFENDANTS KEVIN TRUDEAU, SHOP AMERICA (USA), LLC, SHOP AMERICA MARKETING GROUP, LLC, TRUSTAR GLOBAL MEDIA, LIMITED AND RELIEF DEFENDANTS K.T. CORPORATION, LIMITED, AND TRUCOM, LLC**



Plaintiff, the Federal Trade Commission ("Commission") has filed a Complaint for Permanent Injunction and Other Equitable Relief ("Complaint") against Kevin Trudeau, Shop America (USA), LLC, Shop America Marketing Group, and TruStar Global Media ("Defendants"), and K.T. Corp. and TruCom, LLC ("Relief Defendants"), pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), alleging deceptive acts or practices and false advertisements in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52. Additionally, on June 9, 2003, the Commission moved this Court for entry of an order holding Kevin Trudeau in contempt of the Stipulated Order for Permanent Injunction and Final Judgment Against Kevin Trudeau entered by this court on January 14, 1998 in connection with Civ. No. 98-C-0168.

The Commission, Defendants and Relief Defendants have stipulated to the entry of the following Stipulated Final Order for Permanent Injunction and Settlement of Claims for Monetary Relief as to Defendants Kevin Trudeau, Shop America (USA), L.L.C., Shop America Marketing Group LLC, TruStar Global Media Limited, and Relief Defendants K.T. Corporation Limited and TruCom L.L.C. ("Order") in settlement of the Commission's Complaint against Defendants and Relief Defendants and the Commission's civil contempt action against Kevin Trudeau. Additionally, this Order resolves any additional remedies requested relating to the Court's June 29, 2004 finding of civil contempt against Defendant Kevin Trudeau for violating the preliminary injunction. The Court, being advised in the premises and having conducted a hearing on ___September 2___, 2004 on the subject matter herein, including but not limited to the scope of prohibited activities, finds:

## **FINDINGS**

1.     This Court has jurisdiction over the subject matter of this case. For purposes of this Order, all parties consent to the Court's exercise of personal jurisdiction. Venue in the Northern District of Illinois is proper.

2.     The Complaint states a claim upon which relief can be granted, and the Commission has the authority to seek the relief which is stipulated to in this Order.

3.     The acts and practices of Defendants were and are in or affecting commerce, as defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

4.     Defendants and Relief Defendants waive all rights to seek judicial review of, or otherwise to challenge or contest the validity of, this Order. Defendants and Relief Defendants also waive any claim that they may have held under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action to the date of this Order.

5.     Each party shall bear its own costs and attorneys' fees.

6.     Entry of this Order is in the public interest.

7.     Pursuant to Federal Rule of Civil Procedure 65(d), the provisions of this Order are binding upon Defendants and Relief Defendants, and their officers, agents, servants, employees and all other persons or entities in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise.

8.     Defendants and Relief Defendants expressly deny any wrongdoing or liability for any of the matters alleged in the Complaint and the civil contempt action. There have been no findings or admissions of wrongdoing or liability by the Defendants or Relief Defendants other than the finding against Kevin Trudeau for contempt of Part I of the Stipulated Preliminary

Injunction, entered by the Court on June 29, 2004.

9.      This Order supersedes the Stipulated Order for Permanent Injunction and Final

Judgment Against Kevin Trudeau entered by this court on January 14, 1998.

## DEFINITIONS

For the purposes of this Order, the following definitions shall apply:

A.      "Advertisement" means any written or verbal statement, illustration or depiction

that is designed to effect a sale or create interest in the purchasing of goods or services, whether

it appears in a book, brochure, newspaper, magazine, pamphlet, leaflet, circular, mailer, book

insert, free standing insert, letter, catalogue, poster, chart, billboard, public transit card, point of

purchase display, packaging, package insert, label, film, slide, radio, television or cable

television, video news release, audio program transmitted over a telephone system, infomercial,

the Internet, email, or in any other medium.

B.      "Assets" means any legal or equitable interest in, right to, or claim to, any real or

personal property, including, without limitation, chattels, goods, instruments, equipment,

fixtures, general intangibles, leaseholds, mail or other deliveries, inventory, checks, notes,

accounts, credits, contracts, receivables, shares of stock, and all cash, wherever located.

C.      "Assisting others" means knowingly providing any of the following services to

any person or entity:  (a) performing customer service functions for any person or entity (other

than traditional fulfillment services, *i.e.,* storing and shipping product and handling product

returns), including, but not limited to, outbound or inbound telemarketing, upselling, cross-

selling, handling customer complaints (other than returns), credit card or debit account

processing, refund processing, web design and marketing, continuity program development or

implementation, or designing or preparing or assisting in the preparation of product labeling or packaging; (b) formulating or providing, or arranging for the formulation or provision of, any sales script or any other advertising or marketing material for any person or entity; or c) performing advertising or marketing services or consulting services of any kind for any person or entity.

D.  "Commerce" means as defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

E.  "Competent and reliable scientific evidence" means tests, analyses, research, studies, or other evidence based on the expertise of professionals in the relevant area, that has been conducted and evaluated in an objective manner by persons qualified to do so, using procedures generally accepted in the professions to yield accurate and reliable results.

F.  "Continuity Program" means any plan, arrangement, or system pursuant to which a consumer receives periodic shipments of products without prior notification by the seller before each shipment or service period, regardless of any trial or approval period allowing the consumer to return or be reimbursed for the product.

G.  Unless otherwise specified, "Defendants" means:

(1)  Kevin Trudeau ("Trudeau" or "Individual Defendant") individually and in his capacity as an officer or manager of Shop America (USA), L.L.C., Shop America Marketing Group LLC, TruStar Global Media Limited, K.T. Corporation Limited, TruCom, LLC, and TruStar Marketing Corp.;

(2)  Shop America (USA), L.L.C. ("Shop America USA"), a corporation, its divisions and subsidiaries, its successors and assigns, and its officers, agents, representatives, and employees;

        (3)     Shop America Marketing Group LLC ("Shop America Marketing"), a

corporation, its divisions and subsidiaries, its successors and assigns, and

its officers, agents, representatives, and employees; and

        (4)     TruStar Global Media Limited (TruStar Global"), a corporation, its

divisions and subsidiaries, its successors and assigns, and its officers,

agents, representatives, and employees.

H.     Unless otherwise specified, "Corporate Defendants" means Shop America USA,

Shop America Marketing, and TruStar Global.

I.     Unless otherwise specified, "Relief Defendants" means:

        (1)     K.T. Corporation Limited, a corporation, its divisions and subsidiaries, its

successors and assigns, and its officers, agents, representatives, and

employees; and

        (2)     TruCom L.L.C., a corporation, its divisions and subsidiaries, its successors

and assigns, and its officers, agents, representatives, and employees.

J.     "Endorsement" means as defined in 16 C.F.R. § 255.0(b).

K.     "Food," "drug," "cosmetic," and "device" mean as defined in Section 15 of the

FTC Act, 15 U.S.C. § 55.

L.     "FTC" or "Commission" means the Federal Trade Commission.

M.     "Infomercial" means any written or verbal statement, illustration or depiction that

is 120 seconds or longer in duration that is designed to effect a sale or create interest in the

purchasing of goods or services, which appears in radio, television (including network and cable

television), or video news release.

N.     "Target product" means Coral Calcium Supreme capsules or any substantially similar calcium supplement or Biotape or any substantially similar purported pain-relief product.

O.     A requirement that any defendant "notify," "furnish," "provide," or "submit" to the Commission means that the defendant shall send the necessary information via first class mail, costs prepaid, or via overnight carrier, to:

Associate Director for Advertising Practices
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington D.C.  20580
Attn: *FTC v. Kevin Trudeau et al.,* (N.D. Ill.)

P.     The terms "and" and "or" in this Order shall be construed conjunctively or disjunctively as necessary, to make the applicable sentence or phrase inclusive rather than exclusive.

Q.     The term "including" in this Order means "including without limitation."

R.     The paragraphs of this Order shall be read as the necessary requirements for compliance and not as alternatives for compliance and no paragraph serves to modify another paragraph unless expressly so stated.

## PROHIBITED BUSINESS ACTIVITIES

### I.

**IT IS THEREFORE ORDERED** that Defendants, directly or through any corporation, partnership, subsidiary, division, trade name, or other entity, and their officers, agents, servants, employees, and all persons and entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any

product, program or service, in or affecting commerce, are hereby permanently enjoined and restrained from producing, disseminating, making or assisting others in making any representation in an infomercial aired or played on any television or radio media (including but not limited to network television, cable television, radio, and television or radio content that is disseminated on the Internet). This Part I does not prohibit Defendants from making any representation in any television or radio media in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any book, newsletter or other informational publication in any format *provided* that such book, newsletter or other informational publication: 1) does not reference, directly or indirectly, any branded or trademarked product, program or service that Defendants are promoting; 2) is not, directly or indirectly, an advertisement for any product, program or service; and 3) is not sold, promoted or marketed, directly or indirectly, in conjunction with any product, program or service that is related to the content of the book, newsletter, informational publication or infomercial. Additionally, the infomercial for any such book, newsletter or informational publication must also comply with the requirements of Part X herein and must not misrepresent the content of the book, newsletter or informational publication. For purposes of this Part I only, and only until December 31, 2004, the prohibition on infomercials does not include infomercials for the Mega Memory System, provided that such Infomercials comply with all other relevant Parts of this Order, including but not limited to Parts II, IV, V, VI, VII and X. For purposes of this Part I only, Defendants will not be deemed to be disseminating television or radio media on the Internet provided that Defendants do not, directly or indirectly, accept, process, or refer to third parties any orders from any addresses in the United States or consumers located in the United States.

