UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Plaintiff, | ) | |
| | ) | Case No. 10-CR-886 |
|     v. | ) | |
| | ) | Judge Ronald A. Guzman |
| KEVIN TRUDEAU, | ) | |
|     Defendant. | ) | |
| | ) | |

**KEVIN TRUDEAU'S REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR DISMISSAL PURSUANT TO THE SPEEDY TRIAL ACT**

This case should be dismissed under the Speedy Trial Act (the "Act") because (1) the Speedy Trial Act clearly applies to orders to show cause and (2) the Act applies to Judge Gettleman's order, which does not charge a criminal offense excluded from the operation of the Act. Dismissal should be *with prejudice* because the offense is not serious under the Act, the violation of the Act is entirely the fault of the Government, and re-prosecution of this case would elevate the importance of prosecuting a non-serious offense over the importance of protecting the constitutional purpose of the Act, namely the Sixth Amendment right to a speedy trial.

The Government now argues that the Act does not apply to contempt proceedings initiated by an order to show cause, even though the Government argued without reservation to Judge Gettleman that time should be excluded under the Act. The Government also would have this Court depart from the guidance of the Judicial Conference, which clearly states that the Act applies to show cause orders, and from decisions in other cases that uniformly apply the Act to show cause orders. Indeed, the Government fails to cite even a single case that holds otherwise. Moreover, the Government inconsistently argues that the Act does not apply because the alleged offense is minor, while at the same time arguing that the alleged offense is so serious that any dismissal should be without prejudice.

The government's arguments do not withstand scrutiny. Consequently, this Court should dismiss this case with prejudice.

## ARGUMENT

### I. The Speedy Trial Act Applies To Orders To Show Cause.

The government does not cite a single case to support its argument that the Act does not apply to show cause orders. In fact, all of the authority on this point – including the Judicial Conference's Guidelines and court decisions – is contrary to the Government's position. In the absence of any contrary case law, the uniform judicial practice of applying the Act to contempt proceedings and the view expressed by the Judicial Conference trump the Government's strained arguments to the contrary.

In attempting to overcome the conclusion that must be drawn from the uniform practice of the courts and the Judicial Conference, the Government: (1) relies on cases that supposedly "narrowly construe" *other* provisions of the Act; (2) attempts to marginalize the significance of the courts' uniform practice and the Judicial Conference Guidelines; and (3) argues for a "plain meaning" construction that supposedly precludes application of the Act to a prosecution initiated by an order to show cause. Those arguments should be rejected.

#### A. The Government's Authority Does Not Support The Conclusion That The Speedy Trial Act Is Inapplicable To An Order To Show Cause.

The government cites the *Boyd*, *Graef*, and *Tootle* cases for the purported proposition that the Act should be "construed narrowly." (Resp. at 6, 9, citing *United States v. Boyd*, 214 F.3d 1052, 1055 (9th Cir. 2000); *United States v. Graef*, 31 F.3d 362, 364 (6th Cir. 1994); *United States v. Tootle*, 65 F.3d 381, 383 (4th Cir. 1995).) But, none of those cases holds that the Act should be "construed narrowly." In fact, in *Boyd* and *Graef,* the courts read requirements into the Act that do not appear in the text of the statute. Those cases involved the provision of the

Act requiring that an information or indictment be brought within 30 days of the date an individual is "arrested." 18 U.S.C. § 3161(b). The courts held that an arrest must be accompanied by a "complaint" as opposed to a "violation notice" in order to trigger the 30-day clock under § 3161(b). That requirement, however, is nowhere to be found in the text of § 3161(b), which states that the 30-day clock runs "from the date on which such individual was arrested or served with a summons in connection with such charges." Moreover, setting aside that neither of those cases has anything to do with whether an order to show cause should be treated as an information under § 3161(c)(1) of the Act, those cases are hardly examples of the textual literalism the Government advocates here.

