UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>    Plaintiff, )<br>) <br>v. )<br>)<br>KEVIN TRUDEAU, )<br>    Defendant. ) | Case No. 10-CR-00886<br><br>Honorable Ronald A. Guzman |

**KEVIN TRUDEAU'S MEMORANDUM REGARDING SENTENCING ANALYSIS OF
CRIMINAL CONTEMPT CASE**

**I.     INTRODUCTION**

Defendant Kevin Trudeau submits this Memorandum as requested by this Court regarding issues surrounding the potential sentence that Trudeau could receive if found guilty of criminal contempt.

**II.     BACKGROUND**

Kevin Trudeau is an author of several *New York Times* best-selling books, radio host, and consumer advocate. He has promoted his books largely through television infomercials. He is often critical of corporate America and government agencies, including the Federal Trade Commission ("FTC").

**A.     Trudeau Entered Into A Stipulated Order With The FTC In 2004**

In September 2004, Trudeau settled a lawsuit with the FTC without admitting any liability or fault by entering into a Stipulated Order. The Stipulated Order provided that Trudeau would appear in infomercials only for books and other publications and that the infomercials should not "misrepresent the content" of the publication being promoted. Judge Gettleman, after hearing counsel's presentation of what was permissible under the proposed 2004 Stipulated Order, entered the Order. (Stipulated Order, Case No. 03 C 3904, Docket No. 56.)

1

B.     **Civil Contempt Proceedings Initiated By The FTC In 2007**

Trudeau subsequently wrote another book – *The Weight Loss Cure "They" Don't Want You to Know About* (the "*Weight Loss Cure* book") – and appeared in infomercials promoting the book. Believing that he would be compliant with the 2004 Stipulated Order if he faithfully represented the content of the book in the infomercials, Trudeau repeated in the infomercials statements in the book to the effect that the weight-loss protocol discussed in the book, and personally experienced by Trudeau, is "easy," and that users could maintain weight loss without deprivation.

The FTC viewed the *Weight Loss Cure* infomercials and then waited, without comment, while the infomercials aired on national TV for about eight months. Then, in September 2007, the FTC filed a contempt motion alleging that the *Weight Loss Cure* infomercials were contemptuous of the Stipulated Order because they falsely represented that the protocol described in the book was "easy." In the FTC's view, the weight-loss protocol was not "easy." Although the *Weight Loss Cure* book itself repeatedly described the protocol as "easy," the FTC argued that the infomercial could not describe the protocol as "easy" without violating the 2004 Stipulated Order. The FTC also argued that the infomercial could not repeat the book's statements about maintaining weight loss without violating the Order.

Judge Gettleman agreed with the FTC and, on November 16, 2007, held Trudeau in civil contempt. On November 4, 2008, Judge Gettleman issued a "remedy" for Trudeau's civil contempt in the form of a $37.6 million judgment and a three-year injunction against appearing in infomercials. (Order, Case No. 03 C 3904, Docket No. 220). The judgment amount was based on the supposed revenue from infomercial sales of the *Weight Loss Cure* book, not on any showing of actual harm or consumer dissatisfaction. (Order, Case No. 03 C 3904, Docket No. 335 at 7; *FTC v. Trudeau*, 662 F.3d 947, 951 (7th Cir. 2011).)

### C. The Criminal Prosecution Initiated On April 16, 2010

At the same time that Judge Gettleman entered the Supplemental Order – April 16, 2010 – he issued an Order to Show Cause directing Trudeau:

> . . . to show cause why he should not be prosecuted for and held in criminal contempt of this court's September 2, 2004 Consent Order. Specifically, defendant will personally be given notice, pursuant to Rule 42(a)(1), that this court will consider imposing a term of imprisonment not to exceed six months for defendant's producing and broadcasting deceptive infomercials that misrepresented the contents of defendant's book entitled The Weight Loss Cure "They" Don't Want You to Know About between December 2006 and November 2007, in direct and willful violation of this court's order of September 2, 2004[.]

(Supplemental Order, Case No. 03 C 3904, Docket No. 338.) Judge Gettleman subsequently exercised his prerogative as a senior judge under 28 U.S.C. § 294(b) to transfer the criminal matter to the Executive Committee for reassignment to another judge under a new case name and number. (Minute Order, Case No. 03 C 3904, Docket No. 435.)

At a status hearing held in this case on April 4, 2013, this Court asked that the parties provide some analysis regarding the appropriate range of sentences in this case. Trudeau's analysis is set forth below.

