1

```
 1                    IN THE UNITED STATES DISTRICT COURT
                     FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                             EASTERN DIVISION

 3    UNITED STATES OF AMERICA,          )
                                         )
 4                 Plaintiff,            )
                                         )
 5      v.                               )  No. 10 CR 886
                                         )
 6    KEVIN TRUDEAU,                     )  Chicago, Illinois
                                         )  November 4, 2013
 7                 Defendant.            )  8:45 a.m.

 8                      EXCERPT OF TRIAL PROCEEDINGS
                     BEFORE THE HONORABLE RONALD A. GUZMAN
 9

10    APPEARANCES:

11    For the Plaintiff:        HON. ZACHARY T. FARDON
                                United States Attorney
12                              BY:  MR. MARC KRICKBAUM
                                     MS. APRIL M. PERRY
13                              Assistant United States Attorneys
                                219 South Dearborn Street
14                              Suite 500
                                Chicago, Illinois  60604
15                              (312) 353-5300

16    For the Defendant:        WINSTON & STRAWN LLP
                                BY:  MR. THOMAS LEE KIRSCH II
17                              35 West Wacker Drive
                                Chicago, Illinois  60601
18                              (312) 558-5600

19                              MS. CAROLYN PELLING GURLAND
                                Attorney at Law
20                              2 North LaSalle Street
                                17th Floor
21                              Chicago, Illinois  60602
                                (312) 420-9263
22

23

24

25
```

Nancy C. LaBella, CSR, RMR, CRR
Official Court Reporter
219 South Dearborn Street, Room 1222
Chicago, Illinois  60604
(312) 435-6890
Nancy_LaBella@ilnd.uscourts.gov

1      (Excerpt of proceedings:)

2      (Proceedings heard in open court:)

3              THE CLERK:  10 CR 886, United States of America v.

4      Trudeau.

5              MR. KRICKBAUM:  Good morning, your Honor.  Marc

6      Krickbaum and April Perry on behalf of the United States.

7              MR. KIRSCH:  Good morning, your Honor.  Tom Kirsch

8      and Carolyn Gurland on behalf of the defendant, Kevin Trudeau.

9              THE COURT:  Good morning, everyone.

10             We have, I think, one main outstanding issue, which

11     is the government's objection to evidence regarding prior

12     dealings between Mr. Trudeau and the FTC with respect to an

13     injunctive order regarding a -- is it a Cures "They" Don't

14     Want You to Know About book?

15             MR. KRICKBAUM:  Natural Cures.

16             THE COURT:  Natural Cures "They" Don't Want You to

17     Know About.

18             MR. KRICKBAUM:  Yes.

19             THE COURT:  Okay.  I will take the risk that the

20     attorneys are familiar with the definition of the word "brief"

21     and ask you to tell me briefly what your objections are to

22     that evidence.

23             MR. KRICKBAUM:  Yes, Judge.  And I will do my best to

24     be brief.

25             Our objection is that this evidence that the

1    defendant seeks to admit without defendant's testimony is

2    not -- does not permit the jury to draw any of the inferences

3    that the defendant wants them to draw.

4         In particular, based on -- there is no obvious

5    similarity between the Natural Cures infomercials and books

6    and The Weight Loss Cure infomercials and books that would

7    allow the jury to infer that because the FTC approved the

8    first, that therefore the second must have been permitted

9    under the order and, in particular, that the defendant must

10   have concluded that, which, of course, is exactly what the

11   defense wants the jury to conclude.

12        There's a couple of different reasons for that, and

13   we've set it forth -- set it forth in our filings.

14        First, the Seventh Circuit considered this evidence

15   after the defendant had actually testified at a trial and said

16   that this was not a reasonable inference; that the extent to

17   which Mr. Trudeau could reasonably rely on the FTC's approval

18   of Natural Cures ended when he chose to lie and make obvious

19   misrepresentations about The Weight Loss Cure.  And that was

20   even after Mr. Trudeau testified.  And so we certainly think

21   that that inference would not be a proper one if Mr. Trudeau

22   does not testify about his state of mind.

23        And the other issue from our perspective is just that

24   there is no such obvious similarity between these two

25   infomercials such that one could have been a template for the

1   other.  And the defense only points to two similarities, those

2   having to do with the idea -- the idea that the books are

3   simple and inexpensive.  Those ideas arose incredibly briefly

4   in the Natural Cures infomercials.  The defendant never

5   actual- -- ever actually used the words that are supposedly

6   similar.  He never said that his products in Natural Cures

7   were inexpensive and he never said that his Natural Cures book

8   contained simple cures.  So there isn't even that similarity.

9          And, more importantly, the two books and the two

10  infomercials are just completely different.  There's nothing

11  in Natural Cures about a diet, about portion control, about

12  calorie counting.  There's nothing about eating anything you

13  want.  And so it's simply not reasonable to infer that one was

14  a template for the other.  That's the government's position.

15         THE COURT:  Okay.  What about the FTC's statements

16  during the course of the entry of the injunction regarding the

17  Natural Cures book which the defendant points to as providing

18  for him a template?

19         MR. KRICKBAUM:  Judge, the FTC never made any such

20  statements.  Mr. Trudeau's attorney made the statement at that

21  hearing.  And I believe what he said is, We have one example

22  of what is permitted under the order.  And our position is

23  that one example of what is permitted under the order is far

24  from a template for how to follow the order going forward.

25  That's true as a general matter, and it's certainly true when

1  you look to the specifics of Natural Cures versus The Weight

2  Loss Cure.  It's almost impossible to imagine that Natural

3  Cures could have been a template for The Weight Loss Cure when

4  they are so very different.

5           THE COURT:  Do you have an opinion on the amount of

6  evidence it would take to establish that if, in fact, there is

7  a similarity, both in the infomercials and in the books and

8  specifically in the relationship of the statements in the

9  infomercials to each book, so that the jury could establish a

10  belief in the parallel nature of these statements?

11          MR. KRICKBAUM:  That's obviously a difficult question

12  to answer in the abstract, Judge.

13          I can say that I think it has to be -- the overlap

14  has to be more than literally a few seconds in both

15  infomercials, which, I think, is what we're talking about

16  here.

17          And, of course, things would be different if the

18  defendant were testifying and testifying that he actually drew

19  these parallels.  But in the absence of that, I can't give you

20  a percentage of how much they have to overlap, your Honor.

21  But, here, the overlap is so minuscule in our view that it

22  doesn't come close.

