555

```
 1                    IN THE UNITED STATES DISTRICT COURT
                     FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                             EASTERN DIVISION

 3    UNITED STATES OF AMERICA,           )
                                          )
 4                  Plaintiff,            )
                                          )
 5      v.                                )  No. 10 CR 886
                                          )
 6    KEVIN TRUDEAU,                      )  Chicago, Illinois
                                          )  November 12, 2013
 7                  Defendant.            )  9:30 a.m.

 8                              VOLUME 5
                       TRANSCRIPT OF TRIAL PROCEEDINGS
 9         BEFORE THE HONORABLE RONALD A. GUZMAN, AND A JURY

10
      APPEARANCES:
11
      For the Plaintiff:          HON. ZACHARY T. FARDON
12                                United States Attorney
                                  BY:  MR. MARC KRICKBAUM
13                                     MS. APRIL M. PERRY
                                  Assistant United States Attorneys
14                                219 South Dearborn Street
                                  Suite 500
15                                Chicago, Illinois  60604
                                  (312) 353-5300
16
      For the Defendant:          WINSTON & STRAWN LLP
17                                BY:  MR. THOMAS LEE KIRSCH II
                                  35 West Wacker Drive
18                                Chicago, Illinois  60601
                                  (312) 558-5600
19
                                  MS. CAROLYN PELLING GURLAND
20                                Attorney at Law
                                  2 North LaSalle Street
21                                17th Floor
                                  Chicago, Illinois  60602
22                                (312) 420-9263

23

24

25
```

Nancy C. LaBella, CSR, RMR, CRR
Official Court Reporter
219 South Dearborn Street, Room 1222
Chicago, Illinois  60604
(312) 435-6890
Nancy_LaBella@ilnd.uscourts.gov

1      (Excerpt of proceedings:)

2           THE CLERK:  10 CR 886, United States of America v.

3    Trudeau.

4           MR. KRICKBAUM:  Good morning, your Honor.  Marc

5    Krickbaum and April Perry on behalf of the United States.

6           MR. KIRSCH:  Good morning.  Tom Kirsch and Carolyn

7    Gurland for the defendant.

8           THE COURT:  Good morning.

9           Does either side have anything they wish to bring up?

10          MR. KRICKBAUM:  No, your Honor.

11          MR. KIRSCH:  No, your Honor.  Are you going to ask

12   the jury if they have read or seen any media reports over the

13   weekend?  Do you typically do that?

14          THE COURT:  Sure.  I can.

15          MR. KIRSCH:  Thank you, your Honor.

16          THE COURT:  There are a couple of things I want to

17   bring up.

18          The first thing is that my chambers received an

19   e-mail today from a person whose name I will not mention,

20   although I certainly could, I guess.  I don't want to

21   embarrass anyone.  I want both sides to see the e-mail to see

22   if they think there's any reaction they wish to have to it.

23   As far as I know, my secretary and I are the only ones that

24   have seen it so far.

25      (Tendered.)

1    (Brief pause.)

2         MR. KIRSCH:  Your Honor, we have no comment on the

3    e-mail.

4         THE COURT:  Okay.  I just wanted both sides to know

5    that the Court has been exposed to this publication.  It

6    doesn't obviously affect me either way, nor I think at this

7    stage of the proceedings does it much matter whether it

8    affects me either way or not.  But I think I should probably

9    make this a part of the record.

10        Does either side have an opinion as to whether the

11   name and e-mail address of the sender should be blacked out?

12        MR. KRICKBAUM:  We're fine with blacking those out,

13   Judge, if you're going to be making this part of the public

14   docket.

15        MR. KIRSCH:  I have no opinion either way, your

16   Honor.  Whatever you want to do is fine.

17        THE COURT:  Okay.  I'll consider that.

18        The second thing I wanted to bring to the parties'

19   attention is, have you exchanged the exhibits that you intend

20   to send back to the -- or at least reviewed each other's

21   exhibits?  Is there going to be a controversy about any of

22   those?

23        MR. KRICKBAUM:  I don't expect a controversy.  And I

24   expect, Judge, that we can have a final review of them during

25   the lunch hour.  Based on the timing, I think we'll have time

1    to do that.  And just to be sure there is no controversy, we

2    can do that then.

3              THE COURT:  Okay.

4              The third issue is related to that.  Government's

5    Exhibits, I believe, it's 1, 2, and 3 are videos.

6              MR. KRICKBAUM:  Yes.

7              THE COURT:  Do you intend to provide the jury with

8    any means to play those videos?

9              MR. KRICKBAUM:  Yes.  We have a laptop that is blank.

10   And they will be able to play the videos on the laptop.  And

11   we will provide the CDs that have been marked as exhibits.

12             THE COURT:  Do you intend to provide the jury with

13   any instructions as to that?  Because there is no instruction

14   in the packet.  There is a criminal instruction with respect

15   to the use of videos and transcripts which you might be able

16   to adapt.  I suggest you do that, otherwise you'll just be

17   giving them videos and some contraption without any

18   instructions.

19             MR. KRICKBAUM:  Yes, Judge.  I suspect that the

20   jurors could figure out how to play the videos.  Maybe I could

21   suggest we proceed this way:  If they have a question about it

22   during their deliberations, we could give that pattern

23   instruction at that time.  But I suspect that they will

24   probably be able to do that.

25             THE COURT:  I'd rather you crafted an instruction

1    telling them we're giving them this particular machine,

2    whatever it is -- I assume it's going to be one of your

3    computers?

4            MR. KRICKBAUM:  Yes.

5            THE COURT:  I assume you've shown it to Mr. Kirsch to

6    make sure that he agrees there's nothing in it other than the

7    program for playing the videos?

8            MR. KRICKBAUM:  We haven't done that.  But we will do

9    that, Judge.

10           THE COURT:  And that we let the jury know why we're

11   giving them a computer, something to tell them why we're

12   giving them the computer, otherwise who knows what they'll do

13   with it.

14           That's all I have.

15           Other than that, are we ready for closing arguments?

16           MR. KRICKBAUM:  Yes, Judge.

17           MR. KIRSCH:  Yes, your Honor.

18           MR. KRICKBAUM:  And the government would like to

19   publish from its laptop during the closing, so we -- could we

20   just make sure that the screens are all working, your Honor?

21           THE COURT:  Check and see.

22     (Brief pause.)

23           MR. KRICKBAUM:  They're working, Judge.

24           THE COURT:  Let's bring the jury out.

25     (Jury in.)

560

1          THE COURT:  Good morning, ladies and gentlemen.

2          Once again, I can't tell you how happy we are to have

3    you back with us.

4          Preliminarily, I want to ask you if any of you, by a

5    show of hands, have had occasion to either view, read or

6    listen to any news reports or any other informational material

7    about this case or the defendant during the course of the long

8    weekend?  Anyone?

9          Let the record reflect that all the jurors have

10   indicated that they have not.  Very well.

11         With that in mind, I now wish to give you an

12   instruction in preparation for closing arguments.

13         Members of the jury, the attorneys will now give

14   their closing arguments.  The statements that the lawyers make

15   now are not to be considered by you either as evidence in the

16   case or as your instructions on the law.  And should your

17   recollection of the evidence conflict with that of any of the

18   attorneys, you are to disregard what they say and to rely upon

19   your own collective recollection of the evidence.

20         Nevertheless, the statements and arguments of the

21   attorneys in their closings are intended to help you

22   understand the issues and the evidence in the case.  Closing

23   arguments are meant to summarize the evidence you have heard

24   during the last week and to suggest the reasonable inferences

25   that you should draw from the evidence.

Krickbaum - Closing Argument

561

1        So please pay close attention now as I recognize the

2    attorneys for their closing arguments.

3        Counsel.

4        MR. KRICKBAUM:  Thank you, your Honor.

5        CLOSING ARGUMENT ON BEHALF OF THE GOVERNMENT

6    BY MR. KRICKBAUM:

7        In the infomercials that you watched during this

8    trial, the defendant lied about what was in his book.  He

9    deceived people.  He chose to make his book sound far better

10    than it actually was so that he could sell more books and so

11    that he could make more money.  You don't need a roomful of

12    lawyers to tell you that.  You don't even need a dietician to

13    tell you that.  After watching those infomercials and seeing

14    what is actually in the book, it's obvious.  It's clear what

15    the defendant was up to in those infomercials.

16        In the infomercials you heard the defendant say that

17    his book was not a diet, not portion control, not calorie

18    counting.  But based on what's actually in the book, none of

19    those statements are true.

20        You heard him say that HCG is a substance that you

21    can get anywhere.  Anywhere.  He didn't call it HCG in the

22    infomercials.  He called it an all-natural miracle substance.

23    But no matter what you call it, based on what's in the book,

24    that statement is not true.

25        You heard him say in the infomercials that you can do

Krickbaum - Closing Argument

1    this weight loss protocol at home.  According to what's in the

2    book, you can't.

3            And you heard him say in the infomercials that when

4    you're finished taking this protocol, you can eat whatever you

5    want and never gain the weight back.  And based on what's in

6    the book, that's not true either.

7            According to what is in the book, none of those

8    statements is true.  All of them are false.  And the defendant

9    knew they were false when he said them in those infomercials.

10   He wrote that book.  It's his book.  He knew that he wasn't

11   telling the truth about it in those infomercials.

12           And he also knew one other thing.  He knew that a

13   federal judge had issued an order to him ordering that he

14   could not lie about his book in his infomercials.  And when

15   the defendant chose to tell those lies in the infomercials for

16   The Weight Loss Cure book, he willfully violated that court

17   order.  And he was in contempt of court.

18           Now, I want to start by talking about the charge of

19   contempt.  And I want to talk to you about the elements of

20   that crime.  And I expect that Judge Guzman will instruct you

21   that the crime of contempt has three elements.  Those are

22   three things that the government has to prove in this case

23   beyond a reasonable doubt.

24           And the first element that I expect he'll instruct

25   you about and the first thing the government has to prove is

Krickbaum - Closing Argument

563

1    that the court entered a reasonably specific order.

2          The next element is that the defendant violated that

3    order by misrepresenting the content of The Weight Loss Cure

4    book in those infomercials.

5          And the third element is that the defendant's

6    violation of the order was willful.

7          And I want to talk about each of these elements one

8    by one, starting with the first one.

9          The court entered a reasonably specific order.  Now,

10   you saw the order in this case and this is a highlighted

11   portion of the order.  It's Government's Exhibit 5, and this

12   is a highlight from page 8.  And the relevant part says,

13   Additionally, the infomercial for any such book, newsletter or

14   informational publication must also comply with the

15   requirements of Part X herein and must not misrepresent the

16   content of the book, newsletter or informational publication.

17         The order said that those infomercials could not

18   misrepresent the content of a book.  That is reasonably

19   specific.

20         And another reason that you know it's reasonably

21   specific is that the defendant agreed to this order.  He

22   signed this order.  And so it would be a little late now,

23   almost ten years later, for the defense to complain that this

24   order is not reasonably specific.  You can't lie about your

25   books in your infomercials.  That is reasonably specific.  And

Krickbaum - Closing Argument

1    that's all I'm going to say about the first element, that the

2    court entered a reasonably specific order.

3         The second element is that the defendant violated the

4    order by misrepresenting the content of The Weight Loss Cure

5    book in an infomercial.  And this element has been the focus

6    of most of this trial.  That's what the two sides have been

7    fighting about for most of this trial, are the things that the

8    defendant said in those infomercials, are they

9    misrepresentations.  When he said those things, did he lie

10   about what was in his book?  And I'm going to talking about

11   several different misrepresentations today.

12        And when the judge instructs you, I expect that you

13   will hear that the defendant is charged with making a whole

14   long list of misrepresentations.  You will get the list.

15   There's a lot of bullet points in the list.  There's a lot of

16   misrepresentations on the list.  Even within the bullet

17   points, there are sometimes multiple misrepresentations per

18   bullet point.

19        But the important point that I want to emphasize is

20   that the government doesn't have to prove that every single

21   one of those was a misrepresentation.  We don't have to prove

22   that they were all misrepresentations.  We have to prove that

23   at least one of them was a misrepresentation.  And all of you

24   have to agree on which one that was.  So if you all agree that

25   at least one of these statements was a misrepresentation and

Krickbaum - Closing Argument

565

1   you all agree on which statement that was, then you can stop

2   deliberating about the second element and move on to the third

3   element.

4           Now, I'm going to go through not all the

5   misrepresentations today, but I want to highlight a few of

6   them.

7           The first one I'm going to talk about, I mentioned

8   earlier:  The defendant's statement that this book, this

9   protocol, is not a diet, not portion control and not calorie

10  counting.

11          And in Government Exhibit 19, that's the citation at

12  the bottom of the screen, that's the chart that the government

13  put into evidence that Inspector Carrier testified about where

14  we collected the examples in the infomercials where the

15  defendant made those statements.  So you can see those

16  statements in that chart on page 1, and you'll have that chart

17  as evidence when you deliberate.

18          The defendant made those statements -- it's not a

19  diet -- multiple times in those infomercials.  And that was an

20  important misrepresentation.  So let's compare what he said in

21  the infomercials with what's actually in the book.

22          And I'm going to focus on Phase 2, and starting with

23  the point that Phase 2 is mandatory; you have to do it.  I

24  don't think there's any disagreement about that between the

25  parties.  And it's very clear in the book, you have to do

Krickbaum - Closing Argument

566

1    Phase 2.

2              So what's involved in Phase 2?  Well, you'll probably

3    remember the details.  No more than 500 calories a day.  You

4    get coffee and tea for breakfast.  You get a hundred grams of

5    meat for lunch and dinner; a handful of vegetables for lunch

6    and for dinner.  You get one small apple, one small

7    grapefruit.  I think you can substitute strawberries for one

8    of those if you want.  And you get water.  And that's all the

9    food you get every day for at least 21 days and as much as

10   45 days.  That is Phase 2.  And another word to describe that

11   is a diet.  Another word to describe that is portion control

12   and calorie counting.

13             Now, Government Exhibit 8A is a photograph of a

14   hundred grams of meat, a hundred grams of beef and a hundred

15   grams of chicken, which are about the size of a deck of cards.

16   And I expect that when Judge Guzman instructs you, one thing

17   he will tell you is that you should use your common sense when

18   you evaluate the evidence in this case.  And this is a pretty

19   good example of where you should use your common sense because

20   your common sense will tell you that that is portion control.

21   If you're measuring on a kitchen scale 100 grams of meat, you

22   are controlling the portions that you eat.  It's not

23   complicated.

24             Government Exhibit 8E is a photo of all of the food

25   that you can eat in a day, and that's what you can eat every

Krickbaum - Closing Argument

567

1    day for 21 days.  And your common sense will tell you that

2    that is a diet.  And that if you're eating that every day,

3    you're involved in calorie counting.

4           It's not just your common sense that tells you that's

5    a diet.  The book -- throughout the book -- repeatedly

6    describes this protocol as a diet over and over again.  So,

7    for example, "You must be very strict in following the diet

8    exactly if you want to achieve results."  So now it's not just

9    a diet; according to the book, it's a strict diet.

10          The book says that Simeons said that, "the diet, used

11   in conjunction with the HCG injections, must not exceed

12   500 calories per day."  It's not only a diet, it's also

13   calorie counting.

14          And on the issue of portion control, the book says

15   that, "the amounts of that meat must be extremely accurate.

16   100 grams is 100 grams."  That is portion control.

17          Finally, "If it's not on the list, do not eat it."

18   This is a very strict and specific diet, and the book makes

19   that clear.

20          Now, I want to talk about an argument the defense has

21   made, the idea that, well, the book itself says that it's not

22   a diet.  And you saw that chart that the defense went through

23   with Inspector Carrier.  We talked about that chart for

24   several days.  And on the chart, you will see that there are

25   three or four places in the book where the book says it's not

Krickbaum - Closing Argument

568

1     a diet.  And I want to talk about that.

2           But before I get specifically to that, I want to be

3     clear about what's actually in the book on this point.  Three

4     or four places the book says, it's not a diet.

5           On over 20 separate pages, the book says that it is a

6     diet, often multiple times per page, throughout the entire

7     book.  And I've already read several of those examples to you,

8     but there's a few more.  It refers to it as "the low-calorie

9     diet from Phase 2."  "The 500-calorie diet."  "The exact

10    Simeons Weight Loss Cure protocol combining the very strict

11    and specific diet with the exact amount of HCG."  These quotes

12    are contained throughout the entire book.

13          But what about the fact that the book says on three

14    or four pages that it's not a diet?  Well, ladies and

15    gentlemen, that (indicating) is a diet.  Whether you put the

16    label "diet" on it or not, it's still a diet.  It is what it

17    is.  Words mean things.  So you can say as much as you want

18    that that's not a diet, but it is.  It is.

19          MR. KIRSCH:  Your Honor, I'm going to object to this

20    line of argument.

21          THE COURT:  Basis?

22          MR. KIRSCH:  The truth or falsity of the book is not

23    at issue.  To the extent -- the truth or falsity of the book

24    is not at issue.

25          THE COURT:  The objection is overruled.  The truth

Krickbaum - Closing Argument

1    and falsity of the book is not at issue, but the argument does

2    not appear to go to that.  It appears to go to something that

3    is at issue.

4            Proceed.

5            MR. KRICKBAUM:  Thank you, Judge.

6    BY MR. KRICKBAUM:

7            And, ladies and gentlemen, here's another example of

8    where you can use your common sense.  If you limit the amount

9    of food you eat and you carefully measure the food you eat and

10   you severely restrict your calories so that you're only eating

11   500 calories and you do that over a significant period of time

12   so that you can lose weight, you're on a diet.  That's what it

13   means to be on a diet.  You're counting your calories and

14   you're involved in portion control.  That's what those things

15   mean.  And the defendant can't change that.  He can't change

16   that fact about his book by just saying it's not a diet in a

17   few places.

18           And remember what the language of the court order is

19   because that's very important in this case.  The court order

20   says that the infomercial must not misrepresent the content of

21   the book.  Now, the content of the book is what is in the

22   book, all of it, everything, all of the ideas expressed in the

23   book taken as a whole.  That's the content of the book.  It's

24   not a stray sentence on one page of the book or a word on

25   another page of the book.  It's the content of the book taken

Krickbaum - Closing Argument

570

 1    as a whole.  And the defendant can't change the content of his

 2    book by putting on a few pages that it's not a diet because if

 3    he could do that, then this court order would be meaningless.

 4    Because the defendant could lie as much as he wanted to in

 5    those infomercials and say it's not a diet, it's not a diet,

 6    it's not a diet and then just put on a couple of pages of that

 7    book it's a diet and he would get around the court order.

 8    That's what it would mean if the defendant could get away with

 9    that.

10         But federal judges don't issue meaningless court

11    orders.  When a federal judge tells you that you can't do

12    something, that means you really can't do it.  And this order

13    actually limited what the defendant could do.  It controlled

14    his actions in the future.  And he couldn't get around it by

15    just putting the words "it's not a diet" on a couple of pages

16    of that book.  The court order is not meaningless.  The court

17    order actually controlled what the defendant could do in this

18    case.

19         An important question for you to ask yourselves when

20    you're deliberating is what if the defendant had told the

21    truth about this in those infomercials?  If he had told the

22    truth, he would have said, My book involves a very strict and

23    specific diet.  For at least three weeks, you can only eat

24    500 calories.  You have to carefully measure the food that you

25    eat.  You can only eat small portions of meat and vegetables.

Krickbaum - Closing Argument

 1   And you have to do that every day for at least three weeks.

 2   If he had said that, he would have sold a lot fewer books.

 3   And that's why he chose to lie about it by saying that it

 4   wasn't a diet.

 5           Now, the next misrepresentation that I want to talk

 6   to you about is the claim about HCG.  "You can get it

 7   anywhere."  The defendant said that in the infomercials.  The

 8   citations are on the government's chart on page 3.  "You can

 9   get it anywhere."  Now, the first thing I want to say about

10   that misrepresentation is it's not in the book.