## II.

**IT IS FURTHER ORDERED** that Defendants, directly or through any corporation, partnership, subsidiary, division, trade name, or other entity, and their officers, agents, servants, employees, and all persons and entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any product, program or service, in or affecting commerce, are hereby permanently enjoined and restrained from making or assisting others in making, expressly or by implication, including through the use of endorsements or product names, any representation regarding the health benefits of such product, program or service or that such product, program or service can cure, treat, or prevent any disease. This Part II does not prohibit Defendants from making any representation in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any book, newsletter or other informational publication in any format *provided* that such book, newsletter or other informational publication 1) does not reference, directly or indirectly, any branded or trademarked product, program or service that Defendants are promoting; 2) is not, directly or indirectly, an advertisement for any product, program or service; and 3) is not sold, promoted or marketed, directly or indirectly, in conjunction with any product, program or service that is related to the content of the book, newsletter, informational publication or infomercial. Additionally, any representations regarding the book, newsletter or informational publications shall not misrepresent the content of the book, newsletter or informational publication. This Part II prohibits the making of any representations for, among others, the following products: any coral calcium product, Biotape, Eden's Secret

Nature's Purifying Product, Sable Hair Farming System, and Dr. Callahan's Addiction Breaking

System.

### III.

**IT IS FURTHER ORDERED** that Defendants, directly or through any corporation,

partnership, subsidiary, division, trade name, or other entity, and their officers, agents, servants,

employees, and all persons and entities in active concert or participation with them who receive

actual notice of this Order by personal service or otherwise, are hereby permanently restrained

and enjoined from manufacturing, labeling, advertising, promoting, offering for sale, sale, or

distribution of any product containing coral calcium, *provided* that until December 31, 2004,

Defendants are not prohibited from selling or shipping coral calcium to consumers who are

currently enrolled in a coral calcium continuity program and who enrolled in that coral calcium

continuity program prior to December 24, 2003.

### IV.

**IT IS FURTHER ORDERED** that Defendants, directly or through any corporation,

partnership, subsidiary, division, trade name, or other entity, and their officers, agents, servants,

employees, and all persons and entities in active concert or participation with them who receive

actual notice of this Order by personal service or otherwise, in connection with the

manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any

product, program or service, in or affecting commerce, are hereby permanently restrained and

enjoined from making or assisting others in making, expressly or by implication, including

through the use of endorsements or product names, any representation about the benefits,

performance, or efficacy of any product, program or service unless the representation is true and

non-misleading.

## MISREPRESENTATION OF TESTS OR STUDIES

### V.

**IT IS FURTHER ORDERED** that Defendants, directly or through any corporation, partnership, subsidiary, division, trade name, or other entity, and their officers, agents, servants, employees, and all persons and entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any product, program or service, in or affecting commerce, are hereby permanently restrained and enjoined from making or assisting others in making, expressly or by implication, including through the use of endorsements or product names, any misrepresentation about the existence, contents, validity, results, conclusions, or interpretations of any test or study.

## PROHIBITED BUSINESS ACTIVITIES FROM JANUARY 1998 ORDER

### VI.

**IT IS FURTHER ORDERED** that Defendant Trudeau, directly or through any corporation, subsidiary, division, or other device, in connection with the labeling, advertising, promotion, offering for sale, sale, or distribution of Kevin Trudeau's Mega Memory System or any substantially similar product in or affecting commerce, shall not represent, in any manner, expressly or by implication, including through the use of endorsements or product names, that such product will enable users to achieve a photographic memory; provided, however, that this Part shall not prohibit representations that visualization and association techniques can improve memory, that memory can be visual in nature, that memory includes images of events and

experiences, and that visualization and association techniques can help an individual to form and access visual memories, provided such representations comply with Part IV of this Order.

## VII.

**IT IS FURTHER ORDERED** that Defendant Trudeau, directly or through any corporation, subsidiary, division, or other device, in connection with the labeling, advertising, promotion, offering for sale, sale, or distribution of Kevin Trudeau's Mega Memory System or any substantially similar product in or affecting commerce, shall not make any representation, in any manner expressly or by implication, including through the use of endorsements or product names, that such product is effective in causing adults or children with learning disabilities or attention deficit disorder to substantially improve their memory.

## VIII.

**IT IS FURTHER ORDERED** that Defendant Trudeau, directly or through any corporation, subsidiary, division, or other device, in connection with the labeling, advertising, promotion, offering for sale, sale, or distribution of Jeanie Eller's Action Reading or any other product or program that provides instruction in learning how to read in or affecting commerce, shall not make any representation, in any manner, expressly or by implication, including through the use of endorsements or product names, concerning:

    A.    The extent to which individuals who use such product will learn to read, or

    B.    The success rate of individuals who use such product,

unless, at the time the representation is made, defendant possesses and relies upon competent and reliable evidence, which when appropriate must be competent and reliable scientific evidence,

that substantiates the representation.

## IX.

**IT IS FURTHER ORDERED** that Defendant Trudeau, directly or through any corporation, subsidiary, division, or other device, in connection with the labeling, advertising, promotion, offering for sale, sale, or distribution of Howard Berg's Mega Reading or any substantially similar product in or affecting commerce, shall not represent, in any manner, expressly or by implication, including through the use of endorsements or product names, that such product is successful in teaching anyone, including adults, children and disabled individuals, to increase their reading speed above 800 words per minute while substantially comprehending and retaining the material.

## X.

**IT IS FURTHER ORDERED** that Defendant Trudeau, directly or through any corporation, subsidiary, division, or other device, in connection with the labeling, advertising, promotion, offering for sale, sale, or distribution of any product or program in or affecting commerce, shall not create, produce, sell, or disseminate:

A.       Any advertisement that misrepresents, directly or by implication, that it is not a paid advertisement;

B.       Any television commercial or other video advertisement fifteen (15) minutes in length or longer or intended to fill a broadcasting or cablecasting time slot of fifteen (15) minutes in length or longer that does not display visually, clearly and prominently, and for a length of time sufficient for an ordinary consumer to read, within the first thirty (30) seconds of the advertisement and immediately before each presentation of ordering instructions for the product

Page 13 of 29

or service, the following disclosure:

"THE PROGRAM YOU ARE WATCHING IS A PAID ADVERTISEMENT FOR [THE
PRODUCT OR SERVICE]."

Provided that, for the purposes of this provision, the oral or visual presentation of a
telephone number, e-mail address or mailing address for viewers to contact for further
information or to place an order for the product or service shall be deemed a presentation of
ordering instructions so as to require the display of the disclosure provided herein; or

C.      Any radio commercial or other radio advertisement five (5) minutes in length or
longer that does not broadcast, clearly and audibly, within the first thirty (30) seconds of the
advertisement and immediately before each presentation of ordering instructions for the product
or service, the following disclosure:

"THE PROGRAM YOU ARE LISTENING TO IS A PAID ADVERTISEMENT FOR
[THE PRODUCT OR SERVICE]."

Provided that, for the purposes of this provision, the presentation of a telephone number, e-mail
address or mailing address for listeners to contact for further information or to place an order for
the product or service shall be deemed a presentation of ordering instructions so as to require the
announcement of the disclosure provided herein.

## FIRST AMENDMENT

## XI.

**IT IS FURTHER ORDERED** that, with the exception of any waiver in connection with
Parts I-X herein, nothing in this Order shall constitute a waiver of the Defendants' right to
engage in speech protected by the First Amendment to the Constitution of the United States.

## DESTRUCTION AND/OR TRANSFER OF CUSTOMER LISTS

## XII.

**IT IS FURTHER ORDERED** that:

A.      Defendants and Relief Defendants, and any other entities, owned, directly or indirectly by Defendants and Relief Defendants, shall, within 30 days of entry of this Order, delete or destroy all customer information in their possession, custody or control, with respect to the approximately 10,000-16,000 customers who purchased coral calcium from Defendants after receiving one of the direct mail solicitation letters that was at issue in the Commission's June 5, 2004 motion to find Kevin Trudeau and TruStar Marketing in civil contempt (and the supplemental memorandum in support of that motion).  Defendants and Relief Defendants shall provide written confirmation to the Commission, sworn to under penalty of perjury, that all such customer information has been deleted or destroyed.  Prior to destroying the customer information, a complete set of the information, in proper searchable electronic format, shall be provided to the Commission at Defendants' expense.  For purposes of this Part, "customer information" shall mean information of or relating to consumers collected by the Defendants, including, but not limited to, name, address, billing information, order history, telephone numbers and email addresses.

B.      Defendants and Relief Defendants, and any other entities, owned, directly or indirectly by Defendants and Relief Defendants, shall, within 30 days of entry of this Order, delete or destroy all customer information in their possession, custody or control, with respect to any customers who responded to any of the infomercials that were at issue in the Commission's

June 5, 2004 motion to find Kevin Trudeau and TruStar Marketing in civil contempt (and the supplemental memorandum in support of that motion). Defendants and Relief Defendants shall provide written confirmation to the Commission, sworn to under penalty of perjury, that all such customer information has been deleted or destroyed.

C.     Defendants and Relief Defendants are hereby permanently restrained and enjoined from, directly or indirectly, selling, renting, leasing, transferring, or otherwise disclosing to anyone the name, address, telephone number, credit card number, bank account number, e-mail address, or other identifying information of any person who paid, who was solicited to pay, or whose identifying information was obtained for the purpose of soliciting them to pay, any money to any Defendant in this action at any time prior to the entry of this Order, in connection with the advertising, promotion, telemarketing, offering for sale, or sale of Coral Calcium Supreme or any books authored by Robert Barefoot; provided, however, that Defendants may disclose such identifying information to a law enforcement agency, or as required by any law, regulation, or court order.