The government suggests that because the *Boyd* and *Graef* courts were unwilling to equate a "violation notice" with a "complaint," this Court should ignore the Judicial Conference and not treat an "order to show cause" as an "information." But there are substantive differences between a violation notice and a complaint, while there are no such functional distinctions between an order to show cause and an information. As the *Boyd* court stated:

> Vastly different levels of judicial scrutiny apply to complaints and violation notices, respectively. An action based on an indictment, information or complaint guarantees that the charges receive initial attention from a neutral magistrate. By contrast, a violation notice is completed by a law enforcement officer alone, without the oversight of a magistrate.

*Boyd*, 214 F.3d at 1057. In contrast, both an order to show cause and an information require the same level of judicial oversight, and both are sufficient to initiate a criminal prosecution.

The *Tootle* case is even farther removed from the issue here. The *Tootle* court held that the Speedy Trial Act clock had not begun to run because the defendant had indicated that he would plead guilty pursuant to a plea agreement, and § 3161(c)(1) of the Act applies only to

3

cases in which pleas of not guilty are entered. *Tootle*, 65 F.3d at 383. Nothing in the *Tootle* decision compels a conclusion that the Act does not apply to an order to show cause.

Finally, the Government's reliance on *United States v. Eichhorst*, 544 F.2d 1383, 1386 (7th Cir. 1976), *United States v. Boskic*, 545 F.3d 69, 82 n.13 (1st Cir. 2008), and *Black's Law Dictionary* is totally misplaced. *Eichhorst* holds only that a rule to show cause does not require the particularity of an indictment. The case says nothing about whether the Act applies to show cause orders. Similarly, *Boskic* is a right-to-counsel case that also says nothing about whether the Act applies to show cause orders. And, the statement from *Black's Law Dictionary* quoted by the Government was *dicta* in a footnote explaining the difference between an information and an indictment, not the difference between an information and an order to show cause. In short, the Government is grasping at straws and has come up empty in its attempt to avoid application of the Act to show cause orders.

### B. The Courts' Uniform Practice And The Judicial Conference Support The Conclusion That The Speedy Trial Act Applies To An Order To Show Cause.

Despite having cited no judicial authority that deals directly with the issue of whether the Speedy Trial Act applies to orders to show cause, the Government complains that the cases cited by Kevin Trudeau do not expressly address the question and argues that the Judicial Conference's Guidelines should be disregarded. (Resp. at 7-9.) Although the courts' practice and the Guidelines may not be binding authority on this Court, in the absence of any contrary authority at all, they should be taken as highly persuasive authority that the Speedy Trial Act applies to orders to show cause. *See Tome v. United States*, 513 U.S. 150, 160 (1995) (Scalia, J.) (construing Federal Rules of Evidence, the Court relied on the Advisory Committee Notes as being "well-considered" and a "useful guide in ascertaining the meaning of the Rules").

### C. The Act's Plain Meaning Does Not Support The Government's Position.

The government argues that construing the Speedy Trial Act to apply to show cause orders would be tantamount to rewriting the statute. (Resp. at 9-10.) That argument is incorrect and is entirely inconsistent with the Judicial Conference's view.

The cases that the Government cites in which courts have declined to rewrite statutes do not apply here. In *Lewis v. City of Chicago*, the Court declined to interpret Title VII in a way that would disregard the distinction between a disparate-treatment claim, which requires proof of discriminatory intent, and a disparate-impact claim, which does not require such proof. 130 S. Ct. 2191, 2199-00 (2010). Disregarding that distinction would be at direct odds with the statutory scheme. In *United States v. West*, the Seventh Circuit declined to construe federal law in a manner that would take the question of an insanity defense away from the jury, where it was Congress' intent that the decision on sanity be taken away from psychiatrists and given to the jury. 962 F.2d 1243, 1248-49 (7th Cir. 1992).