### III. ANALYSIS AND ARGUMENT

#### A. Criminal Contempt Is *Sui Generis* And Has A Minimum Sentence Of Straight Probation.

The offense of criminal contempt is *sui generis*, which means that it is not classified as either a misdemeanor or a felony. *Cheff v. Schrackenberg*, 384 U.S. 373, 380 (1966); *United States v. Cohn*, 586 F.3d 844, 848-49 (11th Cir. 2009). As a result, the minimum sentence for criminal contempt is straight probation (with no term of imprisonment). *See, e.g.*, *Frank v. United States*, 395 U.S. 147, 148 (1969) (defendant convicted of criminal contempt and sentenced to term of probation); *United States v. Hardy*, 283 Fed. Appx. 84, 85 (3rd Cir. 2008) (same).

### B. The Most Analogous Crime Is Obstruction Of Justice Under Sentencing Guideline § 2J1.2

Appendix A of the Federal Sentencing Guidelines Manual ("Guidelines") refers to Guideline § 2J1.1 in relation to 18 U.S.C. § 401 violations. Section 2J1.1, titled "Contempt," instructs the Court to apply Section 2X5.1 (Other Offenses). Section 2X5.1 requires courts to apply the most analogous offense guideline. Application Note 1 to 2J1.1 further provides that "[i]n certain cases, the offense conduct will be sufficiently analogous to §2J1.2 (Obstruction of Justice) for that guideline to apply." Thus, the Guidelines specifically acknowledge that the guideline for Obstruction of Justice may be the appropriate guideline in a criminal contempt context. *See United States v. Tankersley*, 296 F.3d 620, 621-22 (7th Cir. 2002) (applying obstruction of justice guideline to a criminal contempt offense where the defendant sold his own yacht, which was subject to freeze order in underlying civil case, and hid proceeds of sale); *United States v. Voss*, 82 F.3d 1521, 1531-32 (10th Cir. 1996) (finding the most analogous guideline for refusing to comply with a court order is obstruction of justice).

If Trudeau is found guilty of criminal contempt, the Court should find that Obstruction of Justice is the most analogous offense, and that §2J1.2. Judge Gettleman in the civil case found by a preponderance of the evidence that Trudeau violated its order by misrepresenting the contents of the book. (Opinion and Order, Case No. 03 C 3904, Docket No. 157 at 5-6.) However, Judge Gettleman did not find (and the evidence will not support) that Trudeau engaged in a scheme to defraud – rather, only that he violated a court order. The base offense level for Obstruction of Justice is 14. Specific Offense Characteristics (1) through (3) do not apply. Therefore, under Criminal History Category I, the applicable sentencing range under §2J1.2 of the advisory sentencing guidelines is 15 to 21 months.[1]

---

[1] This analysis does not include any analysis of the factors under 18 U.S.C. § 3553(a).

C.     **If The Court Applies Guideline § 2B1.1, The Loss Amount Is Zero.**

The government argues that the applicable guideline is § 2B1.1, and that the loss amount could be up to $37.6 million. We disagree. But if the Court were to apply § 2B1.1 (it should not), the loss amount should be zero.

In order to prove $37.6 million in losses, the government would have to prove that Trudeau's alleged criminal contempt resulted in $37.6 million of actual loss (pecuniary harm that resulted from the offense). The government will not be able to show $37.6 million in loss.

"The Guidelines make clear that loss is a measurement of economic harm to victims and therefore must be a measurement of net economic deprivation." David Debold, PRACTICE UNDER THE FEDERAL SENTENCING GUIDELINES § 16.02[A][3] (The Guidelines Applicable to Fraud Offenses); *see also* USSG § 2B1.1, Application Note 3(E) ("Credits Against Loss") ("[l]oss shall be reduced by…[t]he money returned, and the fair market value of the property returned and the services rendered, by the defendant…to the victim before the offense was detected"). Accordingly, the law is clear that a court must take into account the number of consumers who were satisfied with defendant's product and reduce the loss accordingly. *United States v. Andersen*, 45 F.3d 217, 221 (7th Cir. 1995) (finding that there was no quantifiable loss where consumers were pleased with defendant's product, even though defendant sold product without FDA approval and made false statements to consumers about the product); *United States v. Munoz*, 430 F.3d 1357, 1370 (11th Cir. 2005) (affirming district court's loss calculation, where district court, in determining loss based on the marketing of a product, took into account satisfied customers and reduced the loss amount by the estimated percentage of satisfied customers). Moreover, for "frauds where the item misrepresented has some value, the value of this item should be netted against the price offered to determine the amount of loss. *See United States v. Vivit*, 214 F.3d 908, 914 (7th Cir. 2000); *United States v. Maurello,* 76 F.3d 1304, 1313 (3d Cir.