23          THE COURT:  Well, would it be necessary for the jury

24  to be able to review the contents of both books and the

25  contents of both infomercials in their entirety in order to be

```
 1   able to make that distinction?  Would we have separate, in
 2   essence, trials going on about two different books?
 3           MR. KRICKBAUM:  Yes.  And perhaps even three books
 4   because -- the answer to your question is yes, your Honor.
 5   And it might be three books because after the defendant
 6   published -- or after the first Natural Cures book was
 7   published, the FTC informed the defendant that there had been
 8   many consumer complaints and that if consumers were being
 9   misled, his book needed to contain the cures that it -- the
10   infomercial said it contained.  The defendant then published
11   another version of Natural Cures, which was several hundred
12   pages longer.
13           So we may be actually asking the jury -- this trial
14   becomes about one book and one set of infomercials to about
15   two or three books that the jury is then required to go
16   through and try to make these comparisons without any evidence
17   that the defendant himself made those comparisons.  We're
18   basically asking the jury to engage in a lengthy homework
19   project that there has been little or no evidence in this
20   trial to support.
21           THE COURT:  Okay.  I'll ask the defense to do
22   essentially the same thing, to give me, in brief, their
23   reasons why they believe that the evidence of the defendant's
24   dealings with the FTC should be allowed in evidence in this
25   case as, I take it, a defense of good faith.
```

1    MR. KIRSCH:  Well, there's two reasons, your Honor.

2  The government didn't address the second reason.  But I'll

3  address them both, and I'll ask -- I'll answer the other

4  questions that the Court asked.

5    The first -- the first reason that the evidence

6  should be admitted is that there is abundant evidence, direct

7  evidence, that the defendant was aware that the FTC approved

8  the infomercial for the Natural Cures book.  They had the

9  transcript, they had the book and they approved it.

10    Then the --

11    THE COURT:  Is that correct?  There were essentially

12  two basic aspects to Judge Gettleman's injunctive order as I

13  recall it.  The one was that the defendant was to make no more

14  infomercials.  Then there was an exception to that, which was

15  that he could make infomercials so long as they related solely

16  to books and not to products.  And then there was a third part

17  which said, oh, and, by the way, any such infomercial cannot

18  be misleading; it cannot misrepresent the content of the book.

19    My reading of the discussion between the FTC, the

20  defendant and the transcripts that you have presented is that

21  the FTC was essentially saying that the infomercial that was

22  being proposed qualified as an infomercial within the

23  exception that Judge Gettleman first established, which is

24  that it was an infomercial about a book and not about a

25  product.  But that there was never a determination by the FTC

1    that there was no misleading or misrepresenting language in

2    the infomercial itself; that that's not what they were talking

3    about.

4          MR. KIRSCH:  Your Honor, I respectfully disagree with

5    that conclusion.  The evidence could not be more clear that

6    the FTC approved the dissemination of the infomercial as

7    consistent with the 2004 consent order.

8          Now, there is absolutely no evidence -- none, zero --

9    there's not one witness that will testify and there's not one

10   document that support the conclusion that the FTC only

11   approved the infomercial as an infomercial that did not market

12   a product and that the FTC was not concerned about the clause

13   that Trudeau not misrepresent the content of the book when it

14   approved the infomercial.

15         THE COURT:  What about the fact that there was a

16   later objection by the FTC which caused your client to change

17   the book.

18         MR. KIRSCH:  The later --

19         THE COURT:  Doesn't that indicate that there was at

20   that point for the first time a determination by the FTC as to

21   the issue that we're involved with here, which is whether or

22   not there were misrepresentations in the infomercial as to the

23   content of the book?

24         MR. KIRSCH:  Your Honor, that is a -- I believe that

25   is a -- the Court is skipping several steps in drawing that

1    conclusion.

2         The FTC objected to the book, not the infomercial.

3    It was another book that was later published, not another

4    infomercial.  The third book, the More Natural Cures Revealed

5    book that the government talked about and that suggested it

6    would have to come into evidence, is totally irrelevant.  The

7    FTC made comments about the book and the -- Trudeau then

8    changed the book.  But that had absolutely nothing to do with

9    the FTC's earlier approval of the infomercial for the Natural

10   Cures "They" Don't Want You to Know About book.  The FTC

11   basically said you should put the cures in the book.  So

12   Trudeau did that.  That had nothing to do with the FTC

13   approving the infomercial.

14        Your Honor, the defense proposed Exhibit 19, which is

15   coming in evidence.  The Court has already ruled that it's

16   coming in.  It clearly says in no uncertain terms, in response

17   to the Natural Cures infomercial that was -- the transcript

18   that was submitted to the FTC, we no longer object to the

19   dissemination of the Natural Cures infomercial.  So I think

20   it's abundantly clear.

21        But, your Honor, there's another reason that at least

22   the very limited -- your Honor, I want -- by the way, the

23   Court asked how much additional evidence would come in.  Very

24   little.  There's very little additional evidence.  And this is

25   why:  Your Honor, the government -- this is the second reason

1     that the evidence is admissible and, of course, the Court may

2     I suspect -- well, the Court may preclude me from making

3     certain arguments with respect to the Natural Cures evidence.

4     But I don't think the Court can preclude the evidence coming

5     in in its entirety for this reason:  The government is going

6     to call an expert witness.  The expert witness is going to

7     show products and services.  And the government is going to

8     use that expert witness -- they're actually going to admit

9     some of the products and they're going to admit receipts that

10    show the cost of those products and services.  And they're

11    going to argue those products and services are neither simple

12    nor expensive -- or inexpensive.  And they're saying that's

13    Trudeau's misrepresentations in The Weight Loss Cure book.

14          But, your Honor, the jury has to know that the FTC

15    approved descriptions of those exact same products and

16    services as simple and inexpensive in the Natural Cures book.

17          I submitted a chart to the Court which shows -- and,

18    your Honor, if you look at the government's exhibits, I mean,

19    it would be entirely unfair for the government to put in

20    evidence of -- I don't know -- just take one of the examples

21    from their -- one of their examples that overlaps the two

22    books, the candida cleanse.  The government is going to put in

23    the actual product, and then they're going to put in the cost

24    of the product; and they're going to argue that it's not

25    simple nor inexpensive.  But in the Natural Cures infomercial

1    and book, Trudeau describes the exact same product as simple

2    and inexpensive and the FTC approved it.

3            Now, if the Court is not going to allow me to argue

4    from the Natural Cures evidence that it affected Trudeau's

5    state of mind or it had an effect on his state of mind, I

6    think the Court certainly has to let me argue that it's not a

7    misrepresentation.  So there's -- there's two different -- I

8    guess there's two different things here.

9            The first argument and the first reason the

10   government objects is to the issue of willfulness.

11           But there's something else that the government has to

12   prove, which is that it's a misrepresentation.  And if the

13   government already spoke to it and already approved it as

14   simple and inexpensive, the government now can't come into

15   court and say that Trudeau made a misrepresentation when he

16   described the exact same product as simple and misrepresent --

17   simple and inexpensive.