11           Now, the defendant made a number of

12   misrepresentations about HCG, but we only have to prove one of

13   them.  And I'm going to focus on this one, that you can get it

14   anywhere.  That statement is not in the book.  So if you're

15   concerned about the idea that he put some of these things in

16   the book, that one is not in there.  And you know that it's

17   not in there, among other reasons, because on the defendant's

18   chart in which they collected all these statements in the book

19   that were supposedly in the infomercials -- it's on pages 21

20   through 24 of that chart -- not a single one of the quotes

21   from the book in that chart contain the statement that you can

22   get HCG anywhere.  None of them say that.  Because it's not in

23   the book.

24           So what did the defendant say about HCG in the book?

25   Well, the first thing he said is, "You must get HCG from a

1    medical doctor with a prescription."  That is the exact

2    opposite of the idea that you can get it anywhere.  You can

3    only get it from a doctor with a prescription, according to

4    the book.  He next says, "There's much debate of whether a

5    medical doctor in America has the legal right to prescribe HCG

6    to be used with the Simeons Weight Loss Cure protocol."  So,

7    according to the book, you can only get it from a doctor and

8    it might not be legal for a doctor to give it to you for

9    weight loss in the United States.

10        He then says that you can also get it from outside

11   the United States.  "HCG and the Simeons weight loss protocol

12   can also be procured from doctors outside the U.S. and legally

13   brought back into the country for personal use.  This is

14   provided you have a valid prescription from a licensed medical

15   doctor."  You can get it out of the country, which is kind of

16   the opposite of saying you can get it anywhere.

17        And, finally, again, returning to that first point,

18   "HCG is available by prescription only."

19        None of those things expressed the idea that the

20   defendant expressed in his infomercials that you can get HCG

21   anywhere.

22        And what if the defendant had told the truth about

23   HCG in those infomercials?  He would have said, My diet

24   involves taking a hormone called HCG.  You have to inject it

25   into your body.  You can only get it from a doctor's

Krickbaum - Closing Argument

573

1    prescription.  And it might not be legal for you to get it in

2    the United States.  So you might have to leave the country,

3    find a doctor who is willing to prescribe it to you and then

4    bring it back into the country.  That's what he would have

5    said if he were telling the truth.  And if he had said that,

6    he would have sold a lot fewer books.  And that's why he

7    chose, again, to lie about it.

8         The next misrepresentation I want to talk about is

9    the defendant's statement that you can do this protocol at

10   home.  And he said that repeatedly in these infomercials.  And

11   I'll give you a few examples.  The first one is pretty

12   straightforward.  "You can do it at home."  "Anybody can do it

13   at home," he said.  "You don't have to go to a clinic to do

14   it."  "You can do it at home."  And you can do it out of your

15   home.  The defendant made this very clear in these

16   infomercials, you can do it at home.

17        That statement is also not in the book.  It's not in

18   there.  He never says in the book that you can do it at home.

19   And if you look at the defendant's chart on pages 29 and 30,

20   this is a chart that is supposed to be collecting statements

21   from the book that are the same as statements from the

22   infomercials.  There are no quotations from the book on this

23   claim.  It just quotes more statements from the infomercials.

24   And the reason that there are no quotations from the book is

25   the defendant never said this in the book.  He never said it.

Krickbaum - Closing Argument

574

1          What does he say in the book about doing this
2    protocol?  Well, first -- we've already covered this -- "HCG
3    requires a prescription from a doctor."  So you already need a
4    doctor involved to get you a prescription.  Then he says, for
5    Phase 2 -- and this is in capital letters and bold-faced
6    letters in the book -- "This phase must be done under the
7    supervision of a licensed health care practitioner."  So now
8    you need a prescription and you also need a doctor supervising
9    it.

10          For Phase 3 under things you must do, it says, "Get
11   personalized individual care from a licensed health care
12   practitioner who does not use drugs and surgery."  So now you
13   need a prescription from a doctor, you need a doctor to
14   supervise you, and you need personalized individualized care
15   from a doctor.  Now, you can use your common sense on this one
16   as well.  You can't do those things at home.

17          And in case the book wasn't clear enough on this
18   point, the defendant makes it crystal clear when he quotes
19   from Dr. Simeons, the person who discovered this supposed
20   cure.  And this is on page 211 of the book.  The defendant
21   quotes Dr. Simeons from his book Pounds and Inches:  A New
22   Approach to Obesity.  And here's the quote from Dr. Simeons:
23   "The HCG plus diet method can bring relief to every case of
24   obesity, but the method is not simple."  And notice here, by
25   the way, that he's just described this as a diet and he just

Krickbaum - Closing Argument

575

1    said that it's not simple.

2           He then goes on, "It can be time-consuming and does

3    require perfect cooperation between physician and patient.

4    Each case should be handled individually.  The physician must

5    be available to answer questions, allay fears and remove

6    misunderstanding.  The patient should be checked daily."  And

7    I underlined that point.  That point is not underlined in the

8    book.

9           So it's not just that you need your doctor to

10   supervise you and to give you individualized personalized

11   care.  You need daily checkups, according to this book, while

12   you're on the protocol.  That's on page 211.  And what does

13   the defendant think about what Dr. Simeons said about that?

14   Well, that's on the very next page.  At the conclusion of this

15   quote, the defendant says, "I echo the words of Dr. Simeons."

16          You need a doctor to supervise you, give you

17   individual care and do daily checkups.  Those are not things

18   that you can do at home.  According to the book, you can't do

19   it at home.

20          And there's another misrepresentation that the

21   defendant made in those infomercials that is closely related

22   to this one.  He said in one of those infomercials, "When

23   you're underage, you obviously want to do any weight loss

24   program under the supervision of a licensed health care

25   practitioner."  "When you're underage," he said.  Well, we

Krickbaum - Closing Argument

576

 1    just went through, ladies and gentlemen, the need to be

 2    supervised by a doctor, according to the book, applies to

 3    everybody.  That's in bold letters.  That's a thing you must

 4    do.  It's not just for minors.  It's not just for juveniles.

 5    That's how he portrayed it in the infomercials, but that's not

 6    what's in the book.

 7           Now, what if the defendant had told the truth about

 8    this point in his infomercials?  Well, he would have told

 9    people you need a prescription from a doctor in order to do my

10    protocol, you need to be supervised by a doctor, and you need

11    daily checkups from your doctor during the time that you're

12    doing my protocol.  And if he had told people that, he would

13    have sold a lot fewer books.  And so, yet again, he chose to

14    lie.

15           One more misrepresentation -- and this is the last

16    one I'm going to focus on in my closing.  It's an important

17    one though.  The defendant said in those infomercials that

18    after you're done with the diet, you can eat anything you want

19    and never gain the weight back.  Let me give you a few

20    examples of where he said that.

21           "I can eat whatever I want now, anything and as much

22    as I want any time I want.  No restrictions now.  And the

23    weight's not coming back.  You don't gain the weight back."

24           And another example, "When you're done with the

25    protocol, eat whatever you want and don't gain the weight

Krickbaum - Closing Argument

1    back."  Those are very attractive claims.  Those are claims

2    that anybody who is interested in losing weight would be very

3    interested in.

4         What does the book say about whether or not there are

5    restrictions?  Well, first, starting with Phase 4, the book

6    says that Phase 4 is for the rest of your life.  So right away

7    the idea that you can be finished with this protocol is not

8    true, according to the book, because Phase 4 lasts for as long

9    as you live.  You can't finish.

10        And then you may remember, in Phase 4, there is a

11   list of 50 dos and don'ts.  It takes multiple pages for the

12   defendant to list out every single one of those dos and

13   don'ts.  And those aren't small dos and don'ts.  Those are big

14   dos and don'ts, such as, "Eat only 100 percent organic food."

15   "Don't eat food from most grocery stores."  The way the

16   defendant described it is don't eat brand name food, the kind

17   of food they sell at the kind of grocery stores that most

18   people shop at.  "Don't eat fast food, regional food or

19   national chain restaurants."  Don't go out to eat.  And you

20   can't eat a whole list of ingredients that are in the types of

21   foods that most people eat every day.  You can't have trans

22   fats.  You can't have nitrates.  You can't have high fructose

23   corn syrup that are in foods such as soda, cake, cookies,

24   crackers, ice cream and so on.

25        So when the defendant says in those infomercials, you

Krickbaum - Closing Argument

578

 1    can eat pizza, you can eat pasta, you can eat ice cream, well,

 2    you can eat pizza if you're able to find raw dairy for the

 3    cheese, but you can't put any sausage on it because sausage

 4    contains nitrates.  And you can eat ice cream if you can find

 5    ice cream that doesn't have any sugar in it and that doesn't

 6    have any artificial sweeteners in it because you're not

 7    allowed to use those sweeteners.

 8            And there's another restriction in Phase 4.  You

 9    can't take any medications at all of any kind, including

10    aspirin.  And this was what the defendant describes in those

11    infomercials as no restrictions.

12            Now, there's been an issue that the parties have been

13    arguing about in this trial, and that is the issue about is

14    Phase 4 required.  And the defense has suggested that Phase 4

15    is just recommended; it's just suggested; you can almost

16    pretend like it's not there because you don't really have to

17    do it.  That is not what the book says.  The book makes this

18    extremely clear.  Phase 4 is required if you want to keep the

19    weight off.  And the book says that over and over.  Here are a

20    few examples.  This is probably the clearest one:  "If you go

21    back to eating fast food, restaurant food and food containing

22    trans fats, high fructose corn syrup, super highly refined

23    food, artificial sweeteners, meat, poultry and dairy with

24    growth hormone and antibiotics," et cetera, et cetera, et

25    cetera; in other words, if you go back to eating the foods

Krickbaum - Closing Argument

579

1   that are outlawed in Phase 4, you will, in fact, mess up your

2   hypothalamus again and regain the weight.  If, however, you

3   follow the dos and don'ts in Phase 4, the weight should never

4   return.

5           And in case that wasn't clear enough, the defendant

6   emphasizes this point repeatedly.  "All restaurant food," he

7   says in the book, "is designed to make you fat."

8           "All non-prescription, over-the-counter and

9   prescription drugs cause disease and obesity."

10          "You should never use any artificial sweeteners ever

11  again for as long as you live.  They make you fat."

12          And for good measure, "You should never eat anything

13  with MSG in it ever again as long as you live.  It makes you

14  fat."

15          If that wasn't clear enough, the defendant has one

16  more thing to say on this topic in the book.  He says, "Don't

17  eat the forbidden foods as listed in Phase 4, as they create

18  drug-like physical addiction.  This is absolutely essential.

19  When I say never, I mean never.  Would you consider thinking

20  that you could on occasion smoke some crack cocaine or shoot

21  up some heroin and not become addicted?  The food at fast food

22  restaurants and the ingredients that I suggest be forbidden

23  can be as physically chemical addicting as heroin or crack

24  cocaine."

25          These restrictions in Phase 4 are not suggestions,

Krickbaum - Closing Argument

580

1    ladies and gentlemen, any more than you would suggest to

2    someone that maybe you shouldn't smoke crack or shoot up

3    heroin.  That's not a suggestion.  And when Mr. Kirsch was

4    asking Inspector Carrier about this very passage, he suggested

5    that this passage only applies to people who have problems

6    with emotional eating; it doesn't apply to everyone, so you

7    can just kind of ignore it.

8         But that's not actually what the book says.  If you

9    look on that very page of the book, on page 165, the defendant

10   says, "Every person reading this has been hypnotized by the

11   food companies into having uncontrollable food cravings."  And

12   that's why he says you have to stay away from all of those

13   problem foods that are listed in Phase 4.

14        Another way to say that, ladies and gentlemen, is

15   that Phase 4 is required if you want to keep the weight off.

16   And let's keep in mind that keeping the weight off is the

17   whole point of this book.  That's the entire idea behind the

18   book.  And that's why the defendant sold this book as a cure,

19   a weight loss cure.  It's only a cure if it permanently fixes

20   your condition.  A cure means that your problem is fixed.

21   It's over.  It's done with.  If you gain the weight back, you

22   haven't been cured.  And that's what the defendant is selling.

23   He's selling a cure.  And he makes very clear in the book that

24   if you do not follow the requirements of Phase 4, then you

25   have not been cured; and that's because you will gain the

Krickbaum - Closing Argument

1    weight back.  And the bottom line for all of that is that if

2    you want a cure, if you want to keep the weight off, then you

3    can't eat whatever you want.  You can't eat the food that is

4    outlawed in Phase 4.

5         Now, I want to talk briefly about this issue of

6    cheating because the defense has discussed this.  It's true,

7    the defendant acknowledges in his book that occasionally from

8    time to time, you will eat some of the things that you're not

9    supposed to eat in Phase 4.  Here's what he says about it, he

10   says, "It's impossible for the average person to eat this way

11   all the time.  This is why doing a colon cleanse, liver

12   cleanse, heavy metal cleanse and parasite cleanse once or more

13   per year is strongly suggested."  In other words, according to

14   the book, because you will sometimes cheat, you have to take

15   all those potions and powders and pills that you saw sitting

16   up there on that witness stand when the dietician, Melissa

17   Dobbins, testified.

18        But just because the defendant acknowledges that you

19   will sometimes cheat doesn't mean that the restrictions in

20   Phase 4 go out the window.  You still have to reduce or

21   eliminate all of those foods listed in Phase 4 according to

22   the book.  And this is from the quote that I read earlier.  If

23   you go back to eating those foods, according to the book, you

24   will, in fact, mess up your hypothalamus again and regain the

25   weight.  So you have to give up, according to this book, or at

Krickbaum - Closing Argument

582

1    least severely restrict, the kinds of food that most people

2    eat all the time every day.  That's what the book says.

3           And that is the misrepresentation on this point.  In

4    the infomercials, the defendant said you can eat anything you

5    want; there are no restrictions.  What does the book say?  You

6    have to completely change the way you eat for the rest of your

7    life.  That's a pretty big misrepresentation.

8           And what if the defendant had told the truth on this

9    point?  If he had told the truth in those infomercials, he

10   would have said, My protocol lasts for as long as you live,

11   and you will no longer be able to eat most of the foods that

12   most ordinary people eat every day.  And if he had said that

13   in the infomercial, he would have sold a lot fewer books.  And

14   that, again, is why he chose to lie about what was in his

15   book.

16          Now, we've been talking for quite a while now -- or I

17   have -- about the second element, that the defendant violated

18   that order by misrepresenting the content of the book; and

19   I've listed several misrepresentations:  It's not a diet.

20   It's not portion control.  It's not calorie counting.  The

21   idea that you can get HCG anywhere.  You could do it at home.

22   Only minors need a doctor's supervision.  And when you're

23   done, you can eat anything you want.

24          An important point to make about each of those

25   misrepresentations is that none of them is an opinion.  Not

Krickbaum - Closing Argument

583

1   one of them.  So if you just go down the list:  It's not a

2   diet, it's not portion control, it's not calorie counting,

3   that's not an opinion.  Words mean things.  Something is

4   either a diet or it's not a diet.  That's a fact.

5        You can get HCG anywhere.  That's not an opinion.

6   Either you can or you can't.  It turns out that, according to

7   the book, you can't.

8        You can do it at home.  That's not an opinion.

9   Either you can do it at home or you cannot do it at home.  The

10  book says you cannot.

11       According to the book, only minors need a doctor's

12  supervision.  Well, that's not an opinion either because

13  according to the book, everybody needs a doctor's supervision.

14  That's just a fact.  That's a fact about what the book says.

15       And when you're done, you can eat anything you want.

16  Well, that's not an opinion either.  And we just reviewed the

17  evidence for that.

18       None of these things is an opinion.  And the defense

19  has suggested that some of these statements in the

20  infomercials were just the defendant expressing his beliefs.

21  Well, the parties have a stipulation on this point.  It's

22  stipulation 11.  We agree that the defendant was not

23  prohibited by that consent order from expressing his views and

24  opinions in infomercials, as long as those views and opinions

25  did not misrepresent the content of the book.  And this is an

Krickbaum - Closing Argument

584

1    important point because if the defendant could just get up in

2    those infomercials and say whatever he wanted and lie up and

3    down about the book and then come into court and claim that

4    those were just opinions, then the court order would be

5    meaningless.  It wouldn't stop the defendant from doing

6    anything.  But that court order is not meaningless.  It

7    actually prevented the defendant from misrepresenting the

8    content of his book.

9         Now, I want to talk briefly about these two

10   companies, ITV and Shop America.  You heard a little bit, not

11   much, but a little bit in this trial about those companies.

12   And the defense suggested in their opening statements that ITV

13   was the company that produced and marketed The Weight Loss

14   Cure infomercials.  And we agree.  ITV was the company that

15   produced and marketed The Weight Loss Cure infomercials.  I

16   have no idea what that has to do with any issue that you need

17   to decide in this case.  And it certainly doesn't show that

18   someone else and not the defendant was responsible for those

19   infomercials.

20        Now, I want to go through this quickly.  First of

21   all, a federal judge issued that 2004 order to the defendant.

22   There were other people listed on that order, but his name was

23   on it.  The order was issued to the defendant.  And the

24   defendant is the one who wrote that book.  No one else wrote

25   it.  Those are his words.  It's his book.

Krickbaum - Closing Argument

585

1          And the defendant is also the one who made the

2    infomercials.  He's the one who sat there in those

3    infomercials holding up his book saying call this toll-free

4    number and buy my book and I will send you my other books for

5    free.  That was the defendant who did that.

6          And it was also the defendant who was the one who

7    lied in those infomercials.  People from ITV didn't lie in

8    those infomercials.  They were the ones asking the questions.

9    The defendant was the one answering the questions, talking

10   about his book and making all of the misrepresentations that

11   I've already reviewed with you.

12         And because of all of that, the defendant is the one

13   who violated this court order.  He's the one who lied about

14   his book in those infomercials.

15         Now, back to the elements of contempt.

16         We've talked about the first two elements, the

17   reasonably specific order and the defendant violated that

18   order.

19         There's one element left that I would like to discuss

20   with you and, that is, that the defendant's violation of the

21   order was willful.  Willful.  And I expect that Judge Guzman

22   will provide you with an instruction that provides a

23   definition of what it means for something to be willful.  And

24   part of that instruction will be that a violation of a court

25   order is willful if it is a volitional act done by someone who

Krickbaum - Closing Argument

586

1  knows or should reasonably be aware that his conduct is

2  wrongful.

3         So I want to talk to you for just a few more minutes

4  about the evidence that shows that the defendant knew his

5  actions were wrongful.

6         First, starting with the obvious.  The defendant knew

7  that that court order required him to tell the truth about his

8  book in his infomercials.  He knew that because he agreed to

9  that court order and he signed that court order.

10        He also knew that in those infomercials, he lied

11  about what was in his book.  He knew what was in his book, and

12  he knew what he was saying wasn't true.  Because those

13  misrepresentations, including several of the ones that I just

14  reviewed with you, they weren't little fibs.  They were

15  blatant misrepresentations about what was in the book.  The

16  defendant knew that.  It was his book.

17        And some evidence that the defendant knew that he was

18  lying about what was in his book is the fact that he tried to

19  cover his tracks about it.  And what do I mean by that?  Well,

20  let me give you an example of the defendant trying to cover

21  his tracks.

22        The defendant knew that his book contained a diet.

23  He knew that it involved portion control and calorie counting.

24  That's why he described it as a diet multiple times throughout

25  his book.  But he didn't want to sell his book as containing a

1    diet.  He didn't want to have to say that in those

2    infomercials.  He wanted to be able to get up in those

3    infomercials and say it's not a diet.  So what did he do?  He

4    sprinkled in to the book three or four places "it's not a

5    diet" -- that's what he did -- so that he could claim that he

6    wasn't actually misrepresenting the book; so that he could try

7    to get around that court order and make it appear that he

8    wasn't lying.

9            But the only reason the defendant had to cover his

10   tracks is because he was trying to hide what he was doing

11   because he knew what he was doing was wrong and he was

12   violating that court order.  It wasn't a successful attempt to

13   cover his tracks, but that's what he tried to do.  That's what

14   he tried to get away with by sprinkling in on a few pages

15   "it's not a diet."