## MONETARY RELIEF AND CONSUMER REDRESS

## XIII.

**IT IS FURTHER ORDERED** that Judgment for equitable monetary relief in the amount of two million dollars ($2,000,000) is hereby entered jointly and severally against Defendants and Relief Defendants, which relief shall include, but not be limited to, consumer redress. The Judgment for equitable monetary relief shall be satisfied as follows:

A.     By Defendants and Relief Defendants transferring to the Commission within ten (10) days from the date of entry of this Order title, unencumbered and free of any liens, to: (1) the

property located at 537 Del Oro Drive, Ojai, California, Assessor's Parcel Number (APN) 020-0-221-080; and (2) the 2003 Mercedes Benz SL55/6 purchased by Defendants and Relief Defendants on March 27, 2003 for the amount of $179,294, which have been held in escrow by Jenner and Block as of May 12, 2004.

B.    By Defendants and Relief Defendants directing Jenner and Block within ten (10) days from the date of entry of this Order to pay to the Commission the five hundred thousand dollar ($500,0000) performance bond established pursuant to Part XVII of the 1998 Stipulated Final Order.

C.    All funds paid pursuant to this Order shall be deposited into a fund administered by the Commission or its agent to be used for equitable relief, including but not limited to consumer redress, and any attendant expenses for the administration of such equitable relief. These funds shall be used to provide refunds to consumers who purchased any product containing coral calcium from Defendants in conjunction with the "coral calcium letter" that was at issue in the Court's June 29, 2004 Order finding defendant Trudeau in contempt of court.

D.    In the event that direct redress to consumers is wholly or partially impracticable or funds remain after redress is completed, the Commission may apply any remaining funds for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendants' practices alleged in the Complaint. Any funds not used for such equitable relief shall be deposited to the United States Treasury as disgorgement. Defendants and Relief Defendants shall have no right to challenge the Commission's choice of remedies under this Part. Defendants and Relief Defendants shall have no right to contest the manner of distribution chosen by the Commission. No portion of any payments under the

judgment herein shall be deemed a payment of any fine, penalty, or punitive assessment.

E.     Defendants and Relief Defendants relinquish all dominion, control, and title to the funds paid to and property transferred to the Commission, for use according to the terms of this Order. Defendants and Relief Defendants shall make no claim to or demand for the return of the funds or property, directly or indirectly, through counsel or otherwise; and in the event of bankruptcy of any Defendant or Relief Defendant, Defendants and Relief Defendants acknowledge that the funds and property are not part of the debtor's estate, nor does the estate have any claim or interest therein.

F.     In accordance with 31 U.S.C. § 7701, Defendants and Relief Defendants are hereby required, unless they have done so already, to furnish to the Commission their respective taxpayer identifying numbers (social security numbers or employer identification numbers), if any, which shall be used for the purposes of collecting and reporting on any delinquent amount arising out of Defendants' and Relief Defendants' relationship with the government.

## RIGHT TO REOPEN

## XIV.

**IT IS FURTHER ORDERED** that, within five (5) days after the date of entry of this Order, Defendant Trudeau, individually and on behalf of Defendants Shop America USA, Shop America Marketing and TruStar Global and Relief Defendants K.T. Corp. and TruCom, LLC, shall execute and submit to the Commission a truthful sworn statement that shall acknowledge receipt of this Order. The Commission's agreement to this Order is expressly premised on the truthfulness, accuracy, and completeness of Defendants' and Relief Defendants' financial condition as reflected in the totality of the information provided in the deposition of Defendant

Trudeau (and exhibits thereto) on March 26, 2004, the deposition of Marc J. Lane on March 19, 2004 (and exhibits thereto), the deposition of James Coleman on March 17, 2004 (and exhibits thereto), the deposition of Suneil Sant on March 24, 2004 and upon the information contained in the following documents: November 24, 2003 letter from Marc J. Lane to David Bradford, as modified and updated by information and materials provided to the Commission in communications from Daniel J. Hurtado dated March 5, 2004, March 11, 2004, April 6, 2004 April 11, 2004, April 12, 2004, and April 21, 2004; and the November 7, 2003 e-mail from Daniel J. Hurtado to the Commission staff with attached Excel files entitled "FTCAnalysiscoral2002" and "FTCAnalysiscoral2003." If, upon motion by the Commission, the Court finds that the Defendants' or Relief Defendants' financial information failed to disclose any material asset, materially misrepresented the value of any asset, or made any other material misrepresentation or omission, the Court shall enter judgment for consumer redress against Defendants and Relief Defendants, jointly and severally, in favor of the Commission, in the amount of twenty million dollars ($20,000,000); *provided, however*, that in all other respects this Order shall remain in full force and effect unless otherwise ordered by the Court; and, *provided further*, that proceedings instituted under this Part would be in addition to, and not in lieu of, any other civil or criminal remedies as may be provided by law, including any other proceedings that the Commission may initiate to enforce this Order. For purposes of enforcing this Part only, Defendants and Relief Defendants waive any right to contest any of the allegations in the Complaint.

## DISTRIBUTION OF ORDER BY DEFENDANTS

### XV.

**IT IS FURTHER ORDERED** that, for a period of five (5) years from the date of entry of this Order, Defendants shall deliver copies of the Order as directed below:

A.   Corporate Defendants: must deliver a copy of this Order to all of their principals, officers, directors, and managers. Corporate Defendants also must deliver copies of this Order to all of their employees, agents, and representatives who engage in conduct related to the subject matter of the Order. For current personnel, delivery shall be within (5) days of service of this Order upon Defendants. For new personnel, delivery shall occur prior to them assuming their responsibilities.

B.   Individual Defendant Trudeau as Control Person: For any business that Trudeau controls, directly or indirectly, or in which Trudeau has a majority ownership interest, Trudeau must deliver a copy of this Order to all principals, officers, directors, and managers of that business. Trudeau must also deliver copies of this Order to all employees, agents, and representatives of that business who engage in conduct related to the subject matter of the Order. For current personnel, delivery shall be within (5) days of service of this Order upon Defendant Trudeau. For new personnel, delivery shall occur prior to them assuming their responsibilities.

C.   Individual Defendant Trudeau as employee or non-control person: For any business where Trudeau is not a controlling person of a business but for which Trudeau: 1) produces or appears in an infomercial or other advertising; or 2) provides any consulting services regarding infomercials or advertising, Trudeau

must deliver a copy of this Order to all principals and managers of such business before producing or appearing in infomercials or other advertising or providing any consulting services regarding infomercials or advertising. For any business where Trudeau is not a controlling person of a business but for which Trudeau has appeared in an infomercial or advertising that is related to the subject matter of Parts I - III and VI through IX of this Order, Trudeau must deliver a copy of this Order to all principals and managers of such business within twenty (20) days of entry of this Order.

D.      Corporate and Individual Defendants must secure a signed and dated statement acknowledging receipt of the Order, within thirty days of delivery, from all persons receiving a copy of the Order pursuant to this Part.

## COMPLIANCE MONITORING

## XVI.

**IT IS FURTHER ORDERED** that, for the purpose of monitoring and investigating compliance with any provision of this Order,

A.      Within ten (10) days of receipt of written notice from a representative of the Commission, Trudeau, Shop America USA, Shop America Marketing and TruStar Global each shall submit additional written reports, sworn to under penalty of perjury; produce documents for inspection and copying; appear for deposition; and/or provide entry during normal business hours to any business location in such defendant's possession or direct or indirect control to inspect the business operation;

B.      In addition, the Commission is authorized to monitor compliance with this Order

by all other lawful means, including but not limited to the following:

    1.     obtaining discovery from any person, without further leave of court, using the procedures proscribed by Fed. R. Civ. P. 30, 31, 33, 34, 36, and 45;

    2.     posing as consumers and suppliers to: Kevin Trudeau, Shop America USA, Shop America Marketing or TruStar Global; Trudeau, Shop America USA, Shop America Marketing or TruStar Global's employees, or any other entity managed or controlled in whole or in part by Trudeau, Shop America USA, Shop America Marketing or TruStar Global, without the necessity of identification or prior notice; and

    C.     Trudeau, Shop America USA, Shop America Marketing and TruStar Global shall permit representatives of the Commission to interview any employer, consultant, independent contractor, representative, agent, or employee who has agreed to such an interview, relating in any way to any conduct subject to this Order. The person interviewed may have counsel present.

*Provided*, however, that nothing in this Order shall limit the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1, to obtain any documentary material, tangible things, testimony, or information relevant to unfair or deceptive acts or practices in or affecting commerce (within the meaning of 15 U.S.C. § 45(a)(1)).

## COMPLIANCE REPORTING BY DEFENDANTS

## XVII.

**IT IS FURTHER ORDERED** that, in order that compliance with the provisions of this Order may be monitored:

A.   For a period of five (5) years from the date of entry of this Order,

    1.   Defendant Trudeau shall notify the Commission of the following:

        a.   Any changes in residence, mailing addresses, and telephone numbers of Trudeau, within ten (10) days of the date of such change;

        b.   Any changes in employment status (including self-employment) of Trudeau, and any change in the ownership of Trudeau in any business entity, within ten (10) days of the date of such change. Such notice shall include the name and address of each business that Trudeau is affiliated with, employed by, creates or forms, or performs services for; a statement of the nature of the business; and a statement of Trudeau's duties and responsibilities in connection with the business or employment; and

        c.   Any changes in Trudeau's name or use of any aliases or fictitious names; and

    2.   Trudeau, Shop America USA, Shop America Marketing and TruStar Global shall notify the Commission of any changes in corporate structure of Shop America USA, Shop America Marketing or TruStar Global or any business entity that Trudeau directly or indirectly control(s), or has an ownership interest in, that may affect compliance obligations arising under this Order, including but not limited to a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor entity; the creation or dissolution of a subsidiary, parent, or affiliate that

engages in any acts or practices subject to this Order; the filing of a bankruptcy petition; or a change in the corporate name or address, at least thirty (30) days prior to such change, *provided* that, with respect to any proposed change in the corporation about which the Defendants learn less than thirty (30) days prior to the date such action is to take place, Defendants shall notify the Commission as soon as is practicable after obtaining such knowledge.