Here, the Government has not demonstrated that applying the Act to orders to show cause is in any way at odds with or inconsistent with the statutory scheme or would in any way subvert Congressional intent. To the contrary, it would subvert the purposes of the Act to interpret it as excluding contempt proceedings from its protection. Furthermore, the Act implements the speedy trial right that is embedded in the Sixth Amendment to the United States Constitution. Therefore, any construction of the Act that strips a defendant of his Sixth Amendment right merely because a criminal prosecution is initiated by an order to show cause instead of an information should be avoided because of obvious constitutional infirmities. *Jones v. United States*, 529 U.S. 848, 857 (2000) ("[W]here a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such

5

questions are avoided, our duty is to adopt the latter.") (citing *United States ex rel. Attorney General v. Delaware & Hudson Co.*, 213 U.S. 366, 408 (1909)); *see also Almendarez-Torres v. United States*, 523 U.S. 224, 237-38 (1998) ("A statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubts upon that score.") (internal quotation omitted).

**II.  Criminal Contempt Cases, Which Are Not Classified As Either Misdemeanors Or Felonies, Are Not Excluded From Operation Of The Speedy Trial Act.**

The government further argues that the Act does not apply to Class B and C misdemeanors and therefore it should be excused from negligently allowing the Act's 70-day period to expire. (Resp. at 3-5.) To be sure, the Act excludes from its operation Class B and C misdemeanors. Trudeau, however, is not charged with a Class B or C misdemeanor. He is charged with criminal contempt of court which, by statute, is not characterized as a Class B or Class C misdemeanor and which does not carry a maximum term of imprisonment. That is why courts have recognized that criminal contempt is *sui generis* and not classifiable as a misdemeanor or felony. *See United States v. Cohn*, 586 F.3d 844, 848-49 (11th Cir. 2009) (holding that criminal contempt is *sui generis* and not classifiable as either a felony or a misdemeanor). Therefore, criminal contempt does not fall within the specific categories of offenses – Class B or C misdemeanors – that are excluded from the Speedy Trial Act. 18 U.S.C. § 3172(2).

The government also argues that Trudeau's alleged criminal contempt of court is effectively a Class B or C misdemeanor because Judge Gettleman indicated that he would not sentence Trudeau to more than six months in prison. But the Government obviously views that as soft cap that can be changed. Indeed, the Government has requested the option of seeking a term of imprisonment in excess of six months. (*See* Docket Entry No. 8.) The Government,

6

therefore, effectively has abandoned its argument that Trudeau's alleged criminal contempt should be treated as a Class B or C misdemeanor, even though no statute classifies it as such.

Moreover, neither the Supreme Court nor any courts in the Seventh Circuit have held that the Speedy Trial Act does not apply to criminal contempt cases where the judge, but not any statute, caps the potential sentence at six months.[1] The government attempts to support its argument by pointing to cases in other jurisdictions. However, the cases relied upon by the Government either do not support the Government's position or are wrongly decided.

The government relies on *United States v. Sued-Jimenez*, 275 F.3d 1 (1st Cir. 2001), for the proposition that "petty offenses" are not covered by the Act. That case, however, is not a criminal contempt case and it simply holds that Class B and C misdemeanors are excluded from the Act's coverage. *Id.* at 8-9. Criminal contempt is not a Class B or C misdemeanor and, therefore, that case has no applicability here.

Other cases cited by the Government do not deal with the Act at all, but address criminal contempt in the context of the right to a jury trial or the assignment of the case to a magistrate judge. *See United States v. Rangolan*, 464 F.3d 321, 323 (2d Cir. 2006) (noting that district court denied motion for jury trial after committing to government's proposal that sanction be limited to six months' imprisonment); *United States v. Taylor*, 139 F.3d 924, 926-27 (D.C. Cir. 1998) (observing that district court had agreed to limit any sanction to six months' imprisonment to avoid a jury trial); *United States v. Gedraitis*, 690 F.2d 351, 354-55 (3d Cir. 1982) (observing that contempt does not fall within general classification of felony or misdemeanor, but, as with

---

[1] The Government points to *Frank v. United States*, 395 U.S. 147, 149-50 (1969), for the proposition that criminal contempt is a petty offense if the penalty actually imposed does not exceed six months in prison. The *Frank* decision, however, had nothing to do with the right to a speedy trial or the Speedy Trial Act, but rather was a right-to-jury-trial case. The *Frank* court, therefore, had no occasion to address whether the criminal contempt alleged here, which by statute is not a Class B or C misdemeanor, is excluded from the Act.