5

1996) (services of disbarred lawyer have some value, so loss was measured only in terms of fees paid by dissatisfied clients if a reasonable determination is made that those clients actually suffered a loss); *see also United States v. Schneider*, 930 F.2d 555, 558 (7th Cir. 1991); *United States v. Jackson*, 95 F.3d 500, 505-06 (7th Cir. 1996); *United States v. Strassburger*, 26 F.3d 860 (8th Cir. 1994) (holding that a defendant who sold mislabeled meat could be sentenced based on the loss calculated by subtracting the value of the meat, had it been correctly labeled, from the value of the meat as represented to the purchaser).

In the instant case, the government's figure of $37.6 million represents the total sales of the *Weight Loss Cure* book through the 1-800 telephone number provided in the infomercials which advertised the book, not the net loss to consumers.[2] Indeed, this calculation completely fails to take into account the many consumers who were pleased with their purchases. Indeed, in the civil case, the government did not submit any evidence that any customer was unhappy with his or her purchase, felt misled or harmed by Trudeau's alleged misrepresentations, or that they purchased the *Weight Loss Cure* book because of any alleged misrepresentation by Trudeau. In addition, consumers were provided with a money-back guarantee when they purchased the *Weight Loss Cure* book, allowing them to return the book within 30 days for a full refund if they were not satisfied. Thus, it would be unreasonable to conclude that the appropriate amount of loss in this case is the full $37.6 million figure advocated by the government. There should be no increase in offense level based on loss under § 2B1.1.

---

[2] It bears noting that $37.6 million was paid to the book's publisher, not to Trudeau.

### D. The Court Should Re-Impose A Six-Month Cap On The Potential Sentence In This Case.

Finally, this Court should re-impose a six-month cap on the potential sentence should Trudeau be convicted of criminal contempt.[3]

Judge Gettleman, who is intimately familiar with the facts of this case and who originally issued the criminal contempt order to show cause, deliberately chose to limit any sentence to six months. Judge Gettleman's decision to limit the possible sentence to six months adheres to the principle that courts should employ the contempt power with great care and restraint. "[D]istrict courts have a special duty to exercise such an extraordinary [contempt] power with the utmost sense of responsibility and circumspection." *Green v. United States*, 356 U.S. 165, 188 (1958), *overruled in part on other grounds by Bloom v. Illinois*, 391 U.S. 194 (1968).

It has been almost six years since Trudeau terminated the conduct that Judge Gettleman found to be in violation of the 2004 Stipulated Order. There have been no allegations since then that Trudeau violated the Order. In fact, after Judge Gettleman's finding, Trudeau immediately took steps to prevent violations of the Consent Order from occurring in the future. In the absence of any such showing, there is no reason to stray from Judge Gettleman's show cause order prescribing a sentence of six months or less. Thus, Trudeau renews his request that this Court impose a cap on the potential sentence in this case of six months or less.

### IV. CONCLUSION

For the foregoing reasons, Trudeau respectfully requests that this Court apply the Federal Sentencing Guidelines Manual in a manner consistent with the above analysis.

---

[3] Trudeau incorporates by reference his Response Memorandum in Opposition to the Government's Motion to Amend Order to Show Cause (Docket No. 14).

Dated: April 12, 2013.

                    Respectfully submitted,

                    KEVIN TRUDEAU

                    By:    /s/ Thomas L. Kirsch II
                           One of His Attorneys

Kimball R. Anderson (kanderson@winston.com)
Thomas L. Kirsch II (tkirsch@winston.com)
Katherine E. Croswell (kcroswell@winston.com)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
312-558-5600

**CERTIFICATE OF SERVICE**

      I, Thomas L. Kirsch II, an attorney, hereby certify that on April 12, 2013, I caused to be served true copies of KEVIN TRUDEAU'S MEMORANDUM REGARDING SENTENCING ANALYSIS OF CRIMINAL CONTEMPT CASE by filing such document through the Court's Electronic Case Filing System, which will send notification of such filing to:

Marc Krickbaum
United States Attorney's Office
219 South Dearborn Street
Suite 500
Chicago, Illinois 60604

                                        /s/ Thomas L. Kirsch II
                                        Thomas L. Kirsch II
                                        Attorney for Kevin Trudeau