18           The government fails to address that argument with

19   respect to whether or not it was, in fact, a misrepresentation

20   of the content of the book in the Weight Loss Cures book.

21           THE COURT:  Isn't the response to that argument

22   fairly simple, which is that the statements were made in two

23   separate contexts.  One was in the context of a book that

24   offered essentially miracle cures for cancer and other

25   illnesses and the other was in the context of a book that

1   offered a weight loss protocol.  And doesn't the jury have to

2   have the entire context within which such seemingly similar

3   statements were made in order to determine whether or not one

4   was misleading in essence and the other was not?

5           MR. KIRSCH:  I think that's an argument that the

6   government can make.  But, your Honor, that's an issue --

7           THE COURT:  Isn't it a logical argument?  Clearly the

8   Seventh Circuit has said that what's at stake in this case is

9   whether or not the essence of the book was misrepresented by

10  the infomercial.  And if you're going to compare

11  representations of an infomercial from one book to

12  representations of an infomercial to another book, don't you

13  have to present to the person who is going to make that

14  comparison the essence of each of those books?

15          MR. KIRSCH:  Your Honor, the short answer is no.  But

16  the Natural Cures book should come in evidence.  I'm not

17  saying -- I'm saying the evidence should come in.  If the

18  Court is not going to allow me to argue to -- to draw the

19  inference on state of mind, the Natural Cures book should

20  still come in so I can argue that it's not a

21  misrepresentation.

22          Now, if the government wants to argue to the jury

23  that it wasn't a misrepresentation in the Natural Cures book

24  because somehow those products and services were simple and

25  inexpensive with respect to that book but they somehow became

1  difficult and expensive in the Natural Cures book, they can

2  certainly make that argument.  I submit they won't because I

3  think the jury would reject that argument in about five

4  seconds.

5          THE COURT:  Well, I think you could present the

6  direct evidence of what is simple and inexpensive the same way

7  the government does.  Bring in someone who testifies to what

8  it costs and how it's obtainable and how it's used.

9          MR. KIRSCH:  Well, the --

10         THE COURT:  But to use a comparison that would

11 require the introduction of an entirely different book for the

12 jury to read and consider in making its deliberations in this

13 case would be to double, at the very least, if not triple, the

14 complexity of the case and result in ancillary litigation that

15 has nothing to do directly with the issues in this case.

16         The issues in this case are pretty simple, and they

17 don't take a great deal of sophisticated evidence.  They're

18 clearly this:  Are the statements in the infomercial that your

19 client made misrepresentative of the essential content of the

20 book that the infomercial was selling.

21         MR. KIRSCH:  Your Honor, I respectfully disagree that

22 that is the issue in this case.

23         THE COURT:  What is the issue?

24         MR. KIRSCH:  The issue is whether the misrepresent --

25 I'm sorry -- the representations in the infomercial willfully

1   misrepresented the content of the book.  The Court wants to

2   insert the term "essence."  And I understand what the Seventh

3   Circuit said in its opinion and what it did.

4          But, your Honor, there's a massive difference between

5   that case and this case here.  In that case, the court, Judge

6   Gettleman, was the finder of fact.  And, your Honor, I'm going

7   to -- I'm going to file today an objection to the government's

8   supplemental instruction which sets this forth.

9          The court, Judge Gettleman, was the finder of fact as

10  to whether or not there were misrepresentations made.  Judge

11  Gettleman, as the finder of fact, found what the --

12  essentially what the contract between Trudeau and the FTC

13  meant.  It's black letter law that when a contract says

14  something and it could be subject to different meanings, it is

15  a question of fact as to what that contract means.

16         Here, the government is free to argue that "content

17  of the book" meant "essence of the book."  And I'm free to

18  argue that "content of the book" meant "content of the book."

19  And what the Seventh Circuit thinks about that is irrelevant.

20  They affirmed that Judge Gettleman is finder of fact in a

21  civil case.  Here, the jury is the finder of fact.  It's a

22  totally different proceeding.  And it's a jury.  The

23  government has the burden of proof beyond a reasonable doubt

24  to convince this jury that Trudeau misrepresented -- willfully

25  misrepresented the book in the infomercial, the content of the

1    book.  They can argue that the contract means essence.  We can

2    argue that it doesn't.  It's black letter law that that is a

3    question of fact for the jury to find.

4         So I submit that giving the instruction to the jury

5    that the government submits would be error.  And the Seventh

6    Circuit opinion is irrelevant on that issue.

7         THE COURT:  Well, you're now talking about

8    instructions to the jury --

9         MR. KIRSCH:  Well, your Honor, I am --

10        THE COURT:  -- and I'm talking about an evidentiary

11   point.  But as long as you're there, let's be complete.  This

12   is a consent decree.  Your client agreed to this.  He signed

13   it.  He said I agree to do these things.  And the Seventh

14   Circuit interpreted that consent decree.  You're now saying

15   that this jury has a right to give a separate interpretation

16   of the consent decree than the Seventh Circuit has given?

17        MR. KIRSCH:  Absolutely, because -- and this is

18   why -- it's very simple.

19        THE COURT:  Do you have case law in that regard?

20        MR. KIRSCH:  Yes.  Your Honor, the -- actually, your

21   Honor, in our brief that we filed, we actually cite a case

22   that -- of yours, I believe, if I can find it.

23        But your question dealt with how can you get beyond

24   what the Seventh Circuit did in this case.  And the reason is

25   because it's -- I think it's a very simple -- I really think

1      it's a very simple issue.  In the civil case, which has

2      nothing to do with this case --

3               THE COURT:  You told me it wasn't.

4               MR. KIRSCH:  In --

5               THE COURT:  Go ahead.

6               MR. KIRSCH:  No, I think it's very straightforward.

7      The civil case, Judge Gettleman was the finder of fact.  He

8      found -- he found as the finder of fact that Trudeau

9      misrepresented the content of the book in the infomercials.

10     The Seventh Circuit affirmed him.  That's what they did.  They

11     affirmed him as finder of fact.

12              Certainly, absolutely, unquestionably, this jury can

13     find that Trudeau did not misrepresent the content of the

14     book.  There's no question about that.  And to say that

15     because the Seventh Circuit has already found that he has --

16              THE COURT:  No, no.  What the Seventh Circuit has

17     found is an issue of law, which is what the proper

18     interpretation of the contract is.  That's what the Seventh

19     Circuit has found.

20              MR. KIRSCH:  Your Honor, in Harmon v. Gordon, 712

21     F.3d 1044 at 1050, Seventh Circuit 2013 -- and I'm going to --

22     I'm going to submit this to the Court -- the court held that

23     when a contract is ambiguous, the meaning of a contract is

24     ambiguous or the language is ambiguous, its interpretation

25     becomes a question of fact for the jury.