16           And there's one other thing that the defendant knew,

17   and I've talked about it throughout this argument.  He knew

18   that he could sell more books if he lied about what was in his

19   book.  Because if he told the truth, that book wasn't going to

20   sell nearly as well as if he lied.

21           And what about this issue of refunds?  Because the

22   defense raised that issue in their opening statement.  And I

23   think Mr. Kirsch said that according to the refund policy,

24   anybody who wanted a refund got a refund.  Well, you had a

25   chance to see that refund policy.  Inspector Carrier read

Krickbaum - Closing Argument

588

1    portions of it to you during the trial.  That's not what the
2    refund policy said.

3            First of all, in order to get a refund, you first had
4    to call a long distance number and get a code.  If you didn't
5    have the code, you couldn't get a refund.  Then you had to
6    send the books, ship them back to ITV, and you had to pay to
7    ship them; both for shipping and handling, you had to pay.
8    And you also never got a refund for when the books got sent to
9    you in the first place.  So if you sent the book back, you
10   didn't have a book anymore, and you had to pay shipping and
11   handling on both ends of that transaction.

12           So here's another example of where you can use your
13   common sense.  Is every person who is not happy with that book
14   going to return it, going to ship it back based on that refund
15   policy?  Of course not.  That's ridiculous.  That's not the
16   way the world works.

17           So the defendant knew that he was going to sell more
18   books if he lied about what was in his book.  And that refund
19   policy was not going to slow him down for a moment.

20           And I have another question to ask about this issue
21   of lying in order to sell more books.  If that's not what the
22   defendant was doing, then this question comes to mind:  Every
23   time the defendant misrepresented that book in those
24   infomercials -- every time -- he made the book sound way
25   better than it really was.  Every time.  Was that a

Krickbaum - Closing Argument

589

1   coincidence?  Did it just happen by accident?  Was it a

2   mistake?  Of course not.  That's ridiculous.  The defendant

3   knew exactly what he was doing when he told those lies.  He

4   lied about his book so that he could sell more books.

5           And I'll come back to the question that I've asked

6   several times already:  What if the defendant had told the

7   truth in those infomercials?  He would have come clean about

8   the fact that this was a diet.  He would have come clean about

9   HCG and how difficult it is to get.  He would have talked

10  about the need for a doctor's supervision and you can't do

11  this at home.  He would have come clean with people that

12  you're going to have to severely restrict what you eat for the

13  rest of your life.  And if the defendant had done those

14  things, if he had told the truth, we would not be here today.

15  We wouldn't be here.  If he had accurately described what was

16  in the book, he would not have misrepresented the content of

17  the book.  He wouldn't have lied.  He wouldn't have violated

18  that court order.  And he wouldn't have been in contempt.

19  It's because the defendant chose to lie about each of those

20  things -- so that he could sell more books -- because he chose

21  to violate that court order, that is why we are here.

22          Now, I want to conclude -- and I will be brief.  The

23  defense said in their opening statement that this is an

24  important case and that this case is important to the

25  defendant.  This case is important to the government as well.

Kirsch - Closing Argument

590

1    And your verdict in this case will be an important verdict.

2    But not every important decision that you make in your life is

3    a difficult decision.  And this one is not difficult.  The

4    defendant lied in those infomercials about what was in his

5    book.  He lied repeatedly.  He lied blatantly.  He willfully

6    violated that court order, and he was in contempt of court.

7    And because that is what the defendant did, we ask that you

8    find him guilty.

9            Thank you.

10           THE COURT:  Counsel.

11           MR. KIRSCH:  Thank you, your Honor.

12           Can we have the source changed to the defendant's

13   computer.

14            CLOSING ARGUMENT ON BEHALF OF THE DEFENDANT

15   BY MR. KIRSCH:

16           May it please the Court, counsel.

17           Ladies and gentlemen of the jury, I'm going to start

18   out exactly the same way the government lawyer started his

19   argument.  And he told you why we are here in almost the first

20   thing he said.  He said we're here because Trudeau wrote a

21   book that deceived people.  Do you remember that?  That it

22   deceived people.  That's what he said.  Who?

23           I'm going to come back to something during the course

24   of my closing argument over and over and over.  Ladies and

25   gentlemen, the government did not talk about the burden of

Kirsch - Closing Argument

591

1    proof.  They did not talk about the presumption of innocence.

2    They did not talk about beyond a reasonable doubt.  And I'm

3    going to talk about those things.

4         Ladies and gentlemen, they told you we're here

5    because he deceived people.  And they tell you that they

6    proved that he acted willfully.  And I'm going to talk about

7    something through the course of the whole trial.  They called

8    two witnesses.  Two.  Two people.  Neither of whom had ever

9    met Trudeau.  Never met him.  Didn't know him.  All they did

10   was recognize the man who appears on the cover of that book.

11   They didn't call anybody from the FTC, a government agency.

12   Not one single person.  They called a postal inspector, and

13   then they called a nutritionist who is a diabetes expert.

14   That is their evidence, ladies and gentlemen.  That is their

15   evidence.  That is their evidence.

16        The other thing that I'm going to come back to over

17   and over, and I want to comment on this, the government said

18   he lied, he cheated people, he deceived people because he

19   wanted to sell more books.  Now, I want to ask you a question;

20   and I want you to use your common sense.  Back in 2006 and

21   2007, six years ago, six years ago, when this infomercial ran,

22   the defendant was 44 years old or so.  45 years old.  Now, the

23   government's theory would be a good one if this was the last

24   book that he ever intended to write.

25        I read books.  I read those like John Grisham type

1    books, John Sandford type books.  If I read the last -- you

2    know, a lot of times in those paperbacks, they have a "read

3    the first chapter of the next book."  Now, I read that chapter

4    and I thought, oh, this looks interesting; I'll go buy the

5    book.  So I went and bought the book.  And then I read the

6    book, and it was nothing like that chapter.  Nothing at all.

7    I suggest to you I probably never ever ever in my life would

8    buy another book from that author.

9           So the government wants to suggest that Trudeau was

10   motivated by profit.  I'm going to talk about that.  But if he

11   had willfully knew what he was doing was wrong, misrepresented

12   the content of the book, the profit motive would be flipped.

13   He would never make any money.  He would never sell another

14   book.  He would never have another publisher publish a book.

15   Never.  Never.  So the financial motive is the opposite.

16          Ladies and gentlemen, the government -- you're going

17   to see this throughout the book.  The government has hauled

18   this man in here, into federal court, and they want you to

19   convict him of a felony, a federal crime, a federal crime.

20   Now, he has been very critical of the government in the book.

21   You'll see that.  He's been extremely critical of the FTC.

22   He's been extremely critical of the government.  And here he

23   is.

24          Now, I want to talk to you -- and I'm going to go

25   through, ladies and gentlemen, in great detail a lot of the

Kirsch - Closing Argument

593

1    things that I thought the government was going to talk about,

2    but things they just skimmed over.  So I expect my closing

3    argument is going to be a little bit longer than theirs.  But,

4    again, they go first and then they get to go last because they

5    have the burden of proof.  I do not.

6          You remember at the beginning of the case -- and I

7    want to remind you of these things and I ask you to think

8    about them as you begin your deliberations -- the judge told

9    you there are three basic rules that are the foundation -- the

10   foundation -- of our entire criminal justice system.

11         What is the foundation of the system that allows the

12   government to haul anybody they want in here and make them

13   answer criminal charges?

14         Number one, the presumption of innocence.  The

15   defendant as he sits there right now is presumed innocent.

16   And he maintains that presumption of innocence unless you find

17   that the government has met each and every element, each one,

18   beyond a reasonable doubt.

19         The government has the burden of proof.  The

20   government has the burden of proof.  I have no burden to do

21   anything.  I don't have any burden to cross-examine witnesses.

22   I don't have any burden to make an opening statement, to make

23   a closing argument, to call witnesses.  Nothing.  That's the

24   right that every citizen enjoys when they're called into court

25   by the government and meant to answer criminal charges.

Kirsch - Closing Argument

594

1          Now, I want to comment on that a little bit.  I

2    suspect in its rebuttal case, the government is going to

3    say -- because I'm going to talk a lot about their witnesses

4    and the fact that they really didn't call anybody of any

5    substance in this case.  The government is to going to say,

6    well, Kirsch has the ability to subpoena witnesses too.  And,

7    ladies and gentlemen, that's true.  But I do not have the

8    burden of proof.  I don't have to prove anything.  The

9    government has to prove its case beyond a reasonable doubt.

10   And I want you to think about those words which the government

11   didn't talk about in its closing argument.  Ladies and

12   gentlemen, that's a heavy burden.  Beyond, beyond a reasonable

13   doubt.

14          Now, I want to talk to you about some of the things

15   that the government -- that I told you at the very beginning

16   of the case that are not in issue.  But I want to remind you

17   of those things.

18          Number one, when Trudeau entered into that consent

19   agreement -- and we're going to spend some time talking about

20   that consent agreement -- he didn't admit wrongdoing.  Now,

21   ladies and gentlemen, I think the Court has already instructed

22   you of this -- and, by the way, when I reference the Court's

23   jury instructions, that's what I anticipate that they will be.

24   If they're different, you should, of course, follow those

25   instructions.  I think they'll be the same, but that's what I

Kirsch - Closing Argument

595

1    anticipate them to be.

2          The judge has already told you whether the weight

3    loss protocol described in the book is effective for weight

4    loss is not an issue before you.  It's not an issue for you to

5    decide in the case.

6          We agree that Trudeau was able and permitted to state

7    his views and opinions.  Now, the government has said that

8    some of these things that Trudeau stated in the infomercial

9    were not, in fact, his views and opinions.  That's why we're

10   here.  They're asking you to decide -- to convict this man of

11   a crime asking you whether it was an opinion or whether it

12   wasn't an opinion.

13         Whether the content of the book is truthful is not an

14   issue for you to decide.  Remember I told you this at the very

15   beginning of the case.  It doesn't matter if you disagree with

16   everything; I would never do this weight loss protocol; I

17   disagree with every word in the book; I think that some of the

18   stuff that he talks about is good for you or bad for you or

19   whatever.  It doesn't matter.  The truthfulness of the book is

20   not in issue.

21         What is in issue is the following:  The government

22   contends that it proved beyond a reasonable doubt that Trudeau

23   willfully misrepresented the content of his book.  It's our

24   position that Trudeau did not willfully misrepresent the

25   content of his book.

Kirsch - Closing Argument

596

1          Ladies and gentlemen, I'm going -- the government

2     didn't show you Exhibit 19 during closing argument.  And they

3     didn't show you my Defendant's Exhibit 2.  Because I suspect

4     the evidence came in a little differently than they had

5     anticipated it coming in.  But I'm going to show you those

6     things and walk through them.  Because, ladies and gentlemen,

7     the representations in the infomercial were in the book.  They

8     were in the book.

9          And, ladies and gentlemen, the government suggested

10    to you that they proved beyond a reasonable doubt that Trudeau

11    acted willfully; that he knew what he was doing was wrong.

12    Again, they called two witnesses, neither of whom had ever met

13    the man.  And I'm going to talk about that quite a bit.

14          So let me -- what does it mean to act willfully?  And

15    the government showed you this slide, but they didn't show you

16    the next slide that I'm going to show you.  And I think what

17    the judge is going to tell you is that a violation of a court

18    order is willful if it's a volitional act done by one who

19    knows or should reasonably be aware that his conduct is

20    wrongful.  So it's not just that you did it; it's that when

21    you did it, you knew it was wrongful.

22          Now, the government said, "I don't have any clue what

23    ITV has to do with this case."  Maybe that's what it has to do

24    with.  Maybe I'm going to talk about ITV when I come to that.

25    ITV produced the infomercial.  They marketed the infomercial.

Kirsch - Closing Argument

597

1   They were aware of the consent order.  They had the consent

2   order.  Nobody from ITV came in here and testified, we had a

3   conversation with Trudeau and said, boy, does this violate the

4   court order; this comes pretty close.  They don't have one

5   e-mail that says that.  Not one document.  Not one

6   conversation with anybody where that was discussed.  But yet

7   they want you to believe that Trudeau knew what he was doing

8   was wrongful.

9          Now, I believe the judge is also going to instruct

10  you on good faith.  And I think what the judge is going to

11  tell you, right after he defines willful for you, is to say,

12  If a defendant acted in good faith, then he lacked the

13  willfulness required to prove the offense of contempt with

14  which he is charged.  The defendant acted in good faith if at

15  the time he honestly believed that his statements in the

16  infomercials did not violate the court order.  The defendant

17  does not have to prove his good faith.

18         Remember, I don't have to prove anything at all.

19         Rather, the government must prove beyond a reasonable

20  doubt that the defendant acted willfully, as charged.

21         Now, I talked about five critical facts.  And I'm

22  going to go back to these.  And I'm going to go through them

23  in some detail, ladies and gentlemen, because this is -- this

24  is incredibly important.  I'm going to go through these facts

25  one at a time.  I'll actually take the first two together.

1    But I'm going to show you all -- you'll remember them from my

2    opening statement last week.

3            Trudeau did not willfully misrepresent the content of

4    the book in The Weight Loss Cure infomercials.  The

5    representations Trudeau made in the infomercials were in the

6    book.  I showed you that time and time again.

7            The representations included his views and opinions.

8    Now, the government is asking you, a jury, to find him guilty

9    of a crime beyond a reasonable doubt by deciding what is a

10   view and what is an opinion and what is not.

11           Three -- and this goes to willfulness, and I'm going

12   to talk about this in some detail -- ITV produced and marketed

13   The Weight Loss Cure infomercial, not Trudeau.  ITV produced

14   it.  ITV marketed it.  ITV was the one that ran the

15   infomercial.  ITV was aware of and in possession of the

16   consent order when they did it.  And, ladies and gentlemen, I

17   told you in the opening statement that there was no evidence,

18   none whatsoever -- I told the government this in my opening

19   statement last week -- no evidence that anyone at ITV told

20   Trudeau that the infomercials violated the consent order.

21   Nobody.  If such a person existed on -- in this world, don't

22   you think the government would have had him here to testify to

23   you and said Kirsch is wrong; Trudeau did have a conversation

24   with somebody at ITV about the contents of this infomercial?

25   Nobody.  They had the consent order.  They knew they were

Kirsch - Closing Argument

599

1    required to follow it.  They produced and marketed the

2    infomercial.  And nobody -- nobody -- ever had a conversation

3    with Trudeau and said maybe this infomercial comes too close.

4            The Weight Loss Cure contains several disclaimers.  I

5    told you that.  I'm going to show those to you again.

6            And, of course, ITV policy allowed full refunds

7    unconditionally guaranteed.  Well, ladies and gentlemen,

8    remember the -- there's one thing that kind of struck me as

9    odd.  The government says Trudeau was motivated to make money.

10   To make money.  In their cross-examination of the agent, they

11   pointed out that there was no refund for shipping and handling

12   if the book was sent back, I think somehow suggesting that

13   Trudeau would keep the shipping and handling money.  Well,

14   there's no evidence in this -- Trudeau doesn't work for DHL or

15   the U.S. Postal Service.  He didn't keep any shipping and

16   handling money.  If the book was returned, he got zero.  Zero.

17   He didn't keep the postage that it cost to send the book or to

18   send -- or to get the book back.  He got zero.

19           So let's go through each of these facts individually

20   starting with the first two which I take together.

21           The government's position -- I showed you this during

22   my opening statement -- is that the representations in the

23   infomercials either weren't in the book or they misrepresented

24   its content.  And our position is that they were in the book,

25   and they stated Trudeau's views and opinions.  They did not

Kirsch - Closing Argument

600

1   misrepresent the content of the book.  And, ladies and
2   gentlemen, Trudeau was -- again, he was permitted to state his
3   views and opinions in the infomercials.
4          Now, I want to talk to you about the consent order.
5   And the government said, well, we're just going to put up
6   "misrepresented the content of the book" real quick on the
7   screen and then we're going to kind of gloss over that; I
8   don't want to define that; I'm not going to tell you what that
9   means; Trudeau just had to figure that out on his own, I
10  guess.  That's what they said.  He signed it.  He had to
11  figure out -- he had to figure it out on his own.  And guess
12  what -- guess what if he got it wrong.  Guess what the
13  punishment was if he got it wrong.  We haul him into court and
14  we charge him with a federal crime.  That's what happens if he
15  misinterprets the court order.  That's what we're going to do.
16         Now, it's 29 pages long, that consent order.  And
17  Trudeau is alleged to have violated one clause in 29 pages.
18  And the government has told you he willfully -- willfully --
19  violated the court order.  Look at all the prohibitions in
20  that order, ladies and gentlemen.  Look at all of them.  He's
21  alleged to have violated one clause from the order and had
22  done so willfully knowing it was wrong.  Everything else he
23  complied with.
24         MS. PERRY:  Objection, Judge.
25         THE COURT:  That will be sustained.  There is no

Kirsch - Closing Argument

601

 1    evidence as to any other portion of the order.

 2         MR. KIRSCH:  I'll restate it.

 3    BY MR. KIRSCH:

 4         There's no evidence -- there's no evidence, there's

 5    no argument that he violated any other portion of the order.

 6    None.  The government had no evidence, they brought no charge

 7    that he violated any other portion of the order.

 8         Now, when the government prosecutor said -- I'm just

 9    going to real quickly go over the first element, which is that

10    it's a reasonably specific order.  I'm not going to -- that's

11    what it says and that's what it says, and I'm not going to

12    talk about it -- I'm not going to define it for you.  He kind

13    of slipped that in later.

14         Remember when he said misrepresented the content of

15    the book means the whole book, not individual parts of the

16    book.  So it's the government's position that if Trudeau says

17    it in the book, it's not good enough.  Remember -- remember

18    the whole "exercise" cross-examination?  It was in the wrong

19    part of the book.  Remember?  It was in the early chapters,

20    not in the late chapters.  Remember the government prosecutor

21    got up and redirected the postal inspector, Silvia Carrier,

22    and said, well, exercise, it's in the book; it says you don't

23    have to exercise in the book, but it's in the wrong part of

24    the book.  So convict him of a felony offense.  It's in the

25    wrong part of the book.

Kirsch - Closing Argument

602

1        Now, when I asked -- you remember I asked Inspector
2   Carrier on the stand -- I gave her the consent order.  I asked
3   her to go through it, and I -- we were talking -- my question
4   was talking about misrepresenting the content of the book,
5   right?  And she said correct.  And I handed it to her.
6   Remember, I handed it to her.  And she flipped through every
7   page.  And I said, Does it explain what that means?  And the
8   answer is, I don't see a definition of that, specifically
9   giving an explanation of that.
10       Now, ladies and gentlemen, if Trudeau misrepresented
11  the content of the book, even if he did it, to haul him into
12  court here and convict him of a crime, the government has to
13  prove that he did it willfully.  Willfully.  He knew what he
14  was doing was wrong.  But the consent order doesn't even
15  explain what it means to misrepresent the content of the book.
16  The government says it's not enough if it's in the book.  It's
17  not enough.  That's not what misrepresent the content of the
18  book means.  It means you've got to consider the book as a
19  whole.  But it doesn't say that anywhere in the order.
20  Nowhere.
21       Now, you remember -- I want to talk to you -- before
22  I talk about these other alleged misrepresentations, I want to
23  talk about what was required by Dr. Simeons' protocol.  I
24  found it a little bit strange that the government was arguing
25  that Phase 4 was required.  Phase 1, they agree -- they didn't

Kirsch - Closing Argument

603

1    talk about Phase 1 at all in their closing argument despite

2    spending the hours and hours of testimony going through Phase

3    1.  They now seem to have conceded that Phase 1 is recommended

4    and not required.  Phase 2 and 3 are the protocol that was

5    described by Simeons.  And Phase 4 was recommended or

6    suggested.

7           Now, the government has argued to you in their

8    closing argument that it was, in fact, required.  But that's

9    not what the book said.  And, ladies and gentlemen, that's not

10   what their own witness said.  Their argument is inconsistent

11   with what their own witness testified to you on the witness

12   stand under oath.