B.      Ninety (90) days after the date of entry of this Order, Trudeau, Shop America USA, Shop America Marketing and TruStar Global each shall provide a written report to the FTC, sworn to under penalty of perjury, setting forth in detail the manner and form in which they have complied and are complying with this Order. This report shall include, but not be limited to:

1.      For Defendant Trudeau:

      a.      The then-current residence address, mailing addresses, and telephone numbers of Trudeau;

      b.      The then-current employment and business addresses and telephone numbers of Trudeau, a description of the business activities of each such employer or business, and the title and responsibilities of Trudeau, for each such employer or business; and

      c.      Any other changes required to be reported under subpart A of this Part.

2.      For all Defendants:

        a.      A copy of each acknowledgment of receipt of this Order, obtained

pursuant to Part XV;

        b.      Any other changes required to be reported under subpart A of this

Part; and

        c.      Copies of all then current advertisements, promotional materials,

sales scripts, training materials, or other marketing materials

utilized by Defendants in the advertising, marketing, promotion,

offering for sale, distribution or sale of any product, program or

service in the United States.

C.      For the purposes of this Order, Defendants shall, unless otherwise directed by the

Commission's authorized representatives, mail all written notifications to the Commission to:

> Associate Director the Division of Advertising Practices
> Federal Trade Commission
> 600 Pennsylvania Avenue NW
> Washington DC 20580
> Re: FTC v. Kevin Trudeau, Civil Action No.03-3904.

D.      For the purpose of the compliance reporting and monitoring required by this

Order, Defendants shall provide the Commission with their counsel's name and address for the

purpose of communications regarding this Order and shall notify the Commission of any change

in their counsel for the purpose of this Order.

## RECORD KEEPING PROVISIONS

## XVIII.

**IT IS FURTHER ORDERED** that, for a period of eight (8) years from the date of entry

of this Order, Defendants Kevin Trudeau, Shop America USA, Shop America Marketing and

TruStar Global and any business where Defendant Trudeau is a majority owner or an officer or

director of the business, or directly or indirectly manages or controls the business, and their

agents, employees, officers, corporations, successors, and assigns, and those persons in active

concert or participation with them who receive actual notice of this Order by personal service or

otherwise, are hereby restrained and enjoined from failing to create and retain the following

records:

A.    Accounting records that reflect the cost of goods or services sold, revenues

      generated, and the disbursement of such revenues;

B.    Personnel records accurately reflecting: the name, address, and telephone number

      of each person employed in any capacity by such business, including as an

      independent contractor; that person's job title or position; the date upon which the

      person commenced work; and the date and reason for the person's termination, if

      applicable;

C.    Customer files containing the names, addresses, phone numbers, dollar amounts

      paid, quantity of items or services purchased, and description of items or services

      purchased, to the extent such information is obtained in the ordinary course of

      business;

D.    Complaints and refund requests (whether received directly, indirectly or through

any third party) and any responses to those complaints or requests; and

E.     Copies of all advertisements, promotional materials, sales scripts, training materials, or other marketing materials utilized by any Defendant in the advertising, marketing, promotion, offering for sale, distribution or sale of any product, program or service

F.     All records and documents necessary to demonstrate full compliance with each provision of this Order, including but not limited to, copies of acknowledgments of receipt of this Order, required by Part XV, and all reports submitted to the FTC pursuant to Part XVII;

G.     All materials that were relied upon in making any representations contained in the materials identified in Subpart E, including all documents evidencing or referring to the accuracy of any claim therein or to the efficacy of any product or service, including, but not limited to, all tests, reports, studies, demonstrations, as well as all evidence that confirms, contradicts, qualifies, or calls into question the accuracy of such claims regarding the efficacy of such product or service; and

H.     Records accurately reflecting the name, address, and telephone number of each manufacturer or laboratory engaged in the development or creation of any testing obtained for the purpose of advertising, marketing, promoting, offering for sale, distributing, or selling any dietary supplement, food, drug, cosmetic, device, equipment, program, or service.

## SCOPE OF ORDER

## XIX.

**IT IS FURTHER ORDERED** that this Order resolves claims only against Defendants and Relief Defendants as alleged in the Complaint and in the June 9, 2003 memorandum by the Commission in support of its Order to Show Cause. This Order does not preclude the Commission from initiating further action or seeking any remedy against any other persons or entities, including without limitation persons or entities who may be subject to portions of this Order by virtue of actions taken in concert or participation with Defendants and persons or entities in any type of indemnification or contractual relationship with Defendants. This Order resolves any claim by the Commission arising out of the assignment of claims from Robert Barefoot to the Commission that is set forth in the Stipulated Final Order for Permanent Injunction and Settlement of Claims for Monetary Relief as to Defendants Robert Barefoot, Deonna Enterprises, Inc. and Karbo Enterprises, Inc. that was entered by this Court on January 15, 2004.

## ACKNOWLEDGMENT OF RECEIPT OF ORDER BY DEFENDANT(S)

## XX.

**IT IS FURTHER ORDERED** that each Defendant and Relief Defendant, within five (5) business days of receipt of this Order as entered by the Court, must submit to the Commission a

truthful sworn statement acknowledging receipt of this Order.

## RETENTION OF JURISDICTION

## XXI.

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for

purposes of construction, modification and enforcement of this Order.

**IT IS SO ORDERED**, this 2<sup>d</sup> day of September, 2004

UNITED STATES DISTRICT JUDGE
ROBERT W. GETTLEMAN

**SO STIPULATED:**

HEATHER HIPPSLEY
DANIEL KAUFMAN
LAURA M. SULLIVAN
PETER MILLER
Federal Trade Commission
600 Pennsylvania Avenue, NW, NJ-3212
Washington, DC 20580
(202) 326-3285, -2675, -3327 (voice)
(202) 326-3259 (fax)
dkaufman@ftc.gov or lsullivan@ftc.gov

TODD KOSSOW
KAREN D. DODGE
FEDERAL TRADE COMMISSION
55 E. Monroe Street, Suite 1860
Chicago, IL 60603-5173
(312) 960-5616, -5608 (voice)
(312) 960-5600 (fax)
tkossow@ftc.gov
ATTORNEYS FOR PLAINTIFF

KEVIN TRUDEAU
Individually

KEVIN TRUDEAU
manager or director of Shop America (USA),
LLC, Shop America Marketing Group,
TruStar Global Media, Ltd., K.T. Corp and
TruCom, LLC

DAVID BRADFORD
Jenner & Block
One IBM Plaza
Chicago, IL 60611-7603
312-923-2975 (voice)
312-840-7375 (fax)
ATTORNEYS FOR DEFENDANTS
AND RELIEF DEFENDANTS

# Exhibit D

1

1          IN THE UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF ILLINOIS
2                   EASTERN DIVISION

3   FEDERAL TRADE COMMISSION,        )
                                     )
4                  Plaintiff,        )
                                     )   No. 03 C 3904
5              vs.                   )   Chicago, Illinois
                                     )   September 2, 2004
6   KEVIN TRUDEAU, SHOP AMERICA      )   2:00 o'clock p.m.
    (USA) LLC,                       )
7                                    )
                   Defendants.       )
8                                    )

9          TRANSCRIPT OF PROCEEDINGS - MOTION

10       BEFORE THE HONORABLE ROBERT W. GETTLEMAN

11  APPEARANCES:

12  For the Plaintiff:        FEDERAL TRADE COMMISSION
                              600 Pennsylvania Avenue, NW, NJ-3212
13                            Washington, DC 20580
                              BY:  MR. DANIEL KAUFMAN
14                                 MS. HEATHER HIPPSLEY

15
    For Defendant Trudeau and  JENNER & BLOCK, LLC
16  Shop America:             One IBM Plaza
                              Chicago, Illinois 60611
17                            BY:  MR. DAVID J. BRADFORD
                                   MR. DANIEL J. HURTADO
18
    ALSO PRESENT:
19                            Mr. Kevin Trudeau

20

21

22

23  Official Court Reporter:  JENNIFER S. COSTALES, CRR, RMR
                              219 South Dearborn Street
24                            Room 1706
                              Chicago, Illinois 60604
25                            (312) 427-5351

1    (Proceedings in open court.)

2         THE CLERK:  03 C 3904, FTC versus Trudeau.

3         MR. BRADFORD:  Good afternoon, Your Honor.

4    David Bradford on behalf of the defendants.

5         MS. HIPPSLEY:  Good afternoon.

6         Heather Hippsley on behalf of the Federal Trade

7    Commission.

8         THE COURT:  I left my file in there, but go ahead.

9         MS. HIPPSLEY:  Okay.  Well, we're happy to report today

10   that we have a final order that we've worked hard to come to an

11   agreement on.  And we are pleased that we were able to get the

12   cooperation of Mr. Trudeau to come to a final resolution.  And

13   the commission, the five commissioners, have approved the

14   settlement, and that's now authorized and ready for entry by Your

15   Honor.

16        We thought and the purpose of the status conference

17   rather than just providing it to your office for signature is

18   that we thought it would be beneficial for both us and for

19   Mr. Trudeau to sort of hear an outline of what is required by the

20   order and a few of the narrow exceptions to the very broad

21   injunctive provisions that are there that have been worked out

22   amongst the parties.