7

the issue of the right to a jury trial, it can be treated as a "petty offense" where appropriate with regard to the scope of a magistrate's jurisdiction); *United States v. Pyle*, 518 F. Supp. 139, 143-44 (E.D. Penn. 1981) (applying the analysis for determining the right to a jury in a contempt case to the issue of a magistrate's jurisdiction); *United States v. Wright*, 516 F. Supp. 1113, 1119 (E.D. Penn. 1981) (observing that contempts that were "cut down to misdemeanor size" were "minor offenses" that could be tried before a magistrate).

The government's three remaining cases – none from courts within the Seventh Circuit – are not compelling. Although the *Baker* court held that the Act does not apply to a petty offense for which the defendant had been sentenced to 15 days' imprisonment, the court did not cite any authority other than the Act itself, which, as shown above, excludes only Class B and C misdemeanors, not criminal contempts – which are not Class B or C misdemeanors. 641 F.2d 1311, 1319 n.10 (9th Cir. 1981). The *Richmond* court followed *Baker* without discussing the distinction between contempt, on the one hand, and offenses that are classified as misdemeanors or felonies, on the other hand. *United States v. Richmond,* 312 F. App. 56, 57 (9th Cir. 2009). Finally, the district court in *Moncier*, as in *Baker* and *Richmond*, failed to address the Supreme Court's (and other courts') holding that criminal contempt cannot be classified as a misdemeanor. *United States v. Moncier*, Case No. 07-40, 2010 WL 1904957, at *2 (E.D. Tenn. May 10, 2010). These decisions are not binding on this Court and were wrongly decided.

Finally, in the event the Court dismisses the current Order to Show Cause and then enters a new show cause order as the Government requests, the violation of the Act will not be cured. The Act provides that if the indictment is dismissed (or in this case, if the show cause order is dismissed) at the request of the Government, then the 70-day clock is tolled during the period when no indictment is outstanding, and begins to run again from the spot at which it was stopped

8

upon the filing of the second indictment "for the same offense, or any offense required to be joined with that offense."  18 U.S.C. § 3161(h)(5); *see also United States v. Rojas-Contreras*, 474 U.S. 231, 239 (1985) ("[W]hen an indictment is dismissed on motion of the Government, and the defendant is thereafter reindicted, . . . [the] 70-day period[] continue[s] to run from the first indictment, with the proviso that the period during which no indictment is outstanding is excluded from the 70-day calculation."); *United States v. Menzer*, 29 F.3d 1223, 1228 (7th Cir. 1994) ("It is obvious . . . that the trial judge was incorrect in stating that the clock restarted upon reindictment.").  As a result, this Court cannot, as the Government suggests, simply resolve this issue by dismissing the current Order to Show Cause and replacing it with a new order.  Rather, the same 70-day speedy trial clock will apply to the new show cause order as applied to the original order.  Because the 70-day speedy trial clock which applied to the original Order to Show Cause has now expired, the same is true for the speedy trial clock for any subsequent show cause order that is based on the same conduct.[2]

Because the Act applies to the Order to Show Cause issued in this case and because the speedy trial clock has unarguably expired, the Order to Show Cause should be dismissed.