1    So the government is certainly free to argue here

2  that content of the book means content of the entire book or

3  essence of the book.  But we, as the defense, are free to

4  argue that it means what it says.  It says content of the

5  book.  It's then a question of fact for the jury to find.

6    Now, your Honor, this Court --

7    THE COURT:  The Seventh Circuit defined the word

8  "content."  It did not do so based upon factual

9  representations.  It did so based upon a determination that

10  there was no ambiguity in this contract and that that's what

11  it meant.

12    MR. KIRSCH:  Your Honor, I think the Seventh Circuit

13  did it in the context of the civil case.  And it's -- your

14  Honor, I guess that's my position on that.

15    THE COURT:  I guess.  But the civil case doesn't

16  change a finding of law, the fact that it was found in a civil

17  case.  A contract interpretation doesn't change from a civil

18  case to a criminal case.  If it's a contract interpretation as

19  a matter of law, it's the law.  It applies both to the civil

20  injunction and to the very same injunction when the violation

21  is being tried as a crime.

22    MR. KIRSCH:  Your Honor, I submit it was not a

23  finding of law.  It was not a finding of law.  That's the

24  difference.  It was not a -- it was not a legal matter that

25  the Seventh Circuit was deciding.  The Seventh Circuit was

1   affirming Judge Gettleman's fact-finding.  That's what they

2   were doing.

3           But, your Honor, back to the -- if you'd like me to

4   go back to the Natural Cures evidence, I want to address the

5   Court's point.

6           First of all, on the Natural Cures book, there's a

7   whole chapter on weight loss.  It's not as if these things

8   have nothing to do with one another.  So in the Natural Cures

9   book, he's talking about weight loss.

10          And, your Honor, to allow the government to flip its

11  position -- I mean, they take a position with respect to

12  Natural Cures that certain products and services can be

13  described as simple and inexpensive.  And then to allow them

14  to flip that position in a subsequent book and say the exact

15  same products and services now cannot be described as simple

16  and inexpensive and then to prohibit me from cross-examining

17  their witness on whether or not the government had approved

18  those exact same products and services as being described as

19  simple and inexpensive, your Honor, I submit that would be

20  improper.  I think the Court has got to let me cross-examine

21  their witness on the position the government -- it's just --

22  it's a -- your Honor, it's a prior inconsistent position.  If

23  the defendant was to testify to something like that, certainly

24  he would be subject to cross-examination on something like

25  that.

1        THE COURT:  First of all, the objection that has been

2    made is with respect to your proposed evidence on that issue.

3    You have proposed to introduce into the case evidence of prior

4    dealings between your client and the FTC.  So we're not

5    talking about cross-examination.  That's number one.

6        MR. KIRSCH:  That's how it would come in, your Honor.

7        THE COURT:  Number two, you keep saying that the

8    government is flipping its position.  And if the government

9    were to say that with respect to book number one, this is

10   okay, but with respect to book number two, this very same

11   thing is not okay, that is not a flipping of positions because

12   they're talking about two different books.  They're talking

13   about phrases that relate to the content of two different

14   books.

15       And in order to establish that this process is

16   actually a contradiction by the government or a flipping or a

17   prior inconsistency, you would have to establish point by

18   point that the essence of the two books with respect to these

19   products and that the statements made in the infomercials with

20   respect to each of those products in each of those books were

21   sufficiently similar for a reasonable person to conclude that

22   this was some sort of a pattern that he could follow.  And

23   that is something that would not only prolong this trial

24   tremendously, but has, as far as I can see, no basis

25   whatsoever for believing that it could actually be done.  The

```
 1    two books are so radically different.  One of the main
 2    contentions in this case is the use of this -- I think your
 3    client describes it in his book as this miracle ingredient,
 4    HGC -- is that it?  Do I have it right?
 5            MR. KRICKBAUM:  HCG.
 6            THE COURT:  I knew I had it wrong.  HCG.  And whether
 7    describing that element, that drug, as a simple miracle
 8    ingredient is a misrepresentation.  Is that part of the
 9    Natural Cures book?
10            MR. KIRSCH:  Your Honor --
11            THE COURT:  I think in the Natural Cures book, it was
12    something else.  It was calcium something or other, wasn't it?
13            MR. KIRSCH:  But the Court is conflating two issues
14    into one.  And that's the problem.  That's the same thing the
15    government is doing.
16            Your Honor, it will take about five minutes of
17    cross-examination, five minutes, to establish that one product
18    is used the same exact way whether it's for a diet or to cure
19    some disease.  There's only one way to use a candida cleanse.
20    There's one way to do it.  And it only costs one amount.  And
21    it's either simple and inexpensive or it's not.  And the jury
22    should be able to understand through cross-examination -- the
23    government is going to put the physical product in evidence
24    and they're going to put the cost in evidence.  And then
25    they're going to argue to the jury, when Trudeau described
```

 1    that particular product as simple and inexpensive, he

 2    misrepresented the content of the book.

 3            Now, I should be able to cross-examine the witness to

 4    establish that when he described the exact same product, which

 5    cost the exact same amount, as simple and inexpensive in a

 6    previous book that also talked about weight loss, the

 7    government did not object to that and, in fact, agreed that he

 8    could describe it as simple and inexpensive.

 9            THE COURT:  You're going to ask this witness to

10    testify as to what the government did not object to and agreed

11    to --

12            MR. KIRSCH:  No.

13            THE COURT:  -- and --

14            MR. KIRSCH:  No.

15            THE COURT:  -- you're going use this witness to

16    establish that the context was similar and the same and

17    therefore that the government's conclusion was contradictory?

18            MR. KIRSCH:  The content is exactly the same.

19            THE COURT:  You're going to use this witness?

20            MR. KIRSCH:  I could.

21            THE COURT:  Is that how you're going to do it?

22            MR. KIRSCH:  I could.  I could show her the book.  I

23    could show her the page from the Natural Cures book.  I could

24    also call a summary witness of my own.  I do get the chance to

25    call witnesses.  And I --

 1          THE COURT:  That's the point.  And you're talking to

 2  me first about how simple it would be to do on cross-

 3  examination --

 4          MR. KIRSCH:  And I could do it.

 5          THE COURT:  -- but as we unravel this, it turns out

 6  to be it's not going to be so simple at all.

 7          MR. KIRSCH:  No.  Your Honor, it's two documents and

 8  it's the Natural Cures book.  All I have to do is establish

 9  that -- and the Court has already ruled this is going to come

10  in evidence.  It will come in without objection.  I'll

11  establish the transcript -- the Natural Cures transcript, show

12  the witness where he described the products and services as

13  simple and inexpensive in the exact same way that he did in

14  the Weight Loss Cures book.  I'll admit the e-mail saying that

15  the FTC does not object to the dissemination of the

16  infomercial.  She can read it in about five seconds.  And then

17  I'll show her the Natural Cures book and the sentence in the

18  Natural Cures book.

19          THE COURT:  But you and I and the government disagree

20  on what that means, that the government did not object to that

21  infomercial.