13          I asked her very clearly, All right.  And Phases 1

14   and 4 were not required; is that right?  And she says,

15   Recommended.  That's her answer.  So I asked it again, They

16   were recommended but they weren't required, correct?  Answer:

17   Correct.

18          Now, the government prosecutor got up here in his

19   closing argument and argued to you that that testimony was

20   wrong.  It's just wrong.  The government agent, their own

21   witness, one of the only two witnesses that they called to

22   testify, was just wrong.  I want you to think about that,

23   particularly since they hauled the defendant in here for

24   misrepresenting the content of the book.

25          Now, ladies and gentlemen, you're going to get a list

1   of statements that the government alleges misrepresent the

2   content of the book.  The judge is going to list those

3   statements for you.  It seems as if the government has

4   abandoned some of those statements because they only talked

5   about -- we went through that whole big chart, and now it

6   sounds like we're down to five.  But I'm going to talk about

7   each one because it's important.  I think each one is

8   important.

9          The first one on the list is that statements that

10  indicate you can finish or be done with the weight loss

11  protocol.  Now, that is very similar to another statement that

12  the government alleges was false.  And I'm going to talk about

13  that in a minute.

14         But I want to show you -- do you remember their

15  chart -- they didn't show you their chart, but the chart --

16  you can finish the protocol and after finishing, you can eat

17  whatever you want.  Now, it looks like the representations

18  have changed a little bit from their chart.  They're not

19  exactly the same.  They shifted a little bit from what was in

20  their chart to what is going to be contained in the jury

21  instruction I believe.  But they're pretty much the same

22  thing.

23         Here they say you can finish and be done with the

24  protocol.  Here they say you can finish the protocol and after

25  finishing, you can eat whatever you want.  And they didn't go

 1    back to this chart during their closing argument.  They didn't

 2    go back to Government Exhibit 19 because I think if you look

 3    at Government Exhibit 19 -- well, 19 -- everything on 19 is

 4    also contained in 2.  Remember, I put everything on 19 in 2

 5    because here are the allegations -- here are the statements

 6    from the infomercial that they say misrepresent the content of

 7    the book.  And, ladies and gentlemen, it's all in the book.

 8    It's all in the book.  You may disagree with every word of the

 9    book.  You may disagree with every single word of it.  Every

10    word.  It doesn't matter.  What he says in the infomercial is

11    in the book; and, therefore, he did not misrepresent the book

12    in the infomercial.  It's that straightforward.

13         He says in the book:  "You will be able to eat any

14    food you want.  You can eat whatever you want in the future.

15    You will be able to eat any foods you want in any amount you

16    want any time you want.  With a high metabolism you can eat

17    any kind of foods you like in any quantity you want."

18         Remember the premise of the book, ladies and

19    gentlemen -- don't lose sight of this.  The premise of

20    Dr. Simeons' protocol is that by doing the protocol, your

21    hypothalamus gland is going to be reset, you're not going to

22    be as hungry, you're not going to have cravings and you're

23    going to speed up your metabolism.  You remember that?  And so

24    the premise of the book is you can eat what you want.  You're

25    just not -- you're not going to have cravings for foods that

Kirsch - Closing Argument

606

1    you shouldn't eat.  And, in addition, you're -- you're going

2    to process the food faster.  You're going to be hungry --

3    fuller.  Remember he says in the book -- or in the infomercial

4    imagine going to a buffet and just eating small portions and

5    eating a small amount of food.  That's the premise of the

6    book.  The government picks it apart here and asks you to

7    convict him of a federal crime.  But that's the premise of the

8    book.

9         So he says the even better news is when you're

10   finished with the protocol, you'll be able to eat any kind of

11   food you want.  Now, the government, they made arguments with

12   respect to 4; and they said, well, as long as it doesn't

13   contain high fructose corn syrup and it doesn't have these

14   other things in it -- and you remember their dietician, their

15   nutritionist, she gave an example of an Oreo.  Remember she

16   said, well, you can't eat Oreo cookies.  She said something

17   like that, which I thought was kind of ironic because right in

18   the book, it says you can eat Oreos; just don't eat the

19   Oreos -- I don't know who makes Oreos; Nabisco or Kraft.  I

20   don't know who makes Oreos.  But just don't eat those.  Eat

21   Paul Newman's Oreos.  Those are fine.  You can eat those.  He

22   says it right in the book.

23        And then the other statements are consistent.  "To

24   further prove the treatment cured the disorder, all patients

25   must have the ability to eat normally any food he pleases in

1    any amount.  The simplest rule to follow is eat anything you

2    want as much as you want as often as you want."

3              Remember, the premise -- which he was talking about

4    in the infomercial and he says in the book -- is that you're

5    not going to want the foods; you're not going to be as hungry;

6    you're not going to eat as much.

7              The next alleged misrepresentation:  Statements that

8    indicate the protocol is a cure that corrects the cause of

9    obesity.  Ladies and gentlemen, they didn't talk about this in

10   their closing argument, I suspect, for good reason.  They've

11   talked about diet instead.  Okay.  I'm going to talk about

12   that one, spend some time with that.  But you saw over and

13   over -- I went through page after page after page where the

14   book describes the weight loss protocol as a cure over and

15   over and over.  That is what the book is about.

16             So the government says to you, if he told the truth

17   during the infomercial, he wouldn't be here today.  Right?

18   That's what they said.  Ladies and gentlemen, under their

19   theory -- I just want you to think about this.  Under their

20   theory of prosecution in this case, under their theory of

21   prosecution, if he did an infomercial and read the book from

22   cover to cover, read the book, every word of it, under their

23   theory, he would still be guilty of a crime because everything

24   he says in the infomercial is in the book.  I want you to

25   think about that.

Kirsch - Closing Argument

608

1    Over and over and over again he says it:  This is a
2    cure.  Yet the government says he misrepresented -- he
3    misrepresented the book in the infomercial when he said the
4    protocol was a cure.  And I went through page after page after
5    page on Defendant's Exhibit 2, which you'll have back there,
6    where it talks about the cure.  The titles of Chapters 3, 4, 5
7    and 7 are Cure.  The Weight Loss Cure protocol.  I'm not going
8    to read every one of these to you, ladies and gentlemen,
9    because you're going to have this back in the jury room.  But
10   you see over and over, page after page after page of cure.
11   It's a cure.  There is a cure.

12       Now, the one -- the one that the government did focus
13   on were statements that indicate that people can do the weight
14   loss protocol at home.  And the government says it never says
15   in the book that you can do the protocol at home.  Right?  It
16   never ever says in the book that you can do the protocol at
17   home.  And do you remember, I had a slide on this -- I put it
18   up there -- because I want to talk to you about what the
19   infomercial really said about doing the protocol at home.

20       The -- there is -- and, by the way, you saw me ask
21   the agent, Agent Carrier, is there anywhere in -- is there
22   anywhere in the book that says you can't do it at home; and
23   she says no.

24       Now, what did I put on the screen?  Do you remember
25   during the infomercial when Trudeau -- the government just --

1  on 19 -- compare 19 to my 2, okay, Defendant's Exhibit 2.  19

2  they give you little bitty snippets.  You can do it at home,

3  you can do it at home, anybody can do it at home.  They didn't

4  put it in context at all.  They just gave you four little

5  words and said convict him of a federal crime.  These four

6  little words.  That's what they said.  I put it into context

7  for you because I wanted you to know what he was talking about

8  when he said you could do it at home.

9        Now, when he said you could do it at home is -- he

10 did it in a clinic.  He went to a clinic.  You could -- by the

11 way, you particularly saw in the third infomercial -- you

12 could see from the infomercials he had just completed the

13 protocol.  He was excited about it.  He had lost like

14 60 pounds.  I don't remember what it was.  45 pounds,

15 something like that.  He shows you the before and after

16 pictures.  You could clearly see that he's lost a significant

17 amount of weight.  He's not lost the structural weight or the

18 structural muscle from his face.  And you can see that in the

19 infomercials.  His skin is not sagging and wrinkling, as

20 sometimes happens when you lose weight.  You can see that from

21 the infomercials.  He's clearly excited about it.  He

22 describes his experiences at the clinic.  But he's telling

23 people that are watching the infomercial, you don't have to go

24 to a clinic to do it.  You don't have to go to a clinic to do

25 it.  You can do it at home.

Kirsch - Closing Argument

610

1        Now, I suggest to you that if you look at Phase 2 and

2   Phase 3 of the protocol in the middle of the book, those four

3   phases that describe Phase 2 and Phase 3, there's nothing at

4   all in those phases that you can't do at home.  All they

5   require you to do is eat.  There's nothing in Phase 2 or 3

6   that you can't do at home.

7        But the government wants to convict -- wants you to

8   convict this man of a federal crime because now they say

9   because he suggests that you be under the licensed care of a

10  physician, you can't do that at home?  What sense does that

11  make?  Do you have to be in a clinic to do this Weight Loss

12  Cure protocol?  Or a hospital?  Or some other type of

13  facility?  No.  That's all the point Trudeau is trying to make

14  in the infomercial.

15       So look at what the government showed you on

16  Government Exhibit 19, and then look at what I showed you in

17  Defendant's Exhibit 2 where I put those statements into

18  context.  And ask yourself if Trudeau was willful --

19  willful -- misrepresenting the content of the book in those

20  statements.

21       Then their -- they didn't show you this one at all.

22       I don't think -- you see their -- you see their

23  statements from the infomercials:  "You can do it at home,"

24  "you can do it at home," "anybody can do it at home," "you

25  don't have to go to a clinic," "you can do it out of your

Kirsch - Closing Argument

611

1    home."  One after the next.

2         Well, they forgot one.  They didn't list one.  They

3    didn't show you this one.  Anybody -- when he's talking about

4    you can do it -- can you do it out of your home, can anybody

5    do it, "anybody can do it I believe"; and it's in the book.

6    Statement of his opinion.

7         The next one that you're going to see in the jury

8    instructions, the next government allegation that Trudeau

9    willfully misrepresented the content of the book:  The weight

10   loss protocol is simple or involves only a few other things.

11   Now, the "few other things" he said one time.  And he said

12   that -- I'll show you that quote.  He said a few other things

13   in connection with HCG.  You take the HCG shots.  You take the

14   natural substance and a few other things.  And if you look at

15   Phase 2 and Phase 3, it truly is a few other things.  You

16   eat -- you eat the food that they tell you to eat and that's

17   pretty much it.  That's Phases 2 and 3.  That is the protocol.

18        They didn't talk about these in their closing

19   arguments, so I'm going to go fast over these.  Statements

20   that indicate the weight loss protocol is simple.  So let's

21   talk about that because they showed you on Government's 19 the

22   references to simple, it's simple, it's simple.  And over and

23   over in the book -- now, by the way, when you describe

24   something as simple, I think most people would view that

25   generally as a statement of opinion.  What is simple for me

Kirsch - Closing Argument

612

 1    may not be simple for some of you.  That is -- that is the

 2    bottom -- I sometimes feel like -- I -- you know, I have to

 3    call the plumber and the plumber will come over and do -- what

 4    I look at and what I see him doing seems like the simplest

 5    thing in the world, but I can't do it for -- I just don't know

 6    how to do that.  But I would think that "simple" is not a

 7    statement of fact.  Okay.  That's just my suggestion to you.

 8            Over and over in the book, he talks about it's

 9    simple.  It's simple.  It's relatively easy.  It will be easy.

10    It's easy to do.  You'll find it enjoyable.  You're going

11    to -- you're not going to have these food cravings.  Over and

12    over.  Simple.  Easy-to-follow method.  Easiest and most

13    effective way to lose weight.  It's easy.  Page after page

14    after page.

15            Now, the "no exercise" claim, the government didn't

16    talk about this -- again, they didn't talk about this in their

17    closing argument so it sounds like they've abandoned this one,

18    but they didn't talk about it.  But I'm -- I still need to

19    show it to you because it's going to be in there as an alleged

20    misrepresentation, and the government put it on your chart --

21    on its chart.  But do you remember these are their claims that

22    he says in the infomercial, you don't have to do any exercise,

23    no exercise, we suggest and recommend exercise, no exercise,

24    no exercise, et cetera, et cetera, et cetera.  In the book it

25    says the same thing.

Kirsch - Closing Argument

613

1           Now, they claim that the recommendation that you walk

2      is exercise.  That's what they claim.  But I want you to look

3      at that.  First of all, it's just a recommendation, right?

4      And Trudeau says, "I realize you might not be able to do this.

5      You're not going to be able to walk an hour a day.  Nobody can

6      walk an hour a day.  But just walk.  When you can walk, walk.

7      Instead of jumping in a cab and going four blocks, just walk.

8      It's good for you."  That's what he says.  And remember when

9      he says walk at a conversational level.  Don't get your heart

10     rate up.  This is not aerobic activity.  That's what he says.

11     That's what he talks about when he says walk.  Just a

12     recommendation.  Not required.  But that's what he said.

13          But the government wants you to believe that he

14     willfully misrepresented the content of the book -- even

15     though it's in the book -- when in the infomercial he said no

16     exercise is required.

17          And then you remember, I was struck by the

18     government's redirect examination of the postal agent after I

19     pointed these things out.  The government got up after my long

20     cross-examination and asked a few questions about exercise,

21     making the suggestion that although the book says no exercise

22     is required, it's just in the wrong part of the book.  It's

23     too early in the book or it's too late in the book; it doesn't

24     come in the right part of the book.  And that, according to

25     them, is a federal crime.

Kirsch - Closing Argument

614

1       Now, this one appears in the -- this is one of the

2  ones that I believe -- the prosecutor talked about statements

3  that indicate that after finishing the protocol, there's no

4  restrictions on what you can eat and you'll never have to diet

5  again to avoid gaining weight.  So let's look at what was

6  actually said during the infomercial, which is on Exhibit 19

7  and which you're going to have back in front of you, and then

8  what he said in the book in -- in -- with respect to the book

9  on Defendant's Exhibit 2.

10       And what he said is, "You'll able to eat any foods

11  you want.  Eat whatever you want in the future."  That's what

12  he said.  Now, I want you to think, ladies and gentlemen, when

13  he was talking about this in the infomercial and he's

14  excitedly telling you, you could eat whatever you want, you

15  can eat hot fudge sundaes; if you want mashed potatoes and

16  gravy, you can eat mashed potatoes and gravy, I want you to

17  think again what he's telling you and what he's describing in

18  the book is that the book was going to change permanently the

19  way you saw food and the way you -- the way you looked at food

20  and it's going to stop your cravings.

21       And, remember, you don't have to believe a word of

22  it.  You can read the book and say this won't stop cravings;

23  this won't make me any less hungry than I already am or than I

24  was in the past.  It doesn't matter.  It doesn't matter

25  because he has the right to say whatever he wants in the book.

Kirsch - Closing Argument

615

1    Remember I told you in opening statements that if anybody

2    wanted to write a book that argued the moon is made of cheese,

3    you could it.  You could do it.  In this country you can write

4    whatever you want in a book.  It doesn't matter whether it's

5    true or false.  It doesn't matter.

6            So over and over and over in the book he says, you

7    can eat whatever you want.  And then the government now --

8    like I said, with Phase 4, which contains recommendations

9    where Trudeau says, I know you can't do all these things all

10   the time; but there are some obviously to be stronger on than

11   others, like avoiding fast food.  Well, I don't think the

12   government is arguing that fast food is good for you.  Okay.

13   But Trudeau when he says -- when he argues -- maybe he makes

14   that recommendation a little bit stronger than he makes other

15   recommendations.  But they're still recommendations.  Phase 4

16   is recommendations.  That's what the government agent

17   testified to, and that's what the book says.

18           So you'll see in Defendant's Exhibit 2 all of these

19   references, all of these references to after you finish the

20   protocol, you can eat whatever you want.  Page after page

21   after page of reference.

22           Then you'll never have to diet ever again to avoid

23   gaining weight.  That's another one.  And I put there on

24   page 16 -- and I'm going to go back to the diet issue.  I'm

25   going to talk about that for some time.  But the diet issue on

Kirsch - Closing Argument

616

1   page 16, Trudeau says, "Although this is not a diet, I'm happy

2   to report this will be the last diet you ever need."  And I'm

3   going to talk about the -- what the government says.  Well, he

4   says in the infomercial it's not a diet when it really is a

5   diet.  Well, ladies and gentlemen -- well, I'll talk about

6   that in a minute.

7        Statements that only minors should do the weight loss

8   protocol under the supervision of a licensed health care

9   practitioner.  Now, I want you to think about this one for a

10  minute.  And when you get back to the jury room, I want you to

11  consider this one.  Because the government -- the government

12  has told you that in the infomercial, Trudeau said -- Trudeau

13  said -- that only minors should do this under the supervision

14  of a licensed health care practitioner.  Right?  That's what

15  they said.  In fact, on 19 -- they put on chart 19, when

16  you're underage, you obviously want to do the weight loss

17  program.  And their allegation is that that statement

18  indicates that only minors should do it under the supervision

19  of a licensed health care practitioner.  Now -- and then,

20  again, what they show you when you're underage.

21        Well, folks, I want to show you what they didn't show

22  you, the sentence right before that.  And when you look at

23  these infomercials, I want you to consider what Trudeau says

24  in context.  What he says is, Men "and women, all races, ages

25  and so forth."  And then he cuts himself off.  He's saying

Kirsch - Closing Argument

617

1  anybody can do the diet.  All races, all ages, all kinds of

2  people can do the diet.  But when he says all ages, he kind of

3  catches himself, right, and he says, well, wait a minute; if

4  you're a minor, you should do it -- isn't that what people are

5  supposed to do?  I mean, isn't that what people -- isn't that

6  what you would expect?  He's telling people -- he's telling

7  listeners, look, if you're a minor, don't just go off and do

8  this; talk to a doctor first.  You see that all the time.

9  That's what he's doing.  He's clearly not saying only minors

10 have to talk to a doctor.

11        Look at what their alleged misrepresentation is.  I

12 should have put that word in bold.  I didn't, but it says,

13 Only minors.  Only minors.  But look what he says in the

14 infomercial.  Is that a misrepresentation for what somebody

15 should be convicted of a felony offense, a federal crime?

16        Now, then I -- I asked -- you remember I was

17 cross-examining Agent Carrier about this representation and I

18 think she had a hard time explaining why that one was even in

19 the chart.  And then she said something to the effect of,

20 well, that's the only reference to a doctor's supervision in

21 the infomercial.  I'm not sure what that has to do with

22 minors, but that's what she said.  I asked her, Okay.  You say

23 that the representation is that there are references to a

24 doctor's supervision, right?  And she says, This is the only

25 time in the infomercial a doctor's supervision is mentioned.

Kirsch - Closing Argument

618

1    Well, guess what?  You remember the disclaimer that I

2  showed -- folks, I showed you this during opening statement.

3  It was here for the whole world to see.  She told you it's the

4  only time it's mentioned in the infomercial.  But in the

5  opening statement, I had showed you.  I showed everybody that

6  it was on a disclaimer.  It's recommended that you consult a

7  physician.  Do you really think in the infomercial that he was

8  suggesting that only minors should talk to a doctor?

9    Statements that indicate while on the protocol people

10  will have no hunger.  We have kind of already covered this

11  one.  I think there's some overlap with some of these alleged

12  representations.  I think there's considerable overlap.  But

13  with respect to this one, on Government's 19, they included

14  "the protocol causes no hunger; there's no deprivation."  And

15  then I list on Defendant's Exhibit 2 all the time -- all the

16  times that the book -- that the book talks about that.  No

17  hunger, no deprivation.

18    You remember -- the government didn't talk about this

19  during their closing argument, but do you remember Phase 2,

20  they talk about 500 calories and it's a small diet.  But do

21  you remember, there's a question and answer in the book -- and

22  I wish I remembered the pages, but you all will remember the

23  page.  There was a question and answer in the book that said

24  something like is 500 calories safe or is 500 calories

25  healthy.  And the answer was, yes, because the Phase 2, the

Kirsch - Closing Argument

619

 1    HCG or if you're using a substitute product for HCG, what it

 2    does is it breaks up the stored fat.