23        I'm going to just, if it's all right with Your Honor,

24   quickly go through the broad injunctive provisions and explain

25   the narrow exception, and then Mr. Bradford would like to

1         There is an August 5, 2004 letter between ourselves and

2    the FTC which deals with a variety of other topics on which we

3    have reached agreement, one of which references the disposition

4    of the coral at wholesale.   Another indicates that there is an

5    affiliated company that has golf programs in the U.K.

6         To the extent that they from time to time need to film,

7    for example, a U.S. golf tournament or there is some incidental

8    involvement in the United States in the production of a golf show

9    or other kind of nondeceptive programming that's going to appear

10   over there, albeit in an infomercial format that the FTC does not

11   intend to contend that that's a violation of the infomercial ban,

12   we're not talking about programs that are going to be produced or

13   developed in the United States, but there may be some production

14   work that's incidental to those programs that would be permitted

15   in the United States, and they will exercise reasonable

16   discretion in terms of the "in commerce" clause, particularly if

17   this is a nondeceptive type of program.

18        There were also two infomercials, one for Megamemory and

19   one for Fresh Start, which we agreed they would not pursue as

20   long as they were disseminated only outside of North America.

21        And we have a general understanding that while there is

22   no release in this agreement, that to the extent the FTC is aware

23   of conduct that has occurred up to the present date, that this is

24   the full extent of relief that they're intending to seek for

25   that, that we're not going to have another lawsuit next week for

1    anything that's already been put on the table. And this really

2    does resolve differences that we've had based on everything

3    that's been disclosed to the FTC to the present date.

4         And finally, there is an understanding that infomercials

5    have been provided to third parties at various points in the

6    past, and as long as Mr. Trudeau has no direct or indirect

7    financial interest in those parties and no ability to control

8    their dissemination and otherwise complies with the order, that

9    he will not be liable for what third parties will do with those

10   infomercials.

11        MS. HIPPSLEY: And along the point with the third

12   parties, there is an obligation which Mr. Trudeau recognizes to

13   notify the third parties that he did do production for in the

14   past of the presence of the order, which we hope will have a

15   deterrent effect on the third parties.

16        THE COURT: Okay.

17        MR. BRADFORD: Then a further understanding was

18   Mr. Trudeau did complete what's referred to as "The Natural Cures

19   Book." He has developed an infomercial for that Natural Cures

20   book. This has been provided to the FTC. And they have no

21   objection to the dissemination of the book or the infomercial in

22   its current format.

23        This I think falls within the book exception that we had

24   talked about previously. So we have the first tangible example

25   of something that is acceptable under that provision.

1    It is generally Mr. Trudeau's intention and consistent

2  with the order that he intends to get out of the business of

3  selling product and focus on becoming an author, which is

4  permitted under the order; a potentially producer of television

5  talk show format or otherwise hosting talk shows; and/or that he

6  can engage as a profession in being a consumer critic or

7  advocate.

8    And as we've talked through those particular fields,

9  we've tried to focus on practical situations that may come up

10  that may create issues under the order.

11    With respect to the talk show, we have specifically

12  defined here what is an infomercial and what is a talk show, and

13  I think we have some very good objective criteria. But to the

14  extent we ever have disagreements in the future, it would be our

15  intention to submit anything that is questionable to the FTC and

16  try to work out those differences with them. But that is one

17  area where there is potential for disagreement down the road.

18    In that connection, I would reference a February 18,

19  2004 letter which was provided to Your Honor as one of the

20  exhibits in connection with a contempt motion which laid out some

21  of the principles in terms of talk shows and books and talk show

22  appearances that would be permitted under the then contemplated

23  order. And we have agreed that the examples and exceptions as

24  articulated in that February 18, 2004 letter are consistent with

25  the final order.

# Exhibit E

1

```
 1              IN THE UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF ILLINOIS
 2                     EASTERN DIVISION

 3
    FEDERAL TRADE COMMISSION,        )
 4                                   )
                   Plaintiff,        )
 5                                   ) No. 03 C 3904
              vs.                    ) Chicago, Illinois
 6                                   ) July 22, 2008
    KEVIN TRUDEAU,                   ) 10:00 a.m.
 7                                   )
                   Defendant.        )
 8

 9            TRANSCRIPT OF PROCEEDINGS - HEARING

10         BEFORE THE HONORABLE ROBERT W. GETTLEMAN

11  APPEARANCES:

12  For the Plaintiff:     FEDERAL TRADE COMMISSION
                           600 Pennsylvania Avenue, NW
13                         NJ-3212
                           Washington, DC 20580
14                         BY:  MS. LAUREEN KAPIN
                                MS. SANDYA PRABHU
15                              MS. ELIZABETH TUCCI

16
    For the Defendant:     JENNER & BLOCK
17                         One IBM Plaza
                           Chicago, Illinois 60611
18                         BY:  MR. DAVID J. BRADFORD
                                MR. DANIEL J. HURTADO
19

20

21

22  Official Reporter:     JENNIFER S. COSTALES, CRR, RMR
                           219 South Dearborn Street
23                         Room 1706
                           Chicago, Illinois 60604
24                         (312) 427-5351

25
```

2

1      (Proceedings in open court.)

2          THE CLERK:  03 C 3904, Federal Trade Commission versus

3  Kevin Trudeau; for hearing.

4          MR. BRADFORD:  Good afternoon.

5          David Bradford here together with Kevin Trudeau and Dan

6  Hurtado.

7          MS. KAPIN:  Good afternoon, Your Honor.

8          I'm here with my colleagues Sandy Prabhu, Elizabeth

9  Tucci, and Parrish Bergquist on behalf of the Federal Trade

10 Commission.  I'm Laureen Kapin.

11         THE COURT:  All right.  We're here for hearing on this

12 contempt order.  A couple of things to go over first.

13         First of all, Mr. Bradford, you filed a motion to

14 withdraw as counsel, but after these proceedings, is that

15 correct?

16         MR. BRADFORD:  That's correct, Your Honor.  We'd ask

17 that be put over until the end of the proceedings if the Court

18 would entertain that.

19         THE COURT:  I guess I'm curious as to why you filed it.

20         MR. BRADFORD:  Only to indicate to the Court that

21 because of financial circumstances we're obligated to do this.  I

22 did not want to proceed after the hearing and leave any

23 impression that anything Your Honor might or might not do during

24 the hearing was the precipitating cause of this motion.

25         THE COURT:  I would take your word for it whatever the

1  Q.  What was your response when he told you about this protocol?

2  A.  Well, he gave me a manuscript that he had copies of called

3  *Pounds and Inches* by Dr. Simeons.  And I read that manuscript.

4  And my first impression was it seemed really scary to do, kind of

5  difficult to do.  It seemed like it would be a really hard thing

6  to do.  So I kind of put it off for about a year, but continued

7  communication with him, inquiring about the results and how

8  people did on the program, how much weight they lost, did they

9  find it easy, and afterwards did they gain the weight back.

10         So it took about a year before I got the courage to give

11  it a try myself.

12  Q.  And did you, in fact, give it a try yourself?

13  A.  Yes.

14  Q.  When was that?

15         THE COURT:  Who was the doctor in Germany?  What was his

16  name again?

17         THE WITNESS:  Dr. Klaus Martin.

18         THE COURT:  All right.

19  BY MR. BRADFORD:

20  Q.  Did you, in fact, give it a try?

21  A.  Yes, I did.

22  Q.  When was that approximately?

23  A.  I believe to the best of my recollection it was the late

24  summer or early fall of '06.

25  Q.  Where did you do that?

Trudeau - direct                                    105

1  A.  I started the protocol, it's a six-week protocol for the
2  injections.  So I did three weeks while I was in Germany at the
3  clinic.
4  Q.  And did you continue the full six weeks?
5  A.  Yeah.  I did three weeks while I was at the clinic so I could
6  talk to other patients who were doing it and see how they were
7  reacting, review patient records, and make sure I was doing it
8  correctly so I could learn all about it.  So I would inquire with
9  the nurses and the doctors and the staff and the other patients
10 who were doing it.
11         And then for the next three weeks, I was traveling
12 around the U.S. on business.  So in my travels, I continued to do
13 the protocol.  I took my HCG with me and did the injections while
14 I was the road.
15 Q.  And did you follow the protocol as prescribed to you?
16 A.  Yes.  I did the Simeons protocol exactly as it was described
17 in the *Pounds and Inches* book.
18 Q.  What was your experience with this protocol?
19 A.  Well, I've been on numerous programs to lose weight over the
20 years, all the things that are sold on television, all the easy
21 programs that are on TV, the NutriSystems, Jenny Craigs,
22 Slimfast, the protein powders, the Hoodias, the ephedras, green
23 teas, you name it, if it has been sold, and I know most of the
24 guys who are selling a lot of this stuff, I've tried it over the
25 years.

1    I've had personal trainers in.  I've had chefs come in
2 to do raw food cooking.  High protein, Dr. Atkins I knew.  I did
3 an infomercial with him years ago, so I did the Atkins program,
4 which again was promoted as a very easy program to do.

5    So I've done all these programs, and I would lose some
6 weight, but it would always be challenging.  Even if I lost
7 weight on the program, I was hungry.  I was depriving myself.  I
8 felt like I wanted food.  So it was always a challenge to do the
9 program.  And even if I lost weight, when I stopped the program
10 and went back to normal, the weight always came back, and I
11 gained probably 10 or 15 pounds more, which is the general effect
12 that most people have globally when they kind of yo-yo diet.