---

[2] The Government implies in a footnote that the 70-day clock would start anew if the Court issued an amended Order to Show Cause and acquiesced to the Government's request to leave open the possibility of a sentence of incarceration greater than six months. (Resp. at 5 n. 3.)  The Government does not cite any authority for that proposition, and we are not aware of any.  We submit that, in that circumstance, the amended order to show cause should render the Act applicable retroactively to the date the original order to show cause was entered.  In that event, the 70-day period would have long passed and dismissal would be mandatory.  A contrary rule – that the amended order to show cause would render the Act applicable only prospectively – would undermine the purposes of the Act.  It would mean that the Government could sit on a criminal-contempt petty offense for months or years, and then secure an amended order lifting the sentencing cap, with no consequences under the Act.  Indeed, the Court's discretion to lift the sentencing cap at any time demonstrates that Trudeau was exposed to a higher sentence all the while, and therefore should have had the protection of the Speedy Trial Act.  The amended order would not be analogous to a superseding indictment, as to which the 70-day clock would start afresh with regard to any new charges.  The amended order here would be based on precisely the same charges as were contained in the original Order to Show Cause.

**III.     The Order To Show Cause Should Be Dismissed With Prejudice.**

The government agrees that if the Act is applicable to this case, dismissal is mandatory, but argues that it should be without prejudice. However, as demonstrated in our opening brief, that is not a result the Court should countenance, in light of the facts that the charged offense is clearly not a serious offense under the Speedy Trial Act, the long delay is solely the result of the Government's negligence, and a re-prosecution would be a waste of public resources and leave the values underlying the Speedy Trial Act completely unvindicated.

**A.     The Alleged Offense Is Not Serious.**

The government's argument that the offense is a serious one is the effective equivalent of arguing that every offense is a serious offense for Speedy Trial Act analysis. This argument fails to consider the meaning of the term "serious" in the context of the Act, which is to weigh the relative seriousness of an alleged offense against the constitutional interests that are protected by the Act and by the Sixth Amendment. Judge Gettleman commented on the relative seriousness of the alleged offense by capping any potential sentence at six months, and the Government, after careful consideration, agreed with Judge Gettleman's decision. Now, with absolutely no change in the underlying facts, the Government argues that the alleged offense is serious because (1) Trudeau "lied to consumers in order to sell books"; and (2) "Trudeau blatantly violated a clear order of the court." (Resp. at 11.) But, the Government cannot point to a shred of evidence in the record that even a single consumer was "induced to purchase the book on false hopes and assumptions," or that even a single consumer believes he or she was misled into purchasing the book or was even unhappy with the book (despite more than *a million books* having been sold).[3]

---

[3]  Simply considering the number of copies sold, one would suspect that if the Government's claims were true, it would be easy for it to demonstrate the type of evidence that it has entirely failed to provide.

Because the offense is not serious, there is no need for Trudeau to make a strong showing on the other statutory considerations, although each weighs in favor of dismissal with prejudice.

### B. The Government's Delay Warrants Dismissal With Prejudice.

The government's arguments that the facts and circumstances of the delay warrant dismissal without prejudice is tantamount to the argument that the Speedy Trial Act should be ignored. The government concedes that delay was lengthy and attributable to its inaction, yet argues that the facts and circumstances favor dismissal without prejudice because: (1) there is an "absence of bad faith"; (2) Trudeau was silent about the delay; and (3) there is a lack of prejudice to Trudeau. (Resp. at 12-15.) None of those factors justifies dismissal without prejudice.

First, the absence of bad faith is irrelevant here. As demonstrated in our opening brief, where the alleged offense is not serious and the delay is substantial, as is the case here, mere negligence on the part of the Government favors dismissal with prejudice. (Docket Entry No. 10 at 11-14.) Government negligence is excusable, if at all, only when the seriousness of the offense outweighs the need to sanction the Government for its neglect. All of the cases cited by the Government involved serious offenses. Indeed, in *United States v. Fountain*, 840 F.2d 509, 511 (7th Cir. 1988), the alleged offense was first-degree murder. As the court stated, "[d]ismissing a misdemeanor with prejudice promotes enforcement of the Speedy Trial Act at smaller cost to potential victims of crime than does dismissing a murder case." *Id.* at 512.