22          MR. KIRSCH:  And the --

23          THE COURT:  I believe it means that the government

24  did not object to the fact that that infomercial was within

25  the exception of infomercials that were allowed, not that the

1    government agreed that the specific representations did not

2    misrepresent the content of the book.

3            MR. KIRSCH:  Well, your Honor --

4            THE COURT:  And you're going to ask a witness to

5    assume that and then give an opinion?

6            MR. KIRSCH:  No.  The government -- your Honor,

7    that's a question of fact that should be left to the jury.

8    The government is free to make that argument if they want to.

9            But, your Honor, I believe that conclusion is just

10   wrong because of what David Bradford said on page 10 of that

11   transcript.  David Bradford sets it out.  Two FTC lawyers are

12   standing right there in front of Judge Gettleman when they're

13   telling Judge Gettleman what the contract means.  And Bradford

14   says we now have a tangible example of something that's

15   admitted or allowed under the consent order.  Certainly the

16   FTC lawyers would not have sat there without saying anything

17   if what they had approved was what you just suggested.

18           There's no evidence to support the Court's position.

19   And I don't even think the government would argue it to the

20   jury.  That's -- if they were to argue that and if they agreed

21   with the Court, I don't think they'd object to this evidence

22   coming in.  They would just say Kirsch's defense is

23   ridiculous.  But I don't -- I think even they agree with me on

24   that point.

25           THE COURT:  I don't know.  I don't know what their

1    argument would be.

2         MR. KIRSCH:  But that is -- that is, your Honor, a

3    question of fact for this jury to decide.  There's no question

4    about that.  That is not a question of law.

5         THE COURT:  At this point, frankly, I'm not sure what

6    you mean by that.

7         MR. KIRSCH:  The argument that the Court had made,

8    that wouldn't the government just argue to the jury that when

9    the FTC approved the Natural Cures book, they approved it --

10   or the Natural Cures infomercial, they approved it because it

11   wasn't an infomercial for a book; it was not promoting a

12   product.

13        THE COURT:  No, you misunderstood my argument.  And

14   that would not be a matter of fact.  That would be a

15   determination as to a question of law, which is, what was it,

16   what was it that was approved by the FTC at that point.  Even

17   if we were to determine that's a question of fact, the

18   evidence that would have to come in to attempt to prove

19   exactly what was going on would be far more than the reading

20   of a transcript which could be interpreted to mean -- well,

21   the very different meanings that we have here already.

22        At any rate, at this point in time, the Court has

23   considered it and it is most likely that I am going to sustain

24   the government's objections to the introduction by the defense

25   of prior dealings with the FTC regarding the Natural Cures

1    book as posing an element of a good faith defense in this

2    case.

3          We, as you know, received your materials over the

4    weekend because, in spite of repeated requests by this Court

5    for both sides to present the exhibits, the evidence, the

6    strategies and the issues that needed to be resolved prior to

7    trial, these things came up for the very first time on the eve

8    of trial.  Literally on the eve of trial.  So we received

9    these and worked on these issues all weekend long, but that's

10   barely enough time, frankly.

11         We are preparing, as best we can, a written opinion

12   to explain why we believe that introduction of that type of

13   evidence is inappropriate in this case.  It does not support a

14   reasonable good faith belief on the part of the defendant that

15   he was not violating the court's order when he allegedly made

16   these misrepresentations.

17         The question of what would be allowed on cross-

18   examination as opposed to what would be allowed as extrinsic

19   evidence is something that hasn't been brought up directly

20   with the Court, even this weekend.  So --

21         MR. KIRSCH:  Your Honor, it has been.  I set it forth

22   very clearly.  I believe we discussed it last week.  But in my

23   reply brief, which I submitted to the Court -- we filed last

24   night and submitted it to the Court by e-mail -- I addressed

25   this in two pages.

```
 1              THE COURT:  I guess by this weekend, I didn't mean
 2   last night.
 3              Go ahead.
 4              MR. KIRSCH:  No.  I submitted it to the Court -- I'm
 5   just saying it has been submitted.
 6              THE COURT:  Thanks.
 7              Go on.
 8              MR. KIRSCH:  Bear with me for just one second.
 9     (Brief pause.)
10              THE COURT:  At any rate, on that issue, if either
11   side wants to submit anything else, I'll consider it.
12              I know that the government's position in this respect
13   has been different with respect to how it would proceed and/or
14   object if the defendant testified or not.  And certainly with
15   respect to the question of to what extent Mr. Trudeau actually
16   made all of these hypothetical comparisons and actually
17   considered all of these fine distinctions and details in
18   deciding whether or not to go ahead and publish the
19   infomercial now in question is another difficult aspect of how
20   the defense could prove that he considered these things
21   without his testimony.  I can understand the government's
22   position there.
23              But I would like to have the government's position on
24   cross-examination of the government's witnesses with respect
25   to Mr. Trudeau's contemplated good faith defense due to prior
```

1    dealings.

2            MR. KRICKBAUM:  Yes, Judge.

3            I don't know what Mr. Kirsch is referring to.  I

4    don't know which witness he would ask about this.  I'm not

5    aware of any of our witnesses that this would be a proper

6    basis for cross-examination.  It would certainly be beyond the

7    scope, in our view, of the direct examination.  It would not

8    be relevant to any of -- we are planning at this point to call

9    two and possibly three witnesses.  We're calling an agent who

10   is going to present the books -- The Weight Loss Cure book and

11   the infomercials.  And we're calling an expert to talk about

12   some of what is involved, as we've already discussed in court,

13   in the diet contained in the book.

14           I don't know what questions about a different book

15   called Natural Cures and a different set of infomercials about

16   that different book -- I have no idea what that has to do with

17   any of the direct testimony that will be presented.

18           MR. KIRSCH:  Your Honor, it's not the book.  It's the

19   product.  Your Honor, I think that's an unfair

20   characterization and -- as to the record in this case.  I

21   objected to the government's dietitian.  I filed a motion in

22   limine to keep her testimony out.  I objected to her exhibits.

23   So I have objected all along on this basis.  The Court ruled

24   it was admissible.

25           Now, your Honor, the government -- the government --

1    what I intend to do with this witness -- and it's set forth in

2    literally two pages.  I filed something last night that is two

3    pages.  The government is going to call a witness, and they

4    are going to put in -- I'll just give you an example.  They

5    are going to put in a physical product, and I think it's --

6    let me tell you exactly what exhibit it is, your Honor.

7             It's Exhibits 9 and 10.

8       (Brief pause.)