 3              Remember -- by the way, everybody knows folks who

 4    have gone on a diet that have a problem losing like a

 5    particular area.  I mean, my father goes on a diet and he has

 6    trouble -- he loses weight but he has trouble losing his

 7    midsection, his belly.

 8              But the whole point of the HCG issue is that it

 9    breaks down the stored fat.  So it says right in the book,

10    while you're only eating about or approximately 500 calories,

11    your body is being flooded with 2,000 calories from the

12    breaking down of the stored fat.

13              Now, again, you don't have to believe that.  You

14    don't have to believe that that's actually true.  It's just

15    what it says in the book.  But when he's talking about no

16    hunger, no deprivation, he explains why in the book.  He

17    explains it.  He explains it right in the book.

18              And I have it here on the chart for you.  I have,

19    "virtually little hunger or no hunger at all."  And, by the

20    way, I guess hunger -- you know, little hunger or no hunger or

21    no deprivation, again, these are flooded with statements of

22    opinions.  What one person may describe as no hunger, somebody

23    else may describe as immense hunger.  Their statements -- it's

24    like pain.  I mean, you go to the doctor's office, on a scale

25    of one to ten, what's your pain.  I don't think the doctor is

Kirsch - Closing Argument

620

1    calling for a statement of fact.  He's asking, does it hurt,

2    does it hurt you.  It might hurt me and it might not hurt

3    somebody else.

4         So page after page after page.  And I'm not going to

5    go through them all.  You'll be able to go through them all in

6    the jury room.

7         Now, there's another one that's going to be on the

8    list, but you haven't heard anything about it.  And I'm going

9    to talk about it.  The government -- it's on the list of

10   alleged misrepresentations, but the government hasn't talked

11   about it for one minute during the whole trial.  But I have to

12   talk about it.  Ladies and gentlemen, because they're asking

13   you to convict my client of a federal crime, I have to talk

14   about it.

15        Statements that anyone can cure food cravings in two

16   minutes using the Callahan technique.  We've heard almost

17   nothing about that.  But I show you the pages, pages 169, 170,

18   171, 172, 173, where he talks about the Callahan technique.

19   So when you see that on the list of alleged

20   misrepresentations, you can look right to pages 169 to 173

21   where he discusses and described the Callahan technique.  Yet

22   the government alleges that when he talks about the Callahan

23   technique in the infomercial, he misrepresents what's in the

24   book.

25        But here's what it says in the book about the

Kirsch - Closing Argument

 1   Callahan technique.  And I've highlighted some of it.  But
 2   I'll read you the first one and then I'm going to show you
 3   multiple statements that are similar.  "In one particular
 4   patient, strong urges and food cravings occurred 10 to 15
 5   times per day.  The patient was told that the next time they
 6   felt the strong urge to eat or a food craving, they were to
 7   use the Callahan technique.  The patient took less than two
 8   minutes to apply the technique.  Instantly the patient's body
 9   completely relaxed from head to toe.  The patient noticed all
10   the muscles in his face and throughout his body became
11   completely relaxed.  The patient's breathing dramatically
12   deepened and became much easier and fuller.  The strong urge
13   to eat and the food craving was 100 percent gone."  That's
14   what it says in the book.  Now, the government's -- by the
15   way, they don't show you any statements from the infomercial
16   on this one.  They just tell you that statements that indicate
17   anyone can cure food cravings in two minutes with the Callahan
18   technique weren't in the book.  Well, there it is.  I just
19   showed it to you.  Page 170, page 169, page 172, page 173.
20   The Callahan technique.  The -- apply the Callahan technique.
21   It took less than three minutes.
22        Now, let's talk about statements that indicate that
23   the weight loss protocol is not a diet because I think that
24   was the one that the government focused on most heavily.  And
25   they say that in the infomercial when Trudeau says it's not a

Kirsch - Closing Argument

1    diet, he willfully -- willfully -- misrepresented the content

2    of his book.  Ladies and gentlemen, the whole premise of the

3    book, the whole premise, is that it is a cure for obesity, not

4    a diet.  That's the whole premise of the book.  So when he

5    said the exact same thing in the infomercial, that it's a cure

6    and not just another diet, the government wants you to believe

7    that he willfully misrepresented the content of the book.

8            Well, first, let's take a look and see what he says

9    in the book.  "The Weight Loss Cure is not a diet.  The diet

10   programs do not work and actually make you fatter in the long

11   run.  This is why diets don't work."

12           Now, remember when I told you -- the government

13   kept -- what if he told the truth, what if he told the truth.

14   And I said what if he read the book.  If he read the book in

15   an infomercial, if he read the book cover to cover, under the

16   government's theory of prosecution, he would be guilty of a

17   federal crime.  I want you to think about that.  If you read a

18   book -- if you read a book in an infomercial, you could be

19   hauled into court and prosecuted for committing a federal

20   crime.  That's their theory of prosecution.

21           Now, what I mentioned to you before is that -- I

22   mentioned this to you, the government spent a lot of time

23   saying that the infomercial misrepresents the content of the

24   book by saying it's not a diet.  But, ladies and gentlemen,

25   you know from watching the infomercials and from seeing so

1   much of the book that the book argues that the protocol is a

2   cure and not just another diet.  That's what he's saying in

3   the infomercial.  He's comparing it to other diets that people

4   are familiar with.

5           He's comparing it to NutriSystem, Slim Fast,

6   Dr. Atkins, South Beach.  He said it's not one of those.  It's

7   a cure.  It's not just another diet.  Then he's stating his

8   opinion.  And he even says it in the infomercial.  The

9   government doesn't want you to focus on these statements, but

10  he says it.  "It can, in our opinion and the doctors's

11  opinion, cure."  "I believe it's a cure."  He doesn't think

12  it's an ordinary diet.  And that's what he's saying in the

13  infomercial.  That's what he's telling people at home.  That's

14  what he's telling people.  He's not deceiving anybody.  And if

15  he was, who?

16          The government's opinion and why they want you to

17  convict him of a federal crime is that the weight loss

18  protocol is just a diet.  It's not a cure.  It's a diet.  But

19  remember, that's -- their opinion isn't relevant.  But that's

20  what they think.  They think Simeons' protocol is just a diet.

21  Trudeau thinks it's a cure.  So they charged him with a

22  federal crime.

23          And, remember, whether it's, in fact, a cure is not

24  for you to decide.  The judge has already told you, and I

25  think he's going to tell you again, whether the content of the

Kirsch - Closing Argument

624

1  book is truthful is not an easy -- or is not an issue for you

2  to decide.

3      Now, the other one in this representation is that it

4  doesn't involve portion control, calorie counting, watching

5  your carbs, watching your fat or crazy potions, powders or

6  pills.  The government didn't talk about this at all in their

7  closing argument, but I need to touch on it for just a minute.

8  I think they've abandoned it because they didn't even put it

9  on Government Exhibit 19.  It's not there.  You can look for

10  it everywhere on Government Exhibit 19.  It's not there.  They

11  didn't talk about it in their closing argument because I think

12  they agree what Trudeau was saying in the infomercials when he

13  made these representations

14      But what does he say during the infomercials?  And

15  I've got the page numbers there for you, but I'm just going to

16  tell you what he says.  "I have found The Weight Loss Cure.

17  Not a diet, not an exercise program, not portion control, not

18  calorie counting, not watching your carbs, not watching your

19  fat, no crazy, potions, powders or pills.  A medical doctor

20  discovered a cure for the problem of obesity."  That's what he

21  says during the infomercial.

22      Then he says, "I blew up to close to 300 pounds.  I

23  tried everything under the sun.  I read every book on diets;

24  Atkins, South Beach, Weight Watchers, all the programs;

25  NutriSystem, Slim Fast, the powders.  I bought all the herbs,

Kirsch - Closing Argument

625

1    the hoodias, the guaraunas, the ephedras, you name it.  And

2    now these -- the insane medical procedures that people are

3    looking at like stapling and bands."  And then he says, "None

4    of them work."

5            And then he says, again, "It's not a single diet.

6    It's not a single exercise program."  And he goes on to

7    describe how it's a cure.  That's the whole premise of the

8    infomercial.  That's the whole premise of the book.  That's

9    what they're both about.

10           But, folks, there are similar quotes -- and maybe

11   this is why the government has abandoned this one.  There are

12   similar quotes in the book.  In the book he says, "Every year

13   more and more people are on diets, eating diet food, choosing

14   low-calorie, low-fat, low-carb products, diet pills, powders,

15   potions."  And he's explaining in the book, the same way he

16   had in the infomercial, that these don't work.  That's his

17   opinion.  He's entitled to it like everybody else is.  It's

18   his opinion.

19           And he says it in the book over and over and over

20   again.  "When you finish these weight loss programs," talking

21   about the more traditional weight loss programs, "you remain a

22   slave to hunger.  Fatigue, portion control, calorie counting."

23   He's distinguishing The Weight Loss Cure protocol from these

24   other diets.  That's what he's doing when he's talking about

25   no calorie counting, no portion control.  It's clearly what

Kirsch - Closing Argument

626

1    he's doing.

2         Again, in the book, he says, "The weight loss or diet

3    industry consists of companies that sell exercise equipment,

4    weight loss pills, powders and potions."  Same things he says

5    in the infomercial, same exact things when he's describing the

6    book.

7         Hold on.  There's more.

8         "People spend thousands of dollars on pills, potions,

9    powders."  And then he says, "You never" -- in the book, he

10   says, "You never have to be on a diet again."  Remember,

11   because the whole premise of his book, whether you agree with

12   it or whether you don't, is that it's a cure for weight loss.

13   That's the premise of the book.  It's not a diet.

14        I already told you that his statements in the

15   infomercial -- and you saw them right there -- his statements

16   in the infomercials were entirely consistent with what was

17   said in the book.

18        Now, folks, I want you to think about this.  I have

19   no burden of proof whatsoever.  None.  Zero.  The government,

20   the party with the burden of proof, they didn't show you these

21   statements.  They didn't show you what he said in the

22   infomercial during Agent Carrier's testimony, during their

23   opening statement, during their closing argument.  I did.  I

24   showed them to you.  I have nothing to hide.  I showed them to

25   you.  The government didn't.

1          And what I said earlier is -- and you can see it on

2    the screen -- in the infomercial and in the book, all Trudeau

3    is doing is contrasting The Weight Loss Cure from more

4    ordinary and traditional diets that involve portion control,

5    such as with Weight Watchers; calorie counting, such as Jenny

6    Craig or NutriSystem; watching your carbs, such as Atkins, the

7    Dr. Atkins diet, which is a low-carb diet, or the South Beach

8    Diet, or Sugar Busters; watching your fat, such as eating

9    fat-free food.  You see that a lot; eat fat-free food.

10    Portions, Medifast, Optifast.  You can buy them in the grocery

11    store.  Powders, Slim Fast and Herbalife.  Slim Fast I think

12    is a shake.  You pour the powder into water or something like

13    that and it's your whole day.  You get a shake for the

14    whole -- that's your meal.  Pills, Hydroxycut and Lipozine.

15    That's what he's doing; he's contrasting The Weight Loss Cure

16    protocol from these other diets.  He's not misrepresenting the

17    content of his book.

18          And, again, I said a lot of this, that it's the book

19    and the infomercial -- the book and the infomercial say the

20    same thing.  And I've already described to you -- and I don't

21    want to do this again, but I've already described to you that

22    The Weight Loss Cure protocol and what Trudeau is talking

23    about in the infomercial is telling people in a paid

24    advertisement that it's a cure.  It's different than these

25    other things because it's going to reset your hypothalamus

Kirsch - Closing Argument

628

1    gland; it's going to increase your metabolism.  NutriSystem,

2    Weight Watchers, Jenny Craig, they don't do that.  Folks, they

3    don't even make the argument that they do.  That's why he's

4    saying this is totally different than anything you've seen

5    before.  This is different.

6         Okay.  Another one that the government may have

7    abandoned, but there was the statements that indicate that

8    anybody can do the weight loss protocol.  That's the statement

9    that the government says -- now, remember, on 19 -- oh, I

10   didn't put 19 in there.  But on 19, take a look at it, the

11   alleged misrepresentation is that anybody can do the weight

12   loss protocol.  But the only time that appears in the

13   infomercial, the only time, he says, "Anybody can do it, I

14   believe."  If you say "I believe" -- what could be a clearer

15   statement of an opinion?  Maybe "in my opinion."  But they

16   mean the same thing, right?  I believe, in my opinion.  What

17   could be a clearer statement of an opinion?  The government

18   wants you to convict Trudeau of a federal crime for this

19   alleged misrepresentation, "Anybody can do it, I believe."

20        And, by the way, do you remember on

21   cross-examination, I asked Inspector Carrier, Does the book

22   exclude any type of folks from doing this?  And I think what

23   she said -- she made a reference, well, there's some reference

24   in the book to vegetarians.  Do you remember that?  And then

25   the next day, I came back and -- so I found that reference

Kirsch - Closing Argument

629

1    overnight, and I showed it to you.  And what does it say?

2    Vegetarians can do it, just substitute -- I forgot -- Turbo

3    Diet or something for the meat portion of the protocol.  But

4    you can do it.  Anybody can do it.  Anybody can do it.  And,

5    by the way, in the book -- it says it in the book.

6            "This is very exciting news for anyone who has a

7    weight loss program" -- or a "problem."  I'm sorry.  That's

8    what Trudeau says in the infomercial.  That's what he says in

9    the book.

10           Failure to disclose the specifics regarding the use

11   and administration of HCG or statements that indicate that HCG

12   is a substance you can get anywhere.  Now, the government

13   spent some time talking about HCG as a substance you can get

14   anywhere.  I'm going to talk about that as well.  But I want

15   you to remember what it says on their chart about HCG, what

16   the alleged misrepresentations are.

17           Now, do you remember -- do you remember earlier I

18   made the comment about a few other little things.  The

19   government -- I told you there's some overlap between some of

20   these representations.  There's one that references a few

21   other things.  Well, the government includes it on its HCG

22   chart.  So I'm not sure where they've classified that

23   statement, but it appears that they've classified it here as

24   an HCG statement.

25           And, by the way, the government has not argued that

Kirsch - Closing Argument

1   it wasn't a few other little things because it is.  If you

2   look at Phase 2 and Phase 3, you take the HCG injections or

3   you to take the substitute.  And then there are a few other

4   little things.  There's no -- there's nothing else you do in

5   Phase 2 and 3.  Phase 1 and 3 are required.

6         Now, by the way, the government has pointed out to

7   the back of the book.  You know, the back of the book there

8   are these summaries.  There's a summary.  And it includes some

9   things you must do under Phases 1, 2 and 3.  And then Phases

10   4 -- well, Phases 1 and 4 are recommended.  They're

11   recommended.  That never changes.  But Phase 3, there are some

12   inconsistencies with what is contained in the text of the book

13   and what is contained at the end of the book.  But, ladies and

14   gentlemen, the government has not argued that inconsistencies

15   in the book -- that if the book is internally inconsistent

16   between one page and another page, that that's proof of a

17   crime.  It's not a crime to be internally inconsistent.  To

18   the extent there are some inconsistencies in the book, it's

19   not criminal behavior.

20         But when he talks about HCG, he talks about it in the

21   infomercial and describes it as an all-natural substance; you

22   can get it anywhere.  And he talks about it, again, as an

23   all-natural substance.  Well, what does he say in the book

24   about HCG?  It's an all-natural substance.  It's a hormone.

25   That's all it is.  It's an all-natural substance.  Now, in the

Kirsch - Closing Argument

631

1 infomercial, he doesn't say HCG.  But if he had said HCG, I

2 think the government would be in here saying he didn't

3 describe what HCG is; that's a crime.  But since he described

4 what it is and didn't call it by name, they're saying, aha,

5 that's the crime.  So, again, if he had read the whole book,

6 would anything have changed here?

7    In the protocol and in the book, he talks several

8 times about options that are available to you in the event

9 that HCG is unavailable.  There are several options.  Several

10 things you can do.  He talks about it repeatedly.  There are

11 other alternatives.  There are other alternatives.  He says it

12 in the book.  So even HCG that -- the government says he

13 didn't say enough about HCG in the infomercial, he didn't say

14 enough about it in the infomercial, but there are substitutes.

15 So what if he said more?  Then would they claim, well, he

16 didn't say anything about substitutes?  Where does it end?

17    Page after page after page talking about it as a

18 natural substance, as a natural substance, which it is.  It's

19 a hormone.  The government has not argued that it's anything

20 else but a natural substance.  Talking about what it does and

21 how it's used in weight loss.  Page after page after page, all

22 on Defendant's Exhibit 2.

23    Now, the government made an issue out of, "You can

24 get it anywhere."  I think Trudeau said that one time in the

25 infomercial.  In one of the three infomercials, he said you

1    can get it anywhere.  Now, in the book he says -- he says

2    that.  He says you can -- well, he says -- he says in the

3    book -- let's see exactly what he says in the book because the

4    government didn't show you what he said in the book.  In the

5    book he says, "The FDA" -- "According to the FDA, it is, in

6    fact, legal for doctors in America to prescribe medications

7    for purposes that are not approved by the FDA."

8             In other words, the FDA cannot regulate the practice

9    of medicine.  They can't do it.  They can't regulate the

10   practice of medicine.  So it is legal.

11            Now, folks, do you remember the government talked --

12   had a big issue about they can get it anywhere.  Remember my

13   cross-examination of Inspector Carrier?  I asked her, Did you

14   look at the references in the back of the book?  No.  Not one.

15   Not one.  We hauled this man in here.  We charged him with a

16   federal crime.  Didn't look at one.  Not one.  Did you go to

17   the Web site?  No.  Not once.  Remember, I -- first she said,

18   well, I think it's a fee-based Web site.  Maybe suggested that

19   the federal government couldn't access the Web site because

20   there was a fee involved?

21            But Trudeau says right back there in that section on

22   page 252, "Clinics that use HCG in the Simeons weight loss

23   protocol."  He says in the infomercial, "You can get it

24   anywhere."  That's what he says in the infomercial.  In the

25   book he tells you where to get it.  He tells you where to get

Kirsch - Closing Argument

633

1    it.  But the government hauled him into court, and they didn't

2    think it was important enough to look and see, can you get it

3    where he says -- they didn't even look.  They didn't even

4    look.  He says you can get it anywhere.  Then in the book, he

5    tells you where to get it.  He tells you where to get it.  Not

6    a shred of evidence -- not a shred -- that you can't get it in

7    those places.  Not a shred of evidence.

8            And, by the way, when he says you can get it

9    anywhere -- remember the government's first claim was that he

10   didn't mention HCG.  He only mentions an all-natural substance

11   that is used in conjunction with the protocol.  Remember

12   they -- their first claim is he didn't mention HCG.  But then

13   they later say that, well, there's this claim that you can get

14   it anywhere and that's false.  But he never said you can get

15   HCG anywhere because he never said HCG.  And clearly the

16   government has no evidence whatsoever that these substitute

17   alternate products for HCG can't be obtained anywhere.  None.

18   Zero, ladies and gentlemen.  Zero evidence of that.  Zero.

19           And, by the way, I just crossed out a page on

20   Defendant's Exhibit 2, which is the protocol is inexpensive.

21   That was on their chart 19.  That was on their Government's

22   19.  You'll see it.  It was on mine too.  It's not even in the

23   list of alleged misrepresentations that are included in the

24   jury instructions.  It's not even on the list.

25           Now, ladies and gentlemen, I've gone through the

1    first two; and the next two are going to be quicker because

2    I'm going to talk about -- but I think that was important, and

3    I'm going to talk about now willfulness.  And points three,

4    four and five go to willfulness.  And I want to remind you of

5    the definition of willfulness.

6              So this is -- by the way, the way the jury

7    instructions read, element number one that the government has

8    to prove beyond a reasonable doubt is a reasonably specific

9    order.  If you're debating what is meant by misrepresent the

10   content of the book, it's not proof beyond a reasonable doubt

11   that the government has met element number one.  You'll never

12   get to two and three.