13    So on this diet when I did it, I found it to be
14 incredibly effective.  I lost 45 pounds in 45 days.
15 Q.  And what has been your experience since you've completed the
16 six weeks of injections in that phase of the protocol?
17 A.  It's been a miraculous life-changing experience for me.  For
18 me personal doing the program, I was very nervous to start it, I
19 talked about this in the book, I was scared.  I thought it was
20 going to be challenging.  I was going to be hungry or tired or
21 grumpy, or I would fail, I would, you know, get off the program.

22    But amazingly from day one I wasn't hungry.  Day two, I
23 wasn't hungry.  Day three, I wasn't hungry, I wasn't tired.  And
24 all the other people that were at the clinic were experiencing
25 the same almost miraculous results with the protocol.  We just

1    weren't hungry.  We had a lot of energy and lost the weight, lost
2    about a pound a day.

3              And we would take photos in the mirrors.  And the other
4    thing that was interesting, not only would the weight come off,
5    it was about a pound a day depending on how big the person was
6    and what they needed to lose, and men and women were slightly
7    different, but it was about that, it was the average, I lost a
8    pound a day.

9              But there was also resculpting of the body, you know,
10   kind of the areas that had a lot of fat or have normal fat
11   reserves would seem to shrink.  So it really was a great
12   resculpting of the figure.  It looked really good.
13   Q.   What has been your experience in terms of your appetite and
14   food intake since then?
15   A.   Well, the thing that was really scary to me, I wasn't hungry.
16   And I thought when I stopped the protocol, and which was the
17   injection phase and I went to the last phase, there is one phase
18   before the last phase, so when I stopped the injections, then I
19   went on to eating, eating this, I just wasn't hungry.  I just
20   wasn't hungry afterwards.  It was an amazing surprise to me.
21   Q.   Now, before you wrote the book, did you read any medical
22   journal type of articles on this protocol?
23   A.   Yeah.  When I first heard about it from Dr. Klaus Martin, the
24   first document, of course, was Dr. Simeons manuscript, *Pounds and*
25   *Inches*.  And in Simeons manuscript, he listed a series of

1  references, which I Google searched and read many of the
2  references and reports.  And there were a lot more since the
3  writing of that manuscript.  Many doctors around the world have
4  used this protocol.  So I read a whole series of reports before I
5  wrote the book.
6  Q.  For the Court's convenience, have you identified three of
7  those articles among the exhibits being presented to the Court in
8  this proceeding?
9  A.  Yes, I did, and they're in this book here.
10        MS. KAPIN:  Objection, Your Honor.  My objection is as
11  to relevance.  The FTC is not challenging the efficacy of this
12  protocol, whether it works or not.  This entire line of
13  questioning sounds to me like it is focusing on whether
14  Mr. Trudeau sincerely believes this protocol works or not, and
15  that is not why we're here, Your Honor.
16        MR. BRADFORD:  Your Honor, I believe this will also go
17  to the expression of opinion that this is an easy program to use
18  and also the expression of opinion that people will be able to
19  eat whatever they feel like and not gain weight and the bases for
20  his opinions or statements that that was, in fact, the case.
21        THE COURT:  I'll overrule the objection.
22        MR. BRADFORD:  Thank you.
23  BY MR. BRADFORD:
24  Q.  Mr. Trudeau, is the first of those articles that you
25  identified and read before you authored the book Exhibit FF?

Trudeau - direct                                    109

1  A.  Yes, it is.

2  Q.  And have you for the Court's convenience on the cover page of

3  this notebook, where it says "Excerpts from exhibits" culled out

4  certain statements that were made in that article?

5  A.  Yes.

6  Q.  And was that article published in the American Journal of

7  Clinical Nutrition in 1973?

8  A.  Yes.

9  Q.  Could you please read the portions of the study that you

10 read?

11 A.  Well, I read the whole study.  But I think the relevant

12 sentence here is, "The HCG group," which is the substance taken

13 or, in other words, the group that were on the Simeons protocol,

14 "lost significantly greater mean weight loss per injection and

15 lost a significantly greater mean percentage of their starting

16 weight, the percentage of affirmative daily patient responses

17 indicating little or no hunger.  And feeling good to excellent

18 was significantly greater in the HCG group than in the placebo

19 group.  Additional investigation of the influence of HCG on

20 weight loss, hunger, and wellbeing seems indicated."

21 Q.  Is this a study that you specifically reference in the

22 annotations to the book?

23 A.  I believe so, yes.

24 Q.  That is, it's contained in the book itself or reference to it

25 exists in the book itself?

1  A.  Correct, yes.

2  Q.  And let's turn to the second of these documents.  Is this

3  Exhibit GG a study that you observed that was published in 1966

4  in the American -- I'm not sure if I can pronounce this right,

5  but the record will reflect it, I think it's Geriatrical Society?

6  A.  Yes, it is.  And this is a study that I've read also.

7  Q.  What are the salient parts of this study that you identified

8  here?

9  A.  Well, the key elements of this particular study say that we

10  found that by use of the Simeons technique, the patients lost

11  weight safely, rapidly, and effectively, and the key part here is

12  with little discomfort.

13        "Aside from the matter of the amount of weight loss by

14  this method of treatment as compared to other methods, we

15  confirmed Simeons' observation that there is a striking

16  redistribution of body fat.  Simeons' technique for reducing

17  weight in cases of obesity is a safe and effective procedure

18  without undue discomfort for the patient."

19  Q.  And, finally, the third study that you have referenced, is

20  that a 1961 study?

21  A.  Yes, it is.

22        MS. KAPIN:  Just objection, Your Honor, one further

23  ground, to the extent that these are being relied upon for the

24  truth of the matter asserted, I'm raising a standing hearsay

25  objection to them.

Trudeau - direct                                              111

1          THE COURT:  Well, no, they're being offered for his
2   state of mind I believe, correct?
3          MR. BRADFORD:  Yes, they are.
4   BY MR. BRADFORD:
5   Q.  And what was the salient portion of that study that you have
6   identified?
7   A.  This particular study, again, the key element in relation to
8   what we're discussing here, "Is the technique as described by
9   Simeons and illustrated by the patient series is a satisfactory
10  and safe method of reducing-weight patients without hardship."
11  Q.  At the time that you wrote the book, what was your opinion or
12  belief as to whether, in fact, this protocol was difficult or
13  easy to use?
14  A.  When I wrote the book and when I shot the infomercial and to
15  this day, I categorically believe that this is absolutely an easy
16  way to lose weight.  I think it was easy for me out of my own
17  personal experience.  That's why I believed it to be easy.  I did
18  it myself.  I've done all these other programs that weren't easy
19  that claimed to be easy.  So I know the difference between what's
20  easy and what isn't.  And for me, this was easy.
21          All the patients I talked to at the clinic in Germany
22  and around the world that have used the protocol or were in the
23  process of using the protocol reported to me in huge, huge
24  percentages that it was the easiest thing they ever did to lose
25  weight.

Trudeau - direct                                        112

1          And then the experts themselves in these studies claim
2   in effect that it's easy by using words like "undue hardship" or
3   what have you.

4          So I believed at that time that the program was
5   absolutely easy.  I still believe it today.  And I believe it is
6   the easiest way for anyone who wants to lose weight to lose
7   weight.

8   Q.  And with respect to your belief that people can eat whatever
9   they want after the first phases of the protocol and not gain
10  weight, what was your belief at the time that you wrote the book?
11  A.  When I wrote the book, again, I had done the protocol myself.
12  And when I stopped doing the protocol and after and went into
13  phase four eating pizza, pasta, ice cream, cheeseburgers, French
14  fries, virtually anything and everything you want is absolutely
15  true.

16         And the reason I believed it is, number one, I did it.
17  I drank beer.  I've got pictures of me in Germany with beer and
18  ice cream.  And I would weigh myself every day.  And the hunger
19  wasn't there.  So you ate less.  So you could virtually eat
20  anything you want, but the body metabolism seems to be so much
21  higher that the body seemed to just burn it off without massive
22  gaining of weight.

23         I also reviewed from Dr. Klaus Martin where he told me
24  that 80 percent or 85 percent of his patients five years later
25  still have not gained any significant amount of weight back, even

1  though they were eating pretty much anything they wanted and went
2  back to their natural routine before losing the weight.

3          So I believed when I wrote the book, and I say it in the
4  book, and I believe when I shot the infomercial, that once you do
5  this protocol, that your body has reset, that the hypothalamus
6  gland seems to be reset, and you can pretty much eat anything you
7  want.

8  Q.  You were party to a consent decree and court order in this
9  case, is that correct?

10  A.  Yes.

11  Q.  And is compliance with that order of importance to you?

12  A.  Compliance with that order is very important to me.  I
13  respect the Court.  I respect the order.  And being diligent and
14  prudent in doing everything that the order said is of prime
15  importance.

16          The amount of correspondence that I've had with the FTC
17  trying to cross every T, dot every I is really important.  And
18  everything that I've done since that order was signed -- that was
19  kind of:  Look, I can write books now.  I'm out of the
20  infomercial business.  They won.  I'm off the air.  I'm not
21  selling any more products.  Everything I've done since that order
22  was signed was to be 100 percent in compliance.