Second, the Government blames Trudeau for not calling its attention to the speedy trial clock and cites *Fountain* and *Sykes* for support. But, these cases do not support the proposition that it is the defendant's responsibility to advise the Government that it is about to violate the law so that such a violation can be avoided. Indeed, in *Sykes* – a case involving four bank robberies – the court found that the defendant was largely responsible for the delays and continuances.

11

*United States v. Sykes*, 614 F.3d 303, 310 (7th Cir. 2010). Here, Trudeau has done nothing to cause the delay.

Third, the Government completely dismisses the prejudice from a delay by equating it to every other criminal case. But, Trudeau does not argue that prejudice caused by delay by itself is a basis for dismissal with prejudice. Rather, we argue that the non-seriousness of the alleged offense, the Government's negligence, the negative impact of re-prosecution on the administration of justice, *and* the prejudice to Trudeau constitute a basis for dismissing with prejudice. Furthermore, the Government's argument that Trudeau is not prejudiced because "he is coping with the criminal charges against him" by continuing to broadcast his radio show is not at all a persuasive argument for dismissal without prejudice. If the Government is suggesting that an order for dismissal with prejudice is warranted only when a defendant's life or potential defense completely falls apart due to delay, that proposition clearly is not the law, particularly when the offense is the equivalent of a relatively minor misdemeanor.

### C. Re-prosecution Of This Case Would Adversely Affect The Administration Of The Act And Justice.

Re-prosecution of this case would negatively impact the administration of the Act and the administration of justice to an extent that is not justified by the relatively non-serious nature of the alleged offense. It is not only the defendant, but it is also the public that has an interest in vindicating the purposes of the Act. A re-prosecution here would leave the Act unvindicated and would be an unnecessary waste of public resources.

The government argues that re-prosecution would not render the Speedy Trial Act a nullity because "dismissal without prejudice is not a toothless sanction." (Resp. at 16.) It is true, as a *general* matter, that dismissal without prejudice can be an adequate sanction where the Government is required to re-indict the defendant or where there is a statute of limitations issue.

But none of those circumstances exists here. In fact, the Government has requested that, if the Court dismisses this matter under the Act, it do so by simply dismissing the existing Order to Show Cause and issuing a new or amended order to show cause, which increases the potential penalty imposed on Trudeau – in effect rewarding the Government for its dilatory inaction. Surely, a clear violation of the Act because of government inaction is not meant to accrue to its favor.

## CONCLUSION

For the foregoing reasons, and the reasons stated in his Memorandum of Law in Support of Motion, Trudeau respectfully requests that this matter be dismissed with prejudice pursuant to the Speedy Trial Act.

Dated: July 11, 2011

>                        Respectfully submitted,
>
>                        KEVIN TRUDEAU
>
>                    By: /s/ Kimball R. Anderson
>                        One of His Attorneys

Kimball R. Anderson (kanderson@winston.com)
Thomas L. Kirsch (tkirsch@winston.com)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
312-558-5600

Daniel J. Hurtado (dhurtado2@att.net)
LAW OFFICE OF DANIEL J. HURTADO
841 North Grove Avenue
Oak Park, Illinois 60302
708-289-2503

**CERTIFICATE OF SERVICE**

      I, Kimball R. Anderson, an attorney, hereby certify that on July 11, 2011, I caused to be served true copies of Kevin Trudeau's Reply Memorandum in Support of Motion for Dismissal Pursuant to the Speedy Trial Act by filing such document through the Court's Electronic Case Filing System, which will send notification of such filing to:

Marc Krickbaum
United States Attorney's Office
219 South Dearborn Street
Suite 500
Chicago, IL  60604

                                                  /s/ Kimball R. Anderson
                                                  Kimball R. Anderson
                                                  Attorney for Kevin Trudeau