9             THE COURT:  Let's do this --

10            MR. KIRSCH:  Group Exhibit No. 9, for instance.  They

11   are going to put into evidence the cost of coral calcium.  So

12   they're going to put -- if you look at Group Exhibit 9, the

13   government is actually going to put coral calcium into

14   evidence.

15            Then if you look at Exhibit No. 12, the government is

16   going to put in the cost of coral calcium.  They have a Whole

17   Foods receipt and coral calcium is $14.99, I believe.  And

18   they're going to put that in evidence.  So with respect to

19   coral calcium, they're going to put it in evidence.  They're

20   going to have the witness describe what it is and describe its

21   cost.

22            Now, they're then going to argue to the jury that

23   coral -- coral calcium is neither simple or inexpensive; and

24   when the government -- or when Trudeau described coral calcium

25   or these products as simple and inexpensive, he misrepresented

1    the content of the book.  Your Honor, coral -- coral calcium

2    was the exact product, exact product in the Natural Cures book

3    that Trudeau also described as simple and inexpensive.  Now, I

4    should be able to cross-examine on that and I should be able

5    to cross-examine the agent on that.  I can cross-examine the

6    agent on the government's position with respect to coral

7    calcium in the Natural Cures book; that it was both simple --

8    it was approved as simple and inexpensive.

9         THE COURT:  Did this agent make that determination

10   for the government?

11        MR. KIRSCH:  No.  Your Honor, I have the -- it

12   doesn't matter whether this agent -- I mean, the government

13   can't hide behind its different agents.  The government is the

14   government.  I mean, I could call the agent -- Heather

15   Hippsley, we subpoenaed her.  She's the one that made the

16   determination.  I could call her as a witness and establish it

17   through her.  I just don't feel I need to.

18        THE COURT:  Well --

19        MR. KIRSCH:  But it's so unfair to allow the

20   government to argue to the jury that products are neither

21   simple nor inexpensive when they took the exact opposite

22   position two years before and argue -- so basically the Court

23   is going to allow the government to put in evidence and then

24   allow the government to argue that it's neither simple nor

25   inexpensive.  All I can do is get up in front of the jury and

1    say, it is simple and inexpensive.  That's it.  That's all I

2    can do under the Court's ruling.

3         THE COURT:  That's absolutely not so.  And your

4    arguments are, of course, assuming all of the difficult

5    issues.  Because what the government may, in fact, be doing is

6    saying that in the context of use and what is said in one book

7    is different and it may not be the same for both books in both

8    situations.  I don't know.

9         At this point it appears to me that the question is

10   how do you establish that they are the same, how much evidence

11   do you need, how difficult it will be for the jury, to what

12   extent will it confuse the jury and tend to extend the trial,

13   and to what extent could it possibly tend to show a reasonable

14   good faith defense.  Those issues are the ones that we're

15   talking about.

16        At any rate, as I indicated, I'm going to come out

17   with an opinion on what we've been presented so far.  What was

18   presented last night in your two-page submission with respect

19   to cross-examination, I guess the government has partially

20   answered.  But I will be happy to see any new representations

21   in writing on the amount or degree of cross-examination that

22   should be allowed, hopefully at some point before the

23   witnesses take the stand, although the way things are going, I

24   wouldn't be surprised if that doesn't happen.

25        Right now we have an issue of selecting a jury.  We

1   have talked about this previously and about the need to do

2   some preliminary vetting of the jury with respect to the

3   possibility of pretrial publicity and bias.

4           I've indicated to the parties, I think in a pretty

5   fairly detailed manner, how I intend to proceed.  I want to go

6   over those procedures again to make sure we're all prepared to

7   do this.  And then I want to commence the process.

8           We are this very minute having jurors fill out the

9   preliminary questionnaire that we have given to the parties.

10  It's very simple.  It essentially asks three questions of

11  these jurors:

12          Before coming here today, did you know anything at

13  all about the facts of this case or about any litigation

14  between Kevin Trudeau and the government?  In particular, have

15  you seen, heard or viewed any reports or articles in any news,

16  Web sites or social media about any litigation between Kevin

17  Trudeau and the government?

18          Yes or no.

19          Before coming here today, have you had any contact or

20  familiarity with either of the parties to this case?

21          Yes or no.

22          Have you purchased or read the book entitled The

23  Weight Loss Cure "They" Don't Want You to Know About?

24          Yes or no.

25          And there is a place for the prospective juror to

1    print and then sign his name.

2         After we get back the results of these preliminary

3    questionnaires, we will share them with the attorneys and

4    determine based upon the answers to these questions which

5    jurors should be called up for a preliminary screening with

6    respect to the issue of pretrial publicity.

7         That preliminary screening will take place

8    essentially in two stages.  We will first instruct all those

9    who have been screened out, much in the same manner we

10   instruct all jurors preliminarily about the case, the issues

11   involved, what possible parties or witnesses may be involved,

12   their availability for the trial, which I have indicated will

13   take approximately two weeks, and any specific personal

14   problems that they may have that may have occurred since they

15   filled out the preliminary form for jury qualification for our

16   jury department staff.

17        Once they have been vetted with respect to that, I

18   intend to ask each of them individually questions following up

19   any positive answers, any "yes" answers they have given to any

20   of the three questions.

21        After we do that, I will allow the attorneys some

22   follow-up questions if they wish with respect to that.  The

23   attorneys may indicate if they have any challenges for cause

24   as to that juror.  The Court will determine that issue.  And

25   if the juror is challenged successfully for cause, he or she

1    will be dismissed.  If not, he or she will return back to the

2    jury pool after we have done all of the individual questioning

3    of all of the jurors who filled out the questionnaires in a

4    positive manner.  We will then recall the entire group or

5    array of jurors and commence our normal and usual jury

6    selection process.

7              Are there any questions?

8              MS. PERRY:  No, Judge.

9              MR. KIRSCH:  No, your Honor, not about that.

10             THE COURT:  Okay.

11             MR. KIRSCH:  I do have a question just in general.

12   We haven't received any juror information yet.  We haven't

13   received the preliminary questionnaires or the juror lists.

14   And I don't know --

15             THE COURT:  Well, we've gone over the preliminary

16   questionnaire.

17             MR. KIRSCH:  No.  I mean as far as their name, their

18   age, their occupation.

19             THE COURT:  Neither have I.

20             MR. KIRSCH:  Okay.  I just wanted to make sure I

21   wasn't missing something.  That's all, your Honor.

22             THE COURT:  Neither have I.  And we may not have that

23   by the time we get the initial group of jurors who have

24   answered yes to any of the three questions because that

25   information is usually not put together until after a jury

1    pool is called to the courtroom.  At that point in time, the

2    information comes together and it comes up with the jury.  So

3    at the time that we query these jurors with respect to their

4    yes and no answers, we may not have that information.