13             Two is that there were misrepresentations in the

14   book; that the book misrepresented the infomercial.  You never

15   get to willfulness -- I submit to you you're not going to get

16   past element number one; but willfulness only comes into play

17   if you conclude that there was one misrepresentation or the

18   defendant misrepresented the content of the book.  Then you

19   get to the issue of willfulness.

20             But -- and you guys -- when you get back in the jury

21   room, you decide how you're going to deliberate.  You can take

22   issue number three first if you want to, willfulness, if it's

23   easier for you.  You do whatever you want when you get to the

24   jury room.  And maybe it will be because there is zero

25   evidence of willfulness.  Zero.  Willfulness is that a

Kirsch - Closing Argument

635

 1   violation of a court order is willful if it was done by

 2   someone who knows or should reasonably be aware that his

 3   conduct was wrongful.

 4         And remember, the judge is going to instruct you on

 5   good faith.  And I want you to remember that I do not have to

 6   prove Trudeau's good faith.  I don't have to prove anything.

 7   It's the government that must prove beyond a reasonable doubt

 8   that Trudeau acted willfully.  Now, I want to ask you what

 9   that means.

10         What is the government's evidence that Trudeau knew

11   or reasonably should have been aware that his conduct was

12   wrongful or that he did not honestly believe his statements

13   complied with the court order?

14         In other words, the government has to prove Trudeau's

15   state of mind.  What evidence is there of Trudeau's state of

16   mind?  Ladies and gentlemen, I submit to you, there is none.

17   Not a single witness testified to Trudeau's state of mind.

18         There are no statements from anyone to Trudeau or

19   from Trudeau to anyone.  None.  For the ITV evidence that I

20   told you wouldn't be here in opening statements, if the

21   government had it, they would have presented it to you.  There

22   is none.  There are no e-mails.  There are no other documents,

23   none -- none -- that indicate Trudeau knew what he was doing

24   was wrong and did it anyway.  And I'm going to talk to you

25   about this in some detail.  But, ladies and gentlemen, there

1   is absolutely no financial motive to misrepresent the content

2   of this book in an infomercial.  None.  Zero.

3          So I told you at the beginning, I started with this

4   and I told you -- who were the government's two witnesses?

5   Silvia Carrier and Melissa Dobbins.  And let's talk about what

6   these witnesses could not establish, particularly with the

7   issue of willfulness.

8          Folks, they never met Trudeau.  How can you comment

9   or testify on someone's state of mind if you never met the

10  person?  That doesn't even make sense.  They never met

11  Trudeau.

12         Folks, when I -- if you remember my opening

13  statement, I put three principal players up on the screen:

14  Trudeau, ITV, FTC, the Federal Trade Commission, an agency, an

15  agency of the federal government, a party to the 2004 consent

16  order.  They were the ones that negotiated the consent order

17  with Trudeau.  They negotiated the thing with him.  The

18  government didn't call one single witness from the FTC, from

19  their own agency.  They didn't call one.  Not one to tell you

20  this is what Trudeau knew about the consent order when he

21  signed it; this is what was explained to him about what

22  misrepresent the content of the book means; this was our

23  negotiation; this is what Trudeau said; this is what we said;

24  this is what misrepresent the content of the book means.

25         Ladies and gentlemen, think about that when you're

Kirsch - Closing Argument

637

1    deliberating the case.  They want you to convict this man of a

2    crime beyond a reasonable doubt, but they didn't even call a

3    witness from their own agency.  At least they could have had

4    an FTC witness read the book.  They didn't even do that.  They

5    called a postal inspector.  Now, I have nothing against them

6    calling a postal inspector; but what does the Postal Service

7    have to do with this case when the consent order was

8    negotiated by an arm of the federal government?  Why wouldn't

9    they call a witness from the FTC?  I don't have a clue.  I

10   suggest because the evidence would not have helped them if

11   they had.

12           I showed you this already, but I want to talk about

13   this just in the context of willfulness.  The government has

14   alleged that he violated eight or six or ten, whatever it is,

15   words of a 29-page order.  That's what they have alleged.  And

16   they have alleged that he did it willfully; that he knew it

17   was wrong when he did it.  Eight words.

18           And remember, he willfully, willfully, misrepresented

19   the content of the book.  But when I asked the government

20   agent, does the order even say what that means, she said no,

21   it doesn't.  So, folks, I submit to you that even if you find

22   that it was a reasonably specific order, it certainly wasn't

23   reasonably specific enough that somebody could willfully

24   violate it; that somebody knew what they were doing, knew it

25   was wrong with -- with that.  I mean, the only -- they didn't

Kirsch - Closing Argument

638

 1    call a witness from the FTC.  They called a postal agent.

 2    That's who they put on the witness stand.  They could have

 3    called anybody they wanted.  That's who they chose to call to

 4    present their case, to present their evidence to you.  And

 5    when I asked her, Does it explain what that means?  The answer

 6    was, I don't see a definition of that, specifically giving an

 7    explanation of that.

 8         So, folks, I submit to you that even if you find it's

 9    a reasonably specific order -- I don't think you will, but

10    even if you do, there's no way that you could find that he

11    violated it willfully; that he knew it was wrong.  I mean,

12    this is not such an order that is so crystal clear that the

13    explanation is clear from the order.  You look at the order,

14    it's page and page of definition.  And if it was so clear, why

15    wouldn't the government just put a witness on from the FTC who

16    would say Trudeau said it was clear, he understood it, every

17    word of it, or whatever; he had a conversation with me and --

18    they never did that.  Never.

19         I want to go on to ITV because I think this is also

20    relevant to the issue of willfulness.  The government

21    prosecutor said he didn't have any idea what this had to do

22    with the case, which surprised me a little bit because I

23    talked about this in opening statements.  I set out my five

24    facts, and this was one of them.  And I told you in opening

25    statement exactly what this had to do with the case.

Kirsch - Closing Argument

639

1        Ladies and gentlemen, you'll see that the parties

2    agree -- and I read this stipulation during my cross-

3    examination of Agent Carrier -- Alliance Publishing granted to

4    ITV -- Alliance Publishing, by the way, you'll see from the

5    book, it was published by Alliance Publishing -- Alliance

6    Publishing granted to ITV the exclusive right to produce and

7    market The Weight Loss Cure infomercial and to market and

8    supply The Weight Loss Cure book through direct response

9    channels, also known as infomercials.  ITV's production.  ITV

10    was marketing the book.

11        Now, what else did I tell you about ITV?  ITV had in

12    its possession a copy of the order.  Don't you think if this

13    was willful, if it was so obvious that everybody knew that

14    what he was doing was wrong, somebody from ITV would have said

15    to Trudeau, wait a minute, wait a minute here; we got this

16    order, okay, that says you can't misrepresent the content of

17    the book; we got this infomercial that we're going to run, by

18    the way; we're going to be responsible for it, we're going to

19    produce it, we're going to market it, we're going to show it,

20    we're going to put our little ITV logo on it, maybe we've got

21    a problem here.  None of that.  There's no evidence of that at

22    all.  There's no evidence.  There's no -- no evidence that ITV

23    said a word to Trudeau.  But the government wants you to

24    believe that Trudeau willfully violated the order.

25        And I just made that point, folks, and I put it in

Kirsch - Closing Argument

640

1    the opening statement.  I put it out here for the whole world

2    to see, for the government, all of the agencies of the

3    government, the FTC, the postal inspector service, I told

4    everybody in the government last week in my opening statement

5    that there would be no evidence that anyone at ITV told

6    Trudeau that the infomercials violated the 2004 consent order.

7    If there was such evidence, if there was, after I put this on

8    the screen last Monday, I suggest to you that the government

9    would have found that witness from ITV, hauled him in here to

10   court to testify to you to say, Kirsch got it wrong in his

11   opening statement.  I didn't have to do that in my opening

12   statement.  I didn't have to tell them what the evidence was

13   going to be and what it wasn't going to be.  I didn't even

14   have to give an opening statement, but I did.  I did.  And

15   they still didn't call a witness from ITV.  Not one.  They

16   called a postal inspector and a nutritionist whose expertise

17   was diabetes.  She had never met Trudeau.  Neither one of

18   them.  And they want you to convict the man beyond a

19   reasonable doubt on his state of mind.

20           I'm going to go to slide number four, and I'm going

21   to do this one quickly because you've already seen these.  But

22   throughout the infomercial, throughout the infomercial,

23   Trudeau includes several disclaimers.  He tells the viewers,

24   this is a paid advertisement.  It's right there.  It's a paid

25   advertisement.  Brought to you by Shop America, which,

1    remember, I showed you the stock purchase agreement.  ITV

2    purchased Shop America.  It's recommended that you consult a

3    medical doctor.  It's not been approved by the Food and Drug

4    Administration.

5            Now, this is quite obvious.  I mean, you'll see it in

6    the book and I told you at the very beginning that Trudeau

7    time after time after time just rails on the federal

8    government.  He rails on the FTC.  He rails on the FDA.  And,

9    in fact, I even showed you a quote from the book.  He quotes

10   the former commissioner of the FDA as being critical of the

11   FDA.  I think it was the FDA.  It might have been the FTC.

12   But you remember.  It was the heading -- the quote from the

13   heading of the book -- or from one of the chapters.

14           But it's clearly not approved by the FDA.  He tells

15   all the world that.  ITV tells the world it's a paid program.

16   There's no question this is a paid advertisement.  It's an

17   advertisement.  That's not a news conference.  It's not

18   anything like -- it's an advertisement in which people

19   commonly state their views and opinions.  Watch any TV

20   commercial for any product, any single product, it's the views

21   and the opinions of the people that are making or selling the

22   product.  That's what it is.  That's what advertising is.  The

23   preceding was a paid program, right on the infomercial for the

24   whole world to see.

25           And, five, the unconditional guarantee.  I want to

1    talk to you about this because the government talks about this

2    and says it's not important because Trudeau -- Trudeau wanted

3    to -- he wanted to make money.  He wanted -- he got on -- he

4    got on the infomercial.  He deceived people.  I don't know

5    who.  But he's the No. 1 New York Times best-selling author.

6    You saw that over and over.  Folks, I submit to you that you

7    don't become a New York Times No. 1 best-selling author by

8    running an infomercial.  Okay.  And I'm going to talk about

9    that in a little bit.  But he deceived people.  That was the

10   first claim -- I don't know who because there's no evidence of

11   that.  But he deceived people and he was motivated by profit.

12          But, remember, I put this exhibit in evidence, not

13   the government.  I put it in evidence.  ITV exclusively

14   marketed and distributed the book.  And ITV had a return

15   policy.  Now, I think the government has suggested to you in

16   both cross -- redirect examination of Agent Carrier and also

17   through their closing argument that this wasn't good enough.

18   It wasn't good enough.  And it wasn't good enough for a couple

19   of reasons.

20          Number one, if you want to call customer service to

21   order a product, you called a 1-800 number.  But if you want a

22   return authorization, you had to call a toll number.  Now,

23   folks, I can't remember the last time I paid for a toll call.

24   I can't remember.  I can't remember when the last time --

25   maybe I was in college when it cost five cents a minute to

Kirsch - Closing Argument

643

1    call long distance.  I can't remember the last time I paid for

2    a toll call.

3          The "you need a code."  What product do you return

4    ever by mail where you don't need some type of code or a

5    return authorization, right?  You need some label.  You need

6    to know where to send it.  You need a code.

7          And then they say, well, Trudeau was motivated by

8    profit.  He was motivated by profit because they didn't give

9    you the shipping and handling.  What sense does that make?

10   Trudeau didn't work for DHL or UPS or the Postal Service.  It

11   cost money to ship something.  All they're saying is you pay

12   the shipping and handling.  How could that drive a financial

13   motive?  That just doesn't make any sense to say their return

14   policy is no good.  It doesn't refute the financial motive

15   piece of the government's case because the customer still had

16   to pay for shipping and handling.  But Trudeau didn't see a

17   penny from the shipping and handling.  So it just makes no

18   sense.

19         Folks, if he was motivated by financial motive and he

20   wanted to misrepresent the book and he wanted people to buy

21   the book based upon misrepresentations, would he have said

22   time and time again in the infomercial -- he didn't have -- by

23   the way, he did not have to say this.  When a book was sent

24   out, it was sent out with ITV's policy.  He did not have to

25   say in the infomercial over and over and over again -- by the

1    way, who does this, misrepresent a product, misrepresent a

2    product in an infomercial -- that's the whole purpose of the

3    infomercial according to the government -- but then in the

4    infomercial says, oh, by the way, if you don't like it, just

5    send it back?  Who does that?  What he -- he willfully

6    misrepresented the content of his book in an infomercial; he

7    willfully -- he knew it was wrong.  He willfully did it.  But

8    at the same time he told the people that were watching the

9    infomercial, oh, by the way, if you don't like the book, just

10   send it back.  What sense does that make when you -- did

11   you -- he willfully violated a court order by telling people

12   if you don't like it -- if you don't like -- if you don't like

13   it, if you don't agree with what I said in the infomercial,

14   folks, send it back.  Send it back.  He says unconditionally

15   guaranteed.  If you're not thrilled, send it back.

16   Unconditionally guaranteed.  Unconditionally guaranteed.  He

17   explains what that means.  If you're not thrilled, send it

18   back for a refund.  Then he says -- remember he sends them the

19   New York Times best-selling Natural Cures and Natural Cures

20   Revealed, the two Natural Cures books.  He says, oh, by the

21   way, if you send this book back, if you don't like this book

22   and you send -- just keep the other ones.  Now, does that

23   sound like someone to you who is worried about postage and

24   handling?  Just keep them.  Save the postage and handling.

25   You can have them for free.  So, in other words, you can buy

1   his book -- I'll send you my two books for free.  Then you can

2   send the book that you bought back and you can keep the other

3   two books.  So you get my books for free.  You get two books

4   for free.  Is that somebody that's motivated for financial

5   gain?  He says, again, if you're not thrilled, send it back

6   for a full refund.

7          Then, folks -- and I'm coming near the end here, but

8   I want you to think about this.  As I mentioned to you,

9   Trudeau was 45 years old or so when he wrote this book.  If he

10  wrote this book -- you saw that he's written other books.  New

11  York Times No. 1 best-selling author.  He's written other

12  books that have made it -- just on the New York Times -- not

13  just on the New York Times best-seller list.  No. 1.  Somebody

14  bought this book and somebody liked it.  Okay.  You don't just

15  get to be the No. 1 New York Times best-selling author by

16  accident.  It just doesn't happen because you marketed

17  something in an infomercial.  Okay.

18         So the government -- they didn't put on any evidence

19  of how many books he was selling from the infomercial versus

20  the retail stores.  Remember, Trudeau said it's available at

21  Wal-Mart, Costco, Waldenbooks, Barnes & Noble.  He says that

22  in the infomercial.  It's in there.  Look for it.  You'll have

23  the transcript.  It's in there.  He says it.  It's in there.

24  It's available at the retail stores.  Okay.  It's available at

25  the retail stores.

1       Now, if you misrepresent the content of the book in

2  an infomercial, people buy it, they think, this guy sold me a

3  bill of goods, would you buy his next book?  Think about that.

4  Think about that.  Would you buy his -- if you bought a John

5  Sandford novel and you read the book, you thought, gosh, this

6  book was great; I can't wait until he comes out with his next

7  book.  I sometimes do that.  Okay.  I read the last chapter,

8  it says, read the first chapter from the exciting new book

9  coming out by John Sandford at Christmastime.  And I read that

10  chapter.  I read it.  I think, boy, I am interested in this

11  book.  Sparked my interest.  I want to buy his book.  It comes

12  out, and I buy it.  And the book is about something totally

13  different.  I would never buy another John Sandford book.

14  Never.  Would anybody?  I mean, you go from the New York Times

15  No. 1 best-selling author to not being able to publish another

16  book?  But that's what the government wants you to believe

17  that this man did.  He was motivated -- I mean, that has to be

18  the most short-sighted thing that I could possibly imagine.

19  Willfully -- willfully misrepresent the content of a book in

20  an infomercial so I could sell more of this book even though I

21  know I'll never sell another book because nobody that bought

22  this book will buy my next book.  That makes no sense.

23       Then the other thing that makes no sense, not only

24  future book sales, but what about the referrals and

25  recommendations.  How many times have you read a book or

Kirsch - Closing Argument

1   you've done something like that or seen a movie -- you see a

2   movie, and your buddy says to you, Did you see Captain

3   Phillips or whatever the movie is, you know, did you see Last

4   Vegas.  I did.  It was great.  It was really funny.  Well,

5   will you go to see it?  And you think about that

6   recommendation.  Well, he said it was good, so I'll go see it.

7   Now, you say to your buddy, Did you see Last Vegas and your

8   buddy says I thought it was terrible; the trailer, the little

9   movie trailer, totally misleading and deceiving; it was

10  terrible; horrible movie.  Would you go see -- would you go

11  see the movie?

12          So the government wants you to believe that Trudeau

13  is marketing and selling these books by misrepresenting the

14  content.  But the people that bought the books, if he had done

15  that, would they have sold it?  Let me ask you this:  Would

16  they have recommended it to anybody else?  No.  Would they

17  have sent it back for a refund?  Probably.  Trudeau would have

18  had nothing.  Nothing.  And they would have never bought his

19  book in the future.

20          So to believe that somebody would misrepresent --

21  willfully misrepresent the content of the book in an

22  infomercial, that's what you have to get over.  That's what

23  you have -- he would never be able to sell another book again.

24  Nobody would refer the book to their friends, so he would

25  never sell a book at Waldenbooks or -- I don't even know if

Kirsch - Closing Argument

648

1 they exist anymore.  But Waldenbooks or Books a Million,

2 Barnes & Noble, Wal-Mart, Costco, Sam's Club.  He'd never sell

3 a book there because nobody would recommend the book to their

4 friends.  And -- so he'd never sell another book.  He would

5 not sell The Weight Loss Cure book through the retail stores.

6 And people would send it back.

7          So I guess other than those three things -- I don't

8 even understand the argument, folks, that you would willfully

9 misrepresent the content of a book to -- now, I could

10 understand if there was no refund.  If you -- all sales final.

11 Right.  Everybody has bought something all sales final.  And

12 at least when I do it, I kind of pause and hesitate.  Right?

13 I mean, I can never return this.  But I really want this.  I

14 really want this tie or I really want these shoes or -- all

15 sales final.  He never said that.  Never.  Not once.  Wouldn't

16 you think if somebody was willfully, willfully misrepresenting

17 the content of the book, they would say all sales final?  All

18 sales final.  Do you think they'd say, buy the book, I'll send

19 you my two previous New York Times best-sellers and if you

20 don't like The Weight Loss Cure, send it back for a full

21 refund and keep the other two books?  Keep the other two

22 books.  Is that the way -- is that the way to financially

23 profit?  You wouldn't run a business in America like that.  I

24 mean, none.  What sense does that make?

25          Ladies and gentlemen, I'm at the end here.  And I put

Kirsch - Closing Argument

1    up for my last slide my five critical facts because I think

2    these facts -- I think -- I respectfully suggest that you

3    consider these facts as you deliberate on this case.  And,

4    ladies and gentlemen, this -- the decision is incredibly

5    important to this man, this author.  I'm not suggesting --

6    anyway.

7            It's very, very important.  You know that.  The

8    government has asked you to convict him of a federal felony

9    crime.  And, ladies and gentlemen, I submit to you that the

10   government's evidence doesn't come close.  It doesn't come

11   close.  I do agree with the government that this is an easy

12   decision.

13           Folks, when you haul somebody into federal court and

14   you make them answer and respond to federal criminal charges,

15   there's no way that this can be proof beyond -- beyond a

16   reasonable doubt on all three of these elements.  The

17   government didn't even call a witness -- not one witness from

18   the FTC, not one from ITV, not one that even knew Trudeau to

19   talk about his state of mind.  They want you to convict him of

20   a federal crime on state of mind evidence, of which there is

21   none.  Zero.  I want you to think about that please as you

22   deliberate.

23           Thank you for your attention.  And I respectfully

24   request that you return a not guilty verdict as to the

25   defendant Kevin Trudeau.

1            THE COURT:  Well, we're exactly at noon, ladies and

2    gentlemen.  And you've been sitting there for quite a while.