23  Q.  Have you been involved whatsoever in the sale of product
24  since you signed that order?

25  A.  Absolutely not.

1  Q.  What did you do with the businesses that you owned at the
2  time that you signed the order?
3  A.  Well, pretty much all the businesses which were in relation
4  to the informercials, I decided just to get out of and sell and
5  only focus on writing books and appearing in informercials and
6  making public appearances on radio shows and so forth and being a
7  citizen advocate and a whistle-blower and an author.  So I --
8  Q.  Now, on the day --
9  A.  So I sold those companies.
10  Q.  On the day that you signed the order, what was your
11  understanding of what you could and could not do with respect to
12  informercials for books?
13  A.  On the day I signed the order, as you know, we had massive
14  amounts of conversations back and forth with the FTC.  My fear
15  was the order would be vague and ambiguous, and we wouldn't have
16  any clear direction on what to do going forward, and that this
17  was just a set-up, so whatever I did the next day, they would
18  come after me.
19  Q.  Let me, if I can, ask the witness to be more responsive to
20  the question, which is simply:  What was your understanding of
21  your obligations under the order?
22  A.  My understandings under the order was I could produce, I
23  could write any book or informational publication, I could say
24  anything I wanted in those books or informational publications,
25  and I could produce any type of advertisement for those

# Exhibit F

122

1                    IN THE UNITED STATES DISTRICT COURT
                        NORTHERN DISTRICT OF ILLINOIS
2                              EASTERN DIVISION

3

   FEDERAL TRADE COMMISSION,              )
4                                         )
                           Plaintiff,     )
5                                         )   No. 03 C 3904
                  vs.                     )   Chicago, Illinois
6                                         )   July 23, 2008
   KEVIN TRUDEAU,                         )   10:00 a.m.
7                                         )
                           Defendant.     )
8

9              TRANSCRIPT OF PROCEEDINGS - HEARING

10        BEFORE THE HONORABLE ROBERT W. GETTLEMAN

11  APPEARANCES:

12  For the Plaintiff:      FEDERAL TRADE COMMISSION
                            600 Pennsylvania Avenue, NW
13                          NJ-3212
                            Washington, DC 20580
14                          BY:  MS. LAUREEN KAPIN
                                 MS. SANDYA PRABHU
15                               MS. ELIZABETH TUCCI

16

   For the Defendant:       JENNER & BLOCK
17                          One IBM Plaza
                            Chicago, Illinois 60611
18                          BY:  MR. DAVID J. BRADFORD
                                 MR. DANIEL J. HURTADO
19

20

21

22  Official Reporter:      JENNIFER S. COSTALES, CRR, RMR
                            219 South Dearborn Street
23                          Room 1706
                            Chicago, Illinois 60604
24                          (312) 427-5351

25

Trudeau - direct

123

1    (Proceedings in open court.)

2         THE COURT:  Mr. Trudeau, take the stand, please.  You're

3    still under oath, Mr. Trudeau.

4         MR. BRADFORD:  With the FTC's consent, we would like to

5    take a witness out of order if we could.  Mr. Damnitz, who is one

6    of our experts, is here.  We would like to relieve him.  If the

7    Court prefers, we can certainly finish Mr. Trudeau's examination

8    first.

9         THE COURT:  Why don't you finish his direct.

10        MR. BRADFORD:  Certainly.

11        THE COURT:  Since you're right in the middle of it.

12        MR. BRADFORD:  Certainly.

13        KEVIN TRUDEAU, DEFENDANT HEREIN, PREVIOUSLY SWORN

14             DIRECT EXAMINATION (Resumed)

15   BY MR. BRADFORD:

16   Q.  Mr. Trudeau, when we adjourned yesterday, I believe you had

17   identified the content of the *Natural Cures* book that was

18   submitted and discussed in open court during the September 2004

19   hearing.  Do you recall that?

20   A.  Yes.

21   Q.  And do you recall that the FTC had approved the infomercial

22   for that book that had been presented in open court?

23   A.  Yes.

24   Q.  And what opinion or conclusion, if any, did you form about

25   your legal obligations under the order as it related to

1 | advertising for books as a result of the FTC's approval of that
2 | infomercial?
3 | A.  It was very clear to me that the infomercial and the book,
4 | which was approved by the FTC, allowed me to in the infomercial
5 | or any advertisement describe what's in the book.  In the
6 | advertisement I could say anything that was in the book.

7 |          It also showed me by their approval that I as an author
8 | could state any opinion I wanted in any infomercial.  So I could
9 | state any opinion, I could give any information that was in the
10 | book.

11 |          And thirdly, I also did not, was not required to in the
12 | infomercial say everything that was in the book.  So everything
13 | in the infomercial had to be in the book.  I could make any
14 | opinions even though they weren't in the book in the infomercial.
15 | But also everything that was in the book didn't have to be in the
16 | infomercial.  It was very clear that was what I was allowed to
17 | do.

18 | Q.  Did you after the Court hearing submit to the FTC certain
19 | short form, that is 30 second or 60 second or two minute
20 | advertisements for the book?

21 | A.  Yes, after we signed the consent decree.

22 | Q.  And do you recall receiving or reviewing a response from the
23 | FTC with respect to those advertisement scripts for the
24 | short-form two-minute-and-under type of advertisement?

25 | A.  Yes, I do.

Trudeau - direct                          125

1  Q.  I draw your attention in your notebook to Exhibit 31-F, 31-G,
2  and 31-J and ask you if you reviewed those communications at or
3  about the time they were sent with respect to your compliance
4  with the decree?
5  A.  Yes.
6  Q.  And what was your understanding of the FTC's position with
7  respect to the short form advertisements submitted after
8  September?
9  A.  Well, I disagreed with their opinions.  But basically they
10 again reiterated that the infomercial was 100 percent in
11 compliance with the order.  But they suggested that the
12 short-form scripts needed to be modified.  So rather than --
13 Q.  What did you do in response to the FTC's objections to the
14 short form?
15 A.  I capitulated.
16 Q.  Did you even run those short forms?
17 A.  We just didn't bother to run them at all.  They had a problem
18 with them, and we just did not run them.
19 Q.  Did you at some point in 2005 make modifications to the book?
20 A.  Yes.  You know, they expressed concerns, and we were trying
21 to deal with any concerns they had and comply with their
22 concerns.  So what I did was, even though we were still
23 discussing and arguing whether I could put the name of a specific
24 product in the book and disagreed with their challenge to that, I
25 modified the *Natural Cures* book.  I added about 150 additional

# Exhibit G

1

```
 1              IN THE UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF ILLINOIS
 2                     EASTERN DIVISION

 3
    FEDERAL TRADE COMMISSION,        )
 4                                   )
                      Plaintiff,     )
 5                                   ) No. 03 C 3904
                vs.                  ) Chicago, Illinois
 6                                   ) April 29, 2010
    KEVIN TRUDEAU,                   ) 2:30 p.m.
 7                                   )
                      Defendant.     )
 8

 9            TRANSCRIPT OF PROCEEDINGS - STATUS

10          BEFORE THE HONORABLE ROBERT W. GETTLEMAN

11  APPEARANCES:

12  For the Plaintiff:     FEDERAL TRADE COMMISSION
                           55 West Monroe Street
13                         Suite 1825
                           Chicago, Illinois 60603
14                         BY:  MR. DAVID O'TOOLE

15  For the Defendant:     WINSTON & STRAWN LLP
                           35 West Wacker Drive
16                         Chicago, Illinois 60601
                           BY:  MR. KIMBALL R. ANDERSON
17                              MR. THOMAS KIRSCH, II

18  For the United States: HON. PATRICK FITZGERALD
                           United States Attorney
19                         219 South Dearborn Street
                           Chicago, Illinois 60604
20                         BY:  MS. LISA NOLLER

21

22

23  Official Reporter:     JENNIFER S. COSTALES, CRR, RMR
                           219 South Dearborn Street
24                         Room 1706
                           Chicago, Illinois 60604
25                         (312) 427-5351
```

2

1      (Proceedings in open court.)

2           THE CLERK:  03 C 3904, FTC versus Trudeau.

3           MS. NOLLER:  Good afternoon, Your Honor.

4           Lisa Noller for the United States.

5           MR. O'TOOLE:  And David O'Toole for the Federal Trade

6   Commission.

7           MR. ANDERSON:  And Kimball Anderson and Tom Kirsch on

8   behalf of Mr. Trudeau.

9           THE COURT:  All right.  Good afternoon, everybody.

10          Mr. Trudeau is here, I see.

11          MR. ANDERSON:  Yes, he is, Your Honor.

12          THE COURT:  Could you have him please come to the

13  podium.

14          Good afternoon, Mr. Trudeau.

15          THE DEFENDANT:  Hello.

16          THE COURT:  All right.  This is here today pursuant to

17  my order of -- I have a lot of orders here, I have to make sure I

18  find the right one -- April 16th of 2010.  And the purpose is to

19  under Rule 42, which I will comment on in a moment, because I'm

20  not sure it was absolutely necessary to do this in open court,

21  but I'm doing it in an abundance of precaution, but this is here

22  today to give you notice in open court of the charges of contempt

23  and to show cause why you should not be prosecuted for it and

24  held in criminal contempt of this Court for willfully violating

25  the Court's orders of September 2, 2004, the consent order, by

1  the issues that you just raised and the issues that are raised in

2  the brief that was filed today.  So you understand what I'm

3  saying.

4          You're looking at me quizzically.

5          MR. KIRSCH:  Well --

6          THE COURT:  I'm going to give you a chance to file

7  whatever additional or supplemental materials you want to file

8  before the government responds, and then I'll give you a chance

9  to reply, and we'll have a hearing on it.

10          MR. KIRSCH:  I appreciate that, Your Honor.  But I

11  suspect that that is not foreclosing the opportunity to file

12  motions in the future if necessary.