5           MR. KIRSCH:  Then I guess if we don't have the

6    information, once -- if a juror is passed here and not struck

7    for cause and they go back to the jury pool and then we get

8    subsequent information on the juror that we questioned them

9    about, we can still move to strike them for cause for that

10    additional information?

11           THE COURT:  The only issue that will be determined in

12    the preliminary screening is whether or not that juror should

13    be stricken for cause with respect to pretrial publicity.

14    Period.  Nothing else.

15           MR. KIRSCH:  Thank you, your Honor.

16           THE COURT:  Nothing else.

17           MS. PERRY:  Judge, we received Mr. Kirsch's opening

18    argument slides.  We have a couple of issues with those.  Do

19    you want to take those up now or later?

20           THE COURT:  Well, we're waiting for the jury

21    questionnaires to come back so we might as well take them up

22    now.

23           MS. PERRY:  The first issue I believe we've already

24    dealt with.  There are a number of references to Natural Cures

25    and comparisons between the two.  I'm assuming that those will

1    all come out based upon your Honor's preliminary ruling.

2            The second issue is one we addressed on Friday.  The

3    November 20th, 2007, letter between the two lawyers, the one

4    lawyer for the FTC and the other lawyer for ITV, is currently

5    included within the defense slides.  I thought it was your

6    Honor's provisional ruling that that was inadmissible under

7    803(6) as a statement made in anticipation of litigation.  So

8    we would object to that inclusion within this particular

9    opening.

10           And, thirdly, Judge, the defense has on their witness

11   list and within their opening a number of best seller lists.

12   It's our understanding they intend to just move into evidence

13   all of the lists showing Kevin Trudeau's books and where they

14   were on the best seller lists at various times.

15           The government objects to that on two bases.  First,

16   relevance.  And, secondly, the only possible relevance this

17   could have is showing that people liked Kevin Trudeau and his

18   products.

19           We believe this is covered by the substance of our

20   customer satisfaction motion in limine, and we were told that

21   no customer satisfaction evidence was going to be elicited.

22           THE COURT:  Let's take the last one first.

23           MR. KIRSCH:  Your Honor, that's the easiest one to

24   deal with.  I can sufficiently redact the -- I think I -- if

25   the government would have raised this with me, I could

1  probably fix that because the infomercials introduce him as a

2  number one New York Times best-selling author.  So that basic

3  information is going to come in.

4      And on the one -- the one -- the list that I want to

5  admit, one is dealing with Natural Cures.  So if that evidence

6  is out, that's not an issue.

7      The only issue is that I would like to submit the

8  evidence of -- the only issue is with The Weight Loss Cures

9  book.  That was number two on the New York Times best seller

10  list.  And if the Court wants me to strike that from my slide,

11  I think that's the only issue.

12      THE COURT:  I think the slide is the issue.  What

13  relevance is there to who was on the New York Times best

14  seller list at any given time?

15      MR. KIRSCH:  No, no.  The slide, your Honor, is just

16  a slide of Kevin Trudeau, just to introduce him to the jury.

17  And I put on the slide that -- I'm sorry.  I'm sorry.  The

18  slide is a basic slide just to describe what The Weight Loss

19  Cures is.  And the slide says it reached number two on the New

20  York Times best seller list.

21      THE COURT:  That's not what you described to me.  Is

22  that --

23      MS. PERRY:  Well --

24      MR. KIRSCH:  If they just tell me the slides, I can

25  tell them that -- if these refer to slides, I have the slides

1    in front of me.

2              MS. PERRY:  The first problem is the best seller list

3    references on the slides.  To the extent that he's introduced

4    in one of the infomercials as a best-selling author, then

5    certainly Mr. Kirsch can say he is a best-selling author.

6              But I believe this relates to the greater issue,

7    which is, are all of these exhibits also coming in.  And we

8    would object to those exhibits coming in.  So we're going to

9    object to it now, as well as the inclusion on the slides.

10             THE COURT:  I guess it would be clearer if you would

11   show me what slides you're referring to because right now, I

12   have very little idea what it is you're talking about.

13             You're saying one is a slide about him that happens

14   to say something about best sellers.  She's indicating to me

15   that it's a slide that has a number of best sellers on the New

16   York Times best-selling list and your client's book is among

17   them.

18             What slides -- give me the slides.

19             MR. KIRSCH:  Your Honor, I could -- I think I --

20   while the government is doing that, there are three slides.

21   One slide describes Trudeau.

22             THE COURT:  Do you have copies for the Court?

23             MR. KIRSCH:  Would you like a copy?

24             THE COURT:  I think I said it three times.

25             MR. KIRSCH:  I have copies, your Honor.  But this is

1   a version that may change, but it won't change with respect to

2   this.

3          THE COURT:  When are we going to have the version

4   that's not going to change?  After the trial is over?

5          MR. KIRSCH:  Your Honor, I'm going to continue to

6   make word changes that are insignificant to the content of the

7   opening statement probably right up until the time I do the

8   opening statement.

9          THE COURT:  That's not acceptable.  It's not

10  acceptable because the entire reason we had multiple pretrial

11  conferences was so these issues could be ironed out before the

12  trial started so the trial would not be interrupted with these

13  issues.

14         You are now telling me that it's your intention to

15  keep changing your presentation up until the time it actually

16  comes before the jury, thereby forcing the government if it

17  has an objection to interrupt the trial with an objection that

18  the Court will have to have most likely a sidebar ruling on

19  and thereby disrupt the trial.  That's just not acceptable.

20         MR. KIRSCH:  Your Honor, that's not what I'm saying.

21  It's not what I'm going to do.

22         Here's what I'm saying:  There are typographical

23  errors in the slides.  Okay.  For instance, slide No. 4, I

24  have "paid infomercial."  And it should say "paid

25  advertisement."  I plan on fixing that before the opening

1     statement.  But I'm not going to add any content that will

2     change the meaning of any of the things I'm going to say or do

3     in the opening statement.

4             THE COURT:  But that's your opinion.  And as you

5     know, you and the government have had differences of opinion

6     on just about everything in this case.  And you're relying on

7     the fact that, in your opinion, you're not changing the

8     content and that the government is going to agree with you on

9     that when your final version goes up on that screen before the

10    jury.  And that is precisely, as you well know as a seasoned

11    trial attorney, what we try to avoid when we require you to

12    produce these things and show them to the other side well in

13    advance of trial in their final form.

14            MR. KIRSCH:  I understand, your Honor.  And, your

15    Honor, I'm willing to talk to the government about any

16    typographical errors that I want to change and make sure that

17    they have no objection to it before I change it.

18            I don't know how else to proceed.  I've never -- I

19    don't know -- the opening statements may not be till

20    Wednesday.  I just don't know.  To lock me in to a slide on

21    Monday in a presentation that might not be given until

22    Wednesday, I --

23            THE COURT:  When you have had months and months to

24    prepare it, that's not unfair.