3    If I thought we could take a break and then finish the

4    government's final closing and your jury instructions and

5    still get you downstairs in time for lunch, that's what we

6    would do.  But I don't think we can do that.  So we're going

7    to break for lunch at this time.  Return at 1:00 o'clock.  At

8    1:00 o'clock, ladies and gentlemen, we'll have the

9    government's final closing argument and your instructions on

10   the law.

11           As always, do not discuss the case with anyone or

12   allow anyone to discuss it with you.  That includes among

13   yourselves.  Use the elevators on that side of the building.

14           Have a good lunch.

15     (Jury out.)

16           THE COURT:  Since you folks have obviously been busy

17   in court, I have a proposed jury instruction that you can

18   consider regarding the video recordings.

19           You may all be seated, by the way.

20           It reads as follows:  You have seen video recordings.

21   This is proper evidence that you should consider together with

22   and in the same way you consider the other evidence.  I am

23   providing you with the recordings and a device with

24   instructions on its use.  It is up to you to decide whether to

25   view and listen to any of the recordings during your

651

1    deliberations.  You may, if you wish, rely on your

2    recollection of what you saw and heard during the trial.

3            MR. KIRSCH:  No objection, your Honor.

4            MR. KRICKBAUM:  No objection, Judge.

5            THE COURT:  All right.  I'm going to attempt to have

6    this inserted probably after the jury instruction on page 11,

7    which instructs on the use of the charts that were admitted in

8    evidence.  And I'll try to have these retyped and renumbered

9    so that the page numbers are consistent.  I think we can do

10   that.  If not, I will let you know.  Otherwise when we come

11   back from lunch, I should have a set of the new instructions

12   incorporating this one.

13           MR. KRICKBAUM:  Yes, Judge.

14           THE COURT:  Okay.  Anything else?

15           MR. KRICKBAUM:  No.

16           MR. KIRSCH:  No, your Honor.

17           THE COURT:  Okay.  1:00 o'clock.

18           MR. KRICKBAUM:  Thank you.

19     (Trial recessed until 1:00 p.m. of the same day.)

20                       *   *   *   *   *

21

22   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.
23

24
     */s/ Nancy C. LaBella*                    *November 13, 2013*
25   Official Court Reporter

652

1                IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF ILLINOIS
2                    EASTERN DIVISION

3  UNITED STATES OF AMERICA,      )
                                 )
4            Plaintiff,      )
                                 )
5    v.                       )  No. 10 CR 886
                                 )
6  KEVIN TRUDEAU,            )  Chicago, Illinois
                                 )  November 12, 2013
7            Defendant.      )  1:00 p.m.

8             TRANSCRIPT OF TRIAL PROCEEDINGS
       BEFORE THE HONORABLE RONALD A. GUZMAN, AND A JURY
9

10  APPEARANCES:

11  For the Plaintiff:        HON. ZACHARY T. FARDON
                           United States Attorney
12                       BY:  MR. MARC KRICKBAUM
                             MS. APRIL M. PERRY
13                       Assistant United States Attorneys
                       219 South Dearborn Street
14                       Suite 500
                       Chicago, Illinois  60604
15                       (312) 353-5300

16  For the Defendant:        WINSTON & STRAWN LLP
                       BY:  MR. THOMAS LEE KIRSCH II
17                       35 West Wacker Drive
                       Chicago, Illinois  60601
18                       (312) 558-5600

19                       MS. CAROLYN PELLING GURLAND
                       Attorney at Law
20                       2 North LaSalle Street
                       17th Floor
21                       Chicago, Illinois  60602
                       (312) 420-9263
22

    Court Reporter:          MS. MARY M. HACKER
23                       Official Court Reporter
                       219 S. Dearborn St., Suite 1222
24                       Chicago, Illinois  60604
                       (312) 435-6890

25

Perry - final

653

1      (Proceedings out of the hearing of the jury:)

2           THE COURT:  I will rely upon you to let me know if

3      there's anything wrong with the latest set of jury

4      instructions before I read them.  But I think they should be

5      exactly the same as the others, with the inclusion of the

6      additional instruction.

7           Ready?

8           MR. KIRSCH:  Yes, your Honor.

9           THE COURT:  Let's bring the jury out, please.

10          MS. PERRY:  Judge, can you please turn on the

11     government's laptop screen?

12          THE COURT:  You want -- I'm sorry, the --

13          MS. PERRY:  Laptop.

14          THE COURT:  Okay.

15          MS. PERRY:  Thank you.

16      (Jury entered the courtroom.)

17          THE COURT:  Welcome back, folks.

18          Government?

19          MS. PERRY:  Thank you, Judge.

20        FINAL ARGUMENT ON BEHALF OF THE GOVERNMENT

21          MS. PERRY:  For as long as there have been people who

22     have hoped and dreamed for a better life, there have been con

23     men trying to sell them things that are too good to be true.

24     The defendant is one of those con men.

25          Now, Mr. Kirsch asked you, why would he do this if

1  he wants to sell more books?  Because that's what con men do,

2  because there's always another group of people who want

3  something better.  Last time it was people who had diseases,

4  this time it's people who are overweight, next time it will be

5  an entirely different group of people to take advantage of.

6        That's what con men do.  And they're able to do it

7  because they can run the con and still make money.  And now

8  he's here trying to con all of you with more

9  misrepresentations about what the facts were, about what the

10  government's arguments are.  It's all smoke and mirrors.

11  Don't buy what he's selling.

12        So let's talk about what the evidence actually was.

13  Let's start with the court order and whether or not it's

14  reasonably specific.

15        Now, Mr. Kirsch told you it was long, 29 pages,

16  couldn't possibly be reasonably specific.  But use your common

17  sense.  Sometimes things are long because they are incredibly

18  specific.  It's the difference between telling your teenage

19  child, don't do anything while I'm gone that I wouldn't

20  approve of and leaving them a 29-page list saying, no parties,

21  no friends, no alcohol.

22        Now, when you come home and your house is trashed, do

23  you believe that you need another witness in there to explain

24  to you exactly what happened?  Do you need someone to tell you

25  that their behavior was wilful?  Of course not.

Perry - final

655

1      The list is specific.  The court order is specific.

2  And you can read through all 29 pages if you want, but the

3  parties agree that there's only one phrase that matters:

4  Don't misrepresent the content of your books.

5      Mr. Kirsch got up here and said, ooh, that's very

6  confusing.  No, it's not.  Don't misrepresent the content of

7  your books.

8      According to the About the Author section in his

9  book, this man built a $2 billion global empire, a $2 billion

10  global empire.  He doesn't know what it means to misrepresent

11  the content of a book?  Well, I guess it depends on what the

12  meaning of content is.

13      Well, he has a whole section of his book labeled

14  Contents.  Those are the contents of his book.  He wasn't

15  about to lie about them.  He wasn't supposed to lie about them

16  and it's just that simple.

17      These aren't words that need a definition.  And if

18  they did, don't you think his lawyer would have put one in?

19      Remember what this court order was.  This was an

20  agreed negotiated settlement.  Agreed and negotiated because

21  he had been charged with false acts and deceptive practices.

22      And if you look at the second page of that court

23  order, it says that the Court held a hearing on September 2nd,

24  2004, and during that hearing the Court discussed what was

25  meant by the court order.  And the defendant had a lawyer at

Perry - final

656

 1    that hearing.  If there were any questions they would have

 2    been answered, but there weren't because "misrepresent the

 3    content of your book" is something everyone understands.

 4         He didn't have to figure it out on his own, ladies

 5    and gentlemen; there were a lot of people to help him.  But he

 6    didn't need help.  What he decided to do instead was violate

 7    the terms of the court order because he wanted to make more

 8    money.  The problem isn't that it wasn't specific; it was that

 9    he didn't want to follow it.

10         Now, let's move on to the statements section.  The

11    statements were in the book, Mr. Kirsch said.  First of all,

12    that's just not true.  And Mr. Krickbaum took you through some

13    of the statements that weren't in the book and I'll take you

14    through another couple of them.

15         First, in Government Exhibit 3 the defendant said no

16    crazy potions, powders or pills.  That statement does not

17    appear anywhere in the book.  He talks about powders and pills

18    with respect to other diets, but nowhere in the book does he

19    say his diet does not require potions, powders or pills.  What

20    does it say instead?

21         On Page 128, three separate times it says you have to

22    take HCG in a powder form.  What else does it say?

23         On Page 220, you have to do a colon cleanse, krill

24    oil, digestive enzymes, probiotics, must do.  Pills --

25    potions, powders and pills, ladies and gentlemen.

1       What about HCG?  Now, the first thing Mr. Kirsch said

2  was, well, there's lots of things he said about HCG that were

3  in the book.  I guess that's true.  But the most important one

4  is that he said you can get it anywhere.  Nowhere in the book

5  does it say you can get it anywhere.  It says the opposite.

6       In fact, there's a whole Frequently Asked Question

7  section about what happens if I can't get HCG.  And Mr. Kirsch

8  said, oh, well, that just means that he's trying to be super

9  helpful and that you don't have to do HCG.

10      Go back to the infomercials.  They talk about his

11  protocol, which is the Simeons diet which requires HCG.  Just

12 because if you can't get HCG you can go do a different diet

13 that you read about in a different book, doesn't mean he

14 didn't have to be honest about the diet he was selling.  And

15 the diet he was selling required HCG.  It's just that simple.

16 Right there.

17      Two:  Misrepresentations.  Even if you believe the

18 defense argument that they have to be somewhere in the book,

19 two misrepresentations that weren't anywhere in there and you

20 only have to agree on one.  But, of course, you know that that

21 is a silly definition of misrepresenting the content of the

22 book.

23      So try this on for size.  I just wrote in the front

24 of the book this is a book about the Civil War.  Did I make it

25 a book about the Civil War just because I put at the very

Perry - final

1    beginning this is a book about the Civil War?  Of course not.

2         If I tried to sell you a book about the Civil War and

3    you got this, would you be disappointed?  Yes, because the

4    content of the book does not mean misquoting a portion of the

5    book; it means the book as a whole.

6         So when the defendant said in Government Exhibit 3,

7    no food deprivation whatsoever and then you get that book, he

8    misrepresented its content.  For six weeks no breads, no

9    pastas, no starch, no rice, no potatoes; for six weeks no

10   sweets or sweeteners of any kind.  That is food deprivation,

11   ladies and gentlemen.  And he doesn't change that just by

12   saying in one part of his book, no food deprivation.

13        And if you want to keep the weight off forever, which

14   is the whole point of during a cure in the first place, for

15   the rest of your life no restaurant food, no pizza, no

16   sausage, no pepperoni, no deli meats.  The list went on and

17   on.  That is food deprivation.  And he doesn't make it any

18   less of a diet just by saying in three places it's not a diet

19   and then in 25 places saying it is.

20        Use your common sense.  What he was selling was a

21   diet, and he knew if he told people that, they wouldn't buy

22   it.

23        Ladies and gentlemen, if it looks like a duck,

24   waddles like a duck and quacks like a duck, he doesn't make it

25   a dog by putting a little name tag on it that says that's a

Perry - final

659

1    dog.  He misrepresented the contents of his book.

2            So let's talk about this idea, oh, well these are

3    really just all opinions anyway, right?  Of course not.  You

4    can count them yourself, but I believe in an infomercial he

5    says, "I, in my opinion" a single time and he says, "I

6    believe" three times.  So in four places in all three

7    infomercials he says that something is his belief or his

8    opinion.

9            Most of the misrepresentations are not those parts.

10   There's only one misrepresentation where he says, "I believe,"

11   and that's the one that Mr. Kirsch talked about, "Anyone can

12   do it, I believe."

13           But the parties stipulated that he still doesn't get

14   to misrepresent the contents of his book.  And what does that

15   mean?  That means he doesn't get to say, "Anybody can do it, I

16   believe."  It's when you get the book it makes clear that

17   anybody can't do it.

18           So who can't do it?  Vegetarians can't do it.  They

19   have to do a different diet from a different book.  People who

20   get -- can't get HCG can't do it.  They have to do a different

21   diet from a different book.

22           Who else can't do it?  Anyone who relies on

23   medication to live:  Diabetics, people with high blood

24   pressure, high cholesterol, heart problems, anyone whose

25   doctor won't agree to take them off their medication.

Perry - final

660

1          And according to the defendant, the list of people

2    who need medication?  Seventy percent of Americans, according

3    to him.  Anyone can't do this diet.  And he doesn't say

4    anywhere in the book that he even believes anyone can.

5          The one phrase Mr. Kirsch came up with is, "This is

6    exciting news for anyone who has a weight problem."  Well,

7    that may be, but it's not the same as saying, "I believe

8    anybody can do it."  He knew they couldn't.  And it's not in

9    the book that he thought they could.

10          How about this one?  Mr. Kirsch said, oh, you can do

11   it at home.  That's a statement of opinion, too.

12          Mr. Krickbaum is wearing a red tie today.  That's

13   just a big lie; it's not an opinion.  And I don't make it an

14   opinion just by saying it's an opinion.

15          Anybody can do it at home.  Page 220, you have to get

16   a colonic.  And that was described in the book as basically a

17   high enema, where if something gets stuck up your rectum and

18   then your colon gets flushed out.  That cannot be done at

19   home.

20          MR. KIRSCH:  Your Honor, I'm going to object.  That

21   misstates the evidence.  It misstates the evidence.

22          THE COURT:  Overruled.  The jury has been instructed

23   on this already.

24          MS. PERRY:  Let's move on to this idea of the

25   disclaimers.  Let's first talk about what the disclaimers are.

Perry - final

661

1          There were three of them that Mr. Kirsch pointed to

2    you.  One, that this is a paid advertisement; two, that it's

3    not been approved by the FDA; and three, consult a doctor.

4    That's what the disclaimers say.

5          What did the disclaimers not say?  Everything Kevin

6    Trudeau says in the following program is a big, fat lie.  Now,

7    maybe if they had said that, we wouldn't have a problem here

8    today, but that's not what they said.

9          And keep in mind, this is a man who knows how to

10   write a disclaimer.  If he wants to disclaim something and say

11   he's about to fib, he knows how to do it, because you can look

12   at the book, which has a Disclaimer section:  "Dates, names,

13   locations and actual events may have been changed,

14   embellished, exaggerated or fictionalized for dramatic

15   effect."

16         That's a disclaimer.  And if that had appeared on the

17   infomercials we wouldn't be here today.  But instead what they

18   say is, paid advertisement, not been approved by the FDA and

19   consult a doctor.

20         And let's talk about the doctor one, because Mr.

21   Kirsch came up here and he said, well, yes, he may have said

22   in the infomercial that minors don't need to do it except with

23   a doctor.  But then he put a disclaimer up saying that

24   everybody needs a doctor.

25         That was a misrepresentation in and of itself because

Perry - final

662

1    the statement about only minors needing a doctor's

2    supervision, that appeared in Infomercial 1.  The only

3    infomercial that talked about having a doctor supervise you

4    was Infomercial 3.

5         So how a disclaimer that occurred months later would

6    have saved him, I don't know.  The fact of the matter is,

7    those disclaimers were useless and they didn't do anything to

8    stop him from misrepresenting the contents of his book.

9         And, by the way, his argument is that ITV all did

10   this anyway, which we'll talk about a little bit later.  But

11   how he takes credit for disclaimers that clearly occurred in

12   post production that were done by the production company, I

13   don't know that either.

14        So let's actually switch to the ITV discussion.  Mr.

15   Kirsch got up and said, well, clearly he wasn't wilful because

16   it was his company, ITV, and this other company, Shop America,

17   that put these particular infomercials on the air.

18        And this is going to get a little complicated because

19   I'm going to go through some documents that you haven't seen

20   in detail, but I want to take you through them because they're

21   important, and I want to take you through them because they

22   prove the defendant's wilfulness.

23        So let's start with the timeline in this case.  On

24   September 2, 2004, the defendant signs the court order that's

25   in evidence.  And he signs that not just as him, but also on

Perry - final

663

1    behalf of Shop America, which was one of the other defendants

2    in this court case.

3           And you can see that; that's Government Exhibit 5.

4    The very last page has the defendant's signature.  And he

5    signs on behalf of not only himself but also as Shop America.

6    So at that point the defendant is Shop America.

7           Now, let's fast-forward.  June 16th --

8           MR. KIRSCH:  Your Honor, I'm going to object again.

9    It misstates the evidence.  It says manager or director.  It

10   does not say that the defendant was Shop America.

11          THE COURT:  The objection is overruled.

12          MS. PERRY:  June 16th, 2006, again, the defendant

13   signs a document on behalf of Shop America.  And which

14   document is it this time?  This time it's the stock and asset

15   purchase agreement that we've talked about a little bit but

16   not gone into detail about.

17          This time he signs for himself -- you can see this on

18   the last page of Defendant's Exhibit 17.  He signs on behalf

19   of himself, signs on behalf of a company called TruCom, and he

20   signs on behalf of Shop America.

21          And what is this stock and asset purchase agreement

22   all about?  Well, according to this, there's a buyer, and the

23   buyer is ITV.  And ITV is buying the assets of Shop America.

24   ITV is buying Shop America in exchange for a whopping

25   $121 million.

1          So the defendant signs over Shop America to ITV,

2   $121 million in exchange.  He gets a million dollars up front

3   and a million dollars every month from ITV, according to the

4   terms of this particular agreement.

5          MR. KIRSCH:  Objection again.  That misstates the

6   evidence.  Your Honor, there's a stip --

7          THE COURT:  Overruled.

8          MR. KIRSCH:  It misstates the stipulation.

9          THE COURT:  Overruled.

10          MS. PERRY:  Now, six months after the defendant signs

11   over Shop America to ITV, what happens?  ITV and Shop America

12   start broadcasting the weight loss care infomercials.  And

13   what does the defendant say?  Oh, it wasn't me, it was Shop

14   America.  It wasn't me, it was ITV.

15          Was does this mean?  This means the defendant was

16   running a shell game, shell game of companies trying to make

17   it look like he was not responsible for their actions in

18   exchange for a million dollars a month.

19          Now, apart from just the timing of all this, the fact

20   that this deal preceded the infomercials by just six months,

21   how else do you know that he knew he was about to do something

22   wrong?

23          You'll see in Defendant's Exhibit 17 a promissory

24   note.  That promissory note comes at the end of the document.

25   And at the end of the document it basically says what happens

Perry - final

665

1    if there's a default, what happens if ITV doesn't keep up with

2    its payment obligations?

3            And what it says is, the defendant has the right to

4    take back the assets, the deal can be cancelled.  If ITV

5    doesn't meet its payment obligations, Shop America can revert

6    back to him.

7            Now, you know that they didn't meet their payment

8    obligations because there was a stipulation on this point.  It

9    said at no point did ITV meet its payment obligations.  But

10   the defendant didn't take Shop America back, and the reason he

11   didn't take Shop America back or cut off dealings with ITV is

12   because of this shell game.  He wanted to make it look like he

13   wasn't responsible for what was happening.

14           He wanted to maintain the argument, it wasn't me, it

15   was ITV, it was Shop America.  That proves wilfulness.  He

16   knew he was about to do something wrong, and so he set up this

17   fancy corporate structure to try to make it look like it

18   wasn't him.

19           Now, why does none of this matter?  Why was he too

20   clever by half when he was setting up this complicated

21   business structure?  The reason is, the court order itself

22   prevents him from working either directly or through others to

23   violate the court order.

24           Page 7 of the court order itself, the page right

25   before the misrepresentation section, it says that the

Perry - final

666

1   defendant is not allowed to directly violate the court order

2   nor is he allowed to work with other companies, partnerships,

3   employees.  Basically what that says is he doesn't get to step

4   up here and blame ITV and make it seem like he's not

5   responsible when it was him who was doing this.

6          And you know that he was working through ITV because

7   you saw him on that screen holding up the book and saying,

8   call ITV, call the number here, call them and buy my book.

9          The defendant clearly knew that he was creating an

10  infomercial.  He knew that he was selling his book on

11  television, and he is responsible for that court order.  He

12  signed it, he was legally required to follow it, either

13  directly or through others, and then he wilfully violated it.