13          THE COURT:  No.

14          MR. KIRSCH:  There is some things we can't --

15          THE COURT:  No, absolutely not.

16          MR. KIRSCH:  Okay.

17          THE COURT:  I mean, we're taking this one step at a time

18  because of the unusual nature of these proceedings.  But I'm

19  happy to give you time to do that.

20          MS. NOLLER:  Your Honor, during that same period of

21  time, the government would request an opportunity to investigate

22  the case, because we did just get the referral, and then also

23  to --

24          THE COURT:  Mr. O'Toole can wheel his file over to you.

25          MS. NOLLER:  The FTC has been more than gracious with

18

1  sharing the file in this case, although I still just did get the

2  referral last week.

3          And also during that time, Your Honor, we'd like an

4  opportunity to determine whether we're going to file a request

5  with Your Honor for a proceeding that would be open to the

6  possibility of punishment and imprisonment greater than six

7  months.

8          THE COURT:  I understand.  Okay.  So let's do this, how

9  much time would you like to file any supplemental or additional

10 pleadings?

11         MR. KIRSCH:  Can we have ten days, Your Honor?

12         THE COURT:  Sure.

13         MR. KIRSCH:  You know, perhaps until maybe that's

14 Monday, not this coming Monday but the next, or Tuesday.  I don't

15 know what ten days is.

16         THE COURT:  Well, why don't we make it, you know, they

17 have changed the rules, 10 days now means 14 days.

18         MR. KIRSCH:  Okay.

19         THE COURT:  So why don't we just say May 13th.

20         MR. KIRSCH:  Perfect, Your Honor.

21         THE COURT:  And then how long would you like to respond?

22         MS. NOLLER:  Your Honor, can I get 30 days, please?

23         THE COURT:  Sure.  Let's say June 14th, June 14th.  And

24 that would also be in case the FTC wants to file anything.

25         Reply, would two weeks be enough?

1          MR. KIRSCH:  Yes, two weeks is fine, Your Honor.

2          THE COURT:  By the way, after the last part of May, I'm

3     going to be on 14 in Judge Coar's chambers for a period of time.

4     So I'm just alerting everybody.

5          MS. NOLLER:  Thank you.

6          MR. ANDERSON:  So you're moving to the 14th floor?

7          THE COURT:  Just for three or four months while they

8     spend our tax money trying to fix our air conditioning system in

9     this building.

10          Let's see, let's set it for July 27th for hearing and

11     argument at 1:30.

12          Now, I'm retrying the Sanchez case beginning July 8th,

13     and I hope for it to be over by then.  But please check with us

14     to make sure I can keep that date.  Actually, I'm looking at my

15     calendar, I have something set for July 29th already in this

16     case.

17          MR. KIRSCH:  That may just be, Your Honor, a status or a

18     notice requirement on the 29th.  I don't know that there is a

19     hearing.  There may be.

20          THE COURT:  It was a status at 10:00 o'clock.  It says,

21     I would have to go back and look at my notes, "for consumer

22     reimbursement."  So I think that's what we were talking about.

23          Is that right, Mr. O'Toole?

24          MR. O'TOOLE:  Yeah, I think that's right.  I think the

25     question was -- I think you're right.  That's the date.

# Exhibit H

1

```
 1                    IN THE UNITED STATES DISTRICT COURT
                    FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                            EASTERN DIVISION

 3    UNITED STATES OF AMERICA,          )
                                         )
 4                  Plaintiff,           )
                                         )
 5      v.                               )  No. 10 CR 886
                                         )
 6    KEVIN TRUDEAU,                     )  Chicago, Illinois
                                         )  April 7, 2011
 7                  Defendant.           )  10:30 a.m.

 8                       TRANSCRIPT OF PROCEEDINGS
                    BEFORE THE HONORABLE RONALD A. GUZMAN
 9

10    APPEARANCES:

11    For the Plaintiff:          HON. PATRICK J. FITZGERALD
                                  United States Attorney
12                                BY:  MR. MARC KRICKBAUM
                                  Assistant United States Attorney
13                                219 South Dearborn Street
                                  Suite 500
14                                Chicago, Illinois  60604
                                  (312) 353-5300
15
      For the Defendant:          WINSTON & STRAWN LLP
16                                BY:  MR. THOMAS LEE KIRSCH II
                                  35 West Wacker Drive
17                                Chicago, Illinois  60601
                                  (312) 558-3220
18

19

20

21
      Court Reporter:            NANCY C. LaBELLA, CSR, RMR, CRR
22                               Official Court Reporter
                                 219 South Dearborn Street
23                               Room 1222
                                 Chicago, Illinois  60604
24                               (312) 435-6890
                                 Nancy_LaBella@ilnd.uscourts.gov
25
```

1    (Proceedings heard in open court:)

2        THE CLERK:  10 CR 886, United States of America v.

3  Trudeau.

4        MR. KRICKBAUM:  Good morning again, your Honor.  Marc

5  Krickbaum on behalf of the United States.

6        MR. KIRSCH:  Good morning, your Honor.  Tom Kirsch on

7  behalf of Mr. Trudeau.

8        THE COURT:  Good morning.

9        MR. KRICKBAUM:  Judge, I see Mr. Trudeau is not here.

10  He had waived his appearance in prior proceedings before Judge

11  Gettleman; and I assume that Mr. Kirsch is prepared to waive

12  his appearance.

13        THE COURT:  Who waived his appearance?

14        MR. KRICKBAUM:  Mr. Trudeau, the defendant in this

15  case, did.

16        THE COURT:  Well, I think it's for the Court to waive

17  the defendant's appearance.

18        MR. KRICKBAUM:  I'm sorry.  With the Court's

19  permission.

20        THE COURT:  Okay.

21        MR. KIRSCH:  Your Honor, it is.  I just messed up.

22  In front of Judge Gettleman, Judge Gettleman had excused

23  Mr. Trudeau from appearing at routine status hearings.  And

24  I've talked with Mr. Trudeau about this hearing.  He knows

25  that it's occurring today.  And yesterday when I filed my

1    appearance, I just neglected to ask the Court to excuse

2    Mr. Trudeau because I hadn't been required to do that in front

3    of Judge Gettleman.  I apologize for any inconvenience.

4         THE COURT:  No, I didn't realize his presence had

5    been excused by Judge Gettleman, so that's not a problem.

6         Okay.  So where do we stand?

7         MR. KRICKBAUM:  Judge, this case has taken an unusual

8    path to your courtroom, Judge.  And it's a -- this is a

9    criminal contempt matter.  It began as a civil contempt based

10   on Judge Gettleman's finding that Mr. Trudeau violated a

11   consent decree that Judge Gettleman ordered in 2004.  Judge

12   Gettleman then, in April of 2010, issued a rule to show cause

13   why Mr. Trudeau should not be held in criminal contempt based

14   on the same violation of the same order.

15        And in the proceedings before Judge Gettleman,

16   Mr. Trudeau filed a number of pretrial motions.  He filed a

17   motion to dismiss the rule to show cause and he also filed a

18   motion to recuse Judge Gettleman.  Judge Gettleman denied both

19   of those motions but exercised his prerogative as a senior

20   judge to have the case reassigned.  And that's how we ended up

21   here.

22        I've spoken to Mr. Kirsch, and I think both parties

23   are in agreement about where we're going from here; that it

24   makes sense today to set a schedule for pretrial motions in

25   this matter, any additional pretrial motions that Mr. Trudeau

 1   wants to file.  I know that the government intends to file --

 2   to seek leave to file something, Judge, and it relates to the

 3   potential punishment in this case.

 4            When -- before the government became involved in this

 5   case, when Judge Gettleman issued the rule to show cause, he

 6   announced that he would limit any punishment -- any term of

 7   imprisonment to six months or less.  And in the proceedings

 8   before Judge Gettleman, the government chose not to ask the

 9   judge to reconsider that decision.

10            We will ask and we do ask the Court to consider

11   imposing a sentence greater than six months or less.

12            THE COURT:  So you're going to be asking for a

13   sentence of greater than six months?

14            MR. KRICKBAUM:  We're asking the Court not to cap the

15   sentence at six months at this time.

16            THE COURT:  So what you're saying is that you may be

17   asking the Court for -- if there should be a conviction, you

18   may be asking the Court to enter a sentence of greater than

19   six months?

20            MR. KRICKBAUM:  Yes, Judge.

21            THE COURT:  Which elevates this to a jury trial?

22            MR. KRICKBAUM:  Yes, Judge.

23            THE COURT:  Okay.

24            MR. KRICKBAUM:  We would seek leave to file a very --

25   a short filing explaining our position on that.  I know that

1  Mr. Trudeau is going to take issue with that request.  So I

2  think it makes sense to -- if the Court is so inclined, we can

3  file our papers within two weeks on that.  Mr. Trudeau can

4  then respond to that and file any other pretrial motions he

5  has and then the government can respond.  If the Court is

6  inclined to set that type of schedule, I think the parties

7  agree that that makes sense.

8          THE COURT:  Your thoughts?

9          MR. KIRSCH:  Yes, your Honor.  Your Honor, as an

10  initial matter, I have never ever heard -- I think it's

11  unprecedented -- the government will probably explain this in

12  their position -- in their papers, but I think it's

13  unprecedented for the government to change its position on a

14  possible sentence based exclusively on the district court

15  hearing the case.

16          In front of Judge Gettleman, they considered -- in

17  their words, your Honor -- they considered and investigated

18  whether to seek a prison term longer than six months and

19  informed the court that they would not contest the court's

20  announcement that it would limit the sentence to six months.

21  Now we're here in front of a different district court, and the

22  government is going to take a different position.

23          Nothing has changed in the interim except for the

24  assignment of district judges.  That's an initial matter; so

25  we will, of course, take issue with that, your Honor.