25            MR. KIRSCH:  Okay.  I've just never had that happen,

```
 1    your Honor.  That's all.  I've never had it happen.

 2              THE COURT:  Amazing to me.

 3              MR. KIRSCH:  Your Honor, if you go --

 4              THE COURT:  I've never had it be otherwise.

 5              MR. KIRSCH:  Pardon?

 6              THE COURT:  And I've been doing this a bit longer

 7    than you have.

 8              MR. KIRSCH:  You have.  I agree, your Honor.

 9              If you go to slide 10 -- I think the issue is just on

10    two slides.  The second bullet point on slide 10 --

11              THE COURT:  Hold on a second.

12              What's the title of slide 10?

13              MR. KIRSCH:  Kevin Trudeau.

14              THE COURT:  Okay.

15              MR. KIRSCH:  And see the second bullet point where I

16    have "has authored six books including four on the New York

17    Times best seller list," that's the reference to the best

18    seller list.  So if the government -- I think the government's

19    objection is that I should strike "including four on the New

20    York Times best seller list" as irrelevant.

21              MS. PERRY:  That is correct.

22              THE COURT:  Fine.  Strike it.

23              MR. KIRSCH:  I'll strike it.

24              MS. PERRY:  Also slides 13 and 14.

25              MR. KIRSCH:  Yeah, I'm going to go there.  Slide 13 I
```

1    think is out, right?

2            Slide 13 is out, totally out.  I'm taking it out.

3            And slide 14 is bullet point No. 2 that says number

4    two on New York Times best seller list.

5            THE COURT:  Government?

6            MS. PERRY:  Correct.

7            THE COURT:  Okay.

8            MR. KIRSCH:  Do you want me to take that out, your

9    Honor?

10           THE COURT:  Yes.

11           MR. KIRSCH:  Okay.

12           THE COURT:  Unless you can tell me what relevance it

13   has to the case.

14           MR. KIRSCH:  I'll take it out.

15           And then, your Honor, the only other issue is with

16   respect to -- it's slide 33, your Honor.  This was the

17   document that the Court had ruled, at least tentatively, that

18   it was admissible and then the government raised it again and

19   there's a question as to whether or not it's admissible.

20           But, your Honor, I can just take it out of the

21   opening statement.  I'll just take it out.  And then if the

22   Court wants to address it -- if I raise an issue -- I don't

23   have to say it in the opening statement.  I'll just take it

24   out.

25           THE COURT:  Slide 22 is the --

```
 1              MR. KIRSCH:  No, 33.  33.

 2              THE COURT:  33.

 3              MR. KIRSCH:  But I'll just take it out, your Honor.

 4    If the government would have raised -- I'll take it out.  It's

 5    no problem.

 6              And, your Honor, we have a business records

 7    certification from this document from Christopher Robertson,

 8    who wrote it, suggesting that it was not prepared in

 9    contemplation of litigation.  So we -- and I think we've

10    provided that business records certification to the

11    government.  So we could call a witness that could meet all of

12    the elements for 803(6).

13              THE COURT:  You're going to have to meet the elements

14    unless the government withdraws its objection.

15              MS. PERRY:  Oh, no, Judge.  And I don't believe the

16    certification says in it it is not prepared for the purpose of

17    litigation.

18              MR. KIRSCH:  Well, your Honor, I think the government

19    agrees with the certification.  I think the issue is a legal

20    one, whether or not the document was prepared for -- in other

21    words, I expect the government accepts the certification; but

22    it's just a legal issue as to whether the Court has to decide

23    whether it was prepared in anticipation of litigation.

24              THE COURT:  Well, what does the certification say?

25              MR. KIRSCH:  Well, it's just -- it's a typical
```

1   business records certification.  I guess what I'm saying, your

2   Honor, is I don't --

3           THE COURT:  Let me ask the question this way, it may

4   make it simpler and easier for you.

5           MR. KIRSCH:  Yes.

6           THE COURT:  Does the certification say anything about

7   whether the document was prepared in preparation or

8   contemplation of litigation?

9           MR. KIRSCH:  Your Honor, it says simply that it was

10  made at or near the time of the occurrence of the matters set

11  forth therein by or from information transmitted by a person

12  with knowledge of those matters; that it was kept in the

13  course of a regularly conducted business activity; and that it

14  was made by the regularly conducted business activity as a

15  regular practice.

16          So it establishes the elements of 803(6).

17          THE COURT:  Is that sufficient to establish the

18  foundation for you, with the exception of the reliability

19  requirement?

20          MS. PERRY:  We have no doubt the letter is authentic

21  and was made by litigation attorneys and exchanged as part of

22  their practice as litigation attorneys.

23          THE COURT:  Okay.  So you're willing to accept that

24  certification for the fact --

25          MS. PERRY:  Yes.

```
 1                THE COURT:  -- that it offers?

 2                MS. PERRY:  Yes.

 3                THE COURT:  Very well.  Then you don't need to call

 4      the witness for that purpose.

 5                MR. KIRSCH:  Right.

 6                THE COURT:  So until we have a final decision on

 7      this, this No. 33 is not to be used during the opening

 8      statement.

 9                MR. KIRSCH:  Yes, your Honor.

10                THE COURT:  I take it you intend to present no

11      evidence with respect to whether or not the letter was

12      prepared in contemplation of litigation?

13                MR. KIRSCH:  Not at this time, your Honor.

14                THE COURT:  At any point in time during the course of

15      the trial do you intend to do so?

16                MR. KIRSCH:  Well, I think -- I don't intend to do

17      so, your Honor.  I think my argument stands that the letter by

18      itself indicates that -- the circumstances under which the

19      letter was drafted, the letter itself is my argument that it

20      was not prepared in contemplation of litigation.

21                THE COURT:  Okay.

22                MR. KIRSCH:  And that's it, your Honor.  And, of

23      course, I will -- I indicated to the government -- and of

24      course I will of course abide by the Court's order, and all

25      the references to Natural Cures and all those slides will be
```

1  removed from the opening statement.

2          THE COURT:  Okay.  Anything else?

3          MS. PERRY:  No, Judge.

4          THE COURT:  All right.  We're going to take five

5  minutes.  I think most, if not all, of the questionnaires have

6  been filled out.  We want to make sure that they have been,

7  review them and then we'll share them with the attorneys and

8  call the appropriate prospective jurors to the courtroom.

9    (End of excerpt.)

10                    *    *    *    *    *

11

12  I certify that the foregoing is a correct excerpt from the
    record of proceedings in the above-entitled matter.
13

14
   _/s/ Nancy C. LaBella_____            _November 4, 2013_
15  Official Court Reporter

16

17

18

19

20

21

22

23

24

25