14         And now he says, oh, well, ITV didn't tell me I was

15  doing something wrong.  Well, of course they didn't.  They

16  were his co-conspirators, not his counselor.  It wasn't their

17  job to tell him he was doing something wrong.  The whole point

18  of setting it up so that ITV was in charge of things was to

19  make it look like he wasn't doing it in the first place.

20  That's why he set it up, and that ultimately it doesn't

21  matter, because whether he was working directly or through

22  ITV, he's still bound by the court order.

23         So why didn't he follow it?  Well, you heard a number

24  of stipulations about how the money was going to flow.  And

25  money is important.  And let me read you just a few portions

1    of the book.

2           These are the defendant's own words.  I'm going to

3    start with Page 69:

4      "When you see advertisements on television, know that the

5    most sophisticated, persuasive techniques are being used to

6    motivate you to purchase the product.  Deceptions, lies, and

7    false and misleading advertising are at an all-time high.

8    Remember, it's always all about money."

9           From Page 141:

10     "Celebrities, doctors and everyone who endorses products

11   does so for three reasons:  Money, money and money."

12          So let's talk about the money in this particular

13   case.  The stipulation that was read to you during Mr.

14   Kirsch's cross-examination said that the defendant anticipated

15   making money off the sales of the Weight Loss Cure book based

16   upon that stock and asset purchase agreement.  And another

17   stipulation that was read to you said that the defendant was

18   going to receive 65 percent of the royalties from all of the

19   retail sales.  So whether the book is sold via retail avenues

20   or on the infomercials, all of the money was flowing back to

21   him.  And the more books that were sold, the more money he was

22   making.

23          Now, Mr. Kirsch made a big deal about the refund

24   policy, and so let's talk about that.

25          Yes, there was one.  No, it's probably not the kind

Perry - final

668

1   that you're used to seeing in the products that you've bought

2   on line.  You have to get ahold of a person, you have to get a

3   return authorization number, then you have to pay the shipping

4   back.  And the point isn't that the defendant gets to keep the

5   shipping and handling money; it's that the more steps you put

6   in the way of people returning products, the less likely they

7   are to do it.

8           I remember when I was a kid I saw on the back of all

9   these magazines ads for sea monkeys.  You were supposed to be

10  able to breed them and teach them to do tricks, and they were

11  dressed up in cute little costumes.

12          And so, eventually I bought the sea monkeys and what

13  came in the mail instead was brine shrimp.  They are these

14  tiny little things that just sit in a pool of water.  You

15  cannot teach them how to do tricks, you cannot actually dress

16  them up in costume.  You can do pretty much absolutely nothing

17  with them.

18          Now, did I get on the phone and return my sea

19  monkeys?  No.  I waited the three days just for them to die

20  and then I flushed them.  And that's what most people do with

21  products they get that they don't really like, right?

22          Think about this:  When was the last time you saw a

23  terrible movie and you demanded your money back?  When was the

24  last time you bought a really bad book and you returned it

25  after you read it?

1          People don't do that, at least not all the time, not

2     all the people.  And the defendant, an experienced salesman,

3     he knows that.  And the more hurdles you put up to people

4     returning the products, the less likely it is to do that.

5          Con men make money running the con.  And what you

6     have seen over the course of this trial is a lot of smoke and

7     mirrors from the defense trying to make this case seem more

8     difficult than it actually is.

9          If for a minute you are persuaded by anything that

10    Mr. Kirsch said, just go back, take a step back, watch the

11    infomercials and then flip through the book.  One of those

12    things is not like the other, ladies and gentlemen.  He

13    misrepresented the contents of his book and he did it

14    wilfully.

15         The defendant is guilty of contempt.  We ask that you

16    find him guilty as he has been charged.

17         Thank you.

18         THE COURT:  Members of the jury, I will now instruct

19    you on the law that you must follow in deciding this case.

20         Each of you will have a copy of these instructions to

21    use in the jury room.  You must follow all of my instructions

22    about the law even if you disagree with them.  This includes

23    the instructions I gave you before the trial, any instructions

24    I gave you during the trial and the instructions I am now

25    giving you.

Charge

1          As jurors you have two duties.  Your first duty is to

2     decide the facts from the evidence that you saw and heard in

3     court.  This is your job, not my job or anyone else's job.

4          Your second duty is to take the law as I give it to

5     you, apply it to the facts, and decide if the government has

6     proved the defendant guilty beyond a reasonable doubt.

7          You must perform these duties fairly and impartially.

8     Do not let sympathy, prejudice, fear or public opinion

9     influence you.  In addition, do not let any person's race,

10    color, religion, national ancestry or gender influence you.

11         You must not take anything I said or did during the

12    trial as indicating what I think of the evidence or what I

13    think your verdict should be.

14         The defendant has been charged with criminal

15    contempt.  The charge alleges that the defendant wilfully

16    violated the district court's order of September 2, 2004, in

17    case number 03 CV 3904, by misrepresenting the content of

18    defendant's book entitled The Weight Loss Cure "They" Don't

19    Want You to Know About in infomercials on or about

20    December 23, 2006, January 8, 2007, and July 6, 2007.  The

21    defendant has pled not guilty to the charge.

22         The charge is not evidence that the defendant is

23    guilty.  It does not even raise a suspicion of guilt.

24         The defendant is presumed innocent of the charge.

25    This presumption continues throughout the case, including

1  during your deliberations.  It is not overcome unless from all

2  the evidence in the case you are convinced beyond a reasonable

3  doubt that the defendant is guilty as charged.

4        The government has the burden of proving the

5  defendant's guilt beyond a reasonable doubt.  This burden of

6  proof stays with the government throughout the case.

7        The defendant is never required to prove his

8  innocence.  He is not required to produce any evidence at all.

9        You must make your decision based only on the

10  evidence that you saw and heard here in court.  Do not

11  consider anything you may have seen or heard outside of court,

12  including anything from the newspaper, television, radio, the

13  internet, or any other source.  You must also continue to

14  follow the instructions I gave you at the start of the trial,

15  that you may not communicate with anyone other than your

16  fellow jurors until after you have returned your verdict.

17        The evidence includes only what the witnesses said

18  when they were testifying under oath, the exhibits that I

19  allowed into evidence and the stipulations that the lawyers

20  agreed to.  A stipulation is an agreement that certain facts

21  are true or that a witness would have given certain testimony.

22        Nothing else is evidence.  The lawyers' statements

23  and arguments are not evidence.  If what a lawyer said is

24  different from the evidence as you remember it, the evidence

25  is what counts.  The lawyers' questions and objections

1  likewise are not evidence.

2          A lawyer has a duty to object if the lawyer thinks a

3  question is improper.  If I sustained the objections to

4  questions the lawyers asked, you must not speculate on what

5  the answers might have been.

6          If, during the trial, I struck testimony or exhibits

7  from the record, or told you to disregard something, you must

8  not consider it.

9          Give the evidence whatever weight you believe it

10  deserves.  Use your common sense in weighing the evidence and

11  consider the evidence in light of your own every day

12  experience.

13          People sometimes look at one fact and conclude from

14  it that another fact exists.  This is called an inference.

15  You are allowed to make reasonable inferences so long as they

16  are based on the evidence.

17          You may have heard the terms direct evidence and

18  circumstantial evidence.  Direct evidence is evidence that

19  directly proves a fact.  Circumstantial evidence is evidence

20  that indirectly proves a fact.

21          You are to consider both direct and circumstantial

22  evidence.  The law does not say that one is better than the

23  other.  It is up to you to decide how much weight to give to

24  any evidence, whether direct or circumstantial.

25          Do not make any decisions simply by counting the

Charge

1   number of witnesses who testified about a certain point.

2          You may find the testimony of one witness or a few

3   witnesses more persuasive than the testimony of a larger

4   number.  You need not accept the testimony of the larger

5   number of witnesses.

6          What is important is how truthful and accurate the

7   witnesses were and how much weight you think their testimony

8   deserves.

9          A defendant has an absolute right not to testify or

10  present witnesses.  You may not consider in any way the fact

11  that a defendant did not testify or present witnesses.  You

12  should not even discuss it in your deliberations.

13         Part of your job as jurors is to decide how

14  believable each witness was and how much weight to give each

15  witness' testimony.  You may accept all of what a witness says

16  or part of it or none of it.

17         Some factors you may consider include:  The

18  intelligence of the witness; the witness' ability and

19  opportunity to see, hear or know the things the witness

20  testified about; the witness' memory; the witness' demeanor;

21  whether the witness had any bias, prejudice or other reason to

22  lie or slant the testimony; the truthfulness and accuracy of

23  the witness' testimony in light of the other evidence

24  presented; and inconsistent statements or conduct by the

25  witness.

1          Certain charts were admitted in evidence.  You may

2   use those charts as evidence.

3          You have seen video recordings.  This is proper

4   evidence that you should consider together with and in the

5   same way you consider the other evidence.

6          I am providing you with the recordings and a device

7   with instructions on its use.  It is up to you to decide

8   whether to view and listen to any of the recordings during

9   your deliberations.  You may, if you wish, rely on your

10  recollections of what you saw and heard during the trial.

11         If you have taken notes during the trial, you may use

12  them during deliberations to help you remember what happened

13  during the trial.  You should use your notes only as aids to

14  your memory.  The notes are not evidence.  All of you should

15  rely on your independent recollection of the evidence, and you

16  should not be unduly influenced by the notes of other jurors.

17  Notes are not entitled to any more weight than the memory or

18  impressions of each juror.

19         You should not speculate why any other person or

20  company whose name you may have heard during the trial is not

21  currently on trial before you.

22         The defendant is charged with criminal contempt.  For

23  you to find the defendant guilty of this charge, the

24  government must prove each of the following elements beyond a

25  reasonable doubt:

1    One, the Court entered a reasonably specific order;

2    Two, the defendant violated the order by misrepresenting

3  the content of the book The Weight Loss Cure "They" Don't Want

4  You to Know About in an infomercial;

5    Three, the defendant's violation of the court order was

6  wilful.

7         If you find from your consideration of all the

8  evidence that the government has proved each of these elements

9  beyond a reasonable doubt, then you should find the defendant

10  guilty.

11         If, on the other hand, you find from your

12  consideration of all the evidence that the government has

13  failed to prove any one of these elements beyond a reasonable

14  doubt, then you should find the defendant not guilty.

15         The government contends that the defendant

16  misrepresented the content of the Weight Loss Cure book by

17  making one or more of the following statements or omissions

18  from an infomercial:

19    Statements that indicate that you can finish or be done with

20  the weight loss protocol and/or statements that indicate that

21  the protocol is a cure that corrects the cause of obesity; or

22    Statements that indicate that people can do the weight loss

23  protocol at home, and you don't have to go to a clinic to do

24  it; or

25    Statements that indicate that the weight loss protocol is

Charge

676

1    simple and/or statements that indicate that the weight loss

2    protocol involves only a few other little things; or

3        Statements that indicate that no exercise is required by the

4    weight loss protocol; or

5        Statements that indicate that after finishing the protocol,

6    there are no restrictions on what you can eat, and that you'll

7    never have to diet ever again to avoid gaining weight; or

8        Statements that indicate that only minors should do the

9    weight loss protocol under the supervision of a licensed

10   health care practitioner; or

11       Statements that indicate that while on the protocol, people

12   will have no hunger and/or statements that indicate that the

13   protocol includes no food deprivation; or

14       Statements that indicate that anyone can cure food cravings

15   in two minutes using the Callahan Technique; or

16       Statements that indicate that the weight loss protocol is

17   not a diet and/or the protocol does not involve portion

18   control, calorie counting, watching your carbs, watching your

19   fat or crazy potions, powders or pills; or

20       Statements that indicate that anybody can do the weight loss

21   protocol; or

22       Failure to disclose the specifics regarding the use and

23   administration of HCG during the weight loss protocol and/or

24   statements that indicate that HCG is a substance that you can

25   get anywhere.

1    The government is not required to prove beyond a

2  reasonable doubt that every one of these statements or

3  omissions misrepresented the content of the book, but it is

4  required to prove beyond a reasonable doubt that at least one

5  of them misrepresented the content of the book.  To find that

6  the government has proven this, you must unanimously -- you

7  must agree unanimously as to which one of the statements or

8  omissions misrepresented the content of the book, as well as

9  all other elements of the crime charged.

10    A violation of a court order is wilful if it is a

11  volitional act done by one who knows or should reasonably be

12  aware that his conduct is wrongful.  A person should

13  reasonably be aware that his conduct is wrongful if he is

14  conscious of a substantial and unjustifiable risk that the

15  prohibited event (here, violation of the September 2, 2004,

16  court order) will come to pass, and he disregards that risk.

17    In deciding whether the defendant acted wilfully, you

18  may consider all of the evidence, including what the defendant

19  did or said.

20    If the defendant acted in good faith, then he lacked

21  the wilfulness required to prove the offense of contempt with

22  which he is charged.  The defendant acted in good faith if, at

23  the time, he honestly believed that his statements in the

24  infomercials did not violate the court order.

25    The defendant does not have to prove his good faith.

1    Rather, the government must prove beyond a reasonable doubt

2    that the defendant acted wilfully, as charged.

3         Whether the content of the book The Weight Loss Cure

4    "They" Don't Want You to Know About is truthful is not an

5    issue for you to decide in this case.  Likewise, whether the

6    weight loss protocol described in the book The Weight Loss

7    Cure "They" Don't Want You to Know About is effective for

8    weight loss is not an issue for you to decide.  These issues

9    are not relevant to this case.

10         The charge alleges that the crime happened on or

11   about December 23, 2006, January 8, 2007, and July 6, 2007.

12   The government must prove that the crime happened reasonably

13   close to those dates.  The government is not required to prove

14   that the crime happened on those exact dates.

15         In deciding your verdict, you should not consider the

16   possible punishment for the defendant.  If you decide that the

17   government has proved the defendant guilty beyond a reasonable

18   doubt, then it will be my job to decide on the appropriate

19   punishment.

20         Once you are all in the jury room, the first thing

21   you should do is choose a foreperson.  That person will see to

22   it that your discussions are carried on in an organized way

23   and that everyone has a fair chance to be heard.  You may

24   discuss the case only when all jurors are present.

25         Once you start deliberating, do not communicate about

the case or your deliberations with anyone except other members of the jury. You may not communicate with others about the case or your deliberations by any means. This includes oral or written communication, as well as any electronic method of communication, such as by telephone, cell phone, smart phone, I-Phone, Blackberry, computer, text-messaging and instant messaging, the internet chatrooms, blogs, websites, or services like Facebook, My Space, Linked-In, YouTube, Twitter, or any other method of communication.

If you need to communicate with me while you are deliberating, send a note through the Court Security Officer. The note should be signed by the foreperson or by one or more members of the jury. To have a complete record of this trial, it is important that you do not communicate with me except by a written note.

I may have to talk to the lawyers about your message, so it may take me some time to get back to you. You may continue your deliberations while you wait for my answer. Please be advised that I cannot provide you with a transcript of any of the trial testimony.

If you send me a message, do not include the breakdown of your votes. In other words, do not tell me that you are split 6-6, or 8-4, or whatever your vote happens to be.

Charge

680

1        A verdict form has been prepared for you.  You will

2   take this form with you to the jury room.

3        When you have reached unanimous agreement, your

4   foreperson will fill in and sign and date the verdict form and

5   each of you will sign it.

6        Advise the Court Security Officer once you have

7   reached a verdict.  When you come back to the courtroom, I

8   will read the verdict aloud.

9        The verdict form, ladies and gentlemen, is very

10  simple.  It simply states:

11    With respect to the charges against defendant, Kevin

12  Trudeau, we, the jury, find defendant, Kevin Trudeau, and then

13  you have a choice.  You check either guilty or not guilty, so

14  say we all, and below that is a place for the signature of

15  each of you.

16       The verdict must represent the considered judgment of

17  each juror.  Your verdict, whether it's guilty or not guilty,

18  must be unanimous.

19       You should make every reasonable effort to reach a

20  verdict.  In doing so, you should consult with each other,

21  express your own views and listen to your fellow jurors'

22  opinions.  Discuss your differences with an open mind.  Do not

23  hesitate to re-examine your own view and change your opinion

24  if you come to believe it is wrong.  But you should not

25  surrender your honest beliefs about the weight or effect of

1    evidence just because of the opinions of your fellow jurors or

2    just so that there can be a unanimous verdict.

3            The twelve of you should give fair and equal

4    consideration to all the evidence.  You should deliberate with

5    the goal of reaching an agreement that is consistent with the

6    individual judgment of each juror.

7            You are impartial judges of the facts.  Your sole

8    interest is to determine whether the government has proved its

9    case beyond a reasonable doubt.

10           I'm going to ask the two alternate jurors now to

11   please step out.

12           Please go back to the jury room if you've left

13   anything there and get your belongings.

14     (Brief pause.)

15           THE COURT:  I'm going to ask you folks to take a seat

16   in the first bench on the left, please.

17           Swear the Court Security Officer.

18     (Court Security Officer sworn.)

19           THE COURT:  CSO, please take the jury back to the

20   jury room.

21     (Jury retired to deliberate at 2:00 o'clock p.m.)

22           THE COURT:  And I'm going to ask the two alternates

23   to step up to the podium here.  Just pretend you're lawyers.

24   But you don't have to if you don't want to.  I want to give

25   you some instructions.

1          First of all, you're still jurors in this case, which

2     means you cannot discuss this case with anyone or allow anyone

3     to discuss it with you.  That includes among yourselves.

4          Second, you can still not read, listen to or view any

5     news items or any other reports or information about this

6     case.

7          Third, your function from now on is this:  If during

8     the course of deliberations any of the other jurors should

9     become incapacitated for any reason, one of you will be called

10     to take his or her place, which means that you will not be

11     able to have discussed this case with anyone.  Please

12     understand that.

13          Now, it's 2:00 o'clock this afternoon, so I'm going

14     to ask you to wait around in the courthouse.  You can go down

15     to the jury room, which is what I suggest, to wait, you can go

16     to the cafeteria.  At 4:30, if we have not received word from

17     the jury as to having reached a verdict, we will reconvene

18     court and I expect you to be here at that time.  I will give

19     you instructions on what to do after that.

20          Do you have any questions for us?

21      (No response.)

22          THE COURT:  You both have your cell phones with you

23     and we have your cell phone numbers, correct?

24          ALTERNATE JUROR:  Yes.

25          THE COURT:  Other than that, you are free to roam.

683

1      (Alternate jurors left the courtroom.)

2            THE COURT:  Exhibits?

3            MR. KRICKBAUM:  Judge, we discussed the exhibits with

4      the defense and we agreed on what's going back.

5            THE COURT:  Okay.  Do you have it with you?

6            MR. KRICKBAUM:  Yes.  It's probably a couple of

7      handfuls, Judge, so --

8            THE COURT:  All right.  We'll wait until Ms. Gainer

9      gets back and she can take it on back to the jury room, or at

10     least to the CSO.

11           Okay.  We're going to need phone numbers and

12     locations for the attorneys.  So if you could write your phone

13     number down and where we can expect to find you between now

14     and 4:30.

15           MR. KRICKBAUM:  Yes, Judge.

16       (Brief pause.)

17           THE COURT:  All right.  Unless we have either

18     questions or a verdict, we will reconvene court at 4:30.  I

19     expect you to be here at that time.

20           If we have either a question or a verdict, we will

21     notify you on the phones you've given us and please make your

22     best time getting here.

23           Anything either side wants to bring up at this point?

24           MR. KRICKBAUM:  No, Judge.

25           MR. KIRSCH:  No, your Honor.

684

1          THE COURT:  Okay.  We'll recess until 4:30.

2          THE CLERK:  Court is in recess.

3     (End of excerpt.)

4                    *    *    *    *    *

5

We certify that the foregoing is a correct transcript from the
6  record of proceedings in the above-entitled matter.

7

8  */s/ Nancy C. LaBella*          *November 12, 2013*
   Official Court Reporter
9

10
   */s/ Mary M. Hacker*          *November 13, 2013*
11